# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED-INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED-INDUSTRIAL AND SERVICE WORKERS LOCAL 4-786, <br><br> Plaintiffs, <br><br> v. <br><br> E.I. DUPONT DE NEMOURS AND COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     C.A. No. 07-126 (JJF) |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone:  (202) 842-2600
Facsimile:  (202) 842-1888
jcollins@bredhoff.com
jhunter@bredhoff.com


Dated:  May 24, 2007

SUSAN E. KAUFMAN
Heiman, Gouge & Kaufman, L.L.P.
800 King Street, Suite 303
P.O. Box 1674
Wilmington, DE 19801
Telephone:  (302) 658-1800
Facsimile:  (302) 658-1473
skaufman@hgkde.com

*Attorneys for Plaintiffs United Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union, AFL-CIO-CLC, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers Local 4-786*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ............................................................................1

SUMMARY OF ARGUMENT ....................................................................................................2

  I.     STATEMENT OF FACTS ..............................................................................................3

ARGUMENT .................................................................................................................................6

   I.   THE "FIRST-FILED RULE" IS NOT APPLICABLE BECAUSE LOCAL 4-786
       IS NOT A PARTY TO THE VIRGINIA SUIT.....................................................................6

  II.  EVEN IF THE PARTIES TO THIS CASE AND THE VIRGINIA CASE WERE
       IDENTICAL, THIS ACTION SHOULD HAVE PRECEDENCE BECAUSE
       DUPONT'S VIRGINIA FILING IS AN IMPROPER ATTEMPT TO DENY LOCAL
       4-786 ITS RIGHT TO CHOOSE THE FORUM IN WHICH TO LITIGATE ITS
       CLAIM AGAINST DUPONT, AND THE BALANCE OF CONVENIENCE
       FAVORS THIS FORUM...................................................................................................9

CONCLUSION..............................................................................................................................19

## TABLE OF AUTHORITIES

Abovepeer, Inc. v. Recording Indus. Ass'n of Am., 166 F. Supp. 2d 655 (N.D.N.Y.),
    aff'd on other grounds, 21 Fed. Appx. 52 (2d Cir. 2001)............................................................7

Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425 (7th Cir. 1993) ...............................10

Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417 (8th Cir. 1999) ................................10

Arrow Communication Labs. Inc. v. John Mezzalingua Assocs., Inc.,
    No. Civ. 05-357, 2005 WL 2786691 (D. Del. Oct. 26, 2005) ..................................................18

Burstein v. Applied Extrusion Techs., Inc., 829 F. Supp. 106 (D. Del. 1992) .............................18

Cas. Indem. Exch. v. High Croft Enters., 714 F. Supp. 1190 (S.D. Fla. 1989) ............................10

Chase Manhattan Bank v. Freedom Card, Inc., 265 F. Supp. 2d 445 (D. Del. 2003) ....................6

CitiGroup Inc. v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000)....................................17

Crown Cork & Seal Co. v. United Steelworkers of America, No. 03-1381,
    2004 U.S. Dist. LEXIS 760 (W.D. Pa. Jan. 9, 2004)...............................................................13

Dippold-Harmon Enterprises, Inc. v. Lowe's Cos., No. 01-532-GMS,
    2001 WL 1414868 (D. Del. Nov. 13, 2001) .........................................................................7, 8

Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.,
    350 F. Supp. 2d 620 (E.D. Pa. 2004) ........................................................................12, 13, 17

EEOC v. Univ. of Pa., 850 F.2d 969 (3d Cir. 1988),
    aff'd on other grounds, 493 US 182 (1990) ...........................................................6, 10, 11, 12

E.I. DuPont de Nemours & Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy,
    Allied-Industrial & Serv. Workers Int'l Union,
    No. 3:07-cv-0103-HEH (E.D. Va. filed Feb. 28, 2007)............................................................4

FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733 (E.D. Pa. 2005) ...............................10

Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978), overruled on other
    grounds, Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990) .........................................10

First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76 (2d Cir. 1989)................................17

First Nationwide Mortgage Corp. v. FISI Madison, LLC,
    219 F. Supp. 2d 669 (D. Md. 2002) .......................................................................................11

Hunt Mfg. Co. v. Fiskars Oy AB, No. Civ. A. 97-2460,
    1997 WL 667117 (E.D. Pa. Oct. 2, 1997)..........................................................................12, 17

Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995)..........................................................18

NGS Am., Inc. v. Jefferson, 218 F.3d 519 (6th Cir. 2000).....................................................10, 14

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357 (W.D.N.C. 2003) ..................11

One World Botanicals Ltd. v. Gulf Coat Nutritionals, Inc.,
    987 F. Supp. 317 (D.N.J. 1997) ......................................................................10, 12, 13, 14, 15

Osteotech, Inc. v. Gensci Regeneration Sciences, Inc., 6 F. Supp. 2d 349 (D.N.J. 1998) ..........6, 7

Regions Bank v. Wieder & Mastroianni, P.C., 170 F. Supp. 2d 436 (S.D.N.Y. 2001)...................7

Rexam, Inc. v. United Steelworkers of America, No. 03-2998,
    2003 WL 22477858 (D. Minn. Oct. 30, 2003) ...............................................................16, 17

Richards v. Jefferson County, Ala., 517 U.S. 793 (1996) .............................................................8

Touchstone Research Lab., Ltd. v. Anchor Equip. Sales, Inc.,
    294 F. Supp. 2d 823 (N.D.W. Va. 2003) ...............................................................................11

UAW v. Dana Corp., No. 99-7603,
    1999 U.S. Dist. LEXIS 22525 (N.D. Ohio Dec. 6, 1999)................................................10, 14

UAW v. Dana Corp., No. 99-7603,
    2000 U.S. Dist. LEXIS 12041 (N.D. Ohio Mar. 22, 2000) .....................................................14

Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194 (11th Cir. 1982) ....................................10

## MISCELLANEOUS

12 Moore's Federal Practice § 57.42[3] (3d ed. 2006)..................................................................10

## NATURE AND STAGE OF PROCEEDINGS

This case concerns the arbitrability of a grievance filed by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers Local 4-786 ("Local 4-786") under the collective bargaining agreement ("CBA") in effect between Local 4-786, and the International Union with which it is affiliated – Plaintiff United Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union, AFL-CIO-CLC ("the USW") – and E.I. DuPont de Nemours and Company ("DuPont" or the "Company") at DuPont's plant located in Edgemoor, Delaware.  Local 4-786 filed a grievance in September 2006 alleging that unilateral changes DuPont had announced to the benefits provided through its pension and welfare plans violated the parties' CBA.  See Exhs. C & D to Complaint.  DuPont refused to submit the grievance to arbitration, despite the existence of a broad arbitration clause in the CBA.  See Exhs. A at 9, F to Complaint.  Local 4-786, through counsel for the USW, informed DuPont that legal action would be taken to compel arbitration if DuPont did not, within ten days, agree to arbitrate Local 4-786's grievance.  See Exh. G to Complaint.  Just ten days after the period set forth in that demand letter expired, DuPont brought a declaratory judgment action in the Eastern District of Virginia against the USW seeking a declaration as to the arbitrability of the grievance filed by Local 4-786, as well as grievances filed by USW-affiliated Local Unions in New Jersey and New York.  The very next day, Local 4-786 and the USW filed this action to compel arbitration in this Court.

DuPont now asks this Court to stay this action in favor of the anticipatory declaratory judgment action it filed in the Eastern District of Virginia, hundreds of miles away from the Edgemoor plant – an action to which Local 4-786 is not even a party.  This is the Plaintiffs' Opposition to DuPont's Motion to Stay All Proceedings.

## SUMMARY OF ARGUMENT

**I.**     DuPont invokes the "first-filed" rule, but that rule is inapplicable here because Local 4-786 is not a party to DuPont's Virginia suit.

**II.**     In any case, even if Local 4-786 were a party to the Virginia action, a stay would not be appropriate, because DuPont's Virginia action is an improper "preemptive strike" brought to deprive Local 4-786 and the USW, the natural plaintiffs, of their ability to frame the issues and choose the forum for their claims; and because the balance of convenience favors this forum.

# I.     <u>STATEMENT OF FACTS</u>

DuPont's employees in Edgemoor, Delaware, are covered by a CBA between DuPont, Local 4-786, and the USW.  On September 14, 2006, Local 4-786 filed a grievance alleging that unilateral changes in various benefit programs that were announced by DuPont in August 2006 were in violation of provisions in the CBA prohibiting such modifications.[1]  The grievance alleges violations only of the CBA, not of ERISA or of the DuPont benefit plans themselves.[2]

Also in August-September of 2006, USW-affiliated Local Unions in New Jersey and New York filed their own grievances against DuPont, alleging that DuPont's benefit cuts violated their own CBAs with DuPont.

In early September 2006, a USW representative wrote to DuPont expressing concern that DuPont's unilateral benefit cuts violated the various USW-affiliated Local Unions' CBAs, and proposing the scheduling of a "joint meeting, including the International Union and all affected Local Unions" to discuss the matter.  <u>See</u> Declaration of James Briggs ("Briggs Decl.") (Exh. A to this Opposition) ¶ 8 and Exh. 1 thereto.  Taking a position in marked contrast to its current allegation that it is engaged in a "nation-wide" dispute with labor unions over its benefit changes, <u>see</u> Defendant's Opening Brief in Support of its Motion to Stay All Proceedings ("DuPont Stay Brief") at 7, DuPont rejected the USW's proposal on the ground that the disputes were "local" ones:

---

[1] Contrary to DuPont's claim, <u>see</u> Defendant's Opening Brief in Support of its Motion to Stay All Proceedings at 4, the USW did not file any grievances against DuPont; Local 4-786's grievance, and those filed by other USW Local Unions, were brought by the Local Unions alone. <u>See</u> Exh. C to Complaint; Declaration of James Briggs (Exh. A to this Opposition) ¶ 5.

[2] DuPont's statement that the USW Local Unions' grievances "raise similar ERISA benefits eligibility issues" is incorrect, and appears to be an attempt to draw the Court's attention away from the fact that each Local Union's grievance actually alleges solely a violation of that Local Union's CBA, not a violation of ERISA or of any ERISA plan.  <u>Compare</u> Defendant's Opening Brief in Support of its Motion to Stay All Proceedings at 4 <u>with</u> Exh. D to Complaint.

> Our philosophy remains that union-management issues are local.  Therefore, we believe they are best dealt with by knowledgeable union and management people at the local level.

Briggs Decl. ¶ 9 and Exh. 2 thereto (emphasis added).

In a letter sent to the President of Local 4-786 on January 25, 2007, DuPont refused to arbitrate Local 4-786's grievance.  See Exh. F to Complaint.  DuPont also refused to arbitrate the separate grievances filed by the USW-affiliated Local Unions in New York and New Jersey.  On February 8, 2007, Richard Brean, the International Union's Senior Associate General Counsel, to whom DuPont's letters to the Local Union presidents had been referred for reply, informed DuPont that legal action would be initiated to compel arbitration of Local 4-786's grievance unless DuPont provided written notice within ten days that it would resume processing the grievance under the CBA.  See Exh G to Complaint.  Mr. Brean's letter also stated that the Unions would "seek to recover their attorney's fees if DuPont files a declaratory judgment in an unlawful effort to thwart the exercise of our federally protected right to process and arbitrate grievances."  Id.

After receiving notice that suits against it were imminent, and notwithstanding its previously-stated position that disputes over the respective Local Union grievances were "local" matters, on February 28 DuPont filed a declaratory judgment action against the USW in the Eastern District of Virginia, seeking to block arbitration of the grievances filed by Local 4-786 and by the New Jersey and New York Local Unions.  See E.I. DuPont de Nemours & Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Industrial & Serv. Workers Int'l Union, No. 3:07-cv-0103-HEH (E.D. Va. filed Feb. 28, 2007) (the "Virginia action").  DuPont's Virginia action was filed only twenty days after DuPont had received notice that suits against it

were imminent, and only ten days after the response period set forth in Mr. Brean's letters had expired.

DuPont's Virginia action does not name Local 4-786 or the other two Local Unions as parties. Rather, only the USW has been sued; and DuPont has not disputed the fact that the Virginia court lacks personal jurisdiction over Local 4-786 and the New York and New Jersey Local Unions. DuPont alleges that it chose Virginia as the forum for its action because DuPont previously had brought suit there against the Ampthill Rayon Workers Union ("ARWI") – an entirely separate and independent union which is not affiliated with the USW or Local 4-786, and which, unlike the USW or Local 4-786, does represent DuPont workers in Virginia.

The day after DuPont's Virginia action was filed, on March 1, 2007, Local 4-786 and the USW filed the instant suit to compel arbitration of Local 4-786's grievance.[3] The USW Local Unions in New York and New Jersey also filed suits to compel arbitration within hours or days after DuPont filed the Virginia action. These suits were filed in the Western District of New York and the District of New Jersey, respectively.

The USW has moved to dismiss DuPont's Virginia action on several grounds including, inter alia, that DuPont's suit is an improper anticipatory declaratory judgment action and that the Local Unions are indispensable parties who cannot be joined in Virginia. See Defendant's Brief in Support of Motion to Dismiss and Defendant's Reply in Support of Motion to Dismiss (Exhs. B and C attached to this Opposition). Argument on the USW's motion to dismiss, and on a

---

[3] DuPont states that "[m]ore than 5 weeks before this action was filed, DuPont filed suit to resolve a nation-wide dispute between DuPont and labor unions representing DuPont employees at DuPont facilities in five states." DuPont Stay Brief at 7. However, the action DuPont filed five weeks before this action was filed did not involve the USW-affiliated Local Unions or the USW at all – rather, it is a separate declaratory judgment action filed only against ARWI.

motion by DuPont to consolidate its Virginia action against the USW with the ARWI action, is scheduled for June 7.

If the USW's motion to dismiss the Virginia suit is granted, DuPont's Motion to Stay All Proceedings in this case will be moot. But even if the motion to dismiss is not granted, DuPont's Motion to Stay should be denied, as we now show.

## ARGUMENT

### I.    THE "FIRST-FILED RULE" IS NOT APPLICABLE BECAUSE LOCAL 4-786 IS NOT A PARTY TO THE VIRGINIA SUIT

The "first-filed rule" upon which DuPont's Motion to Stay is premised simply does not apply here as to Local 4-786, because Local 4-786, a plaintiff in this case and a real party in interest to its dispute with DuPont, is not a party to DuPont's Virginia actions against the USW or ARWI and will not be bound by the outcome of those cases.

The first-filed rule—the principle that, when parallel suits are pending in different districts, the suit that was filed first should be given priority—comes into play when two suits involve the same issues <u>and the same parties</u>. <u>See</u> <u>EEOC v. Univ. of Pa.</u>, 850 F.2d 969, 971 (3d Cir. 1988), <u>aff'd on other grounds</u>, 493 U.S. 182 (1990); <u>Chase Manhattan Bank v. Freedom Card, Inc.</u>, 265 F. Supp. 2d 445, 448 (D. Del. 2003).

The case of <u>Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.</u>, 6 F. Supp. 2d 349 (D.N.J. 1998), is instructive in this regard. Osteotech brought suit in New Jersey against GenSci Labs and its parent company, GenSci Canada, alleging that the defendants were infringing a patent held by Osteotech. Shortly thereafter, GenSci Labs brought suit in California seeking a declaration that it was not infringing on the patent. Osteotech moved the New Jersey court to enjoin the California action on the basis of the "first-filed" rule. The New Jersey court held that,

assuming that the New Jersey action was first-filed as compared to the California case, the "first-filed" rule did not apply where GenSci Canada, a party to the New Jersey case, was not a party to the California case. Id. at 357. Likewise here, Local 4-786, a plaintiff in this case, is not a party to the Virginia action, so the first-filed rule simply does not apply.

The cases DuPont cites in support of its assertion that the first-filed rule can apply even though Local 4-786 is absent from the Virginia litigation, see DuPont Stay Brief at 13-14, are inapposite. In Regions Bank v. Wieder & Mastroianni, P.C., 170 F. Supp. 2d 436 (S.D.N.Y. 2001), the court stayed a second-filed suit against a party not present in the first-filed suit, where the dispute was essentially between the parties to the first suit and might be completely resolved in the first-filed suit without the presence of the other party, which was only a middleman to the transaction in question and no longer had possession of the relevant funds. In the other case cited by DuPont, Dippold-Harmon Enterprises, Inc. v. Lowe's Cos., No. 01-532-GMS, 2001 WL 1414868 (D. Del. Nov. 13, 2001) (Exh. D to this Opposition), the court found that the first-filed rule applied even though the first-filed case involved Lowe's Home Centers ("Home Centers") and the second-filed case involved Lowe's Companies, Inc. ("Lowe's"), where Home Centers was a "wholly-owned subsidiary corporation" of Lowe's, Lowe's maintained "significant control" over Home Centers, Lowe's executives "supervise[d]" and "overs[aw]" the Home Centers retail stores and traveled to the stores on an almost daily basis, and Lowe's made no distinction between its Lowes stores and its Home Center stores in its advertisements or its internal communications. Id. at *1-3. Thus, Home Centers and Lowe's could be considered "one and the same party" for purposes of the "first-filed" rule. Id. at *5. See also Abovepeer, Inc. v. Recording Indus. Ass'n of Am., 166 F. Supp. 2d 655, 662 (N.D.N.Y.) (noting that cases in which first-filed rule was held to apply even though the parties were non-identical did not

involve "a second-filed action brought by separate, independent plaintiffs with distinct rights"),

aff'd on other grounds, 21 Fed. Appx. 52 (2d Cir. 2001).

By contrast, Local 4-786 is neither a middleman to a transaction between DuPont and the

USW, nor a wholly-owned and controlled subsidiary of the USW.  Rather, Local 4-786 is an

independent entity which makes its own decisions about its own affairs, including its own

grievances.  As noted, the grievance as to which Local 4-786 seeks to compel arbitration was

filed by the Local Union, not by the USW.  Furthermore, the authority to make decisions about

the grievance, including not only whether to file a grievance in the first instance, but also what

positions to assert in the grievance, whether and how to demand arbitration, and whether to

settle, lies entirely with Local 4-786, not with the USW.  See Briggs Decl. ¶¶ 4-6.

Thus, with respect to Local 4-786's grievance, Local 4-786 and the USW cannot be

considered "one and the same party," Dippold-Harmon Enterprises, 2001 WL 1414868, at *5.

To be sure, the USW does provide support and assistance to its Local Unions, including Local 4-

786, but this does not mean that the USW has the same legal rights in this dispute as has Local 4-

786 – any more than an attorney can be considered "one and the same party" as his client, merely

because the attorney provides representation and assistance to the client and seeks to advance the

client's interests.  See Richards v. Jefferson County, Ala., 517 U.S. 793, 796 (1996) (nonparties

could not be bound by judgment even though their interests were "essentially identical" to those

of parties to case).  Having declared that the USW should not even be permitted to participate in

a meeting with DuPont to discuss the Local Unions' grievances because each grievance should

be resolved by the "union . . . people at the local level," see supra at 4,[4] DuPont cannot possibly

---

[4]  It should be noted that the letter from a USW representative to which DuPont was responding
did not suggest that the USW had any authority over the various Local Union's grievances.  The

maintain that the Local Unions' rights to arbitrate those grievances can properly be determined in litigation where only the USW, and not the Local Unions, is a party.

Indeed, because Local 4-786 is not a party to the Virginia action, it cannot be bound by a judgment in that action.  Consequently, staying this case could not further the cause of judicial efficiency; it would only delay the day in court to which Local 4-786 unquestionably is entitled.

For these reasons, the first-filed rule is not applicable here, and DuPont has no grounds for a stay.

II.    **EVEN IF THE PARTIES TO THIS CASE AND THE VIRGINIA CASE WERE IDENTICAL, THIS ACTION SHOULD HAVE PRECEDENCE BECAUSE DUPONT'S VIRGINIA FILING IS AN IMPROPER ATTEMPT TO DENY LOCAL 4-786 ITS RIGHT TO CHOOSE THE FORUM IN WHICH TO LITIGATE ITS CLAIM AGAINST DUPONT, AND THE BALANCE OF CONVENIENCE FAVORS THIS FORUM**

Even if Local 4-786 were a party to the Virginia suit, a stay in this case would be unwarranted for two reasons.  First, by its Virginia suit DuPont has engaged in a tactical maneuver that is regularly condemned by the courts: having been made aware that a suit alleging violations of law was about to be filed against it, the prospective defendant rushed to file a "preemptive" or "anticipatory" declaratory judgment action in the hope of depriving the natural plaintiff of the ability to frame the issues and to choose the forum for its claim.  Second, the balance of convenience favors a Delaware forum over a Virginia forum hundreds of miles away from Local 4-786, its members, and the Edgemoor plant.

A. The "first-to-file rule is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, anticipatory

requested meeting – unlike DuPont's Virginia litigation – would have included representatives of "all affected Local Unions."  Briggs Decl. Exh. 1.

9

filing or forum shopping." FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 738

(E.D. Pa. 2005) (citing EEOC v. Univ. of Pa., 850 F.2d 969, 972 (3d Cir. 1988), aff'd on other

grounds, 493 U.S. 182 (1990)) (internal quotations and brackets omitted).  In particular, the

Third Circuit has made it clear that "anticipatory litigation," such as an action for declaratory

judgment that is brought in an attempt to preempt an anticipated suit, "is disfavored." One

World Botanicals Ltd. v. Gulf Coat Nutritionals, Inc., 987 F. Supp. 317, 329 (D.N.J. 1997)

(citing EEOC, 850 F.2d at 977).

    To decline jurisdiction over such a preemptive declaratory judgment action is not only

"[]favored," id.; it is the presumptively proper course.  As the Seventh Circuit has put it, "a suit

for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff

will normally be dismissed." Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 10 F.3d 425, 431

(7th Cir. 1993).  See also UAW v. Dana Corp., No. 99-7603, 1999 U.S. Dist. LEXIS 22525, at

*18 (N.D. Ohio Dec. 6, 1999) (there is "a presumption that a first filed declaratory judgment

action should be dismissed or stayed in favor of the substantive suit") (Exh. E to this

Opposition); Cas. Indem. Exch. v. High Croft Enters., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989)

("The declaratory remedy is not a tactical device whereby a party who would be a defendant in a

coercive action may choose to be a plaintiff if he can beat the other party to the courthouse."); 12

Moore's Federal Practice § 57.42[3] (3d ed. 2006) (where a declaratory judgment action "was

brought in anticipation of the coercive suit for the purpose of gaining the home court advantage,

the coercive suit is usually given precedence").[5]  Accord, e.g., NGS Am., Inc. v. Jefferson, 218

F.3d 519 (6th Cir. 2000); Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417 (8th Cir.

1999); Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194 (11th Cir. 1982); Factors Etc., Inc.

[5] The treatise notes that this is particularly true "[w]hen the case has limited connection to the
declaratory relief forum." Id.

10

v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978), overruled on other grounds, Pirone v.

MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990); Touchstone Research Lab., Ltd. v. Anchor Equip.

Sales, Inc., 294 F. Supp. 2d 823 (N.D.W. Va. 2003); Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,

264 F. Supp. 2d 357 (W.D.N.C. 2003); First Nationwide Mortgage Corp. v. FISI Madison, LLC,

219 F. Supp. 2d 669, 673 (D. Md. 2002).

   The Third Circuit's decision in EEOC v.  University of Pennsylvania is instructive on this

point.  In that case, the EEOC was investigating charges of discrimination filed against the

University of Pennsylvania by a faculty member who had been denied tenure.  During the

investigation, the University refused to release certain peer review materials relating to the

faculty member's tenure review process.  The EEOC subpoenaed the peer review materials.

When the University again refused to produce the requested materials, the EEOC notified the

University that it would institute subpoena enforcement proceedings if the University did not

respond to the subpoena within 20 days.  Three days before the end of that 20-day grace period,

the University filed a suit for declaratory judgment against the EEOC in the United States

District Court for the District of Columbia, claiming that the EEOC had violated the First and

Fifth Amendments to the Constitution and the Administrative Procedures Act, by "adopting a

policy that, in practice, constituted a nationwide rule requiring complete disclosure of

confidential peer review materials."  850 F.2d at 973.  The University stated that it had filed suit

in the District of Columbia rather than in Pennsylvania because "more was at stake than the

single question of the [EEOC's] possible enforcement of the its [sic] subpoena against the

University."  Id.

   Approximately six weeks later, the EEOC instituted subpoena-enforcement proceedings

against the University in the Eastern District of Pennsylvania.  The University moved to dismiss

the EEOC's Pennsylvania action on the basis of the first-filed rule, but the district court denied

the University's motion, and the Third Circuit affirmed.  Characterizing the University's decision

to file suit in response to the EEOC's notice letter as an attempt to "preempt an inevitable

subpoena enforcement action," id. at 974, the Third Circuit refused to accept the University's

contention that it should be free to select the forum because it was addressing a "nationwide

dispute":

> Although the University characterizes its District of Columbia filing as a broad first
> amendment challenge to the EEOC's national policy, its complaint . . . features a direct
> challenge to the EEOC subpoena:  (1) issued in Philadelphia; (2) for records held by the
> University; and (3) relating to a discrimination charge arising at the University.  The
> University's conduct following the issuance of the EEOC's subpoena, therefore, created a
> lamentable spectacle which was tantamount to the blowing of a starter's whistle in a foot
> race.

Id. at 978 (internal quotations omitted).

Other courts in the Third Circuit have followed the reasoning of EEOC.  See, e.g.,

Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc., 350 F. Supp. 2d 620 (E.D. Pa.

2004) (dismissing first-filed declaratory judgment suit triggered by notice letter); One World

Botanicals Ltd. v. Gulf Coast Nutritionals, 987 F. Supp. 317 (D.N.J. 1997) (declining to transfer

second-filed suit to court in which first-filed suit was filed because first-filed suit was

anticipatory); Hunt Mfg. Co. v. Fiskars Oy AB, No. Civ. A. 97-2460, 1997 WL 667117 (E.D. Pa.

Oct. 2, 1997) (dismissing first-filed declaratory judgment suit which was anticipatory and

brought for purposes of forum-shopping) (Exh. F to this Opposition).

As the University did in EEOC, here DuPont has brought an anticipatory declaratory

judgment action in a forum unconnected to the parties or the facts at issue, and has attempted to

justify that action by characterizing the dispute as "nation-wide."  See DuPont Stay Brief at 7.

However, as was the case in EEOC, here an examination of DuPont's complaint in the Virginia

action reveals that the relief it seeks as to Local 4-786 and the USW relates to the arbitrability of

a grievance filed by Local 4-786 in Delaware under a CBA which governs employees at

DuPont's Edgemoor, Delaware plant.  See Complaint in DuPont v. USW, Exh. 1 to Brief in

Support of DuPont Motion to Stay, ¶¶ 66, 69, 72 (seeking declarations and injunctions as to the

three grievances filed by three separate USW-affiliated Local Unions, including Local 4-786).[6]

Furthermore, DuPont has selected a forum in which none of the affected Local Unions or the

USW represents any DuPont employees.

  Perhaps the closest analogues to this case are Crown Cork & Seal Co. v. United

Steelworkers of America, No. 03-1381, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. Jan. 9, 2004)

(Exh. G to this Opposition), and UAW v. Dana Corp., supra, both of which involved attempts by

an employer to use a declaratory judgment action to pretermit anticipated suits by aggrieved

employees or their union.  Crown Cork & Seal, like this case, involved an employer's effort to

obtain judicial approval of its decision to reduce employee benefits.  The court held that "the

proper plaintiffs in an action to determine whether the retirees' retirement benefits can be

unilaterally changed . . . are the retirees and their Union.  Further, that as the proper plaintiffs, the

retirees and their Union should be permitted to select the forum of their choice so long as the

selected forum has some nexus to the lawsuit."  2004 U.S. Dist. LEXIS 760 at *9.  The court

therefore dismissed the employer's declaratory judgment action.  Id. at **9-11.

  In Dana Corp., as here, an employer brought an action seeking a declaration that a union

was not entitled to enforce rights it was claiming under the arbitration provisions of a collective

---

[6] Another factor "further confirm[ing] the anticipatory nature" of DuPont's Virginia action is
"[t]he short amount of time . . . between the first and second filing."  Drugstore-Direct, Inc., 350
F. Supp. 2d at 623 (finding time period of four days indicated first filing was anticipatory); see
also One World Botanicals Ltd., 987 F. Supp. at 329-30 (fact that second-filed suit was filed
seven days after declaratory suit was filed was evidence of bad faith).

bargaining agreement.  Reasoning that the union was the "true plaintiff" in the controversy, 1999 U.S. Dist. LEXIS at **12-13, the court declined to permit the employer "to preempt the choice of forum that otherwise would be for the union to make," id. at *15.  The court required the employer to show cause why "further maintenance of [its] suit . . . should not be enjoined," id. at *17, and in a subsequent decision, the court enjoined the employer's suit, "remain[ing] firmly of the view that the union is the true plaintiff, and, as such, is entitled to choose its forum, and not to have that choice made for it by its adversary."  UAW v. Dana Corp., No. 99-7603, 2000 U.S. Dist. LEXIS 12041, at *5 (N.D. Ohio Mar. 22, 2000).

The same result is called for in this case.  It is plain that Local 4-786 and the USW are the natural plaintiffs in this dispute, as were the unions in Crown Cork & Seal and Dana Corp., and that DuPont raced to the Virginia court in order to deprive Local 4-786 and the USW, and the other USW Local Unions, of their right to select the forum(s) for litigation of their claims. Indeed, DuPont does not deny that it filed its Virginia suit in anticipation that the unions were about to file coercive actions to compel arbitration of their grievances.  See DuPont Stay Brief at 5.  That is not to be permitted, whatever DuPont's reasons may be for preferring Virginia as its forum.  See NGS Am., supra, 218 F.3d at 523 (dismissing anticipatory declaratory judgment action "[w]ithout pretending to divine the motives of [the declaratory judgment plaintiff] in bringing this action where it did"); One World Botanicals Ltd., 987 F. Supp. at 329 (finding declaratory judgment suit was motivated by forum-shopping because "[w]hile there is no evidence that the outcome in Florida district court would be more 'favorable' to [the declaratory judgment plaintiff] in the sense that circuit precedent differed, [the declaratory judgment plaintiff's] brief reveals that it perceived Florida to be a more favorable locale . . . because venue in Florida is more convenient for defendant, a domiciliary of that state.")

DuPont argues that its attempt to force all litigation over its benefit cuts into the Eastern District of Virginia should not be characterized as forum shopping, because ARWI is located in the Eastern District of Virginia and DuPont, having sued ARWI there, wished to "have the underlying dispute resolved in one forum." DuPont Stay Brief at 10. But, whether DuPont chose the Virginia forum because it regarded that jurisdiction as offering more favorable precedent, or simply for "convenien[ce]," One World Botanicals, 987 F. Supp. at 329, there can be no gainsaying that DuPont has engaged in forum shopping for the express purpose of preventing the Local Unions from being able to litigate their claims against DuPont in the forums of their choice. Indeed, DuPont asserts that its actions have been motivated by a desire not to "waste [its] resources" by allowing litigation to proceed in the forums the Local Unions – who are the natural plaintiffs – have selected. DuPont Stay Motion at 10. That is precisely the kind of forum shopping that the courts have recognized as justifying a refusal to apply the "first-filed" rule. One World Botanicals, 987 F. Supp. at 329. Although DuPont suggests that it also is seeking to preserve the Local Unions' resources, id., that suggestion is Kafkaesque. Local 4-786 has no desire to conserve its resources by having the fate of its grievance determined in litigation in Virginia to which it is not even a party. Any "resource conservation" that might be achieved by allowing DuPont's forum-shopping gambit to succeed would benefit only DuPont, to the detriment of Local 4-786.[7]

Furthermore, although DuPont purports to be vindicating an interest in "uniform[ity]," DuPont Stay Brief at 11, DuPont overlooks the fact that the respective CBAs and grievances simply are not uniform. DuPont itself has declared that the issues raised by the grievances

---

[7]  Also Kafkaesque is DuPont's assertion that Local 4-786 and the other USW Local Unions were "forum shopping" when they filed suits in the districts in which they and their members are located, in order to compel arbitration of the grievances they filed in those districts, under CBAs they entered into in those districts. See DuPont Stay Brief at 10.

concerning the benefit reductions "are local."  See supra at 5.  What is more, in its complaint in

the Virginia action against the USW and in its brief in that case, DuPont pointed to facts unique

to individual Local Unions (specifically, DuPont emphasized that one Local Union's CBA

mentions certain benefit programs while another Local Union's CBA mentions different

programs), and DuPont asserted that those differences affect the arbitrability of the respective

grievances.  See Complaint in DuPont v. USW, Exh. 1 to Brief in Support of DuPont Motion to

Stay, ¶¶ 61, 62; Plaintiff's Opposition to Defendant's Motion to Dismiss in DuPont v. USW, at

22 (Exh. H to this Opposition).

DuPont thus recognizes "uniformity" as an interest to be pursued only where it suits

DuPont's own purposes.  Had DuPont in fact been confronted with a situation in which it would

be necessary and proper that all litigation concerning the benefits reductions should be conducted

in the Eastern District of Virginia, DuPont would not have needed to file a preemptive strike

against the USW in order to attempt to force that result; DuPont could simply have moved to

transfer all litigation concerning the benefit reductions to the Virginia court.  Apparently

recognizing that it would lack a basis for seeking such a transfer, DuPont has taken matters into

its own hands by attempting to force all litigation into the Eastern District of Virginia through the

filing of a complaint that seeks to determine the arbitrability and the merits of the New York,

New Jersey and Delaware grievances even though Local 4-786 and the other Local Unions that

filed those grievances do not conduct any business in Virginia and have filed litigation to enforce

their rights in the districts where they do conduct business.[8]

---

[8] DuPont's reliance on Rexam, Inc. v. United Steelworkers of America, No. 03-2998, 2003 WL
22477858 (D. Minn. Oct. 30, 2003), see DuPont Stay Brief at 11 and Exh. 7 thereto, is
misplaced.  In that case, the court found that the affected USW retirees whose benefits were at
issue had as much of a connection to the forum in which the company had filed its declaratory
judgment action (where one of the USW-represented facilities was located) as to any other

For these reasons, this is a clear case in which to apply the principle that a natural defendant will not be permitted to wrest the choice of forum from the natural plaintiff by filing a "preemptive strike" declaratory judgment action.

B.   This suit should not be stayed in favor of the Virginia suit for the additional reason that the balance of convenience clearly favors a Delaware forum over a Virginia forum.  Even where the "first-filed" rule otherwise is applicable, a balance of convenience in favor of the second-filed suit is a reason to depart from the rule.  Drugstore-Direct, Inc., 350 F. Supp. 2d at 623 (citing Hunt Mfg. Co., 1997 WL 667117 at *3); CitiGroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) (citing First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989)).

The Third Circuit has enumerated several interests that should be considered in determining the balance of convenience:

> The private interests [] include[]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  The public interests [] include[]: the enforceability of the judgment; practical considerations that could make

forum.  See 2003 WL 22477858 at *3.  Nor was there any contention in Rexam that the company's choice of forum had operated to exclude from the litigation local unions whose rights were at issue and whose CBAs and grievances varied from each other.  Finally, and perhaps most important, in Rexam the company did not file a declaratory judgment action until six months had elapsed from its last communication with the USW, and the court concluded in those circumstances that the company had not been aware that the union was about to file suit.  See id. at *5.  Here, in contrast, the unions gave DuPont unequivocal notice of their intention to file suit, and DuPont then promptly raced into court.

DuPont also argues that its role as an ERISA fiduciary justifies its pursuit of a uniform resolution of the various grievances.  See DuPont Stay Brief at 10-12.  However, DuPont does not have standing to pursue its purported ERISA claims, for the reasons stated in Defendant's Brief in Support of Motion to Dismiss at 13-16 and Defendant's Reply in Support of Motion to Dismiss at 14-16 (Exhs. B and C attached to this Opposition).  This suit is not about ERISA or fiduciary duties; it is about resolving through arbitration a grievance alleging a breach of a CBA.

the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995) (internal quotations and citations omitted).

Here, the forum choice of the plaintiffs, the location where the claim arose, the convenience of parties, the convenience of witnesses, the location of relevant documents, and the local interest in deciding local controversies at home all point in favor of a Delaware forum. Local 4-786, the USW, and DuPont all do business in Delaware, but Local 4-786 does not do any business in Virginia. Local 4-786's officers, the Edgemoor plant employees represented by Local 4-786, and DuPont's corporate and Edgemoor employees are all located in Delaware, not Virginia. The CBA at issue in this case was entered into in Delaware, not Virginia; Local 4-786's grievance was filed in Delaware, not Virginia; and any documentary evidence related to the CBA and the grievance will be located in Delaware, not Virginia. The plaintiffs chose a Delaware forum, and Local 4-786 is not even subject to service of process in Virginia. Indeed, while DuPont has chosen a Virginia forum for its declaratory judgment suit, DuPont's headquarters are in Delaware. A party's choice of forum is given less weight when it "cho[oses] to bring suit in a district that is not [its] 'home turf' and that has no connection to any acts giving rise to the lawsuit," as DuPont did in bringing its Virginia action. Arrow Communication Labs. Inc. v. John Mezzalingua Assocs., Inc., No. Civ. 05-357, 2005 WL 2786691, at *3 (D. Del. Oct. 26, 2005) (Exh. I to this Opposition) (citing Burstein v. Applied Extrusion Techs., Inc., 829 F. Supp. 106, 110 (D. Del. 1992)).

Thus, the balance of convenience clearly weighs in favor of allowing this action to proceed in this forum.

18

As noted, DuPont has sought to justify its choice of a Virginia forum by portraying its Virginia action against the USW as connected to the ARWI action. However, ARWI is independent of the USW, of Local 4-786, and of the New Jersey and New York USW Local Unions. DuPont has no right to force the USW – much less Local 4-786 – to litigate in Virginia merely because DuPont has sued some other union there.

*   *   *   *

In sum, DuPont's motion for a stay is a non-starter because Local 4-786 is not a party to DuPont's Virginia action. See supra at 8-11. And even if that dispositive point could be put aside, a stay is unwarranted because DuPont's action is an improper preemptive strike that should not be permitted to deprive the natural plaintiff, Local 4-786, of the right to choose the forum; and the balance of convenience favors litigating this matter in Delaware, not Virginia.

**Conclusion**

For the foregoing reasons, DuPont's Motion to Stay All Proceedings should be denied.

19

Respectfully submitted,


*/s/ Susan E. Kaufman*_____
SUSAN E. KAUFMAN (DSB # 3381)
Heiman, Gouge & Kaufman, L.L.P.
800 King Street, Suite 303
P.O. Box 1674
Wilmington, DE 19801
Telephone:    (302) 658-1800
Facsimile:    (302) 658-1473
skaufman@hgkde.com

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone:    (202) 842-2600
Facsimile:    (202) 842-1888
jcollins@bredhoff.com
jhunter@bredhoff.com

*Counsel for Plaintiff*
*United Steel, Paper and Forestry, Rubber, Manufacturing,*
*Energy, Allied-Industrial and Service Workers Local*
*4-5025*

DATED: May 24, 2007

20

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS, INTERNATIONAL UNION, AFL-CIO-CLC, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS LOCAL 4-786, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br> |
| Plaintiffs, | ) |
| v. | )<br>) |
| E.I. DuPONT de NEMOURS and COMPANY, | )<br>)<br>) |
| Defendant. | )<br>) |

C.A. No. 07-126 (JJF)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2007, I electronically filed the PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Kathleen F. McDonough, Esquire
Potter, Anderson & Corroon, LLP
1313 North Market Street
Wilmington, DE 19899

I hereby certify that on May 24, 2007, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Thomas P. Gies, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

*/s/ Susan E. Kaufman*
Heiman, Gouge & Kaufman, LLP
800 King Street, Suite 303
Wilmington, DE 19801
302-658-1800
skaufman@hgkde.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

E.I. DUPONT DE NEMOURS AND ) 
COMPANY, )
 )
        Plaintiff, )
 )
v. )
 )    Civil Action No.
 )    3:07-cv-0103-HEH
 )
UNITED STEEL, PAPER AND )
FORESTRY, RUBBER, )
MANUFACTURING, ENERGY, )
ALLIED-INDUSTRIAL AND SERVICE )
WORKERS INTERNATIONAL UNION, )
 )
        Defendant. )
_____ )

## DECLARATION OF JAMES BRIGGS

James Briggs declares under penalty of perjury under the laws of the United States as follows:

1.      I am employed as a Staff Representative by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). As a Staff Representative I provide assistance to various local unions that are affiliated with the USW. One of the local unions I regularly assist is Local 4-5025, which represents employees at the Niagara Plant of E.I. DuPont de Nemours and Co. ("DuPont") in Niagara Falls, New York. I make this declaration on the basis of personal knowledge and am competent to testify to the matters stated herein.

2.      Local unions affiliated with the USW represent DuPont employees at six locations, including, among others, Deepwater, New Jersey (Local 943) and Edgemoor,

Delaware (Local 4-786), as well as Niagara Falls. Each of these locals is a party to a collective bargaining agreement ("CBA") with DuPont. Each CBA is applicable solely to the plant at which the particular local union represents employees. The provisions of the respective CBAs, including the provisions relating to employee benefits, are not identical, but vary from local to local.

3.      Although the USW is a party, together with Local 4-786, to the Edgemoor CBA, the USW is not a party to the Deepwater or Niagara CBAs.

4.      The Deepwater, Edgemoor and Niagara CBAs contain grievance arbitration provisions. At each location, decisions whether to file a grievance, whether to take a grievance to arbitration, what relief to request in arbitration, and whether to settle a grievance or an arbitration case are made solely by the officers and/or members of the local union, not by the USW.

5.      When DuPont announced in August 2006 that it was unilaterally making changes in the benefits employees would receive under various benefit plans and programs, grievances were filed by Local 4-5025, Local 943 and Local 4-786. No grievances were filed by the USW, and the decision of each local union to file a grievance was made by that local union, not by the USW. The grievances are not identical, nor are the CBA provisions that each grievance alleges to have been violated identical.

6.      The decisions to demand arbitration of the three grievances referenced in paragraph 5 were made by each local union, not by the USW. All decisions as to what positions to assert in arbitration, and any decisions whether, or on what terms, to settle one or more of the grievances, will be made by each local union with respect to its own grievance, not by the USW.

- 2 -

7.    Although each local union possesses the full and exclusive authority to determine how its grievance will be handled, the USW is providing assistance to the local unions in this regard, as it regularly provides assistance to its affiliated local unions. For example, the USW Legal Department has assisted the locals, and the USW has also made outside counsel available to the locals.

8.    Because DuPont has announced that the changes it has made in its benefit plans and programs will apply to each of the facilities, the local unions involved, with the USW's assistance, are coordinating certain aspects of their responses to DuPont's action. For example, the USW DuPont Council which assists local unions at DuPont facilities with various issues, sent a letter to DuPont's Vice President of Human Resources on September 1, 2006, proposing "that the parties schedule a joint meeting, including the International Union and all affected Local Unions," to discuss DuPont's unilaterally imposed benefit changes. Exhibit 1 to this declaration is a true and correct copy of that letter.

9.    In response to that letter, DuPont's U.S. Region President, Willie C. Martin, sent a letter to the Chairman of the DuPont Council, which stated DuPont's position as follows:

> Our philosophy remains that union-management issues are local.
> Therefore, we believe they are best dealt with by knowledgeable
> union and management people at the local level.

Exhibit 2 to this declaration is a true and correct copy of that letter.

James Briggs

April 19, 2007

# EXHIBIT 1
# to Briggs Declaration



**UNITED STEELWORKERS**

UNITY AND STRENGTH FOR WORKERS



September 1, 2006

Mr. Jim Borel, Sr. Vice President
Human Resources
DuPont Corporation
DuPont Building
1007 Market Street
Wilmington, DE 19898

Dear Mr. Borel:

The International Union and the various DuPont Local Unions are deeply concerned about the changes to terms and conditions of employment of current and future bargaining unit members set forth in the August 28, 2006 e-mail which you sent to U.S. DuPont employees. At present, we lack sufficient information to determine whether the changes, which will not take effect until January 1, 2007, at the earliest, violate the various collective bargaining agreements, and I propose that the parties schedule a joint meeting including the International Union and all affected Local Unions so that we can learn and discuss the Company's contractual basis for the announced actions. Although no contract is currently in effect at the Yerkes plant, a Local 6992 representative will also attend.

We are flexible as to location and timing but believe it is in the interest of all parties to meet as quickly as possible. On behalf of the International Union and all affected Local Unions, I am also requesting that any time limits at each of the plants concerning the filing of a grievance concerning any changes announced in the August 28, 2006 e-mail be suspended until such time as the requested meeting is held.

I look forward to your prompt response. In addition, to facilitate our preparation for the meeting and to insure we have accurate copies of the latest versions of the affected plans, I request that you send me as quickly as possible the complete Pension and Retirement Plan, Savings and Investment Plan, Vacation Plan, and BeneFlex Medical Care Plan as well as copies of any proposed amendments to these plans.

Sincerely yours,

*Kenneth O. Test*

Kenneth O. Test
DuPont Council Chairman

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union

5540 Forrester Hill Drive, Nashville, TN 37211 • 615-834-8590 • www.usw.org

Mr. Jim Borel
DuPont Corporation
Page Two
September 1, 2006


cc:     Leo Gerard, USW International President
        Jerry Fernandez, Assistant to the USW International President
        William Pienta, USW District 4 Director
        Billy Thompson, USW District 8 Director
        Frank Pittman, USW District Representative
        John Barcellona, USW District Representative
        Jim Briggs, USW District Representative
        Paul Whitehead, USW General Counsel
        Rich Brean, USW Associate General Counsel
        Lynn Agee, USW Special Counsel
        Dan Austin, USW Local 6992
        Marty Freeburg, USW Local 4-5025
        Mark Schilling, USW Local 4-786
        Jim Rowe, USW Local 4-943
        Greg Lowman, USW Local 2002
        Ronnie Sanders, USW Local 1904
        Gary Guralny, DuPont Council President
        Joe Drexler, Manager Strategic Campaigns
        Shawn Gilchrist, Strategic Campaigns

# EXHIBIT 2
# to Briggs Declaration





*The miracles of science*

September 6, 2006

Mr. Kenneth O. Test
DuPont Council Chairman
United Steelworkers
3340 Perimeter Hill Drive
Nashville, TN 37211

Dear Mr. Test:

Your attached letter to Jim Borel, Senior Vice-President, has been forwarded to me for response. Our philosophy remains that union-management issues are local. Therefore, we believe they are best dealt with by knowledgeable union and management people at the local level. If the local union believes that they need additional information to adequately respond to any of the recent announcements, I suggest you recommend to them to request any needed information from their local site management.

Sincerely,



Willie C. Martin
U. S. Region President

WCM:b

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

E.I. DUPONT DE NEMOURS AND     )
COMPANY,     )
    )
        Plaintiff,     )
    )
      v.     )
    )       Civil Action No.
    )       3:07-cv-00103-HEH
UNITED STEEL, PAPER AND     )
FORESTRY, RUBBER,     )
MANUFACTURING, ENERGY,     )
ALLIED-INDUSTRIAL AND SERVICE     )
WORKERS INTERNATIONAL UNION,     )
    )
        Defendant.     )
_____ )

## I. DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### Introduction

This action concerns grievances filed under the collective bargaining agreement ("CBAs") at three plants of plaintiff E. I. DuPont de Nemours and Company ("DuPont" or the "Company") by local unions affiliated with defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union ("USW" or the "International Union"). Those plants are in Delaware, New Jersey and New York – not in Virginia.

The disputes arose when DuPont unilaterally made changes in the benefits provided through its pension and welfare plans. The local unions at the three plants filed grievances alleging that DuPont's actions violated the CBAs at the respective plants. DuPont refused to arbitrate the grievances as required by the CBAs, and letters were sent to DuPont on behalf of the unions informing the Company that, if it persisted in its refusal to arbitrate, the unions would file

suit to compel arbitration. Barely ten days after the deadline for compliance that was set in those letters, DuPont filed this action, naming as defendant the International Union (not the local unions), and seeking, inter alia, a declaration that the grievances are not arbitrable and that the benefit changes do not violate the CBAs. A few hours after DuPont filed this action, the New Jersey local union filed an action in the District of New Jersey to compel DuPont to arbitrate that local's grievance. The next day, the Delaware local filed an action in the District of Delaware to compel arbitration of its grievance; and the day after that, the New York local filed such a suit in the Western District of New York.

We will show in this memorandum that DuPont's suit should be dismissed for several independent reasons.

First, "[i]t is appropriate for a federal district court to decline jurisdiction over a declaratory judgment action where the declaratory judgment action was filed in apparent anticipation of a suit in another forum." Yoder v. Heinold Commodities, Inc., 630 F. Supp. 756, 760 (E.D. Va. 1986). Because "the natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances," BASF Corp. v. Symington, 50 F.3d 555, 558-59 (8th Cir. 1995), courts consistently dismiss declaratory judgment actions where, as here, the party whose conduct gave rise to the underlying dispute – the natural defendant –races to the forum in which it wishes to have the dispute resolved, thereby depriving the natural plaintiff of its right to select the forum. See infra at ___.

Although the ground just stated is sufficient to require dismissal of this action, dismissal also is warranted for the additional reason that the local unions are necessary parties to this litigation, but they have not been and could not be joined. See infra at ___.

2

Furthermore, to the extent that DuPont's action purports to be based on the Employee

Retirement Income Security Act ("ERISA"), the Court lacks subject matter jurisdiction because

ERISA does not provide for such actions by employers. See infra at ___.

Finally, DuPont's claim seeking a declaratory judgment that it did not breach the CBAs

must be dismissed because federal labor law does not permit the courts to decide the merits of

union grievances under a CBA. See infra at ___.

## Background[1]

DuPont's employees at Edgemoor, Delaware; Deepwater, New Jersey; and Niagara Falls,

New York, are covered by CBAs. Complaint ¶¶ 9, 11, 13. The parties to the New Jersey CBA

are DuPont and the local union at the Deepwater Plant, see Exhibit 1, p.1; the parties to the New

York CBA are DuPont and the local union at the Niagara Falls plant, see Exhibit 2, cover page

and p. 1; and the parties to the Delaware CBA are DuPont and both the International Union and

the local union at the Edgemoor plant, see Exhibit 3, pp. 1, 2.

---

[1]     Our statement of the facts is based on DuPont's Complaint, except that, where the
complaint refers to specified documents – CBAs, benefit plans and grievances – we rely on the
actual text of the documents rather than on DuPont's characterizations of them. This reliance on
the documents is proper for several reasons. First, the Court may consider evidence outside the
pleadings in deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction or
a Rule 12(b)(7) motion for failure to join a necessary party, without converting the motion to one
for summary judgment. See Evans v. B. F. Perkins Co., 166 F.3d 642, 617 (4th Cir. 1999) (Rule
12(b)(1)); English v. Cowell, 10 F.3d 434 (7th Cir. 1993) (Rule 12(b)(7)). Second, the
documents we cite are relied upon in DuPont's complaint and are integral thereto; such
documents are properly considered part of the complaint and may be relied upon even in ruling
on a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Phillips v. LCI Intern., Inc.,
190 F.3d 609, 618 (4th Cir. 1999). Finally, "if the allegations of a complaint are contradicted by
documents made a part thereof, the documents control and the court need not accept as true the
allegations of the complaint." Barnum v. Millbrook Care Ltd. Partnership, 850 F.Supp. 1227,
1232-33 (S.D.N.Y. 1994). "[T]his rule also applies to the instruments supplied by the
Defendant" that are referenced in the complaint but were not attached thereto. Id. at 1233.

At all three locations, grievances were filed in August-September 2006 alleging that, in making unilateral modifications to certain of its benefit plans, DuPont had violated the applicable CBA. See Complaint ¶¶ 45, 48, 51. The New Jersey and Delaware grievances identified the grievant as the local union. See Exhs. 4 and 5. The New York grievance did not identify the grievant, see Exh. 6, but subsequent correspondence establishes that this grievance likewise was filed by the affected local union.

Each grievance alleged that on August 28, 2006, DuPont had announced unilateral changes in various benefit plans that were in violation of CBA provisions prohibiting such modifications. See Exhs. 4-6. The allegations in the New Jersey and Delaware grievances were essentially identical, see Exhs. 4 and 5; but the New York grievance referred to certain plans and CBA provisions that differ from what was referenced in the other grievances. Compare Exh. 6 with Exhs. 4-5. All of the grievances alleged violations only of the CBA, not of the DuPont benefit plans themselves. See Exhs. 4-6.

In separate letters sent to the Presidents of the three local unions, DuPont refused to arbitrate the grievances. See Complaint ¶¶ 46, 49, 52; Exhs. 7-9. In response, on February 8, 2007, the USW informed DuPont that, if the Company persisted in refusing to arbitrate, legal action would be initiated to compel arbitration of the New Jersey and Delaware grievances. See Complaint ¶¶ 47, 50. That message was conveyed by Richard Brean, the International Union's Senior Associate General Counsel, to whom DuPont's letters to the local union presidents had been referred for reply. See Exhs. 10-11. Mr. Brean's February 8 letters stated that suits to compel arbitration would be filed unless DuPont provided written notice within ten days that it would resume processing the grievances under the CBAs. Id.

On February 28, 2007, only ten days after that ten-day period had expired, DuPont filed this action. Later that same day, an action to compel arbitration was filed by the New Jersey local union in the District of New Jersey; the next day, an action to compel arbitration was filed by the Delaware local in the District of Delaware; and the day after that, the New York local filed such a suit in the Western District of New York.[2]

In DuPont's action filed in this Court, the Company argues that the grievances filed by the Delaware, New Jersey and New York local unions are not arbitrable because, in DuPont's view, the grievances concern "eligibility for certain benefits contained in DuPont's ERISA plans," and DuPont maintains that such matters "are to be resolved exclusively through the procedures set forth in those plans, and/or in a civil enforcement action under Section 502 of ERISA." Complaint ¶ 66. See also id. ¶¶ 3, 15-44, 46, 49, 52, 55-57. On that basis, DuPont seeks declaratory and injunctive relief to prohibit arbitration of the grievances and to require that the issues raised by the grievances "are to be resolved exclusively through the procedures set forth in th[e] plans, and/or in a civil enforcement action under Section 502 of ERISA." Id. ¶¶ 66, 72. Yet, having alleged that the issues raised by the unions' grievances can only be resolved through "the procedures set forth in th[e] plans" or through an ERISA enforcement action brought by plan participants, DuPont proceeds to ask this Court to resolve the issue presented by the unions' grievances – namely, whether DuPont's unilateral modifications of the benefits in question violate the CBAs. See id. ¶¶ 68-69.

As we now show, DuPont's effort to block arbitration of the Delaware, New Jersey and New York grievances and to have this Court decide the merits of the grievances is not properly before this Court, and DuPont's complaint should be dismissed.

---

[2]    This Court may take judicial notice of the filing of these three suits, which have been docketed as D.N.J. No. 1:07-cv-00965, D. Del. No. 07-126, and W.D.N.Y. No. 07-cv-0122.

### Argument

I.   THIS DECLARATORY JUDGMENT ACTION IS AN IMPROPER ATTEMPT TO
     DENY THE UNIONS THEIR RIGHT TO CHOOSE THE FORUM IN WHICH TO
     LITIGATE THEIR CLAIMS AGAINST DUPONT, AND AS SUCH THE
     COMPLAINT SHOULD BE DISMISSED

By this suit, DuPont has engaged in a tactical maneuver that is regularly condemned by

the courts: having been made aware that a suit alleging violations of law was about to be filed

against it, the prospective defendant rushed to file a "preemptive" or "anticipatory" declaratory

judgment action in the hope of depriving the natural plaintiff of the ability to frame the issues

and to choose the forum for its claims.

Such preemptive actions are contrary to the interests of justice because they seek to

override "the natural plaintiff's choice of forum and law [which] will be disturbed only in

exceptional circumstances." BASF Corp. v. Symington, 50 F.3d 555, 558-59 (8th Cir. 1995).

Consequently, as this Court has held, it is "appropriate for a federal district court to decline

jurisdiction over a declaratory judgment action where the declaratory judgment action was filed

in apparent anticipation of a suit in another forum." Yoder v. Heinold Commodities, Inc., 630 F.

Supp. 756, 760 (E.D. Va. 1986).

To decline jurisdiction in these circumstances is not only "appropriate," id.; it is the

presumptively proper course. As the Seventh Circuit has put it, "a suit for declaratory judgment

aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be

dismissed." Allendale Mut. Ins. Co. v. Bull Data Systems, 10 F.3d 425, 431 (7th Cir. 1993). See

also UAW v. Dana Corporation, 1999 U.S. Dist. LEXIS 22525* at 18-19 (N.D. Ohio 1999)

(there is "a presumption that a first filed declaratory judgment action should be dismissed or

stayed in favor of the substantive suit"); Casualty Indem. Exchange v. High Croft Enters., 714 F.

Supp. 1150, 1193 (S.D. Fla. 1989) ("The declaratory remedy is not a tactical device whereby a

party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat

the other party to the courthouse."). <u>Accord</u>, <u>e.g.</u>, <u>NGS American, Inc. v. Jefferson</u>, 218 F.3d

519 (6th Cir. 2000); <u>Anheuser-Busch, Inc. v. Supreme International Corp.</u>, 167 F.3d 417 (8th

Cir. 1999); <u>EEOC v. Univ. of Pennsylvania</u>, 850 F.2d 969 (3d Cir. 1988), <u>aff'd on other grounds</u>,

493 U.S. 182 (1990);  <u>Ven-Fuel, Inc. v. Dep't of the Treasury</u>, 673 F.2d 1194 (11th Cir. 1982);

<u>Factors Etc., Inc. v. Pro Arts, Inc.</u>, 579 F.2d 215 (2d Cir. 1978), <u>cert. denied</u>, 440 U.S. 908

(1979), <u>overruled on other grounds</u>, <u>Pirone v. MacMillan, Inc.</u>, 894 F.2d 579 (2d Cir. 1990);

<u>Remington Arms Co. v. Alliant Techsystems, Inc.</u>, 2004 WL 444574 (M.D.N.C. 2004);

<u>Touchstone Research Laboratory, Ltd. v. Anchor Equip. Sales, Inc.</u>, 294 F.Supp.2d 823

(N.D.W.V. 2003); <u>Nutrition & Fitness, Inc. v. Blue Stuff, Inc.</u>, 264 F.Supp.2d 357 (W.D.N.C.

2003).

These holdings are based on the principle, long recognized by the Fourth Circuit, that the

declaratory judgment action should not be used for the purpose of "anticipating the trial of an

issue in a court of co-ordinate jurisdiction." <u>Aetna Casualty & Surety Co. v. Quarles</u>, 92 F.2d

321, 324 (4th Cir. 1937).  <u>See also</u> <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255 (4th Cir.

1996) (where a declaratory judgment suit is being used for "'procedural fencing'—that is, 'to

provide another forum in a race for res judicata,'" courts should be hesitant to entertain the

action)[3]. Because "the federal declaratory judgment is not a prize to the winner of the race to the

courthouse," <u>Tempco Elec. Heater Corp. v. Omega Engineering</u>, 819 F.2d 746, 750 (7th Cir.

---

[3]      Even where the filing of a declaratory judgment action was not undertaken for the
purpose of depriving the natural plaintiff of the right to select the forum, a federal court is not
required to entertain such an action if the court concludes that it is more appropriate that the
issues be resolved in an action pending elsewhere. <u>See</u>, <u>e.g.</u>, <u>New Wellington Financial Corp. v.
Flagship Resort Development Corp.</u>, 416 F.3d 290, 296-98 and n.13 (4th Cir. 2005) (although the
filing of a declaratory judgment action was not "mere procedural fencing," district court did not
abuse its discretion in declining to entertain the action, where the issues could better be resolved
in a later-filed state court action).

1987), anticipatory declaratory judgments are a necessary exception to the "first-filed" rule, which would otherwise suggest that the first suit to be filed should have preference over related suits filed later. See Remington Arms Co. v. Alliant Techsystems, Inc., 2004 WL 444574, at *2 (M.D.N.C. 2004).

Applying these principles, courts have dismissed anticipatory declaratory judgment suits in circumstances strikingly similar to those present here. For example, in Anheuser-Busch, supra, Supreme International Corporation, which held the trademark to certain penguin designs, wrote to Anheuser-Busch demanding that it cease using a penguin in an advertising campaign. The letter stated that Supreme had authorized its attorneys to take legal action unless Anheuser responded within five days. Eight days later, Anheuser filed a declaratory judgment action in the Eastern District of Missouri, seeking a declaration that its use of the penguin did not violate Supreme's trademark. Supreme filed an affirmative trademark infringement suit in the Southern District of Florida five days after that. The Eighth Circuit upheld the dismissal of Anheuser's declaratory judgment action, finding that Anheuser, as the natural defendant, should not be permitted to "race[ ] to the courthouse to usurp Supreme's forum choice." 167 F.3d at 49. See also Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194 (11th Cir. 1982) (affirming dismissal of declaratory judgment suit filed the day after receipt of a letter threatening litigation and one week before the natural plaintiff filed the promised affirmative suit).

Similarly, in <u>Yoder v. Heinold Commodities, Inc.</u>, this Court refused to defer to a first-filed declaratory judgment action in another district that was instituted ten days after the natural defendant received a demand letter from the natural plaintiff. The court relied on the principle that "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouse." 630 F.Supp. at 761 (<u>citing</u> <u>Factors</u>, 579 F.2d at 219).

Perhaps the closest analogues to this case are <u>UAW v. Dana Corporation</u>, <u>supra</u>, and <u>Crown Cork & Seal Co. v. United Steelworkers of America</u>, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. 2004), both of which involved attempts by an employer to use a declaratory judgment action to pretermit anticipated suits by aggrieved employees or their union. In <u>Dana Corporation</u>, as here, an employer bought an action seeking a declaration that a union was not entitled to enforce rights it was claiming under the arbitration provisions of a collective bargaining agreement. Reasoning that the union was the "true plaintiff" in the controversy, <u>id</u>. at **12-13, the court declined to permit the employer "to preempt the choice of forum that otherwise would be for the union to make," <u>id</u>. at *15. The court required the employer to show cause why "further maintenance of [its] suit . . . should not be enjoined," <u>id</u>. at *17, and in a subsequent decision, the court enjoined the employer's suit, "remain[ing] firmly of the view that the union is the true plaintiff, and, as such, is entitled to choose its forum, and not to have that choice made for it by its adversary." 2000 U.S. Dist. LEXIS 12041 at *5.

<u>Crown Cork & Seal</u>, like this case, involved an employer's effort to obtain judicial approval of its decision to reduce employee benefits. The court held that "the proper plaintiffs in an action to determine whether the retirees' retirement benefits can be unilaterally changed . . . are the retirees and their Union. Further, as the proper plaintiffs, the retirees and their Union should be permitted to select the forum of their choice so long as the selected forum has some

nexus to the lawsuit." 2004 U.S. Dist. LEXIS 760 at *9. The court therefore dismissed the employer's declaratory judgment action. Id. at **9-11.

The same result is called for in this case. It is plain that the unions are the natural plaintiffs in this dispute, and that DuPont raced to this Court in order to deprive the unions of their right to select the forum(s) for litigation of their claims. That is not to be permitted, whatever DuPont's reasons may be for preferring this forum. See NGS American, supra, 218 F.3d at 523 (dismissing anticipatory declaratory judgment action "[w]ithout pretending to divine the motives of [the declaratory judgment plaintiff] in bringing this action where it did")[4]. None of the collective bargaining agreements at issue in this case was entered into in Virginia, and none of the Local Unions whose grievances are at issue is located in or does any business here. None of the Dupont plants whose employees the local unions represent, none of the employees themselves, and none of the documentary evidence, is located in Virginia. Indeed, DuPont, presumably recognizing that this Court would not have jurisdiction over the local unions, has filed this case only against the International Union, which did not file any of the grievances and is not even a party to two of the CBAs in question.

In these circumstances the unions, as the natural plaintiffs, have legitimate reasons for choosing to pursue their claims in the jurisdictions where the local unions and the affected plants are located, rather than in Virginia. And in any event, as we have shown, under the caselaw the right to choose the forum is the unions, not DuPont's. The Company's preemptive action should therefore be dismissed.

---

[4]    DuPont has sought to portray this suit as connected to the declaratory judgment suit it has filed against an independent union representing DuPont employees in Virginia. E.I. DuPont de Nemours & Co. v. Ampthill Rayon Workers, 3:07cv52. However, that union is entirely independent of USW and of the Delaware, New Jersey and New York local unions, and DuPont has no right to force these unions to litigate in Virginia merely because DuPont has sued some other union here.

II.     THE COMPLAINT MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(7) FOR
        FAILURE TO JOIN THE LOCAL UNIONS, WHO ARE NECESSARY PARTIES

Under Fed. R. Civ. P. 19, the local unions in Delaware, New York, and New Jersey are

necessary parties to this action. Because DuPont has brought suit many hundreds of miles away

from where those local unions are located, they cannot be added as parties. The case therefore

must be dismissed under Fed. R. Civ. P. 12(b)(7).

Rule 12(b)(7) allows for the dismissal of a case for "failure to join a party under Rule

19." The latter rule "creates a two-part inquiry":

> first, whether a party is necessary to a proceeding because of its relationship to the matter
> under consideration; and second, if a necessary party is unavailable, whether the
> proceeding can continue in that party's absence. If it cannot, the party is indispensable
> and the action should be dismissed.

Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917-18 (4th Cir. 1999).

Keal Driveway establishes that a local union is a necessary party to a case which will

require a court to make a decision about a grievance filed by the local union, and that the court

must dismiss the action if the local union cannot be added as a party. In Keal Driveaway, one

local union, Local 964, brought a grievance challenging the seniority treatment of its members

who were transferring to a different local, Local 171, after the employer, Keal, closed the

terminal at which Local 964's members worked. Both locals and Keal participated in an

arbitration procedure, and the arbitral panel agreed with Local 964's interpretation of the

multiemployer CBA governing both locals. Local 171 then brought suit against Keal, seeking to

vacate the arbitration award, but did not name Local 964 as a party. The Fourth Circuit held that

Local 964 was a necessary party, for two reasons. First, because the purpose of Local 171's suit

was to vacate an arbitral award based on an interpretation of the CBA "as a result of a grievance

that Local 964 filed," permitting the suit to proceed without Local 964 would "impair or impede"

11

its ability to protect its interests under its contract with the employer. Id. at 918 (citing Delta Fin. Corp. v. Comanduras & Assocs., 973 F.2d 301, 305 (4th Cir. 1992) (parties to a contract are necessary parties to a suit on that contract)). Second, permitting the suit to continue without Local 964 could subject Keal to conflicting legal obligations, because Local 964 could file suit in another forum and obtain a judgment which might conflict with the result in Local 171's case. Keal Driveaway at 918.

For the same reasons, the local unions are necessary parties to this suit. First, as was the case in Keal Driveaway, this suit concerns the arbitrability of the local unions' grievances under the local unions' CBAs, and to allow the suit to proceed in the absence of the local unions as parties would "impair or impede" their ability to protect their interests in this case. Second, permitting this suit to continue could lead to inconsistent legal obligations. DuPont does not and cannot seek an injunction against the local unions in this case; and as non-parties, they would not be bound by any judgment issued. See Richards v. Jefferson County, Ala., 517 U.S. 793, 798 (1996) (nonparties could not be bound by judgment even though their interests were "essentially identical" with those of parties to case). Thus, even if DuPont were successful in obtaining a declaration from this Court that the grievances at issue are not arbitrable, the local unions would be free to seek rulings from other courts – namely, the district courts in which they have filed affirmative suits – compelling Dupont to arbitrate the same grievances. See Owens-Illinois v. Meade, 186 F.3d 435, 441 (4th Cir. 1999) (where one court might compel arbitration while another might find that alternative judicial remedies were available, there was a "high potential for inconsistent judgments" and the absent party was a necessary one under Rule 19(a)). The "very real possibility of inconsistent adjudications weighs heavily in favor of finding that [the

absent party] is a necessary party." <u>Nat'l Union Fire Life Ins. Co. v. Rite Aid of South Carolina</u>, 210 F.3d 246, 252 (4th Cir. 2000).

The second part of the Rule 19 inquiry focuses on whether the necessary party is unavailable, and if so, whether the proceeding can continue without it. Here, the local unions are located in Delaware, New Jersey, and New York, all more than 100 miles away from this court, and they do not do business in Virginia. This Court lacks personal jurisdiction over the local unions, and in addition, venue in this district would be improper as to them. Clearly, this case cannot properly proceed without the Local Unions' presence. As in <u>Keal Driveaway</u>, there is no way this court could issue a declaratory judgment or injunction without addressing the arbitrability of the local unions' grievances or the meaning of their CBAs, thus implicating the very interests which make the local unions necessary parties and deciding the very issues as to which there is a risk of inconsistent adjudication.

Thus, the local unions are indispensable parties under Rule 19(b), and without their presence this suit must be dismissed.

III.    DUPONT'S COMPLAINT MUST BE DISMISSED TO THE EXTENT THAT IT IS BASED ON ERISA BECAUSE ERISA DOES NOT GRANT THE COMPANY STANDING TO BRING SUIT

To the extent that Dupont's action purports to be based on on ERISA, the suit must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, because the statute does not confer standing on employers to bring actions of this kind.

As the Supreme Court has recognized, ERISA does not confer jurisdiction on the federal courts to hear "every question relating to plans covered by ERISA," <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 25 (1983), but instead carefully limits this power "to suits brought by certain parties." <u>Id.</u> at 21. <u>See also</u> <u>Great-West Life & Annuity Ins.</u>

Co. v. Knudson, 534 U.S. 204, 209 (2002) ("ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.") (internal citations omitted) (emphasis in original). Nor does the fact that Dupont's suit is for declaratory judgment confer standing upon it; the limitations ERISA imposes on the types of actions that can be brought, and on who may bring them, are equally applicable in the declaratory judgment context. Franchise Tax Board, 463 U.S. at 21.

No provision of ERISA provides jurisdiction for a suit such as DuPont has filed. Section 502 of ERISA, 29 U.S.C. § 1132(a), entitled "Persons empowered to bring a civil suit," does not provide for suits by an underline employer except in one narrow circumstance, namely to enforce the obligation of a multiemployer pension plan to send annual funding notices to various parties. See § 502(a)(8), 29 U.S.C. § 1132(a)(8). To be sure, § 502(a)(3) allows plan "fiduciaries" to sue to "(A) enjoin an act or practice which violates any provision of this subchapter or the terms of the plan, or (B) obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." But DuPont does not pretend to be suing as a fiduciary, and even if the Company attempted to engage in such a pretense, § 502(a)(3) would not provide a basis for this action.

In the first place, in bringing this action to establish its right to cut benefits, DuPont is acting on its own behalf as plan sponsor, not as a fiduciary, because the decision to amend or terminate an ERISA plan is a "settlor" function, not a fiduciary function. Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) ("[P]lan sponsors who alter the terms of a[n ERISA] plan do not fall into the category of fiduciaries"); Sonoco Products., 338 F.3d at 373 ("[An employer]

does not . . . act as a fiduciary simply by performing settlor-type functions such as establishing a plan and designing its benefits.") (citing Coyne & Delany, 98 F.3d at 1465).

Furthermore, in seeking a declaration that it had the right to cut benefits, Dupont is not seeking to "enforce," or to prevent the "violat[ion]" of, the terms of ERISA or of an ERISA plan, as is required to permit suit under ERISA § 502(a)(3).  In Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520 (11th Cir. 1987), where an employer attempted to invoke § 502(a)(3) to obtain a declaratory judgment that its reductions in retiree health benefits did not violate ERISA, the Eleventh Circuit held that such an action was not one for "enforcement" of plan terms or of ERISA, because "enforcement" of plan terms "means an action to compel someone to do something or not to do something . . . that the plan requires be done or not done," id. at 1523, whereas a "defensive" action by a company that wishes to avoid making certain payments to plan participants is not an action to "enforce" the plan that may be brought under § 502(a)(3).  Id. See also Massey Ferguson v. Gurley, 51 F.3d 102, 104 (7th Cir. 1995) (plan fiduciary's action in seeking a declaratory judgment of its non-liability to a plan participant was not a suit under § 502(a)(3) to "enforce" the terms of the plan); Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249 (9th Cir. 1987) (declaratory judgment action by an insurer seeking a clarification as to whether its policy required payment of certain benefits was not a suit to "enforce" the terms of the plan).

Nor does DuPont's request for relief barring arbitration of the unions' grievances constitute a cognizable fiduciary claim under § 502(a)(3).  Arbitration – or a refusal to arbitrate – constitutes action by DuPont in its capacity as an employer and a party to a collective bargaining agreement, not in its capacity as fiduciary of an ERISA plan.  And DuPont's statement that it needs a declaration of its "right" not to arbitrate the unions' grievances because of the risk that it

will otherwise "expend substantial time and expense arbitrating benefit eligibility determinations," Complaint ¶ 66, reveals that this relief would benefit only DuPont, not the participants and beneficiaries of its ERISA plans.  ERISA does not give a plan sponsor standing to bring claims "relat[ed] solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries." Sonoco Prod. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 373 (4th Cir. 2003).  Thus, in NGS American, supra, the Sixth Circuit rejected an attempt by an ERISA fiduciary to use § 502(a)(3) to obtain a declaratory judgment that a participant could not sue it in state court.  The court held that a fiduciary's suit "questioning the permissibility of a private cause of action" was not an action to "enforce" ERISA terms." 218 F.3d at 529. See also Denny's, Inc. v. Cake, 364 F.3d 521, 527 (4th Cir. 2004) (agreeing with the NGS court's analysis).  So too here, DuPont's effort to block the grievances that have been filed against it is not the action of a fiduciary seeking to enforce ERISA or the terms of an ERISA plan, and the action is not permitted by § 502(a)(3).

IV.    COUNT II OF THE COMPLAINT MUST BE DISMISSED BECAUSE FEDERAL LABOR LAW DOES NOT PERMIT THE COURT TO DECIDE THE MERITS OF THE UNIONS' GRIEVANCES

In Count II of its complaint, DuPont asks this Court to decide the merits of the grievances the three local unions have filed, by declaring that DuPont's benefit cuts did not violate the CBAs.  Complaint ¶¶ 68-69.  Little discussion is needed to show that even on DuPont's theory of the case, this Court may not entertain that request.

Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, if a dispute under a CBA is subject to arbitration, a court may not rule on the merits of the dispute. See, e.g.,

<u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 649-50

(1986); <u>Steelworkers v. American Mfg. Co.</u>, 363 U.S, 504 (1960).

      In its complaint, DuPont alleges that this dispute is not subject to arbitration because it

must be "resolved exclusively through the procedures set forth in th[e] plans, and/or in a civil

enforcement action under Section 502 of ERISA."  Complaint ¶¶ 66.  <u>See</u> <u>supra</u> at ___.  Given

DuPont's allegations, the case admits of only two possibilities.  Either DuPont is correct in the

contention just stated,[5] in which case the issues presented by the grievances must be resolved

through the procedures allegedly provided in the plans or through an ERISA enforcement action;

or DuPont is incorrect, in which case the grievances must be resolved through arbitration.  In

neither case would the Court have the authority to decide the merits of the grievances.  Count II

therefore must be dismissed for lack of jurisdiction and failure to state a claim.

---

[5] We strongly disagree with DuPont's contention in this regard, but that question is not before
the Court at this time.

## Conclusion

For the foregoing reasons, the complaint should be dismissed in its entirety.

Respectfully submitted,

_____/s/_____

James J. Vergara

Vergara & Associates

100 Main Street

Hopewell, VA 23806

Telephone:     (804) 458-6394

Facsimile:     (804) 541-3855

Jjv@vergaralaw.com


Jeremiah A. Collins

Jennifer L. Hunter

Bredhoff & Kaiser, P.L.L.C.

805 Fifteenth St., NW

Washington, D.C. 20005

Telephone:     (202) 842-2600

Facsimile:     (202) 842-1888

*Counsel for Defendant*
*United Steel, Paper and Forestry, Rubber, Manufacturing, Energy,*
*Allied-Industrial and Service Workers International Union*

DATED: March ___, 2007

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| E.I. DUPONT DE NEMOURS AND COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| | ) Civil Action No. |
| | ) 3:07-cv-0103-HEH |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED-INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, | ) ) ) ) ) |
| | ) |
| Defendant. | ) ) |

**DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS**

This litigation concerns grievances filed by Local Unions in the States of New York,

Delaware and New Jersey under separate collective bargaining agreements ("CBAs") each of

which applies only to a facility in one of those states.  Contrary to what one might think from

reading Plaintiff's Opposition to Defendant's Motion to Dismiss ("DuPont Opp."), this suit is <u>not</u>

about whether plaintiff E.I. du Pont de Nemours and Company ("DuPont") has violated the terms

of any DuPont benefit plan, nor is it about whether DuPont has violated ERISA.  The only

dispute is whether DuPont has breached one or more of the Local Unions' CBAs by unilaterally

modifying benefits and refusing to arbitrate the grievances.

In attempting to come up with a justification for bringing those out-of-state collective

bargaining disputes to this Court – and for doing so in the absence of the three Local Unions

whose grievances are at issue – DuPont manufactures an artificial controversy.  Conspicuously

ignoring what the grievances actually allege, see infra at 6 and n.5, DuPont prefers to argue from

what it "considers" the grievances to involve, Complaint ¶¶ 46, 49, 52, and DuPont pretends that

the three grievances really are about whether DuPont is abiding by the terms of the company's

benefit plans and whether there has been a violation of ERISA.

DuPont's attempts to manufacture an issue it would like to address, rather than the

disputes that actually exist, should be rejected.  This artificial suit should be dismissed because it

constitutes an improper use of the declaratory judgment procedure, see infra at 2-7, and because

the Local Unions, who cannot be joined, are necessary parties, see infra at 8-14.  In addition, the

Court lacks jurisdiction over DuPont's purported ERISA claims, see infra at 14-16, and over

DuPont's request for a declaration that it did not violate the CBAs, see infra at 16-17.

I.    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE DUPONT IS
      IMPROPERLY SEEKING TO USE THE DECLARATORY JUDGMENT
      PROCEDURE TO DENY THE LOCAL UNIONS THEIR RIGHT TO
      CHOOSE THE FORUM IN WHICH TO LITIGATE THEIR CLAIMS
      AGAINST DUPONT**

The only party that is alleged to have violated any law or to have breached any agreement

in connection with this matter is DuPont; each Local Union claims that DuPont breached its

CBA with that local by making unilateral benefit changes and refusing to arbitrate the issues

under the CBAs.  That is the only unlawful conduct that any entity involved in this matter has

alleged; DuPont's complaint, although it is full of talk of DuPont's "rights," nowhere alleges that

the Local Unions or the defendant international union ("USW") have engaged in any unlawful

conduct.

Faced with that reality, DuPont is at pains to argue that an alleged wrongdoer may file a

declaratory judgment action to seek an adjudication of its non-liability, or of its right not to have

its liability determined through arbitration. See DuPont Opp. at 6-11. Where such a declaratory judgment action does not operate to block the natural plaintiff's choice of forum, it is indeed the case that the natural defendant (that is to say, the alleged wrongdoer) ordinarily may seek such declaratory relief.[1] That was the situation in virtually every case DuPont cites, as well as in the litigation DuPont has brought against a Virginia independent union, the Ampthill Rayon Workers ("ARWI").

But the matter is very different "where the declaratory judgment action was filed [by the natural defendant] in apparent anticipation of a suit in another forum." Yoder v. Heinold Commodities, Inc., 630 F. Supp. 756, 760 (E.D. Va. 1986) (emphasis added). Such a suit raises special concerns because it undercuts "the natural plaintiff's choice of forum and law [which] will be disturbed only in exceptional circumstances." BASF Corp. v. Symington, 50 F.3d 555, 558-59 (8th Cir. 1995). Although DuPont suggests that there is no principle that such preemptive declaratory judgment suits are disfavored, see DuPont Opp. at 11-12 and n.7 (attempting to distinguish each case cited by the USW on its facts), there is in fact "a presumption," UAW v. Dana Corp., No. 99-7603, 1999 U.S. Dist. LEXIS 22525, at *18 (N.D. Ohio Dec. 6, 1999), that "a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." Id. See cases cited in Defendant's Brief in Support of Motion to Dismiss ("Def. Br.") at 6-10. See also 12 Moore's Federal Practice § 57.42[3] (3d ed. 2006) (where a declaratory judgment action "was brought in anticipation of the coercive suit for the

---

[1]    We hasten to add, however, that where – as is the case here – such an action would be contrary to the procedural scheme of a particular federal statue, see infra at 14-16, or would present matters that are reserved for another forum, see infra at 16-17, a suit for declaratory judgment will not lie.

- 3 -

purpose of gaining the home court advantage, the coercive suit is usually given precedence");[2]

Lateena Girls, L.L.C. v. Latina Media Ventures, L.L.C., No. SA-06-CA-217-RF, 2006 WL

2547884, at *4 (W.D. Tex. Aug. 9, 2006) ("[t]he Court generally will not allow a party to secure

its preferred forum by filing an action for a declaratory judgment when it has notice that another

party intends to file suit involving the same issues in a different forum"); First Nationwide

Mortgage Corp. v. FISI Madison, L.L.C., 219 F. Supp. 2d 669, 673 (D. Md. 2002) ("[declaratory

judgment] actions are disfavored . . .when they are filed in anticipation of another lawsuit, in

order to obtain a more favorable forum or procedural posture").

Attempting to fit within that rule even while failing to acknowledge that the rule exists,

DuPont asserts that it is the "natural plaintiff" because it wishes to "clarify [its] rights and

responsibilities." DuPont Opp. at 11. That, however, does not make DuPont the "natural

plaintiff." The natural plaintiff is the party that claims that the other party has injured it in

violation of law. See, e.g., BASF Corp., 50 F.3d at 557 ("Symington claims injury by BASF,

and is therefore the natural plaintiff"); Crown Cork & Seal Co., Inc. v. United Steelworkers of

Am., No. 03-1381, 2004 U.S. Dist. LEXIS 760, at *9 (W.D. Pa. Jan. 9, 2004) (employer's

declaratory judgment action dismissed because "the proper plaintiffs in an action to determine

whether the retirees' retirement benefits can be unilaterally changed . . . are the retirees and their

Union"); Dana Corp., 1999 U.S. Dist. LEXIS at *19 (grievant, not employer, was the "true

plaintiff"). Whatever interests DuPont may have in selecting the forum in which its refusal to

---

[2]      The treatise notes that this is particularly true "[w]hen the case has limited connection to
the declaratory relief forum." Id.

arbitrate its alleged contract violations will be adjudicated, those interests are not the interests of

a natural <u>plaintiff</u>, but of a natural <u>defendant</u>.[3]

DuPont argues that its attempt to force all litigation over its benefit cuts into this Court

should not be characterized as forum shopping, because ARWI is located in this district and

DuPont, having sued ARWI here, wishes "to ensure that the entirety of the dispute relating to the

August 2006 announcement is resolved in one forum, to conserve resources and avoid the risk of

possible inconsistent outcomes." DuPont Opp. at 13. But, whether DuPont is seeking a "more

favorable forum," <u>First Nationwide Mortgage Corp.</u>, 219 F. Supp. 2d at 673, or simply a more

favorable "procedural posture," <u>id.</u>, DuPont's acknowledgement that it brought this action to

"conserve [its] resources" and to secure other benefits, DuPont Opp. at 13, is an admission that

DuPont filed this action in the hope that it could thereby avoid litigating these contract disputes

in the jurisdictions where the Local Unions would choose to sue. That decision, like any forum-

shopping decision, may benefit DuPont, but it surely does not benefit the New York, New Jersey

---

[3]    Furthermore, the "dispute" as to which DuPont attempts to portray itself as the "natural
plaintiff" is not "the true dispute between the parties." <u>Nutrition & Fitness, Inc. v. Blue Stuff,
Inc.</u>, 264 F. Supp. 2d 357, 361 (W.D.N.C. 2003). The "true dispute" – indeed, the only matter as
to which DuPont and the unions actually disagree – is whether DuPont has breached any or all of
the Local Unions' CBAs by unilaterally changing benefits and refusing to arbitrate. DuPont,
which has avoided even acknowledging what the grievances actually allege (<u>compare</u> Complaint
¶¶ 45-52 <u>with</u> Exhs. 4-6 to the Declaration of Richard J. Brean ("Brean Decl."), "did not bring
the true dispute between the parties . . . into court." <u>Nutrition & Fitness</u>, 264 F. Supp. 2d at 361.
This is a further reason why the Court should not entertain DuPont's declaratory judgment
action. <u>Id.</u>

In effect, DuPont is seeking to "determin[e] the validity of a defense which [it has
asserted] in the action[s] against it" that have been filed in New York, New Jersey and Delaware,
<u>Aetna Cas. & Sur. Co. v. Quarles</u>, 92 F.2d 321, 325 (4th Cir. 1937); and DuPont's defense
"could be equally well determined" – indeed, it could be <u>better</u> determined – "in th[ose]
action[s]," <u>id.</u>  Of course, the validity of DuPont's defense to the Local Unions' demands for
arbitration is not before the Court for decision at this time.  But we note in passing that DuPont's
position – namely, that the parties to the CBAs intended to give DuPont, acting as administrator
of its benefit plans, the final authority to decide whether it has committed a violation of a CBA,
<u>see</u> DuPont Opp. at 9-10 – is extraordinarily implausible on its face.

and Delaware Local Unions whose grievances DuPont seeks to pretermit in this Virginia litigation.

Furthermore, although DuPont purports to be vindicating an interest in "uniform[ity]," DuPont Opp. at 8, DuPont overlooks the fact that the respective CBAs and grievances simply are not uniform. Indeed, both in its complaint and in its brief, DuPont points to facts unique to individual locals – specifically, DuPont emphasizes that one Local Union's CBA mentions certain benefit programs while another Local Union's CBA mentions different programs – and DuPont asserts that those differences affect the arbitrability of the respective grievances. See Complaint ¶¶ 61, 62; DuPont Opp. at 22. Nor is this the only respect in which the CBAs and the grievances do not lend themselves to the "uniformity" DuPont seeks to impose on the Local Unions' claims. For example, only the New York local, not the New Jersey and Delaware locals, has asserted in its grievance that DuPont has violated a notice provision in that local's CBA. Compare Exh. 6 with Exhs. 4 and 5.[4] And, although each of the three grievances relies on CBA provisions that limit the circumstances in which benefits may be "withdrawn from the employees" by DuPont,[5] the language on that subject in the various CBAs is not identical. Compare Exh. 1, p.12 (stating that a plan or practice cannot be withdrawn if it "is in effect at any other PLANT within the COMPANY") with Exh. 2, p. 46 and Exh. 3 p.11 (stating that a plan or practice cannot be withdrawn if it "is in effect within the COMPANY").

DuPont thus recognizes "uniformity" as an interest to be pursued only where it suits DuPont's own purposes. Had DuPont in fact been confronted with a situation in which it would

---

[4]    Unless otherwise specified, all references to "Exh. __" are to the exhibits to the Brean Declaration filed with the motion to dismiss.

[5]    DuPont's complaint, in attempting to portray the grievances as challenging ERISA eligibility determinations, conspicuously fails to acknowledge that the grievances invoke these CBA provisions, which are nowhere quoted in DuPont's papers. Compare Complaint ¶¶ 45-52 with Exhs. 4-6.

be necessary and proper that all litigation concerning the benefits reductions should be conducted in this district, DuPont would not have needed to file a preemptive strike against the USW in order to attempt to force that result; DuPont could simply have moved to transfer all litigation concerning the benefit reductions to this Court.  Apparently recognizing that it would lack a basis for seeking such a transfer, DuPont has taken matters into its own hands by forcing all litigation into this Court through the filing of a complaint that seeks to determine the arbitrability (and indeed the merits, see infra at 16-17) of the New York, New Jersey and Delaware grievances even though the Local Unions that filed those grievances do not conduct any business in this district and have filed litigation to enforce their rights in the districts where they do conduct business.[6]

For these reasons, DuPont's suit should be dismissed as an improper attempt to deprive the New York, New Jersey and Delaware Local Unions of the right to choose the forums in which to litigate their claims against DuPont.

---

[6]    DuPont's reliance on Rexam v. United Steelworkers of America, No. Civ. 03-2998, 2003 WL 22477858 (D. Minn. Oct. 30, 2003), see DuPont Opp. at 8, is misplaced.  In that case, the court found that the affected USW retirees whose benefits were at issue had as much of a connection to the forum in which the company had filed its declaratory judgment action (where one of the USW-represented facilities was located) as to any other forum.  See 2003 WL 22477858 at *3.  Nor was there any contention in Rexam that the company's choice of forum had operated to exclude from the litigation local unions whose rights were at issue and whose CBAs and grievances varied from each other.  Finally, and perhaps most important, in Rexam the company did not file a declaratory judgment action until six months had elapsed from its last communication with the USW, and the court concluded in those circumstances that the company had not been aware that the union was about to file suit.  See id. at *5.  Here, in contrast, the unions gave DuPont unequivocal notice of their intention to file suit, and DuPont then promptly raced into court.  See Def. Br. at 4-5.  DuPont does not deny that it filed this defensive suit in anticipation that the unions were about to file coercive actions to compel arbitration of their grievances.  See DuPont Opp. at 10.

II.    **THE LOCAL UNIONS ARE INDISPENSABLE PARTIES BECAUSE THE CBAS AND GRIEVANCES AT ISSUE ARE THEIRS, BECAUSE THEY HAVE DIFFERING INTERESTS WHICH CANNOT BE REPRESENTED SIMULTANEOUSLY BY THE USW, AND BECAUSE OF THE RISK OF INCONSISTENT OBLIGATIONS THAT WOULD RESULT FROM ALLOWING THIS SUIT TO CONTINUE**

DuPont's effort to defeat the forum choices of the three Local Unions cannot be countenanced for another independent reason: the forum DuPont has selected is one in which the Local Unions are not even present. DuPont cannot join the Local Unions as parties, but they are <u>necessary</u> parties and the suit therefore must be dismissed.

A.  The Local Unions are necessary parties because the subject matter of this litigation is the CBAs to which they are parties and the grievances they filed. DuPont's argument that the Local Unions need not be parties because the USW can represent their interests in this litigation is akin to an argument that, if an entity cannot itself be sued because it is not within the jurisdiction of the court, a plaintiff can simply sue the entity's attorney because that attorney is bound to represent the entity's interests. That is not the law.

1.    <u>Smith v. American Federation of Musicians</u>, 46 F.R.D. 24 (S.D.N.Y. 1968), is instructive on this issue. In <u>Smith</u>, a union member sued an international union as a result of disciplinary action that had been taken against the member by a local union. The international agreed with the local's position and had in fact affirmed the local's action, <u>see id.</u> at 27; consequently, the court found that the international and the local "do, realistically speaking have a community of interest in this action." <u>Id.</u> Indeed, the court deemed it likely that if the local were joined, it would be represented by the same counsel as the international. <u>Id.</u> The court nevertheless held that the local union was a necessary party, because the underlying actions at

issue had been those of the local union, and a local union "should not be required to have its interests protected by the [international union] alone." Id.[7]

So too here. The grievances DuPont is asking this Court to bar were filed by three Local Unions, not by the USW, and for two of the three Local Unions, the CBA at issue is one to which only the Local Union, not the USW, is a party.[8] See Brean Decl. ¶¶ 2-6. Whatever may be the "community of interest," Id. at 27, between the USW and the Local Unions, the rights at stake are those of the Local Unions, and they are necessary parties. Smith, supra. See also Krulikowsky v. Metropolitan Dist. Council of Phila. & Vicinity, 270 F. Supp. 122 (E.D. Pa. 1967) (international union was necessary party to case to which local union was already a party, where a decision could affect the international's governing statutes).

As the Fourth Circuit held in the case on which DuPont principally relies, for purposes of Fed. R. Civ. P. 19(a)(2)(i), a litigant can serve as a proxy for an absent party only if the litigant has interests "identical" to that of the absentee. Ohio Valley Envtl. Coalition v. Bulen, 429 F.3d 493, 504 (4th Cir. 2005). The test is not simply whether the party that has been sued will assert a

---

[7]    After finding that the local union was a necessary party, the Smith court noted that the local union could be properly served with process, and ordered it joined as a party. Later, the local union moved to dismiss the action against it on the ground that venue was improper. The court noted that the plaintiff would have no adequate remedy if the entire action were dismissed, because there was no court in which venue would be proper as to all three parties. The court weighed the competing interests and allowed the case to proceed without the local union. 47 F.R.D. 152, 155 (S.D.N.Y. 1969). No such weighing of interests would be required in this case, as it is undisputed that venue is proper as to all parties in the suits the Local Unions have filed in New York, New Jersey, and Delaware. Thus, dismissing this case would not deprive DuPont of the ability to make its arguments, because it could do so in those actions.

[8]    As the USW stated in its opening brief, the USW is a party to the Delaware CBA, along with DuPont and the Local Union at DuPont's Delaware plant. Defendant's Brief in Support of Motion to Dismiss at 3. However, only DuPont and the relevant Local Union are parties to the other two CBAs, and the USW is not a party to any of the grievances. Furthermore, even in the case of the Delaware local, the decision whether to pursue a grievance, and any decision to settle the grievance, is made by the Local Union, not by the USW. See Declaration of James Briggs (attached to this memorandum) ¶ 4-6.

<u>position</u> consistent with that of the absent party; the test is whether the <u>interests</u> of the party sued are <u>identical</u> to those of the absentee. Because the USW is not a party to the grievances at issue or to two of the CBAs, the USW's interests simply are not comparable to those of the Local Unions – any more than the fact that a party's attorney may be expected to advance positions on behalf of that party means that the attorney's interests are the same as the client's interests.

What is more, even the <u>positions</u> the USW would advance in this case could not fully serve – much less replicate "identical[ly]" – the interests of each of the Local Unions, for the simple reason that those interests are not the same for each Local Union. Although each Local Union has an interest in demonstrating that its grievance is arbitrable under its CBA, the CBAs and grievances differ in ways that might well lead the Local Unions to wish to make different arguments, both as to arbitrability and as to how DuPont's action violated its CBA. For example, DuPont itself has emphasized that the New York and Delaware CBAs do not mention the "Dental Assistance Plan" or the "Medical Care Assistance Plan," whereas the New Jersey CBA does mention both of those plans; and DuPont points to this difference as a reason why a declaration of nonarbitrability would be "particularly appropriate" with respect to the New York and Delaware grievances. <u>See</u> DuPont Opp. at 22. As we have noted, <u>supra</u> at 6, there are other differences as well in the grounds on which the grievances of each of the Local Unions are based and in the language of their respective CBAs. Whether the differences are significant or not is an issue as to which each of the Local Unions may well have different views and interests.

The Local Unions' interests may also differ as to settlement. Each Local Union has the authority to decide whether, and under what terms, it would settle its grievance. <u>See</u> Declaration of James Briggs ("Briggs Decl.") ¶¶ 4, 6 (attached to this memorandum). Depending on the preferences and demographics of the Local Unions' respective memberships and on each Local

- 10 -

Union's assessment of the strength of its own case, one or more of the Local Unions might be willing to settle its grievance while the others would not. Similarly, the Locals might have interests in settling on different terms.

As these examples demonstrate, the Local Unions' interests are not identical. Logically, then, the USW cannot have interests identical to those of each Local Union, and any position the USW might assert in this litigation, "as a practical matter," could certainly "impair or impede" the interests of one or more of the absent Local Unions. Fed. R. Civ. P. 19(a)(2)(i). For these reasons, the "identical interests" test of <u>Ohio Valley Envtl. Coalition</u> is not satisfied, and the Local Unions are necessary parties.

2.      The mere fact that the USW is <u>assisting</u> the Local Unions with their grievances and that the USW suggested to DuPont that a meeting be held at which the USW and "all affected Local Unions" would be present, <u>see</u> Briggs Decl. ¶ 8 and Ex. 1 thereto, does not mean that the USW and the Local Unions have identical interests, or that the USW has the authority to determine the fate of the Local Unions' grievances. On the contrary, the meeting proposed by the USW—unlike this lawsuit—would have included each affected Local Union as a participant. That the USW is supporting and assisting the Local Unions with their claims does not make it unnecessary for the Local Unions to be parties, any more than a lawyer's support and assistance to a client would make it permissible to sue the lawyer rather than the client.

What is more, although DuPont has drawn the Court's attention to the USW's request for a joint meeting, <u>see</u> DuPont Opp. at 4 n.2, DuPont fails to inform the Court that DuPont <u>rejected</u> that request on grounds that are highly relevant here. Even though the USW was not suggesting that the various grievances be treated as one, but was merely suggesting a meeting among all

- 11 -

affected entities, DuPont asserted that even such modest coordination would be improper, because, as DuPont put it:

> Our philosophy remains that union-management issues are local. Therefore, we believe they are best dealt with by knowledgeable union and management people at the local level.

Briggs Decl. ¶ 9 and Exhibit 2 thereto (emphasis added).

That letter gives the lie to DuPont's contention that its benefit reductions present a single uniform national issue and that the fate of the three Local Unions' grievances can properly be resolved by litigation to which only the USW and not the Local Unions is a party.

B. As set forth in the USW's opening brief, there is another reason why the Local Unions are necessary parties: permitting this suit to continue could result in "inconsistent obligations." Fed. R. Civ. P. 19(a)(2)(ii). Rule 19(a)(2) provides that an entity is a necessary party in either of two situations: where the entity's absence "may . . . as a practical matter impair or impede the person's ability to protect that interest," Rule 19(a)(2)(i), or where the entity's absence may "leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations," Rule 19(a)(2)(ii). Even if DuPont could satisfy the "identical interests" standard of Ohio Valley Envtl. Coalition, which applies to the Rule 19(a)(2)(i) inquiry (and we have shown that it cannot), DuPont must also satisfy Rule 19(a)(2)(ii), which was not at issue in the Ohio Valley case (a case that involved a challenge to agency action rather than a dispute between private parties). See 429 F.3d at 504-05.

Each of the Local Unions has brought suit in the federal court in the district in which it (and the plant at which its members are employed) is located, to compel arbitration of its grievance. If those courts were to hold that DuPont is required to arbitrate one or more of the grievances, but this Court were to agree with DuPont's contention that all issues must be

resolved exclusively through the plan procedures or through an ERISA suit by beneficiaries, a

classic case of inconsistent obligations would arise. As the Fourth Circuit has stated, where "one

court might compel arbitration" while another court, faced with a suit by absentees to the first

suit, might reach the opposite conclusion about the same conflict, the potential for inconsistent

obligations "weighs heavily" in favor of a finding that the absentees are necessary parties to the

first suit. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999).

Of course, there could not be conflicting obligations if the Local Unions would be bound

by a judgment in this litigation; but DuPont has not argued, and could not reasonably argue, that

such would be the case. In order to be bound by a judgment against the USW, the Local Unions

would have to be found to be in "privity" with the USW. But privity exists only where the non-

party is "so identified in interest with a party to former litigation that he represents precisely the

same legal right in respect to the subject matter involved." Martin v. American Bancorporation

Ret. Plan, 407 F.3d 643, 651 (4th Cir. 2005) (quoting Jones v. S.E.C., 115 F.3d 1173, 1180 (4th

Cir. 1997) (emphasis added).

Not only do the Local Unions have different interests which cannot all be represented

simultaneously by the USW, as was demonstrated supra at 9-11, but by no means does the USW

have the "same legal right in respect to the subject matter" of this suit as do the Local Unions.

As discussed, the authority to make decisions about the grievances, including whether to file a

grievance in the first instance, what positions to assert in the grievance, whether and how to

demand arbitration, and whether to settle, lies entirely with the Local Unions, not with the USW.

See Briggs Decl. ¶¶ 4-6. Although the USW does support and provide assistance to its local

unions, it does not have the same legal rights in this dispute as they do. Indeed, having declared

that the USW should not even be permitted to participate in a meeting with DuPont to discuss the

Local Unions' grievances because each grievance should be resolved by the "union . . . people at the local level," see supra at 12, DuPont cannot possibly maintain that the Local Unions' rights to arbitrate those grievances can properly be determined in litigation where only the USW, and not the Local Unions, is a party.

DuPont acknowledges that the Local Unions are "unavailab[le]" to be joined as parties to this suit," see DuPont Opp. at 17. This case must therefore be dismissed for failure to join a necessary party under Fed. R. Civ. P. 12(b)(7) and 19.

## III.    ERISA DOES NOT PROVIDE JURISDICTION FOR DUPONT'S SUIT

In response to the USW's argument that DuPont's suit must be dismissed to the extent that it purports to be based on ERISA, DuPont cites cases standing for unremarkable or irrelevant propositions, but it cannot cite any case holding that an employer or plan sponsor can bring suit under ERISA § 502(a)(3)(B) to seek a declaration that its actions in unilaterally amending an employee benefit plan did not violate a CBA.

DuPont makes a number of general assertions about ERISA actions which do not advance its cause. DuPont points out that employers who are also ERISA fiduciaries can bring certain types of ERISA suits in their capacity as fiduciaries, see, e.g., Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1466 (4th Cir. 1996) (employer was ERISA fiduciary "to the limited extent it exercised its discretionary responsibility 'to monitor appropriately' and remove the Plan Administrator and Plan Supervisor," and could bring ERISA claims relating to its fiduciary responsibility to conduct such monitoring), and that some actions taken by employers involve fiduciary rather than settlor functions, see, e.g., Sonoco Prods. Co. v. Physicians Health Plan Inc., 338 F.3d 366 (4th Cir. 2003) (acknowledging that some employer actions are those of a fiduciary, but holding that employer was not acting as fiduciary when it brought suit against

- 14 -

insurer to protect its own interests rather than those of plan beneficiaries). However, none of this

negates the well-established rule that an employer's decision to amend a benefit plan in order to

cut benefits, as DuPont has done, is <u>not</u> a fiduciary function. See, e.g., Lockheed Corp. v. Spink,

517 U.S. 882, 890 (1996) ("[P]lan sponsors who alter the terms of [an ERISA] plan do not fall in

the category of fiduciaries").[9]

DuPont also asserts that it is a fiduciary with respect to benefits determinations under its

plans, <u>see</u> DuPont Opp. at 19, and DuPont cites cases holding that employers can seek

declaratory judgments under ERISA when they would otherwise be subject to ERISA suits by

those beneficiaries, <u>id.</u> at 21. See, e.g., Transamerica Occidental Life Ins. Co. v. DiGregorio,

811 F.2d 1249, 1253 (9th Cir. 1987); Rexam v. United Steelworkers of Am., 2003 WL

22477858, at *2 (D. Minn. Oct. 30, 2003). These cases represent one side of a circuit split as to

which the Fourth Circuit has not yet taken a position.[10] But in any event, the cases DuPont cites

are inapposite because the Local Unions are seeking to enforce the terms of their CBAs under

---

[9]    DuPont fancifully argues that it can bring this suit as an ERISA fiduciary because it has a
fiduciary duty to communicate truthfully with participants about their benefits under the plans.
See DuPont Opp. at 19-20. Of course, the dispute between the Local Unions and DuPont is not
about the truthfulness of any of DuPont's communications; it is about whether DuPont's
unilateral cuts to its benefit plans violate the CBAs and whether the Local Unions' grievances
are arbitrable. In any case, all of the decisions DuPont cites on this topic involve suits brought
by plan participants against employers who have made misrepresentations about the benefits
available to them. See, e.g., Estate of Becker v. Eastman Kodak Co., 120 F.3d 5 (2d Cir. 1997).
None of these cases holds that an employer may seek a declaratory judgment about whether it
was justified in cutting plan benefits under the theory that otherwise it will not know what to tell
participants about their benefits.

[10]    For the other side, <u>see</u>, <u>e.g.</u>, Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520 (11th Cir. 1987)
(employer could not obtain a declaratory judgment that its reductions in benefits did not violate
ERISA); Massey Ferguson Div. of Varity Corp. v. Gurley, 51 F.3d 102, 104 (7th Cir. 1995)
(Plan Administrator cannot bring suit under ERISA § 502(a)(3) for declaratory judgment that a
participant is not entitled to a disability pension; limiting Winstead v. J.C. Penney Co., 933 F.2d
576 (7th Cir. 1991), <u>cited</u> in DuPont Opp. at 8, to cases involving coordination of benefits
between two or more plans).

Section 301 of the Labor Management Relations Act; they are <u>not</u> seeking to enforce the terms of

a plan under ERISA.[11]  Consequently, even the circuits that allow employers to bring declaratory

judgment actions in certain circumstances to determine the merits of an <u>ERISA claim</u> that could

otherwise be brought by participants would not recognize jurisdiction under ERISA for an

employer suit seeking a declaration with respect to claims that are brought against it, <u>not</u> under

ERISA, but under a <u>CBA</u>.

**IV.    COUNT II OF THE COMPLAINT MUST BE DISMISSED BECAUSE THE
COURT LACKS JURISDICTION TO GRANT DECLARATORY RELIEF
DETERMINING WHETHER DUPONT'S BENEFIT CUTS VIOLATE THE
LOCAL UNIONS' CBAS**

DuPont asserts that if the Court determines that the Local Unions' grievances (which

DuPont incorrectly characterizes as "the USW's grievances") are not arbitrable, "the bar against

a judicial determination of the merits of the underlying breach of contract claim falls away as a

matter of law [and] the Court is then free to . . . determine whether DuPont violated the

underlying collective bargaining agreements."  DuPont Opp. at 23.

DuPont's argument misses the point.  In any case in which arbitrability is at issue, the

ultimate question for the Court is to determine the "method for the adjustment of their disputes"

to which "the parties have agreed."  <u>Groves v. Ring Screw Works</u>, 498 U.S. 168, 173-74 (1990).

To be sure, where a court finds that the parties to a CBA that contains an arbitration clause

---

[11]      In its footnote 13, DuPont grudgingly acknowledges that the Local Unions' grievances
actually involve "DuPont's authority to implement the amendments, rather than benefit decisions
made under the amendments," but asserts that the "decision to implement the amendment is
inextricably intertwined with the question of benefit eligibility determinations."  DuPont Opp. at
23 n.13.  However, ERISA certainly draws a distinction between an employer's decision to
amend a benefit plan and a Plan Administrator's application of the terms of a plan to individual
claims for benefits.  <u>See Lockheed Corp. v. Spink</u>, 517 U.S. 882, 890 (1996) (holding that
employers do not act as fiduciaries when they "adopt, modify, or terminate welfare plans," but
do act as fiduciaries in the "exercise of discretionary authority or control over plan management
or administration.")

intended that a particular matter should be excluded from arbitration, the court often will find that the parties' intention (explicit or implicit) was to permit the matter to be resolved through a suit for breach of contract. See id. at 174-76. But, under the allegations of DuPont's complaint, that is not what would flow from adopting DuPont's arguments against arbitrability in this case. DuPont alleges that the disputes the Local Unions are seeking to resolve through arbitration are not arbitrable because the disputes "are to be resolved exclusively through the procedures set forth in [DuPont's] plans, and/or in a civil enforcement action under Section 502 of ERISA." Complaint ¶ 66. If DuPont were to prevail on its claim, the result would not be to confer jurisdiction on the Court to determine whether DuPont did or did not violate the CBAs; rather, it would be to require that all aspects of this matter be resolved through the plan procedures or through an enforcement action by beneficiaries under Section 502 of ERISA.

Thus, it is not we who have "misstate[d] the nature of the relief sought by DuPont," DuPont Opp. at 22; it is DuPont that has failed to acknowledge that its own allegations contradict and foreclose the relief it requests insofar as that relief would take the form of a declaration by the Court as to whether DuPont has violated the Local Unions' CBAs.

DuPont's Count II should therefore be dismissed.

**Conclusion**

For the reasons stated in this brief and in Defendant's opening Brief in Support of

Motion to Dismiss, the Motion to Dismiss should be granted and the Complaint should be

dismissed in its entirety.

Respectfully submitted,

James J. Vergara,
Vergara & Associates
100 Main Street
Hopewell, VA 23806
Telephone: (804) 458-7394
Facsimile: (804) 541-3855
jjv@vergaralaw.com


Jeremiah A. Collins
Jennifer L. Hunter
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
jcollins@bredhoff.com;
jhunter@bredhoff.com


*Counsel for Defendant United Steel,*
*Paper and Forestry, Rubber,*
*Manufacturing, Energy, Allied-*
*Industrial and Service Workers*
*International Union*


Dated: April *26* , 2007

-18-

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Reply in Support of Motion to

Dismiss was mailed to the following this 26th day of April, 2007:

James P. McElligott, Esquire
McGuireWoods LLP
901 East Cary Street
Richmond, VA  23219

Thomas P. Gies, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595

James J. Vergara, Jr.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Dippold-Harmon Enterprises, Inc. v. Lowe's
Companies, Inc.
D.Del.,2001.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
DIPPOLD-HARMON ENTERPRISES, INC.,
Plaintiff,
v.
LOWE'S COMPANIES, INC., Defendant.
No. 01-532-GMS.

Nov. 13, 2001.

MEMORANDUM AND ORDER
SLEET, District J.

I. INTRODUCTION

**\*1** On May 23, 2001, Lowe's Home Centers, Inc.
("Home Centers"), filed a complaint against the
defendant Dippold-Harmon Enterprises, Inc.
("Dippld-Harmon") in the General Court of Justice,
Superior Court Division, located in North Carolina.
On July 27, 2001, Dippold-Harmon removed that
action to the United States District Court for the
Western District of North Carolina. On August 8,
2001, Dippold-Harmon filed the above-captioned
action against Lowe's Companies, Inc. ("Lowe's"),
the parent corporation of Home Centers, in Delaware.

Before the court is Lowe's' motion to dismiss, or
alternatively, to transfer this case to the Western
District of North Carolina, or to stay this case
pending the outcome of that litigation. Lowe's argues
that the court should dismiss this action because the
court lacks personal jurisdiction over it. It further
argues that, should the court not dismiss this action,
the case should be transferred to North Carolina
pursuant to the "first-filed" rule and 28 U.S.C. §
1404(a). For the reasons that follow, the court will
deny Lowe's motion to dismiss for lack of personal
jurisdiction, but will grant Lowe's motion to transfer.

II. BACKGROUND

Dippold-Harmon is a Delaware corporation, with its
principle place of business in Delaware. Lowe's is a
North Carolina corporation with its principal place of

business in North Carolina. It is the world's second
largest home improvement retailer, serving more than
five million customers weekly. Lowe's maintains that
it is not, and has never been, registered or qualified to
do business in Delaware. It further asserts that it does
not have a registered agent for the service of process
in Delaware.

Home Centers is a wholly-owned subsidiary
corporation of Lowe's. It is a North Carolina
corporation registered to conduct business in
Delaware, although its principle place of business is
in North Carolina. Lowe's maintains significant
control over its subsidiary. Lowe's sends its corporate
representatives to its retail stores, including Home
Centers, and then directs the stores to take certain
actions in accordance with Lowe's policies. Other
Lowe's high-level executives admit that they
"supervise" and "oversee" the retail stores and travel
to these stores on almost a daily basis. Furthermore,
in Lowe's advertising materials, it proudly announces
that *it* has more than six-hundred and fifty store in
forty states, including four in Delaware. In actuality,
the four stores in Delaware are its subsidiary Home
Centers.

On April 3, 1998, Home Centers entered into a
written contract with Dippold-Harmon. The contract
specified that Dippold-Harmon would install granite
countertops for Home Centers' customers. In
approximately 1998, Lowe's also hired Dippold-
Harmon as a vendor for the sale and installation of
granite kitchen countertops. At that time, Dippold-
Harmon was one of several vendors that Lowe's
utilized for the installation of these countertops. As
Lowe's continued to open additional stores, it was
faced with the costly proposition of installing
countertop displays at each of these new stores. To
ensure that the countertop displays were properly
installed in a uniform manner, Lowe's representatives
sought to hire a single vendor to install these
displays. It also sought to hire a single vendor to
install countertops for its individual customers.

**\*2** Dippold-Harmon maintains that the parties
engaged in subsequent telephone negotiations aimed
at making Dippold-Harmon the exclusive vendor for
the installation of Lowe's countertop displays, as well
as for countertops it sold to individual customers.
Some of these discussions were initiated by Lowe's
and were directed to Dippold-Harmon in Delaware.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

At a December 20, 1999 meeting with Dippold-Harmon, Lowe's executives Michael Gettler and Tammy Edson purportedly offered to make Dippold-Harmon its exclusive national vendor for the installation of granite countertops. Dippold-Harmon contends that, during the meeting, it accepted Lowe's' offer and entered into an oral "Exclusivity Agreement." The two companies also exchanged numerous letters and e-mails during this time concerning their vendor agreement.

On May 23, 2001, Home Centers filed the North Carolina complaint against Dippold-Harmon. In its complaint, Home Centers alleges that Dippold-Harmon breached their April 3, 1998 written contract. Specifically, Home Centers contended that Dippold-Harmon failed to comply with their written contract's standards in the installation of countertops in the homes of individual customers.

Dippold-Harmon filed this action against Lowe's on August 8, 2001, alleging that Lowe's breached their Exclusivity Agreement and acted fraudulently and with bad faith.

Because the court concludes that exercising personal jurisdiction over Lowe's in this instance comports with traditional notions of fair play and substantial justice as required by the Due Process Clause, and that Lowe's falls within the reach of Delaware's long-arm statute, the court will deny Lowe's' motion to dismiss. *See International Shoe Co. v. Washington,* 326 U.S. 310 (1945); DEL. CODE. ANN. tit. 10 § 3104(c) (2001). However, because the "balance of convenience" tips in favor of Lowe's, the court will grant its motion to transfer.

### III. DISCUSSION

#### A. Jurisdiction

The essence of Lowe's' argument is that, since it has not purposefully directed its activities to Delaware, the assertion of personal jurisdiction by the courts of this forum would violate the Due Process Clause. Lowe's further contends that its activities do not bring it within the reach of Delaware's long-arm statute. While Lowe's correctly frames the inquiry the court must make, the court disagrees with its analysis and reaches a different conclusion.

#### 1. Due Process

The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

*3 Lowe's argues that its only contacts with Delaware are through Dippold-Harmon, which is a Delaware corporation. Specifically, Lowes' contends that its Home Centers contract with a Delaware corporation is, by itself, an insufficient basis to establish personal jurisdiction. The court agrees. *See Blue Ball Properties, Inc. v. McClain,* 658 F.Supp. 1310, 1316-17 (D.Del.1987). However, the court finds that Lowe's has many more purposeful contacts with Delaware than it discloses in its brief.

First, with regard to the Exclusivity Agreement in issue, Lowe's communicated regularly with Dippold-Harmon by sending numerous letters and e-mails from North Carolina to Delaware. It also placed telephone calls to Dippold-Harmon in Delaware. These contacts alone would be sufficient to satisfy the minimum contacts analysis. *See Hide Power and Equip. Co. v. Strates Enters., Inc.,* 1993 WL 258701, at *1 (Del.Super. June 15, 1993) (finding jurisdiction over a nonresident defendant based on a single visit to Delaware and two or three letters sent to Delaware.); *see also Mid-Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.,* 492 A.2d 250, 255 (Del.Super.1985) (extending jurisdiction over a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

nonresident defendant where the negotiation and execution of the contract occurred entirely outside of Delaware, and the defendant's contacts with Delaware were limited to "an unspecified number of trips.")

However, in addition to these direct contacts with Dippold-Harmon in Delaware, Lowe's is the world's second largest home improvement retailer. This fact alone would provide a sufficient basis for the court to seriously question the legitimacy of Lowe's' position. However, as previously noted, Lowe's has a wholly-owned subsidiary; that subsidiary, Home Centers, is registered to do business in Delaware, and operates four stores in this jurisdiction. Neither in its advertising material, nor in its internal communications, does Lowe's distinguish between its corporate stores and Home Centers stores. In fact, Lowe's announces the opening of new Home Centers stores as new *Lowe's* locations. Lowe's also maintains strict control over its Home Centers operations. It sends its representatives to the Home Centers stores and then directs those stores not in compliance with Lowe's policies to take certain actions to come into compliance. Such representatives have visited the Delaware stores. Lowe's also publically admits to otherwise "supervising and overseeing" its stores, and sending Lowe's personnel to those stores, including Delaware locations.

These facts support the conclusion that Lowe's should reasonably have anticipated being brought into court here. However, due process requires that the court make one more inquiry.

Notwithstanding the existence of Lowe's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum. *See Beverly Hills Fan*, 21 F.3d at 1568.

**\*4** Here, the answer is plainly, no. Delaware has an interest in this action. Dippold-Harmon is a Delaware corporation. Clearly this forum's interests extend to corporate citizens that have sought the protection of Delaware's laws. Moreover, Delaware has an interest

in addressing those purposeful activities conducted within its borders that result in allegations of injury. That interest extends to breaches of contract, such as that alleged here. Finally, Lowe's clearly has, through its Home Centers subsidiaries, significantly more than minimal contacts with this forum. Accordingly, the court concludes that the burden on Lowe's is not so onerous as to run afoul of traditional notions of fair play and substantial justice.

### 2. Delaware's Long-Arm Statute

The second step in the court's analysis into the propriety of subjecting Lowe's to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* DEL. CODE. ANN. tit. 10 § 3104 (2001). While Lowe's contends that it does not fall within the grasp of any of Section 3104's provisions, Dippold-Harmon contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." DEL. CODE. ANN. tit. 10, § 3104(c) (2001).[FN1] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten*, 784 F.Supp. 146, 151 (D.Del.1992).

> **FN1.** This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.*, 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above, Lowe's directed telephone calls and numerous items of correspondence to Delaware in relation to the disputed Exclusivity Agreement. Through its wholly-owned subsidiary, Home Centers, Lowe's also operated, maintained, and directly supervised four stores in Delaware. Finally, Lowe's has not in any way publically differentiated itself from the Home Centers locations in Delaware. Consequently, it cannot now complain that it should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 4
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

not be sued here.

Finding sufficient contacts to subject Lowe's to personal jurisdiction under both the State's long-arm statute and the Due Process Clause, the court will now move to a discussion of whether this action should be transferred to the Western District of North Carolina.[FN2]

FN2. In its motion to dismiss, Lowe's also alleges that this action should be dismissed for lack of venue and insufficient service of process. However, both of these claims are based solely on its argument that the court lacked personal jurisdiction. As the court has found personal jurisdiction, these arguments too must fail.

B. Venue

As previously noted, Lowe's seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).

1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania, 850 F.2d 969, 971-72 (3d Cir.1988).* As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. *See Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171 (E.D.Pa.1991).*

*5 While Dippold-Harmon does not dispute that the North Carolina action was filed first, it argues that this rule should not apply to the present case because different parties and different issues are presented in the Delaware and North Carolina actions. The court finds this argument unpersuasive. First, Dippold-Harmon itself aggressively argued that Lowe's and Home Centers should be considered one and the same party for purposes of establishing personal jurisdiction. The court will not now find that Lowe's and Home Centers are different parties for the purposes of the "first-filed" rule. For the reasons stated in Section A. 1, *supra*, the court is satisfied that Lowe's and Home Centers are effectively the same party.

Second, with regard to Dippold-Harmon's argument that different issues are presented in the Delaware and North Carolina actions, the court again disagrees. The North Carolina action concerns the breach of a written agreement between Home Centers and Dippold-Harmon. The written agreement provided that Dippold-Harmon would install granite countertops for its customers in a certain fashion. The Delaware action concerns the breach of an alleged oral agreement between Lowe's and Dippold-Harmon. This alleged oral agreement provided that Dippold-Harmon would be the exclusive distributor of those granite countertops. Both actions thus concern different facets of the same business relationship between the parties. Specifically, both actions relate to Dippold-Harmon's status as a fabricator and installer of granite countertops for Lowe's and Home Centers' customers. A decision by the North Carolina court on the validity, or breach, of the written agreement will bear directly on the alleged oral agreement concerning the same type of services. To have two separate trials on these issues would defeat the purposes of the "first-filed" rule, namely sound judicial administration and comity among federal courts of equal rank. *See EEOC, 850 F.2d at 971.* Accordingly, the court finds that the application of this rule weighs heavily in favor of transferring this case to North Carolina.

2. Section 1404(a)

Transfer to North Carolina is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties agree that this action could have been filed in the Western District of North Carolina as a diversity action. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).*

In *Jumara,* the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court should consider. *See id.*

Not Reported in F.Supp.2d                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

a. The Private Interests

**\*6** The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum.[FN3] *See id.*

> FN3. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

1. The Convenience of the Parties

Physically, North Carolina is moderately inconvenient for Dippold-Harmon, which is headquartered in Delaware. Thus, in order to litigate this matter in North Carolina, it must travel several hours. However, modern communication and transportation capabilities make this moderate journey far less burdensome than it would have been at one time. *See Beverly Hills Fan,* 21 F.3d at 1569 (noting that it is not unduly burdensome for a defendant organized under the laws of the People's Republic of China to litigate in Virginia.). Because it is a national distributor of granite and stone kitchen fixtures, Dippold-Harmon is also financially capable of shouldering this burden. As such, it is doubtful that litigating in North Carolina would be an undue financial burden.

Furthermore, transfer to North Carolina would reduce the overall inconvenience to all parties involved. Dippold-Harmon must already travel to North Carolina to defend itself in the first-filed action pending in the Western District of North Carolina.

Bringing witnesses and relevant documents to only one location, here North Carolina, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time.

2. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. *See id.* (internal citations omitted). Fact witnesses who posses first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Dippold-Harmon argues that Lowe's has failed to demonstrate that transfer to North Carolina would be more convenient for potential non-party fact witnesses. The court agrees, and notes that Lowe's' bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. However, all the material witnesses in this dispute, party or otherwise, will be in North Carolina already to litigate the first-filed action. Requiring that they then come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. Accordingly, the court finds that this factor also weighs in favor of transferring the action to North Carolina.

3. The Location of Records and Other Documents

**\*7** The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Furthermore, the relevant documents will already be in North Carolina for the litigation of the first-filed action. The court thus sees no need to require that Lowe's, Home Centers, and Dippold-Harmon move

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

the same documents from North Carolina to Delaware. Rather, it would be much more efficient to litigate these related actions in one location.

### b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the three factors which the parties deem relevant to the pending case.

### 1. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by Lowe's, and accepted by the court, in Section 2 .B, *supra.* As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

### 2. Delaware's Interest in Deciding This Action

Dippold-Harmon claims that Delware has a far stronger interest in resolving this action since Dippold-Harmon is a Delaware corporation. While the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the alleged Exclusivity Agreement as a local controversy unique to Delaware. *See Affymetrix,* 28 F.Supp.2d at 207. Instead, this alleged agreement concerns Dippold-Harmon's status as Lowes' exclusive, national distributor. By its very nature then, the agreement is not local and unique to only Delaware, but rather, affects every state included in the alleged Exclusivity Agreement. Furthermore, the court notes that Dippold-Harmon appears to concede that the alleged Exclusivity Agreement was not formed in Delware and would not be governed by Delaware law. Accordingly, this factor does not weigh in favor of denying Lowe's motion to transfer.

### 3. Collective Travel Time and Cost

The final public interest factor identified by Lowe's concerns the time and cost allegedly associated with the potential witnesses' travel time to Delaware. This factor, however, duplicates other factors necessary to the court's transfer analysis, namely the private

factors considering the convenience and availability of witnesses and the location of documents. The court has already rejected these arguments in its earlier discussion of the "private" factors in the "balance of convenience" analysis.

### IV. CONCLUSION

For the foregoing reasons, the court concludes that Lowe's is subject to personal jurisdiction in Delaware, however, the "balance of convenience" tips strongly in favor of transferring this action to the Western District of North Carolina.

**\*8** For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:
1. Lowe's motion to dismiss for lack of personal jurisdiction (D .I. 8) is DENIED, and Lowe's alternative motion to transfer this action to the Western District of North Carolina (D.I.8) is GRANTED; and
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Western District of North Carolina.

D.Del.,2001.
Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

LEXSEE 1999 U.S. DIST. LEXIS 22525

**Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW, Plaintiff -v- Dana Corporation, Defendant**

**Case No. 3:99CV7603**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*1999 U.S. Dist. LEXIS 22525*

**December 6, 1999, Decided**

**DISPOSITION:** [*1] Dana Corporation's motion to dismiss, stay or transfer (Doc. 4) denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to dismiss, stay or transfer plaintiff union's action based on the first to file rule and the fact that it had a pending declaratory action in another district court.

**OVERVIEW:** Plaintiff and defendant were signatories to a collective bargaining agreement. Plaintiff filed a grievance alleging that defendant violated the neutrality provision of their agreement. The arbitrator issued a decision sustaining plaintiff's grievance. While representatives for plaintiff and defendant were discussing whether defendant was going to comply with the arbitrator's award, defendant filed suit in another district to vacate the award and sought declaratory relief. Plaintiff filed this action hours later under the Labor Management Relations Act, *29 U.S.C.S. § 185* seeking to enforce compliance with an arbitrator's award. Defendant filed a motion to dismiss, stay or transfer the action based on the first to file rule. The court denied defendant's motion and directed it to show cause why it should not be enjoined from maintaining the declaratory action. Defendant's declaratory complaint was motivated by a desire to preempt the choice of forum that otherwise would have been for plaintiff to make. The timing of defendant's suit strongly suggested an improper purpose.

**OUTCOME:** Defendant's motion to dismiss, stay or transfer was denied and it was directed to show cause why it should not be enjoined from maintaining a declaratory judgment action in another district court. Defendant's declaratory action could not be used to deprive plaintiff of its choice of forum, and gain whatever tactical advantages that might have thereby accrued.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
[HN1] Under the first to file rule, as a general principle, the first court in which a suit is filed will keep and decide the case, even if the same or a substantially similar suit is filed in another court.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Civil Procedure > Appeals > Appellate Jurisdiction > State Court Review*
*Governments > Courts > Judicial Comity*
[HN2] The first-to-file rule is a well-established doctrine of federal comity. In all cases of concurrent jurisdiction, the court that first has possession of the subject must decide it. The rule since has been clarified and applied in cases involving concurrent federal jurisdiction. The first-to-file rule has evolved into a mechanism used to promote judicial efficiency. The rule provides that when identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment. Generally, courts should invoke the rule when two suits involving substantially the same parties and purpose have been filed in a concurrent jurisdiction. However, the same party and same issue is not an absolute requirement. Although courts should not apply the first-to-file rule too rigidly or mechanically, the rule's importance should not be disregarded lightly. Notably, the most basic aspect of the first to file rule is that it is discretionary. The decision and the discretion belong to the district court.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > General Overview*
[HN3] District courts always have discretion given appropriate circumstances justifying departure from the first filed rule to decline to follow the rule in case involving rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping.

*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion*
[HN4] Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
[HN5] A court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum. Further, anticipatory suits deprive a potential plaintiff of his or her choice of forum. The misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action. A party cannot be permitted to transform a doctrine that was offered as a shield into a sword. A plaintiff's choice of forum should only be given protection where the plaintiff before the court is the proper plaintiff, not a manufactured plaintiff through the misapplication of a declaratory judgment.

*Civil Procedure > Venue > General Overview*
[HN6] A plaintiff seeking redress for a cognizable injury is entitled, to the extent able to choose among several forums, to select the one that it finds most attractive.

*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
[HN7] The limited opportunity afforded by the Declaratory Judgement Act, *28 U.S.C.S. § 2201* to seek a declaration of rights where an opponent may be disinclined to do so, or where the underlying controversy has not fully matured, should not be employed for other purposes, such as to tolerate, much less reward forum shopping. Indeed, some courts have noted that a first-filed declaratory judgment action may be deemed moot once the substantive action on the underlying merits has been filed. Where the substantive plaintiff has filed its suit and raised all the issues originally sought to be adjudicated by the first-filer's declaratory judgment action, the initial declaratory judgment serves no useful purpose.

*Civil Procedure > Pretrial Judgments > General Overview*
[HN8] Once a court determines that a suit is duplicative and wrongly filed, it has several options. It can dismiss or transfer the suit before it, or it can enjoin the parties from maintaining the duplicative suit.

*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Evidence > Inferences & Presumptions > Effects*
[HN9] Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit. This exception to the first to file rule will be applied where the parties and issues are the same, or essentially so, and it appears that the first filed suit was brought in anticipation of forthcoming suit by the substantive plaintiff. At the very least, the declaratory judgment plaintiff should have the burden of showing persuasive cause why its suit should not be dismissed or enjoined.

**COUNSEL:** For INTL UNION, UNITED AUTO, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW), plaintiff: Joan Torzewski, Esq., Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH.

For INTL UNION, UNITED AUTO, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW), plaintiff: Michael B. Nicholson, Esq., International Union, UAW, Detroit, MI.

For DANA CORPORATION, defendant: Richard S. Walinski, Esq., Cooper & Walinski, Toledo, OH.

For DANA CORPORATION, defendant: Michael J. Lorenger, Esq., Stanley J. Brown, Esq., Hogan & Hartson, McLean, VA.

For DANA CORPORATION, counter-claimant: Richard S. Walinski, Esq., Cooper & Walinski, Toledo, OH.

For DANA CORPORATION, counter-claimant: Michael J. Lorenger, Esq., Stanley J. Brown, Esq., Hogan & Hartson, McLean, VA.

For INTL UNION, UNITED AUTO, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, counter-defendant: Joan Torzewski, Esq., Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH.

For INTL UNION, UNITED AUTO, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, counter-defendant: Michael B. Nicholson, Esq., International [*2] Union, UAW, Detroit, MI.

**JUDGES:** James G. Carr, United States District Judge.

**OPINION BY:** James G. Carr

**OPINION:**

ORDER

This is an action by the International Union, United Automobile, Aerospace & Agricultural Implement Workers Union-UAW (UAW) under the Labor Management Relations Act, *29 U.S.C. § 185* seeking to enforce compliance with an arbitrator's award. The defendant Dana Corporation (Dana) has filed a motion to dismiss, stay or transfer this action. (Doc. 4).

For the reasons that follow, Dana's motion shall be denied, and it shall be directed to show cause within ten days of the date of this order why it should not be enjoined from maintaining a declaratory judgment action now pending in the United States District Court for the Middle District of North Carolina.

Dana and the UAW are signatories to a collective bargaining agreement (the Master Agreement) covering those of Dana's employees who are represented by the UAW. With regard to employees whom the union does not represent, Dana has provided the UAW with a side letter to the Master Agreement, referred to by the parties as the "Letter of Understanding Concerning Union Representation" (Letter of Understanding). In [*3] that letter, Dana agrees to remain neutral (i.e., from making anti-union statements) in response to union organizing activities. That letter also provides that:

> All disputes involving neutrality will be submitted to the Arbitrator for resolution. The Arbitrator's decision shall be final and binding. Neither party shall resort to legal action as a result of a dispute involving past or future conduct regarding neutrality. The only time legal action would be appropriate would be when one party failed to abide by the Arbitrator's decision

and such failure was determined by the Arbitrator.

Among the Dana facilities not covered by the Master Agreement is a plant in Greensboro, North Carolina. Following an unsuccessful effort to organize the workers at that plant, the UAW filed a grievance alleging that Dana had violated the neutrality provision of the Letter of Understanding. On September 17, 1999, the arbitrator issued a decision sustaining the union's grievance in part and imposing certain remedies.

Dana's Director of Industrial Relations spoke with Phil Working, a UAW official, on September 22, 1999. During that conversation, Mr. Werking told Mr. Warders about the arbitrator's [*4] decision. Mr. Warders asked Mr. Werking to fax a copy to him. During a later telephone conversation, n1 Mr. Werking asked Mr. Warders if Dana intended to comply with the arbitrator's award. Mr. Warders told Mr. Werking that Dana was "considering it."

> n1 Mr. Warders in not certain whether his second conversation with Mr. Werking took place on September 22d or 23rd. In view of the fact that the parties' suits were filed on September 24, 1999, it appears from the sequence of events related by Mr. Warders that his second telephone conversation with Mr. Werking took place on the 23rd, and his personal communications with Mr. Werking occurred when they were together on the 24th.

On September 24, 1999, Mr. Warders and Mr. Werking were together. That morning, Mr. Werking told Mr. Werking that Dana still had not made a decision, and that the matter was in the hands of its legal department and management. Mr. Warders told Mr. Werking that he would check on it and inform him as soon as he knew anything. Around 2:00 p.m. [*5] that afternoon, Mr. Warders learned that Dana had filed suit to vacate the award. He immediately told Mr. Werking about that action.

Dana's complaint, which seeks declaratory and injunctive relief, was filed in the Middle District of North Carolina on September 24, 1999, at approximately 11:30 a.m. The UAW filed this action in this court about four hours later, at 3:44 p.m., that afternoon.

Dana's pending motion to dismiss is based on the "[HN1] first to file" rule, whereby, as a general principle, the first court in which a suit is filed will keep and decide the case, even if the same or a substantially similar suit is filed in another court. The "first to file" rule has recently been summarized by Judge Gwin of this court in *Plating*

*Resources, Inc. v. UTI Corp., 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999)* (selected citations omitted):

[HN2] The first-to-file rule is a well-established doctrine of federal comity. The rule was first recognized by the United States Supreme Court in *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824)*. There, the Supreme Court stated that "in all cases of concurrent jurisdiction, the court which first has possession of [*6] the subject must decide it." *Id. at 534*. The rule since has been clarified and applied in cases involving concurrent federal jurisdiction.

The first-to-file rule has evolved into a mechanism used to promote judicial efficiency. The rule provides that "when identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment." *In re Burley, 738 F.2d 981, 988 (9th Cir.1984)*. Generally, courts should invoke the rule when two suits involving substantially the same parties and purpose have been filed in a concurrent jurisdiction. However, the same party and same issue is not an absolute requirement.

Although courts should not apply the first-to-file rule too rigidly or mechanically, the rule's importance "should not be disregarded lightly." *Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 750 (9th Cir.1979)*. Notably, "the most basic aspect of the first to file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir.1991)*. "The decision and the discretion belong to the district court." Id.

[*7]

There can be no doubt that, in view of the proximity of the filing of the complaints, congruence of the parties, and equivalence of the issues, the first to file rule applies in this case. See *Plating Resources, 47 F. Supp. 2d at 903* (citing *Alltrade, 946 F.2d at 625-26*).

That does not end the inquiry, however, because, as the Judge Gwin also pointed out, "[HN3] district courts always [have] discretion given appropriate circumstances justifying departure from the first filed rule" to decline to follow the rule in case involving "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum

shopping." Id. (citing *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971-972 (3rd Cir.1988)*. In that case, which involved a dispute concerning a contract, Judge Gwin, after concluding that the original plaintiff had not acted in bad faith or filed its suit as a preemptive strike, followed the first to file rule and transferred the case before him to the jurisdiction of first filing. *47 F. Supp. 2d at 905*.

In Plating Resources, as in this case, the first-filed complaint sought declaratory judgment. The parties appear, however, [*8] not to have raised, and Judge Gwin, consequently, did not take into account the significance of that fact.

Courts whose attention has been drawn to that aspect of a first-filed complaint have, however, more often than not declined to apply the first to file rule. This appears to have been particularly so since the Supreme Court's 1995 decision in *Wilton v. Seven Falls Co., 515 U.S. 277, 286, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)*, in which the Court reconfirmed the principle that, "[HN4] since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." As stated in Wright & Miller, Federal Practice & Procedure § 2758, "Wilton thus makes clear that the real question for the court is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict."

Even prior to Wilton, the Seventh Circuit, in a frequently-cited case, stated, in response to a party's claim in a patent case that the district court failed properly to permit it to maintain [*9] a first-filed declaratory judgment action:

The mere fact that Tempco filed its declaratory judgment action first does not give it a "right" to choose a forum. This circuit has never adhered to a rigid "first to file" rule. We decline Tempco's invitation. . . to adopt such a rule here. As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum."

*Tempco Elec. Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987)* (citations and footnote omitted).

In reaching this conclusion, the court in Tempco emphasized, "'The federal declaratory judgment is not a prize to the winner of the race to the courthouse.'" Id. (citing *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir.1978)* (quoting *Perez v. Ledesma, 401 U.S. 82, 119 n. 12, 27 L. Ed. 2d 701, 91 S. Ct. 674 (1971)* (Brennan, J., dissenting)). Where declaratory judgment complaints have enabled others to cross the courthouse threshold ahead of other litigants, courts often have declined to let the winner profit from its [*10] victory. See, e.g., *British Borneo Exploration, Inc. v. Enserch Exploration, Inc., 28 F. Supp. 2d 999 (E.D. La. 1998),* judgment vacated on other grounds, *1999 U.S. Dist. LEXIS 1021, 1999 WL 58285 (E.D. La. 1999)* ("Such machinations have been found to constitute a 'rush to the courthouse' and grounds for the dismissal of a declaratory judgment suit"); *Generac Corp. v. Omni Energy Systems, Inc., 19 F. Supp. 2d 917 (E.D. Wis. 1998)* (court declined to ratify results of "race to the courthouse").

Improper forum shopping typically motivates the first filer's run to the court of its choosing. Such motive is found most readily, and viewed most unenthusiastically, where the first filer acted on the basis of an anticipation that its opponent was about to file a substantive suit against it. See, e.g., *Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 (5th Cir.1983);* ("Anticipatory suits are disfavored because they are an aspect of forum-shopping."); *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir.1978)* ("When a declaratory judgment action has been triggered by a notice letter, this equitable consideration may [*11] be a factor in the decision to allow the later filed action to proceed to judgment."); *909 Corp. v. Village of Bolingbrook Police Pension Fund, 741 F. Supp. 1290, 1292 (S.D. Tex.1990)* ("Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum."); *Kmart Corp. v. Key Indus., Inc., 877 F. Supp. 1048, 1053 (E.D. Mich.1994)* ("suit brought purely in anticipation of a filing by the defendant in another forum should be dismissed"); *Charles Schwab & Co., Inc. v. Duffy, 1998 U.S. Dist. LEXIS 19606, 1998 WL 879659 (N.D. Cal. 1998)* (appropriate to depart from the first-to-file rule where suit was anticipatory); *Excel Music, Inc. v. Simone, 1996 U.S. Dist. LEXIS 242, 1996 WL 5708, *6 (E.D. La. 1996)* (party filing suit in anticipation of a suit in another forum should not be rewarded for what amounts to forum shopping).

Thus, as recently stated in *PAJ, Inc. v. Yurman Design, Inc., 1999 U.S. Dist. LEXIS 1424, 1999 WL 68651,* (N.D. Tex. 1999) (citations omitted), in which the court concluded that a declaratory judgment improperly had

been first [*12] filed to "short circuit" a suit which it saw coming:

> Such motives have been found to constitute a "rush to the courthouse" and grounds for the dismissal of a declaratory judgment suit. Courts have found that the party filing suit in anticipation of a suit in another forum should not be rewarded for what amounts to forum shopping. "Put another way, [HN5] 'the Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum.'" Further, anticipatory suits deprive a potential plaintiff of his or her choice of forum.. . .
>
> The "misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.". [A party] cannot be permitted to transform "a doctrine that was offered as a shield into a sword." "A plaintiff's choice of forum should only be given protection where the plaintiff before the court is the proper plaintiff--not a manufactured plaintiff through the misapplication of a declaratory judgment."

[*13]

Concern with the identity of the "true plaintiff has likewise been expressed by other courts. Courts have noted that a declaratory judgment action can reverse the roles, so that the defendant, rather than being the aggrieved party, is the party with substantive claims against the plaintiff in the declaratory judgment action. See *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 489 (8th Cir.1990)* (court can consider which party is the "true plaintiff"); *British Borneo Exploration, Inc. v. Enserch Exploration, Inc., 28 F. Supp. 2d 999, 1008* ("the action as filed by British-Borneo reverses the roles of the parties").

The device of the declaratory judgment can thus, when cleverly employed, be an effective aid to forum shopping by a party who anticipates that suit is about to be filed against it. Proper forum selection should not be confused with inappropriate forum shopping. [HN6] A plaintiff seeking redress for a cognizable injury is entitled, to the extent able to choose among several forums, to select the one that it finds most attractive. Forum

shopping, on the other hand, occurs when a party, perceiving that it may find itself forced into a disadvantageous [*14] forum, seeks to manipulate procedural devices to secure an advantage which, were those devices not available, it could not employ to defeat its opponent's choice of forum.

One of those devices, as the foregoing cases make clear, is the declaratory judgment. But [HN7] the limited opportunity afforded by the Declaratory Judgement Act, *28 U.S.C. § 2201* to seek a declaration of rights where an opponent may be disinclined to do so, or where the underlying controversy has not fully matured, see generally Wright & Miller, supra, § 2757, should not be employed for other purposes, such as to tolerate, much less reward forum shopping. Indeed, some courts have noted that a first-filed declaratory judgment action may be deemed moot once the substantive action on the underlying merits has been filed. *Chicago Linen Exchange v. Adler, 888 F. Supp. 92, 93* (N.D. Ill. As the Seventh Circuit noted in Tempco, where the substantive plaintiff has filed its suit and raised all the issues originally sought to be adjudicated by the first-filer's declaratory judgment action, the initial "declaratory judgment serves no useful purpose." *819 F.2d at 749.* [*15] To the extent that Dana filed its declaratory judgment action to obtain a prompt adjudication of its rights, it can obtain that result as readily here as in North Carolina.

I am persuaded that Dana's declaratory judgment complaint was motivated by a desire to preempt the choice of forum that otherwise would be for the union to make. The timing of Dana's suit, which was filed even before Dana gave the union any other answer to the union's inquiries about its intentions, strongly suggests a preemptive purpose.

The scenario in this case is similar to that in *Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir.1967),* and *Capitol Records, Inc., v. Optical Recording Corp., 810 F. Supp. 1350, 1353-54 (S.D.N.Y.1992).* In both cases a declaratory judgment complaint was filed shortly after the other party indicated an intent sue. Just as the court in Amerada found "sufficient evidence to support the judge's finding that the instant action was filed by Amerada as the immediate result of [a] letter" from its opponent, I believe that Dana chose the timing of and forum for its declaratory judgment action on the basis of its awareness that the [*16] union would soon be filing a § 185 action.

In addition, there is no other plausible explanation for Dana's actions. The convenience of the parties could not have been a factor motivating Dana's decision to file in the Northern District of North Carolina. Its headquarters are here, as are, in all likelihood, any witnesses familiar with and documents relating to the drafting and

negotiation of the Letter of Understanding. Giving the apparently differing views about the meaning of that document, evidence about its interpretation may be forthcoming, if otherwise admissible.

In any event, testimony from North Carolina witnesses is not likely in this suit, which on the record and involves a limited scope of review, to enforce an arbitration award. The fact that this litigation originates in activities in one of Dana's plant in North Carolina is, accordingly, immaterial to a determination of the appropriate location of the litigation. Of at least equal importance is the fact that prior disputes concerning the union's North Carolina organizing efforts have been heard by this court and reviewed by the Sixth Circuit. See *UAW v. Dana Corporation, 697 F.2d 718 (6th Cir. 1983)* [*17] (en banc). All relevant contacts and connections favor proceeding here rather than in North Carolina.

[HN8] Once a court determines that a suit is duplicative and wrongly filed, it has several options. It can dismiss or transfer the suit before it, or it can enjoin the parties from maintaining the duplicative suit. *Smith v. S.E.C., 129 F.3d 356, 361 (6th Cir. 1997)* (en banc) ("When a federal court is presented with such a duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit.") (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84, 96 L. Ed. 200, 72 S. Ct. 219 (1952)).* Accord, *Capitol Records, Inc., v. Optical Recording Corp., 810 F. Supp. 1350, 1354 (S.D.N.Y.1992).* Dana shall be given ten days from the date of this order to show cause why further maintenance of the suit in the Northern District of North Carolina should not be enjoined.

**Conclusion**

[HN9] Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims [*18] create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit. This exception to the first to file rule will be applied where the parties and issues are the same, or essentially so, and it appears that the first filed suit was brought in anticipation of forthcoming suit by the substantive plaintiff. At the very least, the declaratory judgment plaintiff should have the burden of showing persuasive cause why its suit should not be dismissed or enjoined.

Here I have no doubt that Dana filed its suit to deprive the union of its choice of forum, and gain whatever tactical advantages might thereby accrue. Its actions were at least arguably premature under the Letter of Understanding, in which Dana agreed to refrain from legal

action until after a failure to comply with the arbitrator's award had been "determined by the arbitrator." In any event, Dana's decision to sue before responding, as Mr. Warders had told Mr. Werking that it would, to the union's request for information shows that it wanted to get to the courthouse before the union knew the race was underway.

The policy favoring arbitration [*19] would be ill-served if parties who lost before the arbitrator were able routinely to file declaratory judgment actions. The successful grievant is the "true plaintiff," because it has been determined by the arbitrator to have a right entitled to a remedy. The choice whether to seek enforcement of that remedy by means of litigation or to forego such relief is properly for it to make, as is the choice of where that remedy should be sought.

In light of the foregoing, it is hereby

ORDERED THAT:

1. Dana Corporation's motion to dismiss, stay or transfer (Doc. 4) be, and the same hereby is denied; and

2. Dana shall, within ten days of the date of this order, show cause why an order should not issue enjoining it from further maintaining its declaratory judgment action in the Middle District of North Carolina; the union shall file its opposition to Dana's response within one week thereafter.

So ordered.

December 6th, 1999

James G. Carr

United States District Judge

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.                                                                  Page 1
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

C
Hunt Mfg. Co. v. Fiskars Oy AB
E.D.Pa.,1997.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
HUNT MANUFACTURING CO.
v.
FISKARS OY AB, Fiskars Holdings, Inc., and
Fiskars, Inc.
**No. Civ.A. 97-2460.**

Oct. 02, 1997.

Joseph F. Posillico, Synnestvedt & Lechner,
Philadelphia, PA, for Hunt Manufacturing Co.,
plaintiff.
Anthony R. Twardowski, Wolf, Block, Schorr and
Solis-Cohen, Phila, PA, David J. Harth, Joan L. Eads,
Foley and Lardner, Madison, WI, Nancy Y.T.
Hanewicz, Foley and Lardner, Madison, WI, for
Fiskars OY AB, defendant.
Anthony R. Twardowski, David J. Harth, Joan L.
Eads, Nancy Y.T. Hanewicz, (See above), for Fiskars
Holdings, Inc., defendant.
Anthony R. Twardowski, David J. Harth, Joan L.
Eads, Nancy Y.T. Hanewicz, (See above), for
Fiskars, Inc., defendant.

**MEMORANDUM AND ORDER**
HUTTON, J.
**\*1** Presently before the Court are the Defendants'
Motion to Dismiss, or in the Alternative, to Transfer
Venue, and the Plaintiff's opposition thereto. Also
before the Court are the Plaintiff's Motion to Enjoin
Defendants from Pursuing Judicial Action in Other
Forums, and Defendants' response thereto. For the
following reasons, Defendants' Motion to Dismiss is
GRANTED and Plaintiff's Motion to Enjoin is
DENIED.

**I. BACKGROUND**

The Plaintiff, Hunt Manufacturing Co. ("Hunt"), is a
Pennsylvania corporation based in Philadelphia. The
Defendants are Fiskars Oy AB, a Finnish corporation,
and its subsidiaries Fiskars Inc. and Fiskars Holdings,
Inc., both Wisconsin corporations (collectively
"Fiskars"). Both Hunt and Fiskars are in the
business of making paper-cutting products.

Fiskars Oy AB is the owner of United States Patent
No. 5,322,001 (the "001 patent"), and Fiskars Inc. is
its exclusive licensee. The 001 patent, issued June
21, 1994, discloses a paper cutter with a circular
blade, mounted on a track. Paper is placed on a flat
surface and the circular cutter is drawn along the
track to cut the paper.

Hunt manufactures and sells a similar rotary paper-
cutter product under the "BOSTON® " brand name.
Although not relevant to the procedural question
before the Court, Hunt alleges that its product does
not incorporate the specific aspects of Fiskars'
product embraced by the 001 patent.

Earlier this year, Fiskars determined that Hunt's
product infringed on the 001 patent. Therefore, on
March 4, 1997, Fiskars' attorney sent a letter to
Donald L. Thompson, Hunt's President and Chief
Operation Officer, charging Hunt with patent
infringement and unfair competition, and demanding
that Hunt immediately cease and desist from such
activity. The letter imposed a 14 day deadline to
comply in all respects or else Fiskars would bring
suit.

On March 10, 1997, Hunt's attorneys notified Fiskars
that they had been asked to review the matter, and
that they would communicate with Fiskars promptly
after completing the review.

The March 18 deadline passed without Fiskars taking
any action. Fiskars' attorneys finally called Hunt's
on March 28, and Hunt's returned the call on March
31. Hunt's attorneys told Fiskars' that Hunt would
give its response to the infringement charges by April
11, 1997.

Hunt filed the present declaratory judgment action in
the Eastern District of Pennsylvania on April 10,
1997. Fiskars first learned of the action on April 14,
and was served with summons and complaint on
April 17. Fiskars then filed its own affirmative
patent infringement suit in the Western District of
Wisconsin on April 18, 1997.

In the Wisconsin litigation, Hunt sought only the
dismissal of Fiskars, Inc. as a plaintiff against it in
the action. *See Fiskars, Inc. v. Hunt Mfg. Co.,* No.
97-C-0255-C, slip op. at 1-2 (W.D.Wi. August 15,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

1997) (dismissing plaintiff Fiskars, Inc. for lack of standing as a patentee under 35 U.S.C. § 281 (1994)). Hunt apparently did not file a motion to dismiss the Wisconsin litigation or transfer venue to this Court.

## II. DISCUSSION

*2 In the present motion, Fiskars asks the Court either to dismiss this action or transfer venue to the Western District of Wisconsin. Hunt opposes the motion, and further requests that the Court enjoin the Wisconsin litigation.

### A. *Jurisdiction Under the Declaratory Judgment Act*

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994), provides that:
In a case of *actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

To demonstrate the presence of an actual controversy the declaratory plaintiff must show that (1) it has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement. *Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1038 (Fed.Cir.1995). In the present case, the parties do not dispute that Hunt has designed and sold a rotary paper-cutter similar to that disclosed in the 001 patent. Likewise, there is little question that Fiskars' March 4th letter to Hunt placed Hunt in reasonable apprehension of being sued for infringement. Therefore, the case presents a controversy sufficient to establish this Court's capacity to hear the case under the Declaratory Judgment Act.

However, the presence of an actual controversy, while providing authority, does not require the Court to accept jurisdiction over a declaratory judgment action. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 813 (Fed.Cir.1996), *cert. denied,* 519 U.S. 1101, 117 S.Ct. 789, 136 L.Ed.2d 730 (1997). The Act's "may" language gives the Court "unique and substantial discretion in deciding whether to declare

the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). It grants the Court leeway in which to make "a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Services,* 51 F.3d at 1039. Both the Supreme Court and the Federal Circuit have emphasized recently that the Act is an *enabling act* that provides the courts with the power, rather than the obligation, to grant relief. *See Wilton,* 115 S.Ct. at 2144; *Norand,* 89 F.3d at 813. Accordingly, the district court's decision to accept or refuse jurisdiction is reviewed under an abuse of discretion standard. *Norand,* 89 F.3d at 813.

### B. *Motion to Dismiss*

In their motion, the Defendants argue that this action should be dismissed in favor of the subsequently filed Wisconsin litigation. They state that Hunt mislead them of its intention to bring the present action for the sole purpose of winning the "race to the courthouse." This, they claim, is an abuse of the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), which was not meant to provide a potential defendant with a means of forum-shopping. Hunt responds that this declaratory judgment action was appropriate under the circumstances, and that the Court should continue to entertain it under the principle that in all cases of concurrent federal jurisdiction the first-filed action should take precedence.

#### 1. *First-Filed Rule and Exceptions*

*3 Hunt is correct that as between a mirror-image declaratory judgment action and affirmative patent infringement action, the general rule favors the forum of the first-filed action, whether or not it is the declaratory action. *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937-38 (Fed.Cir.1993) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). However, this presumption is not so firm as Hunt suggests. *Novo Nordisk of North America, Inc. v. Genentech, Inc.,* 874 F.Supp. 630, 632 (S.D.N.Y.1995). Exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937. Recognized exceptions include "when the choice of the forum of the first-filed case was the result of pure forum shopping, if the balance of convenience favors the second forum, or if the first filed action is against a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

customer of the alleged infringer and the second involves the infringer himself." *Novo Nordisk*, 874 F.Supp. at 632. The Court may also depart from the rule based on general considerations of "judicial and litigant economy" and "the just and effective disposition of disputes." *Serco Services*, 51 F.3d at 1039. "Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served." *Id.* (quoting *Kerotest*, 342 U.S. at 184).

## 2. *Forum-Shopping Exception Applies*

The purpose of the Declaratory Judgment Act is "to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Genentech*, 998 F.2d at 937. *See Serco Services*, 51 F.3d at 1039. In many cases, the declaratory defendant is prepared to, and does, file its own affirmative suit shortly afterwards. Therefore, a district court cannot dismiss a proper declaratory action merely because affirmative infringement litigation is subsequently brought elsewhere. *See Genentech*, 998 F.2d at 938. It may, however, dismiss the action where it is shown that the declaratory action was filed in anticipation of the impending litigation and motivated solely by considerations of forum shopping. *See Serco Services*, 51 F.3d at 1040; *Novo Nordisk*, 874 F.Supp. at 633. Such a case falls outside the Act's purpose, in the patent context, of providing a remedy where a patentee delays suit in order to further damage the alleged infringer's business. *See* 10A Charles A. Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2761 (1983).

In *Serco Services*, the Federal Circuit upheld the Northern District of Texas' decision to dismiss a similar declaratory judgment action as anticipatory. Both the declaratory plaintiff, Serco, and the declaratory defendant, Kelly, manufactured loading dock equipment used in the trucking industry. *Serco Services*, 51 F.3d at 1037. Kelly sent Serco a December 23, 1992 letter charging Serco with patent infringement, and giving Serco until February 1, 1993 to reply. *Id.* at 1038. Serco responded on January 29th with its conclusion that its product did not infringe. *Id.* Kelly took no action for over eight months. Finally, on September 8, 1993, Kelly sent Serco a letter that reiterated the charges and threatened suit if Serco did not comply by September 20th. *Id.* On the 20th, Serco notified Kelly that it continued to deny the charge of infringement, and

that it had taken "the necessary action in Texas" to protect itself. *Id.* In fact, Serco had filed its declaratory judgment action in the Northern District of Texas on September 17th. *Id.* Therefore, on the 20th, Kelley filed its own patent infringement action in the Eastern District of Wisconsin. *Id.*

*4 The Northern District of Texas dismissed Serco's declaratory judgment action in favor of Kelly's subsequent infringement action. *Id.* at 1039. The Court found that Serco's suit was filed in anticipation of Kelley's, and that the balance of convenience favored proceeding in the Wisconsin forum. The Federal Circuit affirmed, finding that the district court had not abused its discretion in relying on forum-shopping in combination with other factors. *Id.* at 1039-40.

In the present case, the Court finds that Hunt, like Serco, filed its declaratory judgment action solely for forum-shopping purposes. Fiskars believed that Hunt would enter settlement negotiations, as it had in a previous infringement dispute. Its demand letter was merely the first step in the process. Fiskars' failure to bring suit at the conclusion of the fourteen day period indicates not that Fiskars was "hanging the Sword of Damocles" over Hunt, but that Fiskars hoped to settle matters without litigation. Hunt's declaratory judgment action cut short the possibility of extra-judicial settlement. Permitting this case to go forward would discourage similar efforts at informal settlement and promote "irresponsible litigation." *See Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F.Supp. 144, 148 (D.Mass.1993) (dismissing declaratory judgment action filed for forum-shopping purposes alone).

Hunt seeks to portray Fiskars as wielding its claim of infringement in a menacing manner, to place a cloud over Hunt's business. However, Hunt does not allege that Fiskars took any threatening action other than sending its demand letter. Fiskars did not, for example, publicize its claim or threaten Hunt's customers with suit. Instead, Hunt employed the same subterfuge as Serco in an attempt to preempt the "natural plaintiff" in its choice of forum. Hunt's only purpose for bringing this action on the 10th must have been to surprise Fiskars and have this litigation take place in Pennsylvania rather than Wisconsin. Therefore, the Court finds that Hunt filed its declaratory action solely for forum-shopping purposes.

## 3. *Judicial and Litigant Economy Favors Dismissal*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 4
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Whether or not forum-shopping alone is a sufficient basis for dismissal, in this case considerations of judicial and litigant economy further counsel dismissal.  *See Serco Services,* 51 F.3d at 1039.

In the Wisconsin litigation, Hunt did not move to dismiss or transfer the proceedings to this Court. Instead, it sought and obtained only the dismissal of Fiskars, Inc. As a result, the Wisconsin litigation continued, and has already been scheduled for trial. Therefore, if the Court does not dismiss this matter there will be duplicative proceedings, wasting the resources of both the litigants and the federal judiciary.

Hunt argues that the Western District of Wisconsin's dismissal of Fiskars, Inc. as a plaintiff means that only this litigation can afford Hunt complete relief. But Hunt deliberately procured these circumstances by its own motion to dismiss.   The Court will not allow Hunt to raise Fiskars, Inc.'s absence in the Wisconsin litigation as grounds for continuing this litigation.   Finally, although duplicative proceedings could be avoided by enjoining the Wisconsin action, doing so would unduly reward Hunt's forum-shopping conduct.

### C. *Motions to Transfer Venue and to Enjoin Judicial Action*

**\*5** Given the Court's disposition on Fiskars' Motion to Dismiss, it need not reach its alternative Motion to Transfer Venue.   Likewise, Hunt's Motion to Enjoin the Wisconsin action is necessarily denied as moot.

An appropriate Order follows.

### ORDER

AND NOW, this 30th day of September, 1997, upon consideration of the Defendants' Motion to Dismiss, or in the Alternative, To Transfer Venue, and the Plaintiff's opposition thereto, IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss is **GRANTED.**

IT IS FURTHER ORDERED that Plaintiff's Motion to Enjoin Defendants from Pursuing Judicial Action in Other Forums is **DENIED** as moot.

E.D.Pa.,1997.
Hunt Mfg. Co. v. Fiskars Oy AB
Not Reported in F.Supp., 1997 WL 667117 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

LEXSEE 2004 U.S. DIST. LEXIS 760

**CROWN CORK & SEAL COMPANY, INC., Plaintiff, v. UNITED STEEL WORKERS OF AMERICA, AFL-CIO-CLC; MAX GLUGLA; RAYMOND MICHALOWSKI; JAMES BERTUCCI; individually and on behalf of a defendant class of retirees, Defendants.**

**03-CV-1381**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2004 U.S. Dist. LEXIS 760; 32 Employee Benefits Cas. (BNA) 1950*

**January 9, 2004, Decided**

**DISPOSITION:** [*1] Defendants' Motion to Dismiss granted and case dismissed. Judgment entered in favor of Defendants and against Plaintiffs.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employer sued defendants, retirees and a union, seeking a declaration that the employer lawfully reduced certain retirement benefits. Defendants moved to dismiss the complaint or to transfer the action for consolidation with a similar case in another district.

**OVERVIEW:** The employer contended that it was properly seeking a declaration of its rights with regard to reduction of retirement benefits, but defendants argued that the employer merely filed the action to preempt defendants' choice of forum, which was the proposed transferee district and potentially less favorable to the employer. The court held that, while the employer's requested declaratory relief was within the court's jurisdiction, defendants were the natural plaintiffs in the action who would normally sue to protect their retirement, and abstention was thus warranted. The court had discretion to decline declaratory jurisdiction, and overriding public and private interests indicated that the controversy should be resolved in defendants' choice of forum which had a nexus to the claims and where substantial progress was made in the similar litigation.

**OUTCOME:** Defendants' motion to dismiss was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
[HN1] The Declaratory Judgment Act provides that a district court which otherwise has jurisdiction may declare the rights and other legal relations of any interested party. *28 U.S.C.S. § 2201*(a).

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Declaratory Judgment Actions > State Judgments > Discretion*
[HN2] District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Federal & State Interrelationships > Abstention*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion*
[HN3] The Brillhart abstention doctrine holds that, in determining whether or not to exercise jurisdiction, a district court should ascertain whether the questions or controversy between the parties to the federal suit can better be settled in a proceeding pending in a state court.

*Civil Procedure > Federal & State Interrelationships > Abstention*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion*
[HN4] While Brillhart abstention is usually invoked where there is a pending or imminent related state pro-

Case 1:07-cv-00126-JJF    Document 11-8    Filed 05/24/2007    Page 3 of 5

Page 2

2004 U.S. Dist. LEXIS 760, *; 32 Employee Benefits Cas. (BNA) 1950

ceeding, its guidelines for the exercise of a federal court's discretionary jurisdiction are equally applicable where the related case is in another federal district court.

***Civil Procedure > Federal & State Interrelationships > Abstention***

[HN5] The first-filed rule is not a rigid or inflexible rule to be mechanically applied, and courts should refuse to permit first-filed action to proceed in various circumstances, such as when the first suit was motivated by forum-shopping, or when the second filed action had developed further than the initial suit, or when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.

**COUNSEL:** For CROWN CORK & SEAL COMPANY, INC., plaintiff: Amy E. Dias, Jones Day, Pittsburgh, PA.

For CROWN CORK & SEAL COMPANY, INC., plaintiff: Jerome A. Hoffman, Dechert, Price & Rhoads, Philadelphia, PA.

For CROWN CORK & SEAL COMPANY, INC., plaintiff: James A. Rydzel, Jones, Day, Reavis & Pogue, Cleveland, OH.

For CROWN CORK & SEAL COMPANY, INC., plaintiff: Lawrence Charles DiNardo, Jill Susan Vorobiev, Jones, Day, Reavis & Pogue, Chicago, IL.

For CROWN CORK & SEAL COMPANY, INC., plaintiff: Andrew M. Kramer, Jones, Day, Reavis & Pogue, Washington, DC.

For UNITED STEELWORKERS OF AMERICA INTERNATIONAL UNION, AFL-CIO- CLC, MAX GLUGA, RAYMOND MICHALOWSKI, JAMES BERTUCCI, defendants: William T. Payne, Schwartz, Steinsapir, Dohrmann & Sommers, John Stember, Pittsburgh, PA.

For UNITED STEELWORKERS OF AMERICA INTERNATIONAL UNION, AFL-CIO- CLC, defendant: David L. Gore, Gore & Gore, Chicago, IL.

**JUDGES:** Arthur J. Schwab, United States District Judge.

**OPINION BY:** Arthur J. Schwab

**OPINION:**

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before this [*2] Court is defendants' Motion to Dismiss (doc. no. 29) pursuant to *FRCP Rule 12(b)(1)and (6)*, or in the alternative, to transfer to federal court in Cincinnati, where a similar class action case is pending. In this Pittsburgh case, Plaintiff Crown Cork & Seal Company, Inc. sued the individual blue-collar retirees defendants ("participants") - as representatives of a "defendant class," for a declaratory judgment that Crown's reduction of certain retirement benefits was proper. The other defendant is the labor union that negotiated on behalf of participants when they were actively employed, and that entered into the labor agreements containing the retirement benefits at issue. That union -- a plaintiff in the Cincinnati action -- is the United Steelworkers of America, AFL-CIO-CLC. This Court believes that defendant Union and defendant class members in the Pittsburgh action are the "natural" plaintiffs in the asserted claims -- the parties who normally would sue to protect rights to the retirement benefits; some of these retirees are plaintiffs in the Cincinnati action.

In the class action complaint in Cincinnati (entitled Lawhorn v. Crown Cork [*3] & Seal Company, Inc., Case No. 03-CV-461), plaintiff class representatives allege that participants earned these retirement benefits over decades of service at the can manufacturing plants owned by Crown, as well as other plants Crown acquired as a result of its purchase of the Metal Division of the Continental Can Company on July 15, 1990. The Lawhorn class representatives allege that successive labor agreements contained provisions that established Crown's obligation to provide retiree medical benefits throughout retirement. The Cincinnati Complaint also alleges that Crown unilaterally reduced Participants' benefits and that Crown has taken the position that it is free at any time to further reduce or even eliminate said benefits. The Lawhorn class representatives also allege that Crown's conduct is actionable under Section 301 of the Labor Management Relations Act, *29 U.S.C. § 185(a)*, and under Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1132(a)(1)(B)and (a)(3)*, in that said conduct allegedly violates the rights of the participants under employee benefit plans. [*4]

On or about June 6, 2003, the same day Crown reduced the retirement benefits (without notice), effective August 1, 2003, Crown filed this action (again without notice) in federal court in Chicago. Defendants contend that said filing in Chicago was to deprive the "natural" plaintiffs from exercising their rights to sue in a forum of their own choice. Twenty (20) days thereafter, the Cincinnati federal court action was commenced. The Union contends that Crown filed in Chicago to avoid the United

States Court of Appeals for the Sixth Circuit, supposedly because the United States Court of Appeals for the Seventh Circuit would be more favorable to employers in retiree medical benefit cases, and so Crown, defendants argue, sued without giving the "natural" plaintiffs the opportunity to sue first in its choice of forum (i.e., federal court in Cincinnati - - the Lawhorn action).

Defendant retirees and Union in the Chicago action moved to dismiss, contending that Crown's "preemptive" strategy was an improper use of the *Declaratory Judgment Act* (as they now so argue in the Pittsburgh action). Judge Shadur (the Chicago federal judge to whom the case was assigned) instead of setting a briefing [*5] schedule and receiving opposition and reply briefs on the motion to dismiss, promptly scheduled a status conference, and at the conference he ordered the Chicago action transferred to Pittsburgh. Supposedly neither side requested such a transfer. In transferring the case to Pittsburgh, Judge Shadur made no ruling on the motion to dismiss.

After the transfer to Pittsburgh, on or about September 17, 2003, the case was assigned to Judge Cercone, but he recused himself upon determining that his mother is among the retirees affected by Crown's action relating to retirement benefits (and is therefore a possible member of both the proposed Lawhorn class and the proposed class in the Pittsburgh action). The case was assigned to this Court on or about December 1, 2003.

By order of Judge Cercone of November 20, 2003, a briefing schedule was set on the renewed defendants' motion to dismiss. The renewed motion is based on the following grounds: First, this Court should dismiss (or transfer the case to Cincinnati) because Crown has improperly invoked the Declaratory Judgment Act to bring a lawsuit that is, in all important respects, a "pre-emptive strike" that improperly deprives the retirees [*6] of their rights to frame their own claims and choose their own forum. Defendants argue that as the "natural" plaintiffs, they have chosen their forum (by the filing Lawhorn case), and the Judge in Lawhorn (Judge Beckwith) has been moving the case along, with the parties having already conducted their *Rule 26(f)* meeting, with the *Rule 16* conference having taken place, and with the Lawhorn Plaintiffs having moved for class certification. Moreover, in August 2003, the Lawhorn parties briefed the propriety of proceeding in Cincinnati.

Defendants secondly argue that Crown fails to state a claim under ERISA because that statute does not authorize a cause of action where an employer sues its own retirees for declaratory judgment relief. Crown relies on *29 U.S.C. § 1132(a)(3)*, which allows "fiduciaries" to sue "to obtain ... appropriate equitable relief ... to enforce ...

the terms of the plan". Defendants contest that Crown is not seeking "appropriate equitable relief."

[HN1] The Declaratory Judgment Act ("DJA"), *28 U.S.C. § 2201*, provides that a district court which otherwise has jurisdiction "*may* declare the rights and other [*7] legal relations of any interested party," *28 U.S.C. § 2201(a)* (emphasis added). The United States Supreme Court has made clear that [HN2] "district courts possess discretion in determining whether and when to entertain an action under the DJA, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co., 515 U.S. 277, 282, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995)*. See *United States v. Commonwealth of Pennsylvania, 923 F.2d 1071 (3d Cir.1991)* (setting forth factors to consider in deciding whether to exercise DJA discretion to entertain a declaratory judgment).

[HN3] *Brillhart* abstention doctrine holds that, in determining whether or not to exercise jurisdiction, a district court "should ascertain whether the questions or controversy between the parties to the federal suit ... can better be settled in [a] proceeding pending in the state court." *Brillhart v. Excess Ins. Co., 316 U.S. 491, 495, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942)* (district courts have discretion to dismiss a declaratory judgment action when "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory [*8] judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). [HN4] While *Brillhart* abstention is usually invoked where there is a pending or imminent related *state* proceeding, its guidelines for the exercise of a federal court's discretionary jurisdiction are equally applicable where the related case is in another federal district court. *See Fischer & Porter Co. v. Moorco Intern. Inc., 869 F. Supp. 323, 327-28 (E.D.Pa. 1994)* (Pennsylvania district court exercises discretion to accept jurisdiction over declaratory judgment despite existence of related case in another federal district court, and hears case under first-filed rule). *See also Hurley v. Columbia Cas. Co., 976 F. Supp. 268 (D.Del. 1997)* (district court declines to exercise DJA jurisdiction where related claim would be addressed and resolved in Chapter 11 bankruptcy proceeding). In any case, a declaratory judgment action should not be used as a race for res judicata. *Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1225 (3d Cir. 1989)*.

Applying these principles in the instant case, [*9] the Court finds overriding public and private interest in having this controversy resolved in Cincinnati, the forum chosen by the "natural plaintiffs," and therefore will decline to exercise jurisdiction under the DJA.

2004 U.S. Dist. LEXIS 760, *; 32 Employee Benefits Cas. (BNA) 1950

After reviewing the extensive motions and briefs and supporting documentation, this Court rules that the proper plaintiffs in an action to determine whether the retirees' retirement benefits can be unilaterally changed (and without notice) are the retirees and their Union. Further, that as the proper plaintiffs, the retirees and their Union should be permitted to select the forum of their choice so long as the selected forum has some nexus to the lawsuit.

Since the retirees and their Union have chosen as their forum the federal court in Cincinnati, since that case is substantially further along than this case, since that forum has nexus to the parties in the Lawthorn action, coupled with a very able and experienced jurist, and since the DJA grants discretion to the federal courts whether to declare the rights of the parties after considering the relevant conveniences and interests, this Court will grant the motion to dismiss. See *Equal Employment Opportunity Commission v. The University of Pennsylvania, 850 F.2d 969, 972, 976-77 (3d Cir. 1988),* [*10] aff'd on other grounds, *493 U.S. 182, 107 L. Ed. 2d 571, 110 S. Ct. 577 (1990)* [HN5] (first-filed rule "is not a rigid or inflexible rule to be mechanically applied," and courts should refuse to permit first-filed action to proceed in various circumstances, such when the first suit was motivated by "forum-shopping," or when "the second filed action had developed further than the initial suit," or "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum ...."); *UAW v. Dana Corporation, 1999 U.S. Dist. LEXIS 22525,* ** 5-6 *(N.D. Ohio 1999),* citing *Alltrade Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir.1991); Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., 16 Fed. Appx. 433,*

*437, 2001 WL 897452 (6th Cir. 2000)* (the Sixth Circuit listed factors weighing against application of the rule: "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.") See also d. Appx. 433, 437, *16 Fed. Appx. 433, 2001 WL 897452 (6th Cir. 2000)* (the Sixth Circuit listed factors weighing against application of the rule. [*11] "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.") See also *Mellon Bank, N.A. v. IBJ Schroder Bank & Trust, 1989 U.S. Dist. LEXIS 16517 (W.D.Pa. 1989)* (Ziegler, J.) ("Even if we assume that Mellon filed this action first, the minimal difference in filing time would further support our decision to depart from the 'first-filed' rule. In particular, no discovery or pretrial procedures have occurred, to our knowledge, in this district. Thus, no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute in New York.").

Accordingly,

AND NOW, this 9th day of January, 2004, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (doc. no. 29) is GRANTED, and this case is dismissed. It is FURTHER ORDERED that Judgment is entered in favor of Defendants and against Plaintiffs.

The Court expresses no opinion on defendants' alternative argument that the case should be dismissed for failure to state an ERISA claim, and the decision is without prejudice to their raising this issue before the United States District Court for the Southern District of Ohio.

Arthur J. Schwab [*12]

United States District Judge

# EXHIBIT H



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

E.I. DUPONT DE NEMOURS & COMPANY, )
Plaintiff, )
)
v. )
)
)
UNITED STEEL, PAPER AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
INTERNATIONAL UNION, )
)
Defendant. )

No. 07 CV 0103 (HEH)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Introduction

This case is part of a larger disagreement between Plaintiff E.I. du Pont de Nemours &

Company ("DuPont") and labor unions representing DuPont employees at numerous facilities

around the country.  The dispute arises from DuPont's announcement, in August of last year, of

various prospective changes to certain employee benefit plans that apply to eligible union and

non-union DuPont employees nationwide.  Certain of these benefit plans are regulated by the

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

The motion to dismiss filed by Defendant United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW")

misapprehends both the context of the dispute and the nature of the relief sought by DuPont in

this case.  As we explain below, DuPont, both in its role as a fiduciary of the various benefit

plans, and as an employer subject to a variety of legal challenges regarding the changes

announced in August, is perfectly entitled to seek resolution of the entire dispute in one forum.

DuPont's decision to bring this action is particularly appropriate in light of other litigation filed

by DuPont in this district, more than a month earlier, raising identical claims. There is no serious

issue regarding the joinder of necessary parties; the USW and its local affiliates share identical

interests such that the USW can properly represent the interests of the local unions in this

litigation. DuPont seeks declaratory and injunctive relief it has standing to seek and which this

Court is fully empowered to grant. Dismissal of this action would result in piecemeal litigation

of identical legal issues and would be contrary to settled principles of judicial economy.

Accordingly, the USW's motion to dismiss should be denied.

### Factual Background

DuPont employs more than 30,000 employees nationwide, of which more than 4,500 are

unionized. *See* Complaint, ¶ 5. The USW, either through or in conjunction with its local

affiliates, is the exclusive collective bargaining representative for hourly production,

maintenance, service and plant technical employees employed at five sites operated by DuPont.

*Id.*, ¶ 6. These include DuPont's Edgemoor plant in Edge Moor, Delaware, its Chambersworks

plant in Deepwater, New Jersey, and a chemical manufacturing plant in Niagara Falls, New

York. *Id.* Another union, the Ampthill Rayon Workers, Inc. ("ARWI"), which is unaffiliated

with the USW, represents employees at DuPont's Spruance Fiber Plant located in Ampthill,

Virginia. *See id.*, ¶ 53.

DuPont maintains and makes available to eligible employees a number of benefit plans,

including a Savings and Investment Plan, pension and retirement plans, life insurance, medical

care assistance, dental care assistance, and a vacation buying plan. *See id.*, ¶¶ 15-42. DuPont,

either directly or through DuPont employees or committees of such employees, is also a

fiduciary of each of these ERISA benefit plans. *Id.*, ¶ 5. Eligible employees represented by

DuPont's various labor unions may participate in these plans, according to the terms of collective

bargaining agreements negotiated between DuPont and the unions.

On August 28, 2006, DuPont announced, to all of its U.S. employees, a number of

prospective changes regarding eligibility for benefits under these benefit plans, some of which

applied to current employees and some of which applied only to employees hired after December

31, 2006. *See id*, ¶¶ 20, 25, 27, 31,35, 39, 44. Most of these changes affected benefit plans

regulated by ERISA and were effectuated through amendments to the plan made by the plan

sponsors for the various plans.

ARWI filed a grievance over the benefit eligibility issues referenced in the August 28

announcement. DuPont denied the grievance and ARWI demanded arbitration. DuPont refused

to arbitrate the grievance as presented. DuPont then filed suit against ARWI in this Court on

January 24, 2007. *See* First Amended Complaint, Count II, *E.I. DuPont de Nemours v. Ampthill

Rayon Workers, Inc.*, Case No. 3:07CV52 (E.D. Va.), ¶ 41 ("ARWI action").[1] In the ARWI

action, DuPont seeks declaratory and injunctive relief, contending that ARWI's grievance is not

arbitrable because it involves disputes over eligibility issues under the benefit plans that are

affirmatively excluded from the arbitration process and subject to resolution exclusively through

dispute resolution procedures established in the various benefit plans and/or through the civil

enforcement mechanisms of ERISA.

---

[1]    DuPont refers to and relies on this document in its Complaint, and it is therefore proper
for this Court to consider, to the extent necessary, when ruling on USW's motion to dismiss
under Rule 12(b)(6). *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

The USW followed the lead of ARWI. The USW and/or certain of its local affiliates

filed grievances challenging the August 28 announcement, claiming that it violated the collective

bargaining agreements in effect at those locations.[2] *See* Brean Decl., Exhs. 4-6. These

grievances, like the ARWI grievance, raise similar ERISA benefit eligibility issues arising from

the August 28 announcement and are virtually identical. *See* Brean Decl., Exhs. 4-6; Complaint,

¶¶ 46, 49, 52. The USW and/or its local affiliates, like ARWI, demanded arbitration of these

grievances. *See id.* On February 8, 2007, more than two weeks after DuPont filed the ARWI

action, the USW, through its Senior Associate General Counsel, threatened to file suit to compel

arbitration of the Edgemoor and Chambersworks grievances. *Id.*, ¶¶ 47, 50; USW Brief at 4;

Brean Decl., Exhs. 10-11. Thereafter, DuPont filed the Complaint in this case, seeking

declaratory and injunctive relief, including an order that the grievances that the USW or its local

affiliates filed related to the ERISA plan amendments are not arbitrable *Id.*, ¶¶ 63-65. The

Complaint also seeks a declaration that DuPont's actions in amending the ERISA plans do not

violate the applicable collective bargaining agreements. *Id.*, ¶¶ 67-69. DuPont sought leave to

amend the complaint in the ARWI action on the same day to seek this latter aspect of declaratory

relief.[3]

---

[2]      Prior to filing these grievances, Kenneth O. Test, USW's DuPont Council Chairman,
sought to arrange a meeting with DuPont, which would be attended by representatives from the
International and local union affiliates at all six locations represented by the USW. *See* Huggett
Decl., Exh. 5.

[3]      Shortly after DuPont initiated this action, three lawsuits were filed against the company
in separate federal courts relating to the August 28 announcement – one in New York by a USW
local affiliate, one in Delaware by both the USW and one of its local affiliates, and one in New
Jersey by a USW local affiliate. DuPont has been served with process in the New York and
Delaware actions, but not the New Jersey action. *See* Huggett Decl. at ¶ 5.

Because this Complaint involves the same conduct, raises the same legal issues, and seeks the exact same relief as the Amended Complaint in the ARWI action, DuPont designated this case as related to the ARWI action. At the April 5, 2007 pretrial conference in the ARWI action, DuPont advised the Court that it intends to move to consolidate the two cases. To that end, DuPont has filed this day a motion to consolidate the two cases.

Unions at various DuPont facilities have also filed a number of unfair labor practice charges against DuPont arising from the August 28 announcement. Specifically, prior to the time DuPont filed the Complaint in this matter, the USW and/or its local affiliates filed four separate unfair labor practice charges involving the Chambersworks, Edgemoor, Yerkes and Niagara Falls facilities. *See* Huggett Decl., Exhs. 3-6. Since the Complaint was filed, the USW and/or its local affiliates has filed an additional unfair labor practice charge with NLRB Region 9 in Cincinnati, involving DuPont's Louisville facility. *See id.*, Exh. 7. DuPont has also received an unfair labor practice charge filed with NLRB Region 5 in Baltimore by ARWI. *Id.*, Exh. 8. Each of these charges challenges DuPont's right under the various collective bargaining agreements and federal law to make the changes the company announced in August 2006. To the extent the charges challenge DuPont's rights under the collective bargaining agreements, they raise the same legal issues as presented in both this case and in the ARWI action.

## Legal Standards

The USW has moved to dismiss this action under Rule 12(b)(1), for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim on which relief can be granted, and Rule 12(b)(7) for failure to join necessary parties. The standards for evaluating such motions are well established.

Upon a motion brought pursuant to Rule 12(b)(1), the burden is on the plaintiff to prove the existence of subject matter jurisdiction, and the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

When considering a motion to dismiss under Rule 12(b)(6), the court must presume as true all the well-pleaded allegations in the complaint and must draw all inferences in favor of the plaintiff. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 229 (4th Cir. 2004). "[D]ismissal is inappropriate 'unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *Id.* (quoting *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993)).

In determining, under Rules 12(b)(7) and Rule 19(a)(1), whether an absent party should be joined or whether a case must be dismissed if an indispensable absent party cannot be joined, the court may consider material outside of the pleadings without converting the motion into one for summary judgment. *See English v. Cowell*, 10 F.3d 434 (7th Cir. 1993).

## Argument

**I.    DuPont Properly Instituted This Action When Faced With A Demand To Arbitrate An Unarbitrable Grievance.**

In its brief in support of its motion to dismiss ("USW Brief"), the USW invites this court to decline to exercise jurisdiction over this action, asserting that DuPont improperly filed a preemptive suit and deprived the local unions of the opportunity to select the forum in which to litigate this dispute. USW Brief at 2. The USW is incorrect; the timing of this case provides no

basis for dismissal. "[T]he discretion to grant or refuse declaratory relief is a judicial discretion, and must find its basis in good reason." *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1997) (internal quotation omitted). Good reason to decline to exercise jurisdiction does not exist in this case.

DuPont initiated litigation against ARWI on January 24, 2007, when it became clear that the company disagreed with that union over the proper procedure for resolving the dispute underlying the ARWI grievance. Undisputedly, this Court was the proper venue for that lawsuit, as the Spruance facility is located within this judicial district, and personal jurisdiction over ARWI is available here. *See* ARWI Complaint ¶ 8. At the time DuPont filed the ARWI action, the company was aware of the other grievances and unfair labor practice charges referenced above. DuPont decided to seek prompt resolution of its rights and obligations in this dispute. DuPont has two separate and legitimate interests in filing the ARWI action, which make DuPont the natural plaintiff in that case.

First, as a fiduciary of the various benefit plans regulated by ERISA, DuPont is explicitly entitled to bring an action to enforce the terms of the plans. *See* 29 U.S.C. § 1132(a)(3)(B)(ii). This right encompasses the right to seek a declaratory judgment as to the meaning of the terms of the plan, as well as the fiduciary's rights and obligations under plan terms. *See Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir. 1997) (court has jurisdiction under ERISA Section 502(a)(3)(B) over plan administrator's request for declaratory judgment that it need not comply with participant's request for plan actuarial reports under ERISA Section 104(b)(4)); *Devlin Graphic Indus. Inc. Pension Plan v. Lewis*, No. 00 Civ. 6665LTSMHD, 2001 WL 310626 at *8 (S.D.N.Y. March 30, 2001) (federal court has exclusive jurisdiction under Section 502(a)(3)(B) to issue a declaratory judgment regarding whether a state

court order improperly requires a fiduciary to act in a manner that violates ERISA and/or plan provisions); *Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576 (7th Cir. 1991) (ERISA Section 502(a)(3)(B) provides court with jurisdiction to grant declaratory relief sought by plan fiduciary to resolve coordination of benefits dispute between two health plans). The decisions are all consistent with the purpose underlying the Declaratory Judgment Act – to allow parties to a dispute to obtain a declaration regarding their respective rights and obligations before losses are sustained. *Winstead*, 933 F.2d at 578; *Rexam v. United Steelworkers of Am.*, No. Civ. 03-2998, 2003 WL 22477858, at *3 (D. Minn. Oct. 30, 2003) (fiduciary properly brought declaratory judgment action where it "desire[d] clarification about its ability to amend healthcare plans since several retirees have filed individual grievances" and where "[t]hese proceedings have been repetitious and costly, and there is a likelihood of continued similar litigation.").

DuPont is in a similar position to the plan fiduciaries in those cases. The benefit plans at issue here cover 30,000 DuPont employees working across the country. As the fiduciary of these plans, DuPont seeks clarification, in the wake of these legal challenges, to insure that the company continues to follow the terms of the plan. DuPont is obligated under ERISA to follow the terms of these benefit plans on a uniform basis. DuPont is understandably concerned about the prospects of inconsistent outcomes resulting from the various legal proceedings described herein. If, for example, one of the unions succeeds in its claim that DuPont does not have the right to make the changes announced on August 28, DuPont will face exposure for not having administered the plan according to its terms, an exposure that could extend to thousands of other plan participants. DuPont has an undeniably legitimate interest in maintaining "uniform nationwide administration" of its ERISA plans. *Retail Indus. Leaders Ass'n v. Felder*, 475 F.3d 180, 183 (4th Cir. 2007). In these circumstances, "simple prudence dictated" DuPont's decision

to seek declaratory and injunctive relief from this Court in the ARWI matter. *Winstead,* 933
F.2d at 578. And, as we explain below, these same considerations justify DuPont's decision to
bring this action against the USW, in order to have the entire dispute resolved in one forum.

Second, DuPont has a separate and legitimate interest in seeking a declaratory judgment
regarding the arbitrability of the grievance filed by ARWI arising out of the August 28
announcement.[4] Arbitration is a matter of contract, and "the question of arbitrability -- whether a
collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance
-- is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Communications
Workers of Am.,* 475 U.S. 643, 648-49 (1986). Parties to a contract, including a collective
bargaining agreement, can agree to exclude a particular subject from the scope of an arbitration
clause. *See, e.g., Int'l Assoc. of Machinists & Aerospace Workers, Progressive Lodge No. 1000
v. Gen. Elec. Co.,* 865 F.2d 902, 904-06 (7th Cir. 1989) (employer had no duty to arbitrate
grievances excluded from contractual arbitration provision); *Airlines Reporting Corp. v. McBride
Tours & Travel, Inc.,* No. 1:06CV322 (JCC), 2006 WL 2079385, at *4 (E.D. Va. July 24, 2006)
(contract limited arbitration to disputes arising under certain contractual provisions).

ARWI's grievance raises a dispute concerning eligibility for benefits under DuPont's
various ERISA plans. Disputes over eligibility for benefits under the ERISA plans are excluded
from the grievance and arbitration provision of the ARWI-DuPont collective bargaining
agreement. *See PDG Chem., Inc, v. Oil, Chem. & Atomic Workers Int'l Union,* 164 F. Supp. 2d
856, 864 (E.D. Tex. 2001) (where "the parties intended to have disputes concerning the plan and

---

[4]      The USW implicitly acknowledges that appropriate nature of a request of this type for
declaratory relief, as its conditional counterclaim seeks the exact same type of declaratory relief.
*See* Answer and Conditional Counterclaim at 23.

benefits received under the plan to be decided by the Benefits Administrative Committee," grievance pertaining to the plan was not arbitrable); ARWI Complaint ¶ 40.  It is perfectly appropriate for an employer to seek a declaratory judgment as to its rights and obligations under a collective bargaining agreement, including whether a particular dispute is excluded from the parties' grievance and arbitration procedure.  *See, e.g., PDG Chem.*, 164 F. Supp. 2d at 864; *Hunter Douglas Inc. v. Sheet Metal Workers Int'l*, 714 F.2d 342, 345-46 (4th Cir. 1983); *East Coast Hockey League, Inc. v. Prof'l Hockey Players Ass'n*, 322 F.3d 311, 314-16 (4th Cir. 2003).

After the ARWI action was initiated, DuPont came to realize that the USW was proceeding to raise precisely the same issues with respect to the August 28 announcement. Because both unions were seeking to resolve the identical legal issues through what DuPont believes is an improper mechanism (arbitration), it became apparent to DuPont that the "prudent" way to proceed was to bring this action against the USW, and seek to have it consolidated with the ARWI action.  In furtherance of this objective, DuPont moved to amend the ARWI complaint simultaneously with filing this action, so that both complaints now also seek a declaration regarding whether DuPont violated the underlying collective bargaining agreements in making the changes.  *See* Complaint, Count II; ARWI Complaint, Count II.

This is exactly the type of situation in which a declaratory judgment action is appropriate. The Fourth Circuit has held that it is appropriate for a court to exercise jurisdiction over a declaratory judgment action in circumstances such as these

> when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and. . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. . .  It should not be used to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal citations and quotations omitted).  Resolution of this action, in conjunction with the ARWI action, will clarify DuPont's rights and responsibilities with respect to all the benefit plans at issue.  It will also determine the underlying question of whether DuPont acted within its rights under the various collective bargaining agreements in making the changes described in the August 28 announcement, and in administering the plans according to their amended terms.[5]

The USW's contrary arguments are unavailing.[6]  DuPont made a perfectly legitimate decision to select this forum as the natural plaintiff to seek resolution of this dispute.  DuPont is trying to avoid piecemeal litigation of the dispute; it is the USW, not DuPont, that is engaging in improper "procedural fencing."  *See* USW Brief at 7 (quoting *Centennial Life Ins.*, 88 F.3d at 257).  And, as demonstrated above, the USW is demonstrably incorrect in suggesting that the issues raised in this dispute can be "better resolved" in the later-filed actions.  USW Brief at 7 n.3 (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005)).

The USW's reliance on *Crown Cork & Seal Co., Inc. v. USW*, No. 03-CV-1381, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. 2004) is misplaced.  In that case, both the union and the company sought to resolve the underlying employee benefits dispute in class action proceedings

---

[5]     The question of whether DuPont violated its statutory obligation to bargain in good faith with the various labor unions is separately presented in the unfair labor practice charge proceedings pending before the National Labor Relations Board.  DuPont believes that this Court's resolution of the contractual interpretation issue will facilitate resolution of that issue as well.

[6]     While the USW baldly states that "DuPont raced to this Court in order to deprive the unions of their right to select the forum(s) for litigation of their claims" and thereby engaged in procedural fencing, it makes no argument that DuPont will have some tactical advantage by proceeding in this Court.  USW Brief at 9.

in one forum – the two sides simply picked different jurisdictions. That case did not involve a

multi-party, multi-jurisdictional dispute, like this one, where the natural plaintiff filed the first

action to seek a resolution of the dispute. For the same reason, cases cited by the USW, *see*

USW Brief at 6-8, involving single or related parties on different sides of actions in competing

jurisdictions do not inform the Court's decision on this issue. *See, e.g., Tempco Elec. Heater

Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746 (7th Cir. 1987); *Anheuser-Busch Inc. v. Supreme Int'l

Corp.*, 167 F.3d 417 (8th Cir. 1999); *Remington Arms Co. v. Alliant Techsystems, Inc.*, No.

1:03CV1051 (M.D.N.C. Feb. 25, 2004), 2004 WL 444574; *Ven-Fuel, Inc. v. Dep't of the

Treasury*, 673 F.2d 1194 (11th Cir. 1982).[7]

Finally, this case is materially different from *UAW v. Dana Corp.*, No. 3:99CV7603,

2000 U.S. Dist. LEXIS 12041 (N.D. Ohio March 22, 2000), on which the USW relies. USW

Brief at 8. In *Dana Corp.*, the union had obtained a favorable decision from an arbitrator holding

that the company violated the terms of the parties' collective bargaining agreement. The

employer filed suit in another jurisdiction, in anticipation of the union's suit to enforce the

award. The court concluded that the employer was not seeking vindication of any affirmative

rights and instead filed its declaratory judgment action solely to thwart the union's impending

effort to bring suit elsewhere. *Id.* at *3-4. Here, by contrast, in both this case and the ARWI

---

[7]     Other authority cited by the USW is similarly inapposite. There is no evidence that
DuPont filed suit "as a tactical maneuver designed to sidestep. . . [a] forum selection clause," as
in *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 761 (E.D. Va. 1986). Nor is this a
matter that implicates federalism concerns because of a parallel state law proceeding, as in
*Centennial Life Insurance Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996). And DuPont did not
file a preemptive action as a means to obtain federal jurisdiction over an action that might be
non-diverse. *See Cas. Indem. Exch. v. High Croft Enters., Inc.*, 714 F. Supp. 1190, 1193 (S.D.
Fla. 1989). Finally, this is not a case where DuPont is chiefly raising an affirmative defense, as
was the situation in *BASF Corp. v. Symington*, 50 F.3d 555 (8th Cir. 1995).

action, DuPont seeks to vindicate important affirmative rights through injunctive and declaratory relief. As a fiduciary of the ERISA plans, DuPont seeks to enforce the terms of these plans within the meaning of Section 502(a)(3)(B) of ERISA by obtaining needed clarification of its rights and obligations under the plans. As an employer signatory to various collective bargaining agreements, DuPont likewise seeks a declaration of its rights and obligations under those agreements. By filing this action and seeking to consolidate it with the ARWI action, DuPont is simply attempting to ensure that the entirety of the dispute relating to the August 2006 announcement is resolved in one forum, to conserve resources and avoid the risk of possible inconsistent outcomes.

In short, the USW has failed to show that good cause exists to decline jurisdiction in this case. *Aetna Cas. & Surety Co.*, 92 F.2d at 324. Accordingly, its motion on this basis should be denied.

## II.    The Local Unions Are Not Indispensable Parties Because The Interests of The Defendant And The Local Unions Are Identical.

The USW claims that the Complaint should be dismissed under Rule 12(b)(7) because DuPont did not name certain of the USW's affiliated local unions as defendants. The USW alleges the local unions are necessary parties. USW Brief at 10-13. The USW's position lacks merit.[8]

The facts establish that the USW has coordinated the union's response to DuPont's August 28 announcement, including the activity undertaken by various of its local union affiliates. The USW injected itself into this dispute four days after DuPont's announcement,

---

[8]    The USW's position is incorrect with respect to the action filed in Delaware, arising from a grievance filed at DuPont's Edgemoor facility. The USW is a party to that collective bargaining agreement. Brean Decl. at ¶ 5 & Exh. 3. Accordingly, there is no serious basis to contend, under Rule 19 or otherwise, that a "necessary party" is absent from this action.

when, on September 1, 2006, its "DuPont Council" sent a letter to DuPont requesting a meeting with DuPont. This letter, authored by USW employee Kenneth Test, the President of the DuPont Council, was written on behalf of USW-represented employees at all five DuPont locations, and sought a meeting to be attended both by the International and representatives of the various local USW affiliates. *See* Huggett Decl., ¶ 2 & Exh. 2. Thereafter, in late September, the DuPont Council distributed a flier at the Niagara Falls facility criticizing the pension plan amendments and encouraging employees to "[l]et DuPont hear your disgust and outrage." *See id.*, ¶ 2 & Exh. 1. In addition, the USW has also been a party to certain of the unfair labor practice charges that have been filed with the NLRB regarding the August announcement. *See id.*, Exhs. 3-5.

Formal proceedings initiated by the USW in response to the August 28 announcement also reflect the leadership role of the USW. For example, the grievances filed at the Edgemoor (Delaware), Chambersworks (New Jersey) and Niagara Fall (New York) facilities are all but identical. Notably, they all request that the processing of the particular grievance be held in abeyance, referring to Mr. Test's letter of September 1. *See* Brean Decl., Exhs. 4-6. And it was the USW's General Counsel, on behalf of itself and the local union affiliates, who threatened to sue DuPont to sue to compel arbitration. *See* Brean Decl., Exhs. 10-11; *see also* USW Brief at 4. These facts indicate that the USW has already been acting as a representative for the local unions with respect to these grievances.

Where parties share identical interests, and where one party is fully capable of representing the interests of both parties, the litigation can proceed even in the absence of the second party. *Ohio Valley Envtl. Coal. v. Bulen*, 429 F.3d 493, 504 (4th Cir. 2005) ("A litigant may serve as a proxy for an absent party if the interests of the two are identical"); *Codest Eng'g v. Hyatt Int'l Corp.*, No. 94 C 7335 1995 U.S. Dist. LEXIS 17276, at *12 (N.D. Ill. Nov. 6,

1995) ("if absentee's interest are fully represented by parties, prejudice test does not weigh in favor of joinder"); *see also Prof'l Hockey Club Cent. Sports Club of the Army v. Detroit Red Wings, Inc.*, 787 F. Supp. 706, 713 (E.D. Mich. 1992) (hockey player not an indispensable party to dispute between NHL and foreign league over player's affiliation where NHL and player shared identical interest); *Coal. on Sensible Transp. v. Dole*, 631 F. Supp. 1382 (D.D.C. 1986) (state transportation department was not an indispensable party in action challenging planned highway construction where interests of federal defendants were substantially identical to those of state).

The Fourth Circuit's holding in *Ohio Valley* is highly instructive here. In that case, a coalition of environmental groups brought suit against the US Army Corps of Engineers ("the Corps") and a number of coal companies and associations challenging the Corps' promulgation of a permit under the Clean Water Act for the discharge of materials into U.S. waters. The Corps argued that the individual permit holders should be joined as indispensable parties because they had an important interest in preventing their permits from being invalidated. The Fourth Circuit affirmed the district court's finding that joinder was not required because the litigants already involved in the suit would adequately represent the interests of the absent permit holders. Specifically, the Court found that the interests of the coal associations and the permit holders were identical because the coal associations "are arguing on behalf of their members, including members with existing operations dependent on [the permit]." *Id.* at 505. Thus, the Court held, the coal associations would adequately represent the interests of the absent parties, "because both seek to protect . . . interests that would be upset by invalidation of [the permit]." *Id.* at 505.

Those same reasons demonstrate that joinder of the local union affiliates of the USW is not required here. The facts in this case demonstrate that the USW and its local union affiliates

have identical interests in this dispute; both seek to ensure enforcement of the relevant provisions

of the collective bargaining agreements at the various facilities represented by the USW. Indeed,

the USW does not suggest that its interests are not identical to those of its local union affiliates.

The facts likewise demonstrate that the USW has already taken the lead in challenging the

benefit plan changes implemented by DuPont following the August 28 announcement. There is

nothing to suggest, and the USW does not argue, that the USW, represented by able counsel, will

be unable to protect those interests; the USW does not even make such a suggestion.[9]

   *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999), on

which the USW primarily relies, is inapposite. *Keal Driveaway* arose out of a dispute related to

the seniority status of employees transferring from one union to another. The union from which

employees were transferring (which was not named as a party to the suit) took that position that

the transferring employees should be dovetailed into the seniority list, while the union into which

the employees were transferring (which brought the suit) took the position that the transferring

employees should be end-tailed. *Id.* at 917. Because these two entities had interests that were

diametrically opposed, one could not protect the interests of the other in the litigation.

   Courts recognize that interests of judicial economy and prejudice are relevant

considerations in deciding whether litigation can proceed in the absence of a party alleged to be

necessary. *See S.C. Dep't of Health and Envtl. Control v. Commerce and Indus. Ins. Co.*, 372

F.3d 245 (4th Cir. 2004) (district courts should consider judicial economy in assessing

---

[9]      Such a suggestion would be erroneous in any event. The common law of agency govern
the relationship between and international union and its locals. *See Carbon Fuel Co. v. United
Mine Workers of Am.*, 444 U.S. 212, 216 (1979). In these circumstances, the USW could not
claim that it has no responsibility for advancing the union's interest in this dispute, including
those of its local affiliates.

jurisdictional issues in declaratory judgment proceedings, *citing White v. Nat'l Union Fire Ins.*

*Co. of Pittsburgh*, 913 F.2d 165, 168 (4th Cir. 1990)); *see also Nat'l Union Fire Ins. Co. of*

*Pittsburgh v. Rite Aid of S.C.*, 210 F.3d 246, 252 (4th Cir. 2000) (prejudice is a factor under Fed.

R. Civ. P. 19(b)). Dismissal of this case based on the unavailability of the local union affiliates

of the USW would contradict basic principals of judicial economy. The issues presented in this

case plainly encompass those presented in the ARWI action. That case is well underway, with a

schedule set to resolve the matter through cross-motions for summary judgment. The USW

offers no justification for requiring the parties to litigate the underlying issues in various

jurisdictions around the country. Such piecemeal litigation would also risk potentially

inconsistent rulings to the potential prejudice of the parties.

**III.    DuPont Has Standing To Bring This Action.**

The USW concedes, as it must, that DuPont has standing to bring this action under the

Declaratory Judgment Act, 28 U.S.C. § 2201, and under Section 301 of the LMRA. USW Brief

at 13. The USW raises standing only with respect to the ERISA claims asserted by DuPont.

The USW is incorrect. DuPont plainly satisfies the standing requirements of ERISA, and the

relief sought by DuPont here is explicitly recognized in Section 502(a)(3)(B) of ERISA.

Accordingly, the USW's motion to dismiss under Rule 12(b)(1) is not well-founded.

The Complaint identifies DuPont in its status as fiduciary with respect to the plans in

question, either because DuPont is the appointed Plan Administrator (Complaint, ¶¶ 16, 29, 33,

37 and 41), or because DuPont appoints a committee of its employees to administer the plan

(Complaint ¶ 23).  Section 3(21)(A)(iii) of ERISA, 29 U.S.C. § 1002(21)(A)(iii), explicitly states

that this type of discretionary authority over plan administration results in fiduciary status.[10]

The USW argues DuPont is deprived of this ability to sue in a fiduciary capacity because

it is also the employer of the employees covered by the plans.  USW Brief at 13-15.[11]  This

argument is misguided.  Employers that sponsor benefit plans regulated by ERISA can also sue

as fiduciaries with respect to disputes in which the plaintiff is exercising discretionary authority

over the plan and is thus covered by ERISA's fiduciary duty rules.  *Coyne & Delany v. Selman*,

98 F.3d 1457 (4th Cir. 1996) (power of employer to appoint a plan administrator was sufficient

to make employer a fiduciary with standing to sue under ERISA); *U.S. Steel Mining Co., Inc. v.*

*Dist. 17, UMWA*, 897 F.2d 149 (4th Cir. 1990) (both employer and fund held fiduciaries with

respect to matter in dispute); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030 (9th Cir. 2000) (plan

administrator has standing as fiduciary to ensure proper distribution of funds under ERISA plan);

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732 (7th Cir. 1986), *cert. denied*, 482

U.S. 915 (1987) (employer had standing as a fiduciary to bring action under ERISA);  *Great*

*Lakes Steel, Div. of Nat'l Steel Corp. v. Deggendorf*, 716 F.2d 1101 (6th Cir. 1983)

(inseparability of an employer's dual roles as employer and fiduciary does not deprive the

employer of standing under ERISA); *U.S. Steel Corp. v. Commonwealth of Pa. Human Relations*

---

[10]    USW's arguments regarding DuPont's standing are not confined to jurisdictional
questions but instead raise issues that involve the merits of the present case.  This Circuit has
determined that where a defendant, in opposing subject matter jurisdiction, instead raises issues
concerning the merits of the dispute, and where the plaintiff has otherwise adequately
demonstrated jurisdiction, the court should find that jurisdiction exists and reserve resolution of
the issues on the merits until later stages of the proceeding.  *Denny's Inc. v. Cake*, 364 F.3d 521,
525 n.4 (4th Cir. 2004).

[11]    The USW readily concedes that Section 502(a)(3) allows plan fiduciaries to bring suit
under ERISA.  USW Brief at 14.

*Comm'n*, 669 F.2d 124 (3d Cir. 1982) (employer acting in a fiduciary capacity has standing to sue as a fiduciary notwithstanding that it is also an employer); *see also MEBA/NMU Licensed Div. Dist. No. 1 v. Defries*, 943 F.2d 474 (4th Cir. 1991) (union with power to appoint plan trustees is a fiduciary and has standing to sue in its fiduciary capacity).

The USW asserts that DuPont cannot pursue an action under Section 502(a)(3)(B) of ERISA because the conduct at issue involves the actions of DuPont as plan sponsor carrying out so-called "settlor functions." USW Brief at 14. This argument misapprehends the nature of the relief sought by DuPont. DuPont seeks declaratory and injunctive relief with respect to its actions in administering the ERISA benefit plans at issue as a result of the plan amendments made following the August 28 announcement. These plans reserve to DuPont final discretionary authority to interpret and apply plan provisions. Complaint, ¶¶ 16, 23, 29, 33, 41. The Complaint explicitly addresses this authority and the methods by which this authority must be invoked by DuPont under the terms of the plans. For example, Paragraph 56 of the Complaint avers specifically that the grievances at issue "inevitably involve questions of benefit eligibility and denials of claims for benefits," the very types of issues which are reserved to DuPont's fiduciary discretion under the plans. Likewise, the first and third Prayers for Relief in the Complaint focus on the process by which these plans can properly be interpreted and administered, and are intended to vindicate DuPont's ability to exercise this discretion in accordance with the terms of these plans. *See id.*, Counts I & III.

Questions of plan interpretation and administration do not involve "settlor functions." *See, e.g.*, *Sonoco Prods. Co. v. Physicians Health Plan Inc.*, 338 F.3d 366 (4th Cir. 2003) (employer acting with discretion over plan administration would not be acting in a settlor capacity); *Hunter v. Caliber Sys. Inc.*, 200 F.3d 702, 719-20 (6th Cir. 2000) (when an employer

acts with discretion over the management and administration of a plan, it acts as a fiduciary, not

as plan settlor); *Wachtel v. Guardian Life Ins. Co.*, 38 Emp. Ben. Cases [BNA] 1867, 1873

(D.N.J. 2006) (communications in connection with plan management and claims administration

are activities involving fiduciary, not settlor, authority) *vacated and remanded on other grounds*

*sub. nom. by Wachtel v. Health Net, Inc.*, ___ F.3d ___, 2007 WL 958572 (3rd Cir. 2007).[12]  It is

well settled that such disputes raise questions of possible breach of fiduciary duty.  *See e.g.,*

*Varity Corp. v. Howe,*  516 U.S. 489 (1996).  For example, misleading communications

regarding an employee's status as a participant in a plan, and/or plan eligibility issues are

frequently challenged as a breach of ERISA's fiduciary rules.  *See, e.g., Estate of Becker v.*

*Eastman Kodak Co.,* 120 F.3d 5 (2d Cir. 1997); *Curcio v. John Hancock Mut. Life Ins. Co.,* 33

F.3d 226 (3d Cir. 1994); *Berlin v. Mich. Bell Tel. Co.,* 858 F.2d 1154 (6th Cir. 1988).  The relief

sought by DuPont here is intended, among other things, to address precisely this concern.  As

indicated above, DuPont seeks clarification, in the wake of the pending legal challenges, to

insure that the company continues to follow the terms of the plan.  Almost every step taken by

DuPont as part of plan administration, including employee communications about their status

under the plans as revised, involves the exercise of discretion in the administration of the plan,

thus implicating ERISA's fiduciary duty rules.  *Peralta v. Hispanic Bus. Inc.*, 419 F.3d 1064,

1071-72 (9th Cir. 2005) (ERISA's fiduciary duty rules apply to the communication of operative

plan terms to plan participants); *Martinez v. Schlumberger, Ltd,* 338 F.3d 407, 424-25 (5th Cir.

2003) (when an employer chooses to communicate with plan participants regarding future plan

benefits, it does so as a fiduciary); *In re Reliant Energy ERISA Litig.*, 36 Emp. Ben Cases [BNA]

---

[12] Indeed, the three grievances all raises questions about the "application" of the announced
amendments, which is clearly a function of the plan fiduciaries.  See Brean Decl., Exhs. 4-6.

2648, 2651 (S.D. Tex. 2006) (communications made in connection with plan administration and management are fiduciary in nature); *Wachtel*, 38 Emp. Ben. Cases [BNA] at 1873 (determination of cost basis for plan claims administration, and communication of that basis to plan participants, is subject to ERISA's fiduciary duty rules); *Weiss v. CIGNA Healthcare Inc.*, 972 F. Supp. 748, 751-52 (S.D.N.Y. 1997) (control over communication of medical information in connection with participant claims is sufficient to result in fiduciary status).

Finally, in seeking injunctive relief and a declaration of its fiduciary interpretive and procedural rights with respect to these benefit plans, DuPont requests appropriate equitable relief available under Section 502(a)(3)(B) of ERISA. Courts have recognized that Section 502(a)(3) of ERISA provides a basis for a declaratory judgment action where a fiduciary brings the lawsuit to clarify benefits rights or eligibility, or otherwise to interpret or enforce the terms of the plan in question. *See Coyne & Delany*, 98 F.3d at 1465-66; *Defries*, 943 F.2d at 478; *see also Denny's Inc. v. Cake*, 364 F.3d 521 (4th Cir. 2004) (fiduciary may bring a declaratory judgment action under ERISA § 502 to prevent application of state law to the plan where the action was viewed as one to enforce the terms of the plan); *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785 (8th Cir. 1998) (ERISA Section 502 permits declaratory judgment action to determine benefit eligibility); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821 (1st Cir. 1988) (same); *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir. 1986) (same) *overruled on other grounds by Firestone & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Rexam*, 2003 WL 22477858, at *3 (permitting declaratory judgment action by employer to determine whether amending a plan to eliminate retiree medical benefits violated ERISA and the LMRA) . *Accord Aetna Life Ins.*, 223 F.3d 1030. DuPont has demonstrated its standing to maintain this action and the USW's motion to dismiss for lack of subject matter jurisdiction should be rejected.

IV.    **This Court Has Jurisdiction To Grant DuPont the Declaratory Relief Requested In Count II Of the Complaint.**

The USW argues that this Court does not have jurisdiction to declare that DuPont's actions in amending the ERISA benefit plans at issue are consistent with, and do not violate, DuPont's rights under the parties collective bargaining agreements, such that DuPont's complaint should be dismissed under Rules 12(b)(1) and 12(b)(6). USW Brief at 16. This argument is without merit as the USW reads DuPont's complaint too narrowly.

The duty to arbitrate a dispute is entirely a matter of contract. A explained *supra*, an employer that has not agreed to arbitrate a particular dispute arising under a collective bargaining agreement cannot be forced to do so. *AT&T Techs.*, 475 U.S. at 648; *IAM Progressive Lodge No. 100*, 865 F.2d at 904-06. Whether a particular dispute is within the scope of a contractual arbitration clause "is undeniably an issue for judicial determination." *AT&T Techs.*, 475 U.S. at 649. DuPont properly invoked its right to seek a declaratory judgment regarding the arbitrability of those grievances. *See* Complaint at ¶ 69. It is well settled that a federal court has jurisdiction under Section 301 to hear and decide such a case. *See, e.g., Hunter Douglas Inc.*, 714 F.2d at 345-46. Declaratory relief regarding arbitrability and contract breach is particularly appropriate with respect to the Niagara Falls and Edgemoor grievances, to the extent that these grievances pertain to the Dental Assistance Plan and the Medical Care Assistance Plan. Neither of those plans are incorporated into the applicable collective bargaining agreements, and DuPont thus has no obligation to arbitrate any questions relating to those plans. See generally Brean Decl., Exhs. 2 & 3.

The USW's argument misstates the nature of the relief sought by DuPont. DuPont does not suggest that the Court issue a ruling on the merits of this dispute in determining whether any of these grievance is arbitrable in the first instance. *AT&T*, 475 U.S. at 649. If this Court

decides that none of the USW's grievances are arbitrable, no arbitrator has authority to decide the merits of any grievance.[13]  In that event, the bar against a judicial determination of the merits of the underlying breach of contract claim falls away as a matter of law.  The Court is then free to take up the relief sought in Count II of the Complaint to determine whether DuPont violated the underlying collective bargaining agreements.  In this sense, the USW misapprehends the position of DuPont on this issue; DuPont readily concedes that the unions would be able, as a matter of federal court jurisdiction, to file an action for breach of contract under Section 301 of the LMRA.  The fact that the grievances filed by the unions are not arbitrable does not negate the ability of a union to file a breach of contract claim alleging that DuPont violated the collective bargaining agreements in the wake of the August 28 announcement.  DuPont believes any such claim is without merit.  In any case, the relief sought by DuPont in Count II of the Complaint, as well as in the ARWI matter, explicitly addresses this issue by seeking a declaration that no such violations occurred.

For the same reasons, the USW is incorrect in suggesting that a determination as to arbitrability is inconsistent with the relief DuPont seeks under ERISA.  If the Court determines, as we believe it must, that these grievances are not arbitrable, the logical result of that conclusion will be that the merits of disputes regarding plan participants' eligibility for benefits "must be resolved exclusively through the procedures set forth in th[e] plans and/or in a civil enforcement action under Section 502 of ERISA."  Complaint ¶ 66.  The USW is wrong in asserting that the requested relief cannot be provided through this lawsuit.  *See* USW Brief at 16-17.  This issue is

---

[13] To the extent that USW claims that it is challenging only DuPont's authority to implement the amendments, rather than benefit decisions made under these amendments, that decision to implement the amendment is inextricably intertwined with the question of benefit eligibility determinations.  Accordingly, no arbitrator has authority to decide that aspect of this dispute.

analytically separate from the issue of whether DuPont acted within its rights under the various

collective bargaining agreements in making the benefit plan changes announced in August, 2006.

And, as demonstrated above, the declaratory relief sought in Count II of the Complaint is fully

consistent with ERISA § 502(a)(3).

### Conclusion

For all of these reasons, the USW's Motion to Dismiss DuPont's Complaint should be
denied.

Respectfully submitted,

James P. McElligott
Regina J. Elbert
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA  23219-4030
(804) 775-4329

Thomas P. Gies
Kris D. Meade
Jennifer G. Knight
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500

*Counsel for Defendant E.I. du Pont de Nemours &
Company*

April 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Opposition to Defendant's Motion to Dismiss were mailed, first-class postage prepaid, this 16th day of April 2007 to the following:

James J. Vergara
Vergara & Associates
100 Main Street
Hopewell, VA 23806

Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, N.W.
Washington, DC 20036

Kenneth Henley
One Bala Avenue, Suite 500
Bala Cynwyd, PA 19004

James P. McElligott

# EXHIBIT I

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Arrow Communication Laboratories, Inc. v. John
Mezzalingua Associates, Inc.
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ARROW COMMUNICATION LABORATORIES,
INC., Plaintiff,
v.
JOHN MEZZALINGUA ASSOCIATES, INC.,
Defendant.
JOHN MEZZALINGUA ASSOCIATES, INC.,
Counterclaim Plaintiff,
v.
ARROW COMMUNICATION LABORATORIES,
INC., and Tresness Irrevocable Patent Trust,
Counterclaim Defendants.
**No. Civ. 05-357-SLR.**

Oct. 26, 2005.

Richard D. Kirk, of the Bayard Firm, Wilmington,
Delaware. for Arrow Communication Laboratories,
Inc., and Tresness Irrevocable Patent Trust. R.
Terrance Rader, Charles W. Bradley, Glenn E.
Forbis, Linda D. Kennedy, and Shelly L. Hokenstad,
of Rader, Fishman & Grauer PLLC, Bloomfield
Hills, Michigan, and Lawrence P. Trapani, of
Manlius, New York, of Counsel.
Jeffrey B. Bove, and Kevin M. Baird, of Connolly
Bove Lodge & Hutz LLP, Wilmington, Delaware. for
John Mezzalingua Associates, Inc. James R.
Muldoon, and John A. Wasleff, of Wall, Marjama &
Bilinski, LLP, Syracuse, New York. of Counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 On June 3, 2005, plaintiff Arrow Communication
Laboratories, Inc. ("plaintiff") filed a complaint in
the United States District Court for the District of
Delaware alleging patent infringement by defendant
John Mezzalingua Associates, Inc. ("defendant").
(D.I.1) Plaintiff claims to be the lawful owner of all
right, title and interest in U.S. Patent No. 5,745,838
("the '838 patent"). (Id.) Plaintiff alleges that
defendant is infringing the '838 patent by
manufacturing, selling and offering for sale in the

United States, and by importing into the United
States, electronic filters covered by one or more of
the claims of the '838 patent. (Id.) Plaintiff further
alleges that defendant is actively inducing others to
infringe the '838 patent. (Id.)

On June 6, 2005, defendant filed an action for
declaratory judgment of patent non-infringement and
invalidity in the United States District Court for the
Northern District of New York. (D.I.9, ex. A) On
August 11, 2005, plaintiff's infringement suit was
referred to the Magistrate Judge of the District of
Delaware for the purpose of exploring alternative
dispute resolution. (D.I.29) Trial is scheduled for
November 2006. (Id.)

II. BACKGROUND

Plaintiff is a corporation organized under the laws of
the State of New York with its principal place of
business in Syracuse, New York. Defendant is a
corporation organized under the laws of the State of
Delaware with its principal place of business in East
Syracuse, New York.

III. STANDARD OF REVIEW

Defendant moves the court to transfer this matter,
pursuant to 28 U.S.C. § 1404(a), to the United States
District Court for the Northern District of New York.
(D.I.6) Section 1404(a) provides: "For the
convenience of the parties and witnesses, in the
interests of justice, a district court may transfer any
civil action to any other district or division where it
might have been brought." 28 U.S.C. § 1404(a)
(2003). A plaintiff's choice of forum is to be accorded
substantial weight and courts should only transfer
venue if the defendant is truly regional in character.
See Bergman v. Brainin, 512 F.Supp. 972, 973
(D.Del.1981) (citing Shutte v. Armco Steel Corp., 431
F.2d 22, 25 (3d Cir.1970)). A defendant has the
burden of establishing that "the balance of
convenience of the parties and witnesses strongly
favors" transfer. Id. Accordingly, "defendants
brought into suit in Delaware must prove that
litigating in Delaware would pose a 'unique or
unusual burden' on their operations" for a Delaware
court to transfer venue. See Wesley-Jessen Corp. v.
Pilkington Visioncare, Inc., 157 F.R.D. 215

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

(D.Del.1993). A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate venue in which to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 WL 615175, *5 (D.Del.1999).

*2 In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404(a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). The Third Circuit, in fact, has indicated that the analysis for transfer is very broad and has urged consideration of "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiff's choice of forum is a paramount consideration. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov. 28, 2001); *Cont'l Cas. Co. v. Am. Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually regarded as less inconvenient to a plaintiff if

the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity or injury occurred, the "plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

## IV. DISCUSSION

As an initial matter, the court notes that venue is proper in Delaware as defendant is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Northern District of New York. Indeed, this court previously recognized that,

*3 [w]hen the plaintiff has chosen to bring suit in a district that is not plaintiff's "home turf" and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit.

*Burstein v. Applied Extrusion Techs. Inc.,* 829 F.Supp. 106, 110 (D.Del.1992) (citing *Sports Eye, Inc. v. Daily Racing Form, Inc.,* 565 F.Supp. 634, 637 (D.Del.1983)) (internal citations omitted). Moreover, the locus of the alleged infringement occurred in Syracuse, New York. If defendant has infringed the '838 patent, such infringement was done primarily in Syracuse, where the accused products were developed, manufactured and sold. Based on the evidence offered, the majority of the witnesses with discoverable information also are located in and around Syracuse, New York. In addition, most of defendant's documents relating to the production, promotion, marketing and sales of the accused product are maintained in central New York. On this basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Northern District of New York.

One of the public interest factors under *Jumara* involves the administrative considerations of the courts. More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

"in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. M'Iver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently, the second-filed action is usually stayed or transferred to the court where the first-filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.,* 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.* at 972, 977. Invocation of the rule will usually be the norm, not the exception. Courts presented with exceptional circumstances may exercise their discretion to depart from the first-filed rule. *Id.* at 979. In this case, it is undisputed that the present patent infringement suit in the District of Delaware was first filed and involves the same patent and the same issues as the declaratory judgment action filed thereafter by defendant in the Northern District of New York. Therefore, the burden is on defendant to present some exceptional circumstances why the court should depart from the first-filed rule.

**\*4** In support of its argument supporting transfer, defendant states that all of its relevant witnesses reside in New York, all the documents and records related to the accused product are in New York, and the subject matter of the lawsuit has significant local interest in New York. (D.I. 7 at 1-3) In contrast, evidence suggests that the District of Delaware has no connection to the subject matter of plaintiff's lawsuit, except that defendant is incorporated there. Defendant contends that pursuing the lawsuit in the District of Delaware will generate "significant expenses and other burdens" to the parties. (*Id.* at 3-4) Given this evidence and noting the regional character of the parties, with the primary business operations of each party located in the Northern District of New York, there are exceptional circumstances present which require the court to depart from the first-filed rule.

In considering the other public interest factors under *Jumara,* the court notes that the parties have taken significant steps to advance the instant litigation in the District of Delaware. The parties have exchanged initial disclosures, are set to explore settlement with the magistrate judge, and have arranged a schedule for litigation, with trial set to occur in about one year. These factors weigh in favor of maintaining the litigation in the District of Delaware. However, factors are also present which weigh in favor of transferring the case to the Northern District of New York. First, defendant's declaratory judgment action, which involves the same subject matter as this case, is currently pending in the United States District Court for the Northern District of New York.[FN1] In addition, both parties are regional in character and operate their businesses out of central New York, suggesting that the Northern District of New York is the most appropriate venue for the parties to litigate. Although a suit in this matter was first filed in Delaware, the public interest factors weighing in favor of keeping the litigation in the District of Delaware are not compelling. The court, therefore, concludes that the public interest factors under *Jumara* favor transferring venue to the Northern District of New York.

> FN1. By stipulation of the parties, that case has been stayed pending this court's decision on defendant's motion to transfer venue. (N.D. N.Y., Case No. 05-CV-703 (NAM/DEP), D.I. 6) The court has no reason to believe that, once the stay is lifted, the declaratory judgment action in the Northern District of New York will move forward with any less swiftness than that with which the instant case has progressed in the District of Delaware. The familiarity with the parties and subject matter possessed by the Northern District of New York will certainly promote expeditiousness in handling the case.

### V. CONCLUSION

On balance, the court finds that the public interest factors and private interest factors weigh strongly in favor of transferring venue in this case. The court, as a result, concludes that defendant has sufficiently proven that litigating in the District of Delaware would pose a unique burden which merits transfer of venue. For the reasons stated, defendant's motion to transfer is granted. An order consistent with this memorandum opinion shall issue.

### ORDER

At Wilmington this 26th day of October, 2005,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to transfer (D.I.6) is granted.

2. The above-captioned action shall be transferred to the United States District Court for the Northern District of New York.

D.Del.,2005.
Arrow Communication Laboratories, Inc. v. John Mezzalingua Associates, Inc.
Not Reported in F.Supp.2d, 2005 WL 2786691 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.