## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND FORESTRY,          )
RUBBER, MANUFACTURING, ENERGY,             )
ALLIED INDUSTRIAL AND SERVICE              )
WORKERS, INTERNATIONAL UNION,              )
AFL-CIO-CLC, and UNITED STEEL, PAPER       )
AND FORESTRY, RUBBER, MANUFACTURING,       )
ENERGY, ALLIED INDUSTRIAL AND SERVICE      )
WORKERS LOCAL 4-786,                       )
                                           )
      Plaintiffs,                )
                                           )
v.                                         )          C.A. No. 07-126 (JJF)
                                           )
E. I . DUPONT DE NEMOURS AND               )
COMPANY,                                   )
                                           )
      Defendant.                 )
_____ )

## PLAINTIFFS' BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Susan E. Kaufman (DSB # 3381)
Heiman Gouge & Kaufman, LLP
800 King Street, Suite 303
Wilmington, DE 19801
(302) 658-1800 / (302) 658-1473 (fax)
skaufman@hgkde.com

Jeremiah A. Collins
Jennifer L. Hunter
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
(202) 842-2600 / (202) 842-1888 (fax)
jcollins@bredhoff.om
jhunter@bredhoff.com

Attorneys for United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service
Workers, International Union, AFL-CIO-CLC, and United
Steel, Paper and Forestry, Rubber, Manufacturing, Energy,
Allied-Industrial and Service Workers Local 4-786

Date:  July 23, 2007

## <u>TABLE OF CONTENTS</u>

Page

Nature and Stage of the Proceedings .................................................................................1

Summary of Argument .....................................................................................................2

Statement of Facts.............................................................................................................3

Argument .........................................................................................................................6

      I.    There is a Strong Presumption in Favor of Arbitration .............................6

      II.   Local 4-786's Grievance Alleging Violations of the
           CBA Is Arbitrable ....................................................................................8

Conclusion .....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*AT&T Tech. v. Comm. Workers of Am.*, 475 U.S. 643 (1986) .................................. *passim*

*E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91 (3d Cir. 1987) .................................7, 8

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) .....................................9

*Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, Civ. A. No. 03-4098, 2007 WL 1101435 (D.N.J. Apr. 10, 2007) .............................................................................3

*International Ass'n of Machinists & Aerospace Workers v. General Elec. Co.*, 406 F.2d 1046 (2d Cir. 1969), *overruled on other grounds as noted in Int'l Bhd. of Elec. Workers, Local 2213 v. New York Telephone Co.*, No. 89-CV-1123, 1989 WL 140903 (N.D.N.Y. Nov. 22, 1989) ..................................9

*Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668 (3d Cir. 1993) .............................8

*Machinists Dist. No. 10 v. Waukesha Engine Div.*, 17 F.3d 196 (7th Cir. 1994) .............13

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994) ....................3

*PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Int'l Union*, 164 F. Supp. 2d 856 (E.D. Tex. 2001) ........................................................................13

*Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers*, No. 88-2094, 1988 WL 149181 (D.N.J. Aug. 25, 1988) .........................................9, 12

*RCA Corp v. Local 241, Prof'l & Technical Eng'rs*, 700 F.2d 921 (3d Cir. 1983) ..........11

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83 (2d Cir. 1994) ...........................8, 12, 13

*Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960) ...............................................7, 9

*Steelworkers v. Commonwealth Aluminum Corp,.*, 162 F.3d 447 (6th Cir. 1998) ............13

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) ...............................6

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) ..........................2, 7

*Transit Mix Concrete Corp. v. Local Union No. 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 809 F.2d 963 (2d Cir. 1987)..............7

*United Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1468 (3d Cir. 1992)..........7, 10

## RULES

Fed. R. Civ. P. 10(c) ............................................................................................3

Fed. R. Civ. P. 12(c) ............................................................................................3

<u>**Nature and Stage of the Proceedings**</u>

This action seeks to compel arbitration of a grievance alleging violations of the collective bargaining agreement ("CBA") in effect between Defendant E.I. DuPont de Nemours and Company ("DuPont" or "the Company") and Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union ("International Union") and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers Local Union 4-786 ("Local 4-786" or "Local Union") (together, "Unions" or "Plaintiffs").  This dispute arose when DuPont unilaterally made changes in the terms of its employee benefit plans which reduced the benefits provided to Plaintiffs' members.  Local 4-786 filed a grievance alleging that DuPont's actions violated the CBA. DuPont has refused to submit the grievance to arbitration, even though the CBA contains a broad arbitration clause requiring the arbitration of all grievances "as to the interpretation, or any alleged violation, of any provision of this Agreement."  DuPont has done so based on the assertion that the grievance must be resolved through the internal claims procedures of each benefit plan—a process in which, according to DuPont itself, Local 4-786's allegations of violations of the CBA could not even be considered.

As is set forth in the joint Stipulation filed by the parties on July 17, 2007, and the Order entered by the Court on July 20, 2007, it was agreed that Cross-Motions for Summary Judgment would be filed on or before July 23, 2007.  Pursuant to that Order, Plaintiffs hereby file this Motion for Judgment on the Pleadings and accompanying Brief.  We will show in this Brief that, based on allegations of the Complaint that are admitted in DuPont's Answer, the Local Union's grievance is arbitrable, and thus Plaintiffs are entitled to judgment on the pleadings compelling DuPont to arbitrate the grievance.

## Summary of Argument

1.    There is a strong presumption that when an employer and a union include an arbitration clause in their collective bargaining agreements ("CBAs"), disputes between the parties shall be resolved by arbitration, and "[d]oubts should be resolved in favor of coverage." *AT&T Tech. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986) (*quoting Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  In particular, when the arbitration clause is "broad," a party opposing arbitration must show there is an "express provision excluding the particular grievance from arbitration," or must produce "the most forceful evidence of a purpose to exclude the claim from arbitration," in order to avoid arbitration.  *Id.*

2.    Plaintiffs and DuPont are parties to a CBA which contains a broad arbitration clause requiring arbitration of grievances over alleged violations of the CBA.  Plaintiffs have filed a grievance which alleges that the unilateral changes DuPont announced to several of its employee benefit plans violate provisions of the CBA.  Thus the grievance falls within the scope of the arbitration clause.  And there is no "express provision" excluding the grievance from arbitration.

3.    Nor is there any "forceful evidence of a purpose to exclude the claim from arbitration."  DuPont's stated reason for refusing to arbitrate Plaintiff's grievance—namely, that DuPont "considers" the grievance to present a dispute over eligibility for benefits pursuant to the terms of DuPont's benefit plans, which DuPont believes must be presented to the Plan Administrators through the Plans' claim procedures—is off the mark.  Plaintiffs' grievance does not allege a violation of the *terms of the plans*; it alleges that DuPont has violated *the CBA* by unilaterally *altering* the terms of the plans.  DuPont itself states that the Plan Administrators

2

could not entertain claims for breach of the CBA; such claims, as asserted in the Plaintiffs' grievance, are for an arbitrator to resolve.

    4.    For these reasons, Plaintiffs are entitled to an order compelling DuPont to arbitrate the grievance.

## Statement of Facts[1]

    DuPont and Plaintiffs are parties to a CBA covering all employees, with the exception of certain specified salaried and supervisory employees, at DuPont's plant in Edgemoor, Delaware. *See* Complaint, D.I. 1, ¶ 6; Answer, D.I. 7, ¶ 6.

    The CBA contains a three-step grievance procedure and a broadly worded arbitration provision, requiring that any unresolved disputes over alleged violations of the CBA will be arbitrated:

> Any questions as to the interpretation, or any alleged violation, of any provision of this Agreement, as defined in Section 3 of Article III, which is not otherwise settled to the mutual satisfaction of the parties hereto, at the request of either party, shall be submitted to arbitration in the manner provided in Section 2 of this Article.

Exhibit A, VII § 1.[2]

---

[1]    In ruling on this motion for judgment on the pleadings, the Court may consider undisputed facts in the pleadings, "matters of public record, [and] orders and exhibits attached to the complaint." *Horizon Healthcare Servs., Inc. v. Allied Nat'l Inc.*, Civ. A. No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007); *see also Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); Fed. R. Civ. P. 10(c).  All of the factual statements in this memorandum are based on such undisputed materials.  If it should become necessary to consider any material outside the pleadings in connection with this Motion, the Union would request that the Motion be considered as a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 12(c).

[2]    All references to Exhibits are to the exhibits to the Complaint, D.I. 1.  Article III, Section 3 of the CBA, which is cited in the arbitration clause, defines the CBA to include the main agreement and all supplements thereto.

Article IX of the CBA, titled "Industrial Relations Plans and Practices," requires DuPont to provide certain welfare, retirement, and other programs to the employees governed by the CBA.  In relevant part, that article states:

> All existing privileges heretofore enjoyed by the employees in accordance with the following Industrial Relations Plans and Practices of the Company shall continue, subject to the provisions of such Plans and to such rules, regulations and interpretations as existed prior to the signing of this Agreement, and to such modifications thereof as may be hereafter adopted generally by the Company to govern such privileges; provided, however, that as long as any one of these Company Plans and Practices is in effect within the Company, it shall not be withdrawn from the employees covered by this Agreement; and provided, further, that any change in the Industrial Relations Plans and Practices which has the effect of reducing or terminating benefits will not be made effective until one (1) year after notice to the Union by the Plant of such change

*Id.* Art. IX, § 1.  Another section of the Industrial Relations Plans and Practices Article requires DuPont to provide "benefits as provided by the Company's Beneflex Benefits Plan, subject to all terms and conditions of said Plan."  *Id.* Art. IX, § 3.

On August 28, 2006, DuPont sent an email to all of its United States employees announcing several unilateral changes to certain of its benefit plans ("August 28 email").  *See* Complaint, D.I. 1, ¶ 9; Answer, D.I. 7, ¶ 9.  The August 28 email stated that DuPont employees hired on or after January 1, 2007 would be ineligible to participate in the Company's Pension and Retirement Plan, would not receive "a company subsidy for retiree healthcare (medical and dental) and retiree life insurance," and would receive reduced vacation benefits.  The email also announced that, as to then-existing DuPont employees, future pension benefit accruals would be at "a reduced level," and that Company-paid survivor benefits would "not continue to grow with service or pay after December 31, 2007."  Exhibit B.

On September 14, 2006, Local 4-786 filed a grievance alleging that the unilateral changes announced in the August 28 email violated several provisions of the CBA.  Complaint, D.I. 1, ¶

10, Answer, D.I. 7, ¶ 10.  Specifically, the grievance, as amended (Exhibit D) alleged, in relevant

part:

> On August 28, 2006, the Company announced changes in the terms and conditions of
> employment for actives and new hires in the attached e-mail incorporated herein, sent on
> that date to U.S. employees from Jim Borel, Senior Vice President-Human Resources.
> With respect to actives, the application to such persons of the changes in the Pension and
> Retirement Plan and Savings and Investment Plan, effective January 1, 2008, violates
> Article IX, Section 1 of the Collective Bargaining Agreement because such changes are
> not permitted "modifications" within the meaning of that article and section.  With
> respect to new hires hired on or after January 1, 2007, the withdrawal, effective January
> 1, 2007, of the Pension and Retirement Plan and the current terms of the Vacation Plan
> violate Article IX, Section 1 on two independent and sufficient grounds.  First, these
> announced changes violate Article IX, Section 1, because such changes are not permitted
> "modifications" within the meaning of that Article and Section.  Second, these announced
> changes involved "Company Plans and Practices" within the meaning of Article IX,
> Section 1 and their withdrawal from employees covered by this agreement, on and after
> January 1, 2007, violates Article IX, Section 1 because such Plans and Practices remain
> "in effect within the Company."  In addition, with respect to new hires hired on or after
> January 1, 2007, the withdrawal of the subsidies for retiree health care (medical and
> dental) and life insurance violates Article IX, Section 3 of the Collective Bargaining
> Agreement.
> Remedy:  Cease and desist from making the announced changes.

The grievance thus is based entirely on alleged violations of the CBA; it does not allege

any violations of the terms of the employee benefit plans themselves.  *See id.*

In a letter dated January 25, 2007, DuPont Human Resources Consultant Frank Ingraham

sent a memorandum to Local 4-786 President Mark Schilling acknowledging the Local Union's

grievance, but informing President Schilling that DuPont was refusing to process the grievance

through the grievance and arbitration procedures set forth in the CBA.  Complaint, D.I. 1, ¶ 12;

Answer, D.I. 7, ¶ 12; Exhibit F.  DuPont's stated rationale for this refusal was that it

"consider[s]" Local 4-786's grievance to "invoke a dispute, on behalf of members of your

bargaining unit . . . as to whether those individuals are eligible for certain benefits under the

terms of various employee benefit plans sponsored by DuPont," and that "any disputes over

eligibility for benefits under DuPont's benefit plans must be handled according to the procedures

set forth in the relevant plan documents and summary plan descriptions," or through a civil

enforcement action pursuant to the Employee Retirement Income Security Act of 1974

("ERISA").  Exhibit F.

Mr. Ingraham's memorandum went on to explain that the Plan Administrators of

DuPont's benefit plans would decide whether the Unions' members were eligible for benefits

based solely on the language of the plans themselves:

> Please note further that the Plan Administrators of the various ERISA plans sponsored
> and maintained by DuPont have the ultimate discretionary decision-making authority to
> determine whether or not individuals, including members of your bargaining unit, are
> eligible for benefits under the plans.  The Plan Administrators are required by ERISA to
> make such eligibility determinations in accordance with the terms of those plans.  Claims
> alleging benefit entitlements inconsistent with the eligibility standards set forth in those
> Plans will therefore be denied.  [*Id.*]

As we will show, in light of the well-established presumption in favor of arbitration of

labor disputes, Local 4-786's grievance clearly is arbitrable under the CBA's broadly-worded

arbitration clause.  The fallacy of DuPont's argument to the contrary is highlighted by the fact

that the alternative processes DuPont proposes to resolve the grievance—the internal claims-

resolution procedures of each benefit plan—are ones that, on DuPont's own submission, would

be unable to address the grievance's claims that the announced plan amendments violated the

CBA.  DuPont's refusal to arbitrate is thus completely untenable.

## Argument

### I. There is a Strong Presumption in Favor of Arbitration

It is well established that when an employer and a union include an arbitration clause in

their CBA, "[a]n order to arbitrate the particular grievance should not be denied unless it may be

said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT&T Techs. v.*

*Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

That presumption in favor of arbitrability, which was established by the Supreme Court nearly 50 years ago in the series of cases known as the *Steelworkers Trilogy*,[3] is "particularly applicable" when an arbitration clause is "broad." *AT&T Techs.*, 475 U.S. at 650. When a CBA contains a broad arbitration clause, the burden that must be met by the party opposing arbitration is especially demanding: "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." *AT&T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584-85). As the Third Circuit has noted, these are "rigorous tests" that a party seeking to avoid arbitration must satisfy. *United Steelworkers of Am. v. Lukens Steel Co.,* 969 F.2d 1468, 1475 (3d Cir. 1992); *see also Transit Mix Concrete Corp. v. Local Union  No. 282, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 809 F.2d 963, 968 (2d Cir. 1987) ("[t]his is an imposing litany for [the party seeking to avoid arbitration] to overcome.")

As we now demonstrate, under these well-established standards DuPont's refusal to arbitrate Local 4-786's grievance is unjustifiable. The arbitration clause is broad, the dispute comes within its scope, and there is no "express provision" excluding the grievance from arbitration, *AT&T Techs.*, 475 U.S. at 650, nor is there "forceful evidence of a purpose to exclude the claim from arbitration," *id.*; *see also E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 94-95 (3d Cir. 1987).

---

[3]    *Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, *supra*; *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).  In addition to the presumption in favor of arbitration, the *Steelworkers Trilogy* set forth the principle that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs.*, 475 U.S. at 649.

II.    **Local 4-786's Grievance Alleging Violations of the CBA Is Arbitrable**

A.       The arbitration clause in the CBA between DuPont and Local 4-786, which

requires the arbitration of "[a]ny question as to the interpretation, or any alleged violation, of any

provision of this Agreement" (Exhibit A, Article VII § 1), unquestionably is "broad."  The Third

Circuit has held that a clause providing for the arbitration of  "any dispute arising out of a

claimed violation of this Agreement" is a "broad" arbitration clause.  *E.M. Diagnostic Sys.*, 812

F.2d at 92, 95.  The court also has held that a clause requiring arbitration "[s]hould any

differences arise between the Company and the Union as to the meaning and application of, or

compliance with, the provisions of this Agreement" is broad enough to trigger the presumption

in favor of arbitrability.  *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 673 (3d Cir.

1993).  Like those clauses, the arbitration clause in the CBA between Local 4-786 and DuPont,

which covers grievances "relating to the interpretation or to any alleged violation of this

Agreement," clearly is "broad."

B.       Local 4-786's grievance plainly falls "within the scope of the arbitration clause."

*E.M. Diagnostic Sys.*, 812 F.2d at 95.  Indeed, the Local Union's grievance over an alleged

violation of the CBA "represents a quintessential arbitrable dispute."  *Schweizer Aircraft Corp. v.*

*Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d

83, 86 (2d Cir. 1994) (holding dispute over unilateral amendments to a pension plan to be

arbitrable).

The grievance alleges that DuPont's unilateral changes to the benefit plans affecting the

Local Union's members violate several provisions of the "Industrial Relations Plans and

Practices" Article of the CBA (Exhibit A, Article IX), which imposes restrictions on the

Company's ability to modify or withdraw such benefits.  Specifically, the grievance alleges that

the changes announced by DuPont are not the kind of "modifications" permitted by the first sentence of Article IX, Section 1, which requires DuPont to "continue" all benefits in effect as of the effective date of the CBA and allows DuPont to "modif[y]" only "rules, regulations and interpretations." *See id.*; Exhibit D.  The grievance also alleges that, by amending the benefit plans to exclude employees hired after January 1, 2007, DuPont has violated a proviso in IX, Section 1 that such plans "shall not be withdrawn from the employees covered by this Agreement" so long as they are "in effect" anywhere "within the Company."  *See id.*

Thus, the grievance falls squarely within the coverage of the arbitration clause, which requires that disputes over alleged violations of the CBA be submitted to arbitration.  Even if there were any room for doubt on that point – and there is not – it certainly cannot be "said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650. [4]

---

[4]    Whether Local 4-786's grievance ultimately is successful on its merits is irrelevant to the question of whether the matter is arbitrable, and in examining the question of arbitrability the Court is not permitted to weigh the merits of the grievance. *American Mfg. Co*., 363 U.S. at 568; *AT&T Techs.,* 475 U.S. at 650.  Further, in making a determination about the arbitrability of the Union's grievance, the Court need not separately examine each of the CBA provisions Local 4-786 alleges were violated; the Court need simply determine whether the grievance is arbitrable under any theory.  *See International Ass'n of Machinists & Aerospace Workers v. General Elec. Co., 406 F.2d 1046, 1047 & n.2 (2d Cir. 1969), overruled on other grounds as noted in Int'l Bhd. of Elec. Workers, Local 2213  v. New York Telephone Co.,* No. 89-CV-1123, 1989 WL 140903 (N.D.N.Y. Nov. 22, 1989) (noting that the union had originally relied on one provision of the collective bargaining agreement in presenting its grievance, but that now the "primary basis" for the Union's grievance was the allegation that the company had violated a different provision; this change in theory "need not be discussed in detail" because "the issue before us is not whether the Company breached the agreement, but whether the dispute is arbitrable"); *see also Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 846 (2d Cir. 1987) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted"); *Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers*, No. 88-2094, 1988 WL 149181 (D.N.J. Aug. 25, 1988) (citing two clauses in CBA, both of which union alleged were violated, as "alternative" bases for compelling arbitration).

That being the case, unless DuPont can point to "an[] express provision excluding [the] grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.,* 475 U.S. at 650.

C.     DuPont cannot meet these "rigorous tests." *United Steelworkers of Am. v. Lukens Steel Co*., 969 F.2d at 1475.

1.     There is certainly no "express provision excluding [this] particular grievance from arbitration," *AT&T Techs.,* 475 U.S. at 650.

Only language which "explicitly describe[s] the issue excluded from arbitration" can operate to defeat arbitrability. *United Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1476, n.5. In other words, the kind of language that has been held by the courts to qualify as an explicit exclusion from arbitration is exactly that—explicit, and exclusionary. *See id.* (arbitration clause stating "It is understood that the determination of qualifications for hiring pursuant to this paragraph is not subject to the arbitration procedure of this Agreement.") DuPont's letter refusing to arbitrate Local 4-786's grievance pointed to no such exclusionary language, for there is none.

2. Given that there is no "express," "explicit" provision in the CBA that excludes the Local Union's grievance from arbitration, DuPont would need to set forth "the most forceful evidence of a purpose to exclude the claim from arbitration" in order to defeat the demand for arbitration. *AT&T Techs*., 475 U.S. at 650. DuPont cannot do so.

DuPont's letter attempted to make an argument against arbitrability by mischaracterizing the Local Union's grievance as one involving disputes over eligibility for benefits under the *terms of the plans,* which DuPont maintains the parties intended to be resolved through the claims procedures of each benefit plan. *See supra* at 5-6. But that argument is misplaced,

because the grievance does *not* involve a dispute over whether particular employees are eligible for benefits under the *terms of the plans;* rather, it involves a dispute over whether *the amendments DuPont has enacted to the plans* violate the CBA between DuPont and the Unions.[5]

Notwithstanding the clear language of the grievance, DuPont, in its January 25 memo to the Local Union, stated that it would refuse to arbitrate because it "consider[ed]" the grievance to "invoke a dispute" as to whether members of the bargaining unit "are eligible for certain benefits under the terms of various employee benefit plans sponsored by DuPont." Exhibit F. That is a transparent attempt to rewrite the Local Union's grievance into a form that suits DuPont's purposes. The grievance filed by the Local Union – as distinguished from DuPont's attempted rewrite – does *not* present a question of anyone's eligibility for benefits under "the terms of [the] plans."

DuPont's argument therefore fails for the reasons stated by the Third Circuit in *RCA Corp v. Local 241, Prof'l  & Technical Eng'rs*, 700 F.2d 921 (3d Cir. 1983). There, the court distinguished between grievances that allege violations of a collective bargaining agreement, on the one hand, and grievances that allege solely a violation of the terms of a benefit plan, on the other. The court held that, when a grievance alleges violations of a CBA, it is "irrelevant" that a grievance relates to the terms of a benefits plan:

> Whether the challenged actions were taken under the auspices of [a] [r]etirement [p]lan, another plan or no plan does not change our analysis [as to arbitrability]. We are concerned only with actions that are alleged to violate particular provisions of a collective bargaining agreement which provides for arbitration of disputes concerning its interpretation or application.

*Id.* at 925.

---

[5]    That is to say, the Local Union is not alleging that DuPont violated the terms in the Plans, but that the terms in the Plans as unilaterally amended by DuPont are the *wrong* terms, because they do not comport with what the CBA requires.

Consistent with the analysis in *RCA Corp.*, the District of New Jersey rejected an argument very similar to DuPont's in *Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers*, No. 88-2094, 1988 WL 149181 (D.N.J. Aug. 25, 1988). There, a union filed a grievance alleging that the employer's unilateral change in the terms of a benefit plan violated a CBA. As in this case, the plan "provide[d] an internal review procedure for participants to challenge a denial of benefits," *id.* at *3; and the employer, like DuPont here, cited this as "forceful evidence" that the grievance was not subject to arbitration, *id.* This Court rejected that contention, noting that the dispute "does not involve a plan participant's challenge to a particular denial of benefits," but rather involves a "change in plan rules" which the union alleged "is inconsistent with [the employer's] obligations under the labor contract." *Id.*

DuPont's attempt to treat the Local Union's grievance as if it alleged a failure by plan administrators to comply with the terms of a benefit plan rather than a failure by the employer to abide by a CBA is indistinguishable from the employer arguments that were rejected by the Second Circuit in *Schweizer Aircraft, supra.* In that case, the CBA provided that, for employees retiring during a specified time period, pension benefits would be $18.00 per month for each year of service. 29 F.3d at 86. "Instead of using this language, however, Schweizer amended the [Pension] Plan," *id.,* to insert language that could be construed to make the $18.00 multiplier applicable only to an employee's *most recent* period of service, thus leaving the company's Pension Committee free, in the case of employees who terminated employment but were subsequently rehired, to use a lower multiplier for earlier periods of service. When the Pension Committee proceeded to do that, the union filed a grievance and demanded arbitration, asserting that the employer had violated the CBA because of "the difference between the language which Schweizer had agreed in the CBA to add to the Plan, and the language actually added." *Id.*

Schweizer argued "that resort by the Union to the arbitration provisions of the CBA is

unavailable because [the] dispute is governed by the Pension Plan, not by the contract negotiated

between it and the Union."  *Id.*  The court, however, was "persuaded" that "the Union's

arbitration demand . . . was directed only at the responsibility imposed on Schweizer under the

CBA," rather than at "the responsibilities of the Plan's administrators," because "[t]he arbitration

demand was directed at Schweizer's alleged refusal to comply with the CBA and was focused on

the meaning of the CBA language."  *Id.*  The Second Circuit found that to be a "quintessential

arbitrable dispute."  *Id.*

  Here, as in *Schweizer Aircraft*, Local 4-786's grievance is "focused on the meaning of the

CBA language," and is "directed only at the responsibility imposed on [DuPont] under the

CBA."  *Id.*  DuPont's attempt to rewrite the grievance so as to convert it into a complaint about

an exercise of "the responsibilities of the Plan[s]' administrators," *id.,* is nothing but a red

herring, and cannot defeat arbitrability.[6]

---

[6]  For these reasons, the Local Union's grievance is distinguishable from grievances that have been found by some courts not to be arbitrable because they presented a dispute concerning a plan administrator's *interpretation or application of the terms a plan.  See, e.g., Machinists Dist. No. 10 v. Waukesha Engine Div.*, 17 F.3d 196 (7th Cir. 1994) (dispute over whether plan administrator properly refused to precertify an individual's request for additional days of hospital stay, where the administrator found the additional stay not to be medically necessary); *Steelworkers v. Commonwealth Aluminum Corp,*. 162 F.3d 447, 451-52 (6th Cir. 1998) (dispute over plan administrator's adoption of a referral requirement for certain medical procedures, and denial of three individual requests for benefits, where the union made no contention "that the negotiated level of benefits were not properly set out in the Plan booklets"). In prior proceedings DuPont has cited the decision in *PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Int'l Union,* 164 F. Supp. 2d 856 (E.D. Tex. 2001).  Although that decision has not been cited in any other published opinion, and we submit that its analysis is inconsistent with the Second Circuit's decision in *Schweizer Aircraft* and the Third Circuit's decision in *RCA Corp.*, the case also is distinguishable.  *PDG Chemical* did not concern the permissibility of a unilateral plan amendment, but rather the manner in which the pension plan administrator determined employees' base pay in calculating benefits; and the union had not alleged any violation of the contractual agreement that dictated how base pay would be determined.  *See* 164 F. Supp. 2d at 863 n.14.

C.      Not only does DuPont lack any evidence, much less "the most forceful evidence of a purpose to exclude the claim from arbitration," *AT&T Tech.*, 475 U.S. at 650, but DuPont's position would place the Unions in a Catch-22 that the parties cannot reasonably be thought to have intended.

Because DuPont appoints the Plan Administrators – and DuPont itself is designated as the Plan Administrator of some of the plans – any contention that the Local Union's claim for breach of the CBA must be adjudicated by the Plan Administrators would mean that DuPont would be the judge of whether it has breached the commitments it made in the CBA.

That would be implausible enough in itself, but DuPont actually goes even further.  In its memorandum to the Local Union refusing to arbitrate, DuPont was at pains to declare that, although it was taking the position that only the Plan Administrators could resolve what DuPont viewed as the dispute underlying the Local Union's grievance, DuPont wanted the Local Union to understand that the Plan Administrators would be required to make their determinations solely "in accordance with the terms of th[e] plans," and that "[c]laims alleging benefit entitlements inconsistent with the eligibility standards set forth in those Plans will therefore be denied." Exhibit F.  DuPont's clear message was that the Plan Administrators *would not entertain the Local Union's claim that DuPont breached the CBA*, because the Administrators are confined to whatever is "set forth in th[e] Plans," and cannot concern themselves with a contention, such as constitutes the gravamen of the Local Union's grievance, that what is "set forth in th[e] Plans" deviates from what the CBA requires.

Thus DuPont is contending that Local 4-786's claim that the Company unilaterally amended its benefit plans in ways that violate the CBA cannot be heard in arbitration, which is the forum the parties have designated to resolve "[a]ny question as to the interpretation, or any

alleged violation, of any provision of this Agreement," but must instead be presented to DuPont's own Plan Administrators, who cannot even entertain the Local Union's claim because the Plan Administrators can only apply the plans as DuPont has written them and cannot consider whether the CBA requires that the plans be written in some other way. DuPont's position is wildly implausible. To say that DuPont cannot muster "the most forceful evidence of a purpose to exclude the [Union's] claim from arbitration," *AT&T Techs.,* 475 U.S. at 650, understates the case.

### <u>Conclusion</u>

For the reasons stated above, Plaintiffs' motion for judgment on the pleadings should be granted.

Respectfully submitted,

HEIMAN, GOUGE & KAUFMAN, LLP

*/s/ Susan E. Kaufman*
Susan E. Kaufman (DSB # 3381)
800 King Street, Suite 303
Wilmington, DE 19801
(302) 658-1800 / (302) 658-1473 (fax)
skaufman@hgkde.com

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone: (202) 842-2600/ Facsimile: (202) 842-1888
jcollins@bredhoff.com
jhunter@bredhoff.com

*Counsel for Plaintiffs United Steel, Paper and Forestry,*
*Rubber, Manufacturing, Energy, Allied-Industrial and*
*Service Workers International Union* and *United Steel,*
*Paper and Forestry, Rubber, Manufacturing, Energy,*
*Allied-Industrial and Service Workers Local 4-786*

DATED: July 23, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND FORESTRY,  )
RUBBER, MANUFACTURING, ENERGY,  )
ALLIED INDUSTRIAL AND SERVICE  )
WORKERS, INTERNATIONAL UNION,  )
AFL-CIO-CLC, and UNITED STEEL, PAPER  )
AND FORESTRY, RUBBER, MANUFACTURING,  )          C.A. No. 07-126 (JJF)
ENERGY, ALLIED INDUSTRIAL AND SERVICE  )
WORKERS LOCAL 4-786,  )
  )
                         Plaintiffs,  )
           v.  )
  )
E.I. DuPONT de NEMOURS and  )
COMPANY,  )
  )
                         Defendant.  )
_____)

### CERTIFICATE OF SERVICE

        I hereby certify that on July 23, 2007, I electronically filed the PLAINTIFFS' BRIEF IN
SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS with the Clerk of
Court using CM/ECF which will send notification of such filing(s) to the following:

        Kathleen F. McDonough, Esquire
        Potter, Anderson & Corroon, LLP
        1313 North Market Street
        Wilmington, DE 19899

        I hereby certify that on July 23, 2007, I have mailed by United States Postal Service, the
document(s) to the following non-registered participants:

        Thomas P. Gies, Esquire
        Crowell & Moring LLP
        1001 Pennsylvania Avenue, NW
        Washington, DC 20004-2595

                                            */s/ Susan E. Kaufman*
                                            Heiman, Gouge & Kaufman, LLP
                                            800 King Street, Suite 303
                                            Wilmington, DE  19801
                                            302-658-1800
                                            skaufman@hgkde.com

16