**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

UNITED STEEL, PAPER AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS, INTERNATIONAL UNION, )
AFL-CIO-CLC, and UNITED STEEL, PAPER )
AND FORESTRY, RUBBER, MANUFACTURING, )
ENERGY, ALLIED INDUSTRIAL AND SERVICE )
WORKERS LOCAL 4-786, )
                                                      )
      Plaintiffs, )
                                                      )
v. )      C.A. No. 07-126 (JJF)
                                                        )
E. I . DUPONT DE NEMOURS AND )
COMPANY, )
                                                        )
      Defendant. )
_____ )

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

SUSAN E. KAUFMAN (DSB # 3381)
Heiman Gouge & Kaufman, LLP
800 King Street, Suite 303
Wilmington, DE 19801
(302) 658-1800 / (302) 658-1473 (fax)
skaufman@hgkde.com

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
(202) 842-2600 / (202) 842-1888 (fax)
jcollins@bredhoff.com
jhunter@bredhoff.com

Attorneys for United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service
Workers, International Union, AFL-CIO-CLC, and United
Steel, Paper and Forestry, Rubber, Manufacturing, Energy,
Allied-Industrial and Service Workers Local 4-786

Date:  August 24, 2007

## TABLE OF CONTENTS

Page

Nature and Stage of the Proceedings ...................................................................................1

Summary of Argument ...................................................................................................2

Counterstatement of Facts....................................................................................................3

Argument ..........................................................................................................................5

    I.   DuPont's Assertions As to the Meaning of Article IX
       of the CBA Go to the Merits of the Grievance, Which
       are for the Arbitrator, Not the Court, to Decide......................................................6

    II.  The Benefit Claims Procedures in the Plan SPDs Do Not Constitute
       an Exclusive Process to Resolve—and Indeed Cannot Resolve—
       Disputes As to Whether DuPont Has Violated the CBA in
       Amending the Plans ..............................................................................................11

Conclusion ......................................................................................................................24

## TABLE OF AUTHORITIES

### CASES

*AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643 (1986)........5, 6, 8, 10, 24

*Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994) ........................18

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists,*
    802 F.2d 247 (7th Cir. 1986) ...................................................................................10

*Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.,*
    484 U.S. 539 (1988)...................................................................................................21

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190 (1991)...................................................21

*Local 232, Allied Industrial Workers v. Briggs & Stratton Corp.,*
    837 F.2d 782 (7th Cir. 1988) ...................................................................................17

*Local Union No. 4-449, Oil, Chem. & Atomic Workers Union v. Amoco Chem.*
    *Corp.*, 589 F.2d 162 (5th Cir. 1979) ..................................................................16, 17

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)................................................................18

*Machinists District No. 10 v. Waukesha Engine Division,*
    17 F.3d 196 (7th Cir. 1994) ...............................................................................15, 16

*Maryland Cas. Co. v. W.R. Grace & Co.*, 794 F. Supp. 1206 (S. D.N.Y. 1991),
    *rev'd on other grounds* ...............................................................................................4

*Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003)...............................................14, 15

*Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816 (1st Cir. 1980)..............4

*PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Int'l Union,*
    164 F. Supp. 2d 856 (E.D. Tex. 2001).....................................................................16

*Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers,*
    No. 88-2094, 1988 WL 149181 (D.N.J. Aug. 25, 1988) .....................................13, 17

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) .........................................................12

*RCA Corp v. Local 241, Prof'l & Technical Eng'rs*, 700 F.2d 921 (3d Cir. 1983) ...........17

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &*
    *Agric. Implement Workers of Am.*, 29 F.3d 83 (2d Cir. 1994)........................17, 18, 23

*Seal Tite Corp. v. Ehret, Inc.*, 589 F. Supp. 701 (D.N.J. 1984) ...........................................5

*Steelworkers v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998) .......16, 17

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).....................5, 9, 10

*United Food & Commercial Workers, Local 17A v. Fresh Mark*,
    81 Fed. Appx. 23 (6th Cir. 2003) ...............................................................................15

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994) ......................................................................................17

*Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*,
    940 F.2d 513 (9th Cir. 1991) ......................................................................................10

## STATUTES AND REGULATIONS

29 U.S.C. § 185(a) .......................................................................................................12

29 U.S.C. § 1132(a)(1)................................................................................................14

29 U.S.C. § 1132(a)(1)(B) ..........................................................................................12

29 U.S.C. § 1133(1) ....................................................................................................12

29 U.S.C. § 1133(2) ....................................................................................................12

29 U.S.C. § 1144(a) ....................................................................................................12

29 U.S.C. § 1144(d) ....................................................................................................12

29 C.F.R. 2560.503-1(a) .............................................................................................14

29 C.F.R. § 2560.503-1(b) ..........................................................................................20

29 C.F.R. § 2560.503-1(b)(5) .....................................................................................12

29 C.F.R. § 2560.503-1(b)(6) .....................................................................................20

29 C.F.R. § 2560.503-1(b)(6)(i)(B) ............................................................................20

**MISCELLANEOUS**

DOL Opinion Letter 81-50A ........................................................................................21

Handbook on ERISA Litigation, 3d. ed., § 5.04[B][3][a] ................................................12

H.R. Conf. Rep. No. 93-1280 .........................................................................................13

## <u>Nature and Stage of the Proceedings</u>

This suit to compel arbitration involves one simple question:  whether a grievance filed by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers Local Union 4-786 ("Local 4-786" or "Local Union"), which alleges that Defendant E.I. DuPont de Nemours and Company ("DuPont" or "the Company") violated the collective bargaining agreement ("CBA") in effect between DuPont and Plaintiffs Local 4-786 and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union ("International Union"), should be submitted to arbitration in accordance with the CBA's arbitration clause, which requires the arbitration of all grievances "as to the interpretation, or any alleged violation, of any provision of this Agreement."  As Plaintiffs set forth in their Brief in Support of Motion for Judgment on the Pleadings ("Plaintiffs' Opening Brief"), D.I. 17, under well-established legal principles this question should be resolved in the affirmative, and DuPont should be ordered to submit the grievance to arbitration.

Pursuant to the joint Stipulation filed by the parties on July 17, 2007, and the Order entered by the Court on July 20, 2007, Plaintiffs filed their Motion for Judgment on the Pleadings, D.I. 16, and accompanying brief, D.I. 17, on June 23, 2007, and DuPont also filed its Motion for Summary Judgment, D.I. 18, and accompanying brief, D.I. 19, on that date.  Plaintiffs now file this Brief in Opposition to Defendant's Motion for Summary Judgment.

## Summary of Argument

1.     This case presents the straightforward question of whether the Court should order the arbitration of a grievance alleging a violation of a CBA.  As was set forth in Plaintiffs' Opening Brief, a strong presumption of arbitrability applies where, as here, the parties have included a broad arbitration clause in their CBA; and DuPont is unable to overcome this presumption.

2.     DuPont's Memorandum in Support of its Motion for Summary Judgment, D.I. 19 ("DuPont's Opening Brief") attempts to distract the Court from this simple question.  It does so by asking the Court to adopt DuPont's substantive interpretation of the provisions of the CBA which the grievance alleges were violated.  In so doing, DuPont only highlights the fact that there is a disagreement between the parties over the interpretation of provisions of the CBA, which is precisely the type of disagreement the parties agreed to submit to arbitration.

3.     DuPont's other principal argument – that the grievance must be resolved through the claims procedures contained within the Summary Plan Descriptions ("SPDs") for each DuPont employee benefit plan – ignores the fact that those procedures exist to resolve disputes over individual employees' eligibility for benefits under the terms of the plans themselves, and could not resolve the Local Union's grievance alleging that, in amending those terms, DuPont violated the CBA.

For these reasons, Plaintiffs are entitled to judgment on the pleadings compelling DuPont to arbitrate the grievance.[1]

---

[1]     DuPont correctly notes that two of the benefit plans (the MEDCAP and Dental Plans) are not listed in the CBA.  Plaintiffs have decided not to pursue their demand for arbitration with respect to those two plans.  *See infra* note 5.

**Counterstatement of Facts**

The undisputed facts relevant to resolving this case are set forth in Plaintiffs' Opening Brief, *see id.* at 3-6; we need only briefly recap them here.

DuPont and Plaintiffs are parties to a CBA which contains an arbitration clause requiring that all disputes "as to the interpretation, or any alleged violation, of any provision of this Agreement" be submitted to arbitration. Exhibit A, Article VII § 1.[2] The CBA also contains an Article IX entitled "Industrial Relations Plans and Practices" ("IRP&P") which Plaintiffs allege requires DuPont to provide certain welfare, retirement, and other benefits to the employees covered by the CBA. *Id.* Art. IX, §§ 1, 3.

In an email dated August 28, 2006, DuPont announced unilateral changes to certain of its benefit plans. *See* Complaint, D.I. 1, ¶ 9; Answer, D.I. 7, ¶ 9; Exhibit B. In September 2006, Local 4-786 filed a grievance alleging that the changes announced in the August 28 email violated the IRP&P Article of the CBA. Complaint, D.I. 1, ¶ 10, Answer, D.I. 7, ¶ 10; Exhibit D.

DuPont refused to process the grievance through the grievance and arbitration procedures set forth in the CBA, stating that it "consider[ed]" Local 4-786's grievance to "invoke a dispute, on behalf of members of your bargaining unit . . . as to whether those individuals are eligible for certain benefits under the terms of various employee benefit plans sponsored by DuPont;" DuPont took the position that "any disputes over eligibility for benefits under DuPont's benefit plans must be handled according to the procedures set forth in the relevant plan documents and summary plan descriptions," or through a civil enforcement action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Complaint, D.I. 1, ¶ 12; Answer, D.I. 7, ¶

---

[2]      Unless otherwise specified, all references to Exhibits are to the exhibits to the Complaint, D.I. 1.

12; Exhibit F.  DuPont's letter went on to explain that the Plan Administrators of DuPont's benefit plans would decide whether the Unions' members were eligible for benefits based solely on the language of the plans themselves, and that "[c]laims alleging benefit entitlements inconsistent with the eligibility standards set forth in those Plans will therefore be denied."  *Id.*

DuPont's Statement of Material Facts Not in Dispute does not purport to controvert any of the facts just stated.  DuPont's Statement does contain numerous additional assertions, but they are not material to the resolution of the pending motions and thus do not warrant extensive discussion here.[3]

---

[3]      For instance, DuPont's Opening Brief at 7-8 describes administrative actions DuPont has taken to implement its plan amendments; as is discussed *infra* at 18-19, these allegations are not relevant to this case.  Pages 11-13 of DuPont's Opening Brief discuss grievances filed by unions other than Local 4-786 and charges filed with the National Labor Relations Board; these assertions are not material because grievances filed by other unions and charges filed with the NLRB are not at issue in this case.

However, some discussion is warranted as to the assertions in paragraph 30 of the Declaration of Mary J. Anderson that "DuPont has been willing to permit its unionized employees to participate in the benefit plans it sponsors and administers for all its U.S. employees, subject to the terms of the plans themselves, on the condition that DuPont remain free to modify the plans at its discretion" – an "understanding" that Ms. Anderson avers "is memorialized in the collective bargaining agreement between DuPont and the Union, in a contract provision entitled 'Industrial Relations Plans and Practices' ('IRP&P')."  Those assertions, to which DuPont refers in its Opening Brief at 3, are not material, because they merely state DuPont's position as to the meaning of the IRP&P provision—a matter which concerns the merits of the grievance, *not* its arbitrability, and as such is not before the Court for decision.  *See* Plaintiffs' Opening Brief at 9 n.4; *infra* at 8-11.

In any event, paragraph 30 of the Anderson Declaration contains no admissible evidence. On its face, that paragraph merely recites DuPont's "unilateral understanding," which "prove[s] nothing."  *Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816, 819 (1st Cir. 1980). Ms. Anderson's declaration presents no competent evidence as to any *mutual* understanding between DuPont and Plaintiffs.  The declaration is entirely conclusory in that regard, containing "no hint of any conduct or communications on the part of [Plaintiffs] that would have manifested . . . 'understandings' or 'intentions' such as the ones described."  *Id.  See also Maryland Cas. Co. v. W.R. Grace & Co.*, 794 F. Supp. 1206, 1229 (S. D.N.Y. 1991), *rev'd on other grounds*, 23 F.3d 617 (2d Cir. 1993) (affidavit about the "intent" of a contract provision is "too conclusory and thus insufficient under Rule 56(e)").  In addition, "opinions and beliefs as to the meaning of [a contract] clause" cannot be introduced as summary judgment evidence because they constitute

## Argument

As is explained in Plaintiffs' Opening Brief at 6-7, there is a strong presumption in favor of arbitration of labor disputes, such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Particularly when, as is the case here, an arbitration clause is "broad,"[4] *see* Plaintiff's Opening Brief at 7, and the grievance by its terms comes within the scope of the clause, *see id.* at 8-9, the party opposing arbitration must show that there is an "express provision excluding the particular grievance from arbitration," or must produce "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT&T Techs.*, 475 U.S. at 650.

In DuPont's Opening Brief, DuPont attempts to overcome the presumption in favor of arbitration in two ways. First, ignoring the well-established rule that, in deciding the question of arbitrability, a court is not to address the merits of a grievance, DuPont in effect asks this Court

---

conclusions of law, not statements of fact. *Seal Tite Corp. v. Ehret, Inc.*, 589 F. Supp. 701, 705-06 (D.N.J. 1984).

For these reasons, Plaintiffs have moved to strike paragraph 30 of the Anderson Declaration. But, should the Court conclude, contrary to our submission, that paragraph 30 is material and admissible, in an abundance of caution Plaintiffs have submitted with this brief the Declaration of James Briggs, which controverts Ms. Anderson's assertions. If the Court agrees with Plaintiff's contention that paragraph 30 of the Anderson Declaration should not be considered, there will be no need for the Court to consider the Briggs Declaration either.

[4]    DuPont's oblique suggestion that the arbitration clause is not broad enough to trigger the presumption in favor of arbitrability, *see* DuPont's Opening Brief at 16-17, is contrary to Third Circuit decisions holding that arbitration clauses very similar to the one at issue here are "broad." *See* Plaintiff's Opening Brief at 8 and cases cited therein. DuPont cites no case in which an arbitration clause similar to the one at issue here has been held not to trigger the presumption of arbitrability.

5

to do precisely that, by asserting that the "Industrial Relations Plans and Practices" Article of the CBA should be read to give DuPont the right to amend those "plans and practices" at will. Second, DuPont asserts that the ERISA-mandated benefit claims procedure which is part of each benefit plan constitutes the proper and exclusive way for the grievance to be resolved, despite the fact that those procedures – under which DuPont itself is the adjudicator – apply to claims by individual participants that the plan administrators have failed to follow the terms of a plan, *not* to claims by the union that, in amending the terms of a plan, DuPont has failed to comply with a CBA.

As we will show, neither of DuPont's principal arguments, and none of the ancillary contentions advanced by DuPont, withstands scrutiny. Taken singly or together, by no stretch of the imagination can DuPont's arguments be deemed to constitute "the most forceful evidence," *AT&T Techs.*, 475 U.S. at 650, of an intention to exclude the grievance from arbitration.

I.     **DuPont's Assertions As to the Meaning of Article IX of the CBA Go to the Merits of the Grievance, Which are for the Arbitrator, Not the Court, to Decide**

DuPont asserts that the IRP&P Article of the CBA grants the Company the right to make unilateral changes in its benefit plans as it sees fit. *See* DuPont's Opening Brief at 3-4. As we will show, DuPont's reading of the article is internally inconsistent and fails even to acknowledge, much less to account for, the language on which the Local Union's grievance is based. *See* Section A *infra* at 7-8. But DuPont's reliance on the IRP&P Article is misplaced in any event, because DuPont's assertions about those provisions go to *the merits of the grievance,* which are not before the Court for decision; DuPont's arguments do *not* provide evidence – much less "the most forceful evidence" – of a "purpose to exclude the [grievance] from arbitration." *AT&T Techs,* 475 U.S. at 650. *See* Section B *infra* at 8-11.

A.    The IRP&P Article of the CBA, on which the Local Union's grievance is based, provides as follows:

> All existing privileges heretofore enjoyed by the employees in accordance with the following Industrial Relations Plans and Practices of the Company shall continue, subject to the provisions of such Plans and to such rules, regulations and interpretations as existed prior to the signing of this Agreement, and to such modifications thereof as may be hereafter adopted generally by the Company to govern such privileges; provided, however, that as long as any one of these Company Plans and Practices is in effect within the Company, it shall not be withdrawn from the employees covered by this Agreement; and provided, further, that any change in the Industrial Relations Plans and Practices which has the effect of reducing or terminating benefits will not be made effective until one (1) year after notice to the Union by the Plant of such change.

Exhibit A, Art. IX, § 1.  The Article then lists a number of employee benefits plans, including the Pension and Retirement Plan and the Savings and Investment Plan which are at issue in this case. Section 3 of the IRP&P Article further provides that "employees shall also receive benefits as provided by the Company's BeneFlex Benefits Plan, subject to all terms and conditions of said Plan." *Id.* § 3.

The obvious purpose of the IRP&P Article is to define and limit the circumstances in which DuPont may make changes in its benefit plans; and yet DuPont asserts that the article permits the Company to amend *all* of its plans, *in any way it may choose*, "at its discretion." DuPont's Opening Brief at 3-4.  In thus attempting to drain the IRP&P Article of all meaning, DuPont fails even to acknowledge the language in the IRP&P Article upon which the Local Union's grievance is based.  Specifically, the grievance contends that the first sentence of the IRP&P Article requires DuPont to "continue" all benefits in effect as of the effective date of the CBA, and allows DuPont to "modif[y]" only "rules, regulations and interpretations."  *See* Exhibit A Art. IX; Exhibit D.  The grievance also asserts that the provision stating that plans "shall not be withdrawn from the employees covered by this Agreement" so long as they are "in effect" elsewhere "within the Company" prohibits DuPont from withdrawing its benefit plans from the

Local Union's members, or a subsection thereof, while some DuPont employees receive those benefits. *Id.* DuPont's brief, in blithely declaring that the Company has the right to change its benefit plans at will, never even discusses any of this language.

B.    In any event, whether Plaintiff's construction of the IRP&P Article or DuPont's construction is correct is the very issue that must be decided by the *arbitrator* in resolving the merits of the Local Union's grievance. DuPont's assertions in this regard have nothing to do with the question of arbitrability, which is the sole question presented for decision by the Court in this case.

It is a cardinal rule that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986). Rather, the question before the Court is simply whether to compel arbitration of the Local Union's grievance under the arbitration clause in the parties' CBA, which provides that all disputes "as to the interpretation, or any alleged violation, of any provision of this Agreement" shall be submitted to arbitration. Whether the Local Union's contention that the IRP&P Article prohibits the kinds of unilateral plan changes DuPont has announced may appear to the Court be meritorious or not has nothing to do with whether the grievance is arbitrable. *See AT&T Techs.*, 475 U.S. at 649-50 ("Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.")

DuPont's argument that the language in the IRP&P Article should be read to exclude the Local Union's grievance from arbitration is analogous to arguments often made by employers –

and rejected by courts – in cases involving "management's rights" clauses.  In those cases, as here, employers have argued that a CBA should be construed to grant management discretion to take certain unilateral actions, and that management's actions in these areas should be immune from arbitration.  Courts have recognized such arguments as back-door attempts to litigate the merits of a grievance, and have rejected them as such.

Thus, in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960), one of the trio of cases known as the *Steelworkers Trilogy*, the union sought to compel the employer to arbitrate a grievance over the contracting out of certain maintenance work.  The collective bargaining agreement contained a broad arbitration clause providing for the arbitration of "differences . . . as to the meaning and application of the provisions [of the CBA]," and of "any local trouble of any kind."  *Id.* at 576.  The employer argued that the grievance was not arbitrable because the CBA also provided that "matters which are strictly a function of management shall not be subject to arbitration."  *Id.* at 583.  The Court stated that the phrase "strictly a function of management" required interpretation, and that the interpretation must be made by an arbitrator, for "if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception."  *Id.* at 584.  The Court then articulated the now well-known standard for arbitrability cases:  "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."  *Id.* at 584-85.

The court went on to warn that, since "any attempt by a court to infer such a purpose [to exclude a particular grievance from arbitration] necessarily comprehends the merits," a court

should "view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *Id.* at 585. *See also Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 519 (9th Cir. 1991) ("To the extent [the employer] is asking us to adopt its reading [of a certain CBA provision], it is seeking a court determination of the merits of the grievance . . . we cannot provide what [the employer] requests"); *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists*, 802 F.2d 247, 252-53 (7th Cir. 1986) (even though the management's rights clause was "indeed broad" and would generally allow the company to subcontract work, a grievance over particular instances of subcontracting constituted a "disagreement . . . over the precise meaning of the agreement in the circumstances of the present case" and was arbitrable; "the management-rights clause does not so clearly withdraw the subject of subcontracting from the scope of the arbitration clause as to deprive the arbitrator of jurisdiction").

This is an even simpler case than *Warrior & Gulf*, because in that case the management's rights clause stated that certain matters (albeit not fully specified) "shall not be subject to arbitration." 363 U.S. at 583. The CBA in *this* case does not exclude *any* claim of a contract breach from arbitration, but provides without qualification or reservation that *all* disputes "as to the interpretation, or any alleged violation of any provision of this Agreement" shall be arbitrated. Grievances concerning the benefit plans are not excluded; there is neither an "express provision excluding the particular grievance from arbitration," nor "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT&T Techs.*, 475 U.S. at 650.

The Court therefore should reject DuPont's attempt to have the Court pronounce on whether the IRP&P Article permits DuPont to take the actions which the grievance alleges are

prohibited by that Article; the Court instead should order DuPont to carry out its contractual promise to submit such matters to arbitration.[5]

## II.    The Benefit Claims Procedures in the Plan SPDs Do Not Constitute an Exclusive Process to Resolve—and Indeed Cannot Resolve—Disputes As to Whether DuPont Has Violated the CBA in Amending the Plans

DuPont's other primary argument, that the parties must have intended to exclude the grievance from arbitration because the SPD for each benefit plan contains an internal benefit claims procedure, ignores the fact that those procedures exist to resolve individuals' claims that they were wrongly denied benefits under the terms of the plans, *not* to resolve a claim by the Local Union that the terms of the plan are themselves improper because they were changed unilaterally by DuPont in violation of a CBA.

A.    It is entirely unremarkable that the SPDs for DuPont's benefit plans (with the exception of the Vacation Plan, which is not governed by ERISA, *see* DuPont's Opening Brief at 5 n. 3) contain internal claims procedures.  ERISA requires every benefit plan to establish such procedures in order to resolve claims by individual plan participants and beneficiaries that they have been wrongly denied particular benefits to which they are entitled under the terms of a plan. For instance, if a plan refuses to pay a participant's medical bill on the grounds that the

---

[5]    DuPont notes correctly that the IRP&P Article does not list two of the benefit plans identified in the grievance – the MEDCAP Plan and the Dental Plan.  *See* DuPont's Opening Brief at 17-18.  Plaintiffs have decided not to pursue the grievance with respect to those two plans, and Plaintiffs therefore do not request that DuPont be ordered to proceed to arbitration with respect to them.  Although this particular issue therefore is moot, it bears noting that DuPont's argument on this point is internally inconsistent.  DuPont states that "the absence of express language pertaining to specific plans [*i.e.*, MEDCAP and Dental] in each of these agreements, *when viewed against the delineation of other plans in the agreement*, provides forceful evidence of an intent to exclude from the scope of the agreement (including the arbitration clause) those plans not specifically listed."  DuPont's Opening Brief at 17-18 (emphasis added).  DuPont fails to grasp that, on that line of reasoning, the parties must have intended that actions affecting the plans that *are* "delineat[ed]" and "specifically listed" in the IRP&P Article *would* be subject to arbitration.

procedure for which payment is sought does not meet the test for medical necessity contained in the plan, there must be a procedure for the participant to challenge that determination and show that the procedure was in fact medically necessary.  Or a pension plan, in calculating the retirement benefits to which a participant is entitled, might credit the individual with fewer years of service than he believes is correct; here too, there must be a procedure for resolving the dispute.  ERISA therefore requires plans to provide participants with a "full and fair" claims procedure, ERISA § 503(b), 29 U.S.C. § 1133(2), by which they can seek administrative review if a "*claim for benefits under the plan* has been denied," *Id.* § 503(a), 29 U.S.C. § 1133(1) (emphasis added).  Once a participant has exhausted the plan claims review procedure, Handbook on ERISA Litigation, 3d. ed., § 5.04[B][3][a], ERISA allows him to bring a civil suit "to recover benefits due to him *under the terms of the plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*," ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (emphases added).

ERISA does not bestow upon such claims procedures the authority to decide whether there have been violations of any legal requirements other than the terms of the plans themselves, such as whether there has been a breach of a CBA in the establishment or amendment of the plan.[6]  Indeed, the regulations implementing ERISA require that plan claims procedures must

---

[6]     In making its argument that the ERISA-mandated claims procedures are the "exclusive[] means of resolving these disputes," DuPont's Opening Brief at 24, DuPont cites a case involving ERISA preemption of a state law, *id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)), and DuPont also refers ambiguously to ERISA's "full displacement of remedies in this field," DuPont's Opening Brief at 29.  If DuPont is implying that ERISA preempts an agreement to arbitrate grievances under a CBA, it is entirely mistaken.  ERISA preempts only state laws, *see* ERISA § 514(a), 29 U.S.C. § 1144(a); it does not "alter, amend, modify, invalidate, impair, or supersede any law of the United States," *id.* § 514(d), 29 U.S.C. § 1144(d), including the federal policy of enforcing arbitration agreements contained in CBAs under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a).  Indeed, in the very ERISA preemption case DuPont cites, *Pilot Life Ins. Co. v. Dedeaux*, the Supreme Court noted that ERISA actions

"contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made *in accordance with governing plan documents*," 29 C.F.R. 2560.503-1(b)(5) (emphasis added), and Defendants do not suggest that the CBAs here are "governing plan document[s]."[7]  Thus, the "[a]rbitration of [a] dispute, concerning rights under a collective bargaining agreement, does not hinder" the ERISA policy "favor[ing] administrative adjudication of internal plan disputes, such as whether a particular participant is denied benefits." *Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers*, No. 88-2094, 1988 WL 149181, at *3 (D.N.J. Aug. 25, 1988).

Consistent with ERISA's requirements, the Summary Plan Descriptions ("SPDs") for each of DuPont's ERISA plans outline a claims procedure that can resolve alleged violations of *the terms of the plans*, but not other types of disputes.[8]  The plan documents do not purport to give the internal claims procedures the function of deciding questions as to the interpretation of anything other than "this Plan," *see* Savings and Investment Plan, Exhibit B to Anderson Declaration, Art. XIX.1(d) (page 39);[9] and DuPont itself states that all "benefit eligibility

---

"'*are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.*'"  481 U.S. at 55 (alteration in original) (quoting H.R. Conf. Rep. No. 93-1280 at 327).

[7]      There is no reference to the CBAs in the plans or in the Summary Plan Descriptions.  *See* Exhibits B-P to Anderson Declaration.

[8]      For instance, the SPD for the Savings and Investment Plan states that if DuPont, as Plan Administrator, rejects a participant's appeal of a benefit denial, the decision will cite "the Plan provisions on which the denial is based."  Savings and Investment Plan SPD at 26, Exhibit C to Anderson Declaration.  The other SPDs contain similar provisions.  *See* Pension and Retirement Plan SPD at 29, Exhibit E to Anderson Declaration; BeneFlex Employee Life Insurance SPD at 7, Exhibit G to Anderson Declaration; BeneFlex Vacation Buying Plan SPD at 5, Exhibit I to Anderson Declaration; MEDCAP SPD at 42, Exhibit M to Anderson Declaration; BeneFlex Dental Care Plan and Dental Assistance Plan SPD at 20, Exhibit O to Anderson Declaration.

[9]      The other plans include similar language.  *See* DuPont's Opening Brief at 6.

determinations" made by the administrators of the plans must be "consistent with the terms of the plans, *and any amendments thereto*."   DuPont's Opening Brief at 6 (emphasis added).

Thus, far from establishing that the parties have agreed to treat the internal plan benefit claims processes as the exclusive means for resolving disputes of the kind set forth in the Local Union's grievance, DuPont's own characterization of those processes shows that they *could not even entertain* the grievance:  for the grievance challenges the permissibility of DuPont's plan amendments, but DuPont itself states that plan amendments cannot be *challenged* in the internal claims processes, but must be *given full effect* by the plan administrators.[10]  The parties cannot be thought to have agreed to exclude a grievance challenging plan amendments as violative of the CBA from arbitration so that such a grievance may instead be remitted to the tender mercies of a forum in which DuPont itself is the adjudicator and in which such a grievance cannot even be considered on its merits.  *See* Plaintiffs' Opening Brief at 14-15.

Another reason why it is clear that the parties did not intend that the plan claims procedures would constitute a means – much less the exclusive means – of resolving grievances such as the one the Local Union has filed in this matter is that the Local Union cannot even bring a claim under those claims procedures; only "participants and beneficiaries" of the plans can do so.  *See* 29 C.F.R. 2560.503-1(a).  DuPont itself acknowledges that the benefit claim review procedures can only be invoked by individual employees who allege they were denied benefits due them under the terms of the plans.  *See* DuPont's Opening Brief at 29.[11]

---

[10]    DuPont's letter to the Local Union announcing its refusal to arbitrate the grievance made this very point, noting that the Plan Administrators are required to make their determinations solely "in accordance with the terms of th[e] plans," and that "[c]laims alleging benefit entitlements inconsistent with the eligibility standards set forth in those Plans will therefore be denied."  Exhibit F.

[11]    Similarly, under ERISA, only a "participant or beneficiary" can bring a civil action for benefits due under the terms of a plan.  ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1); *Miller v.*

The Sixth Circuit noted the significance of this distinction in *United Food & Commercial Workers, Local 17A v. Fresh Mark*, 81 Fed. Appx. 23 (6th Cir. 2003). That case involved a claim by a union that an employer's increase in the prescription drug premiums charged to employees violated a CBA provision limiting the increases in those premiums. The parties' CBA contained a provision excluding from arbitration "[q]uestions regarding the interpretation or application of the right to insurance benefits under any policy certificate." The court held that the CBA provision did not exclude the dispute over premiums from arbitration; the exclusion was applicable only "where an individual insured employee, or a group of such employees, claims coverage for a particular medical procedure, and the plan administrator or insurance carrier denies his claim." *Id.* at 28. The dispute over whether the prescription drug premiums violated the CBA was "not of that nature"; rather, it was an "alleged violation of the CBA," and as such it involved a "dispute between the union and the company" to which "no employees are parties." *Id.*

For these reasons, cases finding a denial of an employee's claim for benefits alleged to be due under the terms of a plan not to be arbitrable are distinguishable from the situation presented here, where the grievance does *not* allege that the plan administrators are failing to implement the terms of the plan as written, but rather that the terms of the plans themselves fail to comply with the requirements of the CBA. For instance, in *Machinists District No. 10 v. Waukesha Engine Division*, 17 F.3d 196 (7th Cir. 1994), an individual employee filed a grievance challenging his benefit plan's refusal to precertify an extension of a hospital stay for his wife on the grounds that it was not medically necessary. "[M]edical necessity" was defined only in the

---

*Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003) (noting that ERISA § 502(a)(1) "*restricts* civil actions against a plan administrator to actions brought by a 'participant or beneficiary'") (emphasis in original).

benefits plan, not in the CBA.  *Id.* at 199.  The court therefore found that "the parties' dispute

concerning Aetna's refusal to precertify" the hospital stay did not "implicate[] any terms of the

CBA."  *Id.* at 199.  *See also Steelworkers v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th

Cir. 1998) (grievances over plan's requirement of referrals for non-routine ob/gyn care and

allegations that three individuals' claims were incorrectly processed at "out-of-network" rates);

*Local Union No. 4-449, Oil, Chem. & Atomic Workers Union v. Amoco Chem. Corp.*, 589 F.2d

162 (5th Cir. 1979) (individual union member's grievance concerning denial of sick pay benefits

for work absences under a Sickness and Disability Benefits Plan); *PDG Chem. Inc. v. Oil, Chem.

& Atomic Workers Int'l Union,* 164 F. Supp. 2d 856 (E.D. Tex. 2001) (dispute over method of

determining employees' base pay in calculating pension benefits, in which no violation of the

contractual agreement governing the calculation of base pay was alleged).[12]

One passage from *Commonwealth Aluminum* which DuPont cites multiple times, *see*

DuPont's Opening Brief 19, 23-24, is worth examining, because it underscores the flaw in

DuPont's argument.  After noting that the grievances in question in that case "allege[d] denial of

group insurance benefits under the [] plan," the Seventh Circuit stated that that the incorporation

of a plan claims review procedure, which granted the Plan Administrator final authority to

determine benefit claims, into the parties' CBA "expresses an intention to exclude from

arbitration all benefits disputes *which are within the Administrator's authority*."  *Commonwealth

Aluminum*, 162 F.3d at 451 (emphasis added).  The last phrase is key:  the court did not hold, as

DuPont would have it, that the existence of a plan claims procedure – even one that, as in

---

[12]    Although each of these cases is distinguishable, we do not suggest that each of them was
rightly decided.  In particular, the decision in *PDG Chemical* has not been cited by any other
court, and the analysis in that decision conflicts with controlling precedent.  *See* Plaintiffs'
Opening Brief at 13 n. 6.

*Commonwealth Aluminum*, is incorporated by reference into the CBA[13] – demonstrates the parties' intention to exclude from arbitration disputes concerning a benefit plan that are *not* "within the Administrator's authority."

Indeed, the *Commonwealth Aluminum* court distinguished two cases, *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*, 13 F.3d 1365 (9th Cir. 1994) and *Local 232, Allied Industrial Workers v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir. 1988), which are analogous to the instant case, and in which grievances were found to be arbitrable because they presented issues that were not within the plan administrator's authority to decide. As the *Commonwealth Aluminum* court noted, *Geldin Meat* and *Briggs & Stratton* – like this case – did not involve "a dispute over a determination of eligibility for payment of a claim for benefits," but rather involved allegations by unions that an employer's unilateral changes to, or termination of, benefit plans violated CBAs; thus, the grievances were arbitrable. 162 F.3d at 453. *See also RCA Corp v. Local 241, Prof'l & Technical Eng'rs*, 700 F.2d 921, 925 (3d Cir. 1983) ("Whether the challenged actions were taken under the auspices of [a] [r]etirement [p]lan, another plan or no plan does not change our analysis [as to arbitrability]"); *Pennwalt Corp.*, 1998 WL 149181, at *3 (grievance challenging a "change in plan rules" did not "involve a plan participant's challenge to a particular denial of benefits," and should be resolved through arbitration); *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &*

---

[13]    The fact that *Commonwealth Aluminum* and other cases in which certain grievances involving benefit determinations have been found to be non-arbitrable involved benefit plans whose terms, including the claims review processes, were "incorporated" into the parties' CBA further distinguishes those cases from this one. In some circumstances, such incorporation may evidence an intention to exclude from arbitration disputes that can be resolved through the incorporated claims processes. *Commonwealth Aluminum*, 162 F.3d at 451; *Amoco Chem. Corp.*, 589 F.2d at 164; *Waukesha Engine Div.*, 17 F.3d at 197-98; *PDG Chem. Inc.*, 164 F. Supp. 2d at 863. Here, in contrast, DuPont has taken the position that the plan terms are *not* "incorporated" into the CBA. *See* DuPont's Opening Brief at 25 ("Nor does the Edgemoor CBA specifically incorporate the terms of any of the benefit plans by reference.")

*Agric. Implement Workers of Am.*, 29 F.3d 83, 86 (2d Cir. 1994) (grievance challenging employer's "alleged refusal to comply with the CBA" in amending a pension plan was a "quintessential arbitrable dispute.")

B.      DuPont makes a number of other arguments in support of the idea that the grievance can only be resolved by the plan claims procedures; these merit only brief responses.

1.      DuPont's assertions that it has "taken various steps in its capacity as a fiduciary to implement the plan amendments" and has "issued certain communications to employees regarding their eligibility to participate in the various plans," DuPont's Opening Brief at 21, are entirely irrelevant points.  The grievance does not challenge the actions DuPont describes – most of which had not even occurred when the grievance was filed.  Rather, the grievance asserts that DuPont violated the CBA when it amended its benefit plans in the first place.  *See* Exhibit D.  So DuPont's discussion of its steps to implement the plan changes, and to communicate with employees about those changes, has nothing to do with this case.

Further, even if the grievance had alleged that DuPont breached its fiduciary duties in implementing or communicating with employees about the plan amendments—which is not the case[14]—DuPont's argument still would go nowhere.  DuPont does not, and cannot, argue that

---

[14]      Although the point is not material, we note in passing that DuPont's suggestion that the Company might be found to have violated its fiduciary duties based on its communications with employees about their eligibility for benefits under the terms of the plans as amended is far-fetched.  An ERISA fiduciary may be held liable for breaching its duties when it mischaracterizes the terms of the plan or hides material information, *see, e.g., Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994), but it is quite another thing to suggest that statements accurately describing plan amendments can be challenged as a breach of fiduciary duty because the employer did not point out that a question might exist as to whether the amendment complies with a CBA.  Similarly, although it is true that the implementation of plan terms is a fiduciary function, no fiduciary duty violation arises from plan amendments as such; a challenge to the employer's adoption of a plan amendment is a challenge to *settlor* activity, not *fiduciary* activity.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a[n ERISA] plan do not fall into the category of fiduciaries").

allegations of breaches of fiduciary duty would have to be resolved through the internal plan

claims processes; nor does DuPont offer any argument as to why a fiduciary act, if it were

challenged in a grievance as violating a CBA, could not be subject to arbitration under the

CBA.[15]

        2.      DuPont makes the specious argument that, because the parties have not enacted a

"grievance and arbitration procedure to which adverse benefit determinations are subject," as

---

[15]     DuPont's assertion that an arbitrator appointed to decide the Local Union's grievance
would be impermissibly acting as a plan fiduciary, *see* DuPont's Opening Brief at 27, is
frivolous and is contradicted by one of the very Department of Labor Opinion Letters DuPont
cites.  In DOL Opinion Letter 81-50A (June 4, 1981) (Exhibit 8 to DuPont's Opening Brief), a
union and an employer asked the DOL whether an arbitrator would be acting as a plan fiduciary
if he resolved the union's claim that the employer had violated a promise, made in a side letter to
a CBA, to provide certain retirement benefits to women who had taken pregnancy leaves of
absence before the enactment of the Civil Rights Act of 1964.  The DOL noted that the parties
had asked the arbitrator only to "interpret only their contractual commitments," and that this "is
not a case in which a Plan participant filed a claim for benefits, which claim was denied."  *Id.* at
2.  The employer would be bound by the arbitrator's award, the DOL noted, "but only in its
capacity as a party to a collective bargaining agreement . . . [The employer] would be free to
comply with the award by, if necessary, amending the current Plan or by providing alternative
benefits from some other source."  *Id.*  The DOL concluded for these reasons that the arbitrator
would not be acting as a fiduciary:

> [T]he instant matter does not involve disposition of a claim by a Plan participant for
> benefits under the Plan, or of an appeal from a refusal to grant such a claim.  It appears
> that the arbitrator has been called upon to construe . . . the collectively bargained
> agreements between the Union and the Employer, but that the outcome of the arbitration
> would have no immediate effect on administration of the plan or on the rights of Plan
> participants to benefits under the Plan as it is currently drafted.  Although the outcome of
> the proceeding might increase the entitlement of some Plan participants to benefits, it
> appears that the arbitrator's decision would not affect the long-standing interpretation
> given to existing Plan provisions.  If we understand you correctly, a participant's
> entitlement to benefits under the Plan would be affected only if the Employer were to
> amend the Plan to achieve compliance with a ruling by the arbitrator . . .

> [T]o the extent that the instant matter is solely a part of the process by which the parties
> design and create a plan (as opposed to a matter of Plan administration), then it is our
> view that [the arbitrator] would not be acting as a fiduciary in serving as arbitrator to
> decide the question presented to him.

*Id.* at 3-4.  For the same reasons, the arbitrator who decides the Local Union's grievance will not
be acting as a fiduciary of the benefit plans.

ERISA's implementing regulations allow plans "established and maintained pursuant to a collective bargaining agreement" to do, *see* 29 C.F.R. § 2560.503-1(b)(6), the Local Union's grievance must not be arbitrable. *See* DuPont's Opening Brief at 24-26. But the regulation DuPont cites is irrelevant here, and DuPont's argument is a red herring.

The ERISA claims-procedure regulations do not purport to apply to every kind of dispute concerning a benefit plan; in particular, they do not purport to apply to a dispute by a union as to whether the terms of a plan comport with the requirements of a CBA. Rather, the regulation in question applies only to procedures "governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). The regulation simply provides that a plan need not establish the kind of internal claims review procedure that normally must be made available to participants, *see supra* at 11-13, if a union and the employer have agreed to allow "adverse benefit determinations" to be appealed through a grievance and arbitration provision. *Id*. § 2560.503-1(b)(6)(i)(B). It is irrelevant that DuPont and Plaintiffs have not taken that route, because the dispute presented in this case does not involve a plan administrator's "benefit determinations" to which the regulation applies. Rather, the dispute here is as to whether, in amending the terms of the plans, DuPont has violated the CBA; and the parties *have* agreed in the arbitration clause of the CBA that all claims by the Local Union that DuPont has violated the CBA are arbitrable.

3.    DuPont's suggestion that the Plaintiffs have an "alternate remedy" because they have filed unfair labor practice charges with the National Labor Relations Board ("NLRB"), DuPont's Opening Brief at 18 n. 11, is without merit, as it conflates two completely separate substantive rights. A union's grievance alleging a violation of a CBA is an entirely different claim from a charge that an employer committed an unfair labor practice in violation of the

National Labor Relations Act by making unilateral changes to its benefit plans without first bargaining with the union. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 203 (1991); *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 546-47 (1988). Further, the Local Union, as a party to the CBA, can decide whether to pursue a grievance alleging a violation of the CBA, but the Local Union has no such control over the decision whether to pursue an NLRB charge; that authority rests exclusively with the NLRB. *See Advanced Lightweight Concrete*, 484 U.S. at 553. Thus, the NLRB charges are by no means an alternate remedy – much less an *exclusive* remedy – for arbitrating the grievances alleging violations of the CBA.

        4.        DuPont's argument that permitting arbitration of the grievance would produce "untenable results" is meritless.

        DuPont complains that different arbitrators resolving different grievances over its plan amendments could come to different conclusions, but this is simply the result of the fact that DuPont has entered into separate CBAs (and non-identical CBAs) with several Local Unions. If separate arbitrators were to decide that DuPont has contractually agreed to provide different benefits to different sets of employees, DuPont might indeed have to "amend the Plan[s] to achieve compliance" with those rulings. *See* DOL Opinion Letter 81-50A, *supra* n. 15, at 4. Although this may be inconvenient for DuPont, it is far from an "impossible dilemma," DuPont's Opening Brief at 30. In fact, DuPont has already written its plans so as to provide different benefits to different sets of employees; the current Pension Plan document distinguishes in multiple ways among groups of employees based on their plant location. *See, e.g.,* Pension and Retirement Plan, Exhibit D to Declaration of Mary Jo Anderson, at 32-40, 43-49, 51-52, 65-66, 68-74.

5.       Finally, we must address the remarkable statement that appears at page 23 of DuPont's Opening Brief, where DuPont, having argued that the Local Union's grievance "necessarily implicates questions of plan interpretation," goes on to say the following:

> To the extent that the grievance also raises issues regarding DuPont's authority to implement benefit plan changes, such issues are inextricably intertwined with the benefit eligibility and plan interpretation questions, thereby implicating DuPont's status and obligations under ERISA as a plan fiduciary.

Having spent its entire brief pretending that the Local Union's grievance is concerned with the details of the manner in which DuPont has *implemented* and *communicated* its unilateral benefit changes, and with "plan interpretation questions" that supposedly may arise in connection with the implementation of the changes, in this once sentence (and *only* in this one sentence) DuPont finally acknowledges, albeit grudgingly, that the grievance challenges DuPont's authority to adopt the unilateral benefit reductions in the first place.[16]  Apparently recognizing that such a challenge – alleging, as it does, a breach of the CBA – presents an

---

[16]      The grievance speaks for itself, and DuPont's efforts to recast it are to no avail.  *See supra* at 18.  The grievance presents only a single claim:  that DuPont beached the CBA by adopting the benefit reductions it announced in its August 28, 2006 email to employees.  DuPont fastens on the grievance's reference to the "application" of the changes to certain employees and the "withdrawal" of benefits from certain employees.  *See* Dupont's Opening Brief at 22.  But it is clear from the face of the grievance that the challenged "application[s]" and "withdrawal[s]" are ones that were specifically identified by DuPont in the August 2006 announcement.  These allegations in the grievance do *not* "raise[] matters exclusively within the province of the plan administrator," as DuPont states at page 22 of its brief; rather, they challenge the plan changes announced by DuPont itself, as plan sponsor, in the August 2006 email.  DuPont's assertion that "[t]he grievance . . . seeks to circumvent the plan administrators' authority," *id*. at 23, thus is fanciful.  Indeed, the violations alleged in the grievance occurred, and the grievance was filed, before the plan administrators had taken any action with respect to implementing the announced plan changes.

DuPont's contention that the grievance concerns fiduciary acts is also incorrect, as we have discussed.  *See supra* at 18-19.  Nor does the grievance present any "plan interpretation questions," *see* DuPont's Opening Brief at 23.  The benefit changes announced by DuPont, which are the sole subject of the grievance, are undisputed and are set out in DuPont's August 2006 email.

arbitrable dispute, DuPont attempts a sleight of hand, breezily asserting (without citation of any authority) that the grievance is not arbitrable because the challenge to DuPont's authority to adopt the benefit changes is "inextricably intertwined" with other issues that DuPont imagines will arise in the course of communicating about the changes and applying them to individual employees.

This will not wash.  The sole issue presented by the grievance is whether DuPont's unilateral adoption of benefit reductions violates the CBA.  This "represents a quintessential arbitrable dispute."  *Schweizer Aircraft*, *supra*, 29 F.3d at 86.  Even if this "quintessential[ly] arbitrable dispute" were in fact "intertwined" with other issues as DuPont contends – which is not the case – the presumption of arbitrability would not be overcome.  For DuPont to suggest that a grievance challenging an employer's adoption of benefit reductions as violative of a CBA should be viewed as non-arbitrable merely because the employer's *communications* about the challenged reductions might give rise to *other* issues that may not be arbitrable is preposterous, and DuPont does not even claim to have any authority for such a notion.  A "quintessentially arbitrable" challenge to an employer's unilateral adoption of benefit reductions does not become non-arbitrable merely because actions subsequently taken by the employer to describe or to implement the challenged action may not themselves be independently arbitrable.

The CBA requires arbitration of "[a]ny question as to … any alleged violation of any provision of [the CBA]."  Exhibit A, Art. VII § 1.  The Local Union's grievance presents precisely such a question, and DuPont's arguments about other issues that it regards as "intertwined" with this arbitrable question do not remotely rise to the level of "the most forceful evidence of a purpose to exclude the claim from arbitration."  *AT&T Techs.*, 475 U.S. at 650.

## Conclusion

For the reasons stated above, DuPont's Motion for Summary Judgment should be denied,

Plaintiffs' Motion for Judgment on the Pleadings should be granted, and the Court should enter

an Order compelling DuPont to arbitrate the Local Union's grievance, excepting those portions

of the grievance which relate to the MEDCAP and Dental Plans.

Respectfully submitted,

*/s/ Susan E. Kaufman*
SUSAN E. KAUFMAN (DSB # 3381)
Heiman, Gouge & Kaufman, L.L.P.
800 King Street, Suite 303
P.O. Box 1674
Wilmington, DE 19801
Telephone: (302) 658-1800/Facsimile: (302) 658-1473
skaufman@hgkde.com

 and

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone: (202) 842-2600/ Facsimile: (202) 842-1888
jcollins@bredhoff.com
jhunter@bredhoff.com

*Counsel for Plaintiffs United Steel, Paper and Forestry,*
*Rubber, Manufacturing, Energy, Allied-Industrial and*
*Service Workers International Union* and *United Steel,*
*Paper and Forestry, Rubber, Manufacturing, Energy,*
*Allied-Industrial and Service Workers Local 4-786*

DATED: August 24, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND FORESTRY,           )
RUBBER, MANUFACTURING, ENERGY,              )
ALLIED INDUSTRIAL AND SERVICE               )
WORKERS, INTERNATIONAL UNION,               )
AFL-CIO-CLC, and UNITED STEEL, PAPER        )
AND FORESTRY, RUBBER, MANUFACTURING,        )        C.A. No. 07-126 (JJF)
ENERGY, ALLIED INDUSTRIAL AND SERVICE       )
WORKERS LOCAL 4-786,                        )
                                            )
                    Plaintiffs,             )
        v.                                  )
                                            )
E.I. DuPONT de NEMOURS and                  )
COMPANY,                                    )
                                            )
                    Defendant.              )
_____ )

## CERTIFICATE OF SERVICE

        I hereby certify that on August 24, 2007, I electronically filed the PLAINTIFFS'
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DECLARATION OF JAMES BRIGGS with the Clerk of Court using
CM/ECF which will send notification of such filing(s) to the following:

        Kathleen F. McDonough, Esquire
        Potter, Anderson & Corroon, LLP
        1313 North Market Street
        Wilmington, DE 19899

        I hereby certify that on August 24, 2007, I have mailed by United States Postal Service,
the document(s) to the following non-registered participants:

        Thomas P. Gies, Esquire
        Crowell & Moring LLP
        1001 Pennsylvania Avenue, NW
        Washington, DC 20004-2595

                                        */s/ Susan E. Kaufman*
                                        Heiman, Gouge & Kaufman, LLP
                                        800 King Street, Suite 303
                                        Wilmington, DE  19801
                                        302-658-1800
                                        skaufman@hgkde.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND FORESTRY,      )
RUBBER, MANUFACTURING, ENERGY,          )
ALLIED INDUSTRIAL AND SERVICE           )
WORKERS, INTERNATIONAL UNION,           )
AFL-CIO-CLC, and UNITED STEEL, PAPER     )
AND FORESTRY, RUBBER, MANUFACTURING, )
ENERGY, ALLIED INDUSTRIAL AND SERVICE )
WORKERS LOCAL 4-786,                    )
                                        )
     Plaintiffs,                      )
                                        )
v.                                      )    C.A. No. 07-126 (JJF)
                                        )
E. I . DUPONT DE NEMOURS AND            )
COMPANY,                                )
                                        )
     Defendant.                       )
_____ )

## DECLARATION OF JAMES BRIGGS

James Briggs declares under penalty of perjury under the laws of the United States as follows:

1.    I am employed as a Staff Representative by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). As a Staff Representative I am involved in collective bargaining with many of the local unions that are affiliated with the USW. I have been involved in collective bargaining with several of the local unions which represent employees of E.I. DuPont de Nemours and Co. ("DuPont"), including Local 4-786, which represents employees at the DuPont's Edgemoor location in Edge Moor, Delaware.

2.    I make this declaration on behalf of personal knowledge and am competent to testify to the matters stated herein.

3.    I have reviewed the Declaration of Mary Jo Anderson submitted in conjunction with the above-captioned case.  In particular, I have reviewed Paragraph 30 of that declaration, which states in part, "Historically, DuPont has been willing to permit its unionized employees to participate in the benefit plans it sponsors and administers for all its U.S. employees, subject to the terms of the plans themselves, on the condition that DuPont remained free to modify the plans at its discretion.  This understanding is memorialized in the collective bargaining agreement between DuPont and the Union, in a contract provision entitled 'Industrial Relations Plans and Practices' ('IRP&P')."

4.    Based on my experience in collective bargaining between USW's local unions and DuPont, it has never been the understanding of USW or its local unions that DuPont was free to withdraw or amend the benefit plans offered to USW members at DuPont's discretion.

5.    It also has not been the understanding of USW or its local unions that the Industrial Relations Plans and Practices Articles in the CBAs between the unions and DuPont "memorialize" any understanding that DuPont is free to change its benefit plans at DuPont's discretion.

Dated: August 2̲2̲, 2007

James Briggs