# EXHIBIT 1

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

E. I. DUPONT DE NEMOURS AND
COMPANY, INCORPORATED,
<u>Plaintiff-Appellee,</u>

v.                                                                            No. 94-2222

MARTINSVILLE NYLON EMPLOYEES'
COUNCIL CORPORATION,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-94-8)

Argued: January 29, 1996

Decided: February 28, 1996

Before MURNAGHAN, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Murnaghan and Judge Ervin joined.

_____

## COUNSEL

**ARGUED:** Jonathan Gans Axelrod, BEINS, AXELROD,
OSBORNE, MOONEY & GREEN, P.C., Washington, D.C., for
Appellant. Donald Lester Creach, HUNTON & WILLIAMS, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Hill B. Wellford, Jr.,
HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

WILKINS, Circuit Judge:

Martinsville Nylon Employees' Council Corporation (the Union) appeals a decision by the district court granting a motion by E. I. DuPont de Nemours and Company, Incorporated (DuPont) to vacate an arbitration award entered in favor of the Union. Because we agree with the district court that the question of whether the dispute between DuPont and the Union was arbitrable was one for the court and further agree that the dispute was not subject to arbitration, we affirm.

I.

In 1989, DuPont proposed a Reward and Recognition Program (R & R Program) at its Martinsville plant. Because the collective bargaining agreement1 between the parties did not provide for the R & R Program, and because the parties were unable to reach an agreement to modify this contract to include the program, DuPont implemented it unilaterally.

The Union subsequently filed a grievance asserting that DuPont was not applying the R & R Program equitably. When grievance proceedings failed to resolve the dispute, the Union sought arbitration under the collective bargaining agreement, which provided for arbitration of "[a]ny question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement." DuPont submitted to arbitration, while contesting that the arbitration

---

1 The parties agree that this collective bargaining agreement governed the parties' conduct at the time, and therefore controls the resolution of the present controversy, by virtue of their agreement to extend it on a day-to-day basis following its expiration and during their ongoing negotiations to secure a new collective bargaining agreement.

clause required it to arbitrate a dispute concerning the R & R Program.

Although the arbitrator agreed with DuPont that the R & R Program had never been incorporated into the collective bargaining agreement, he concluded that the dispute concerning DuPont's management of the R & R Program nevertheless was arbitrable. The arbitrator reasoned that an implied covenant of good faith and fair dealing in the collective bargaining agreement imposed a duty upon DuPont to deal in good faith with respect to programs it implemented unilaterally. Consequently, the arbitrator ruled that the allegation that DuPont had breached its duty of good faith by administering the program in a discriminatory manner was arbitrable. Proceeding to address the merits of the grievance, the arbitrator ruled against DuPont.

Thereafter, DuPont brought this action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (West 1978), to vacate the arbitration award entered in favor of the Union, and the Union filed a counterclaim for enforcement. The district court ruled that the arbitrator had exceeded his authority by entering the award and granted DuPont's motion to vacate it. From this final decision, the Union appeals.

II.

The first question we must address is the standard to apply in reviewing the decision of the arbitrator concerning the arbitrability of the dispute. The Union contends that the decision of whether the dispute was arbitrable was one for the arbitrator and, accordingly, that a court should defer to that decision except in a narrow set of circumstances not present here. DuPont, however, argues that the decision is one for the court and, therefore, that no deference should be given to the arbitrator's decision.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). This principle applies to the merits of a dispute as well as to the question of who

3

should decide whether a dispute is subject to arbitration. <u>First Options of Chicago, Inc. v. Kaplan</u>, 115 S. Ct. 1920, 1923-24 (1995). Accordingly, if the parties have agreed that the arbitrator should resolve questions concerning whether a dispute is arbitrable, courts should grant considerable deference to the arbitrator's decision; but if the parties have not agreed to allow the arbitrator to decide this question, it is one for the court. <u>Id.</u>; <u>see AT&T Technologies</u>, 475 U.S. at 648-49.

In deciding whether the parties have agreed to submit the question of arbitrability to arbitration, a court applies ordinary principles of contract interpretation. <u>See First Options</u>, 115 S. Ct. at 1924. And, when the parties have remained silent concerning who should decide whether an issue must be submitted to arbitration, or when the application of principles of contract interpretation leads to ambiguity concerning whether that issue is one for the arbitrator, a court must assume that the issue is one for the court. <u>Id.</u> In other words, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>AT&T Technologies</u>, 475 U.S. at 649; accord <u>First Options</u>, 115 S. Ct. at 1924.

The arbitration clause in the collective bargaining agreement between DuPont and the Union contains no provision clearly and unmistakably agreeing to submit the question of arbitrability to arbitration.2 Hence, we decide whether DuPont was required to submit the dispute concerning the R & R Program to arbitration without deferring to the decision of the arbitrator.

---

2 The Union also claims that because DuPont voluntarily submitted the question of arbitrability to the arbitrator in this instance, instead of requiring the Union to obtain a court order compelling arbitration, it has waived any opposition to the arbitrator deciding whether the dispute was arbitrable. This argument, however, lacks merit. If a party submits to arbitration while asserting that the arbitrator lacks the authority to proceed, as DuPont did here, that party has not waived its argument that arbitration was improper. <u>See First Options</u>, 115 S. Ct. at 1925.

4

III.

Having concluded that the question is one for the court, we turn to consider it.3 As with the previous question, the resolution of this issue requires the application of general rules of contract interpretation. See First Options, 115 S. Ct. at 1924. But, unlike the prior question, any doubt concerning the scope of the questions to be arbitrated should be resolved in favor of arbitration. See id.

Again, the arbitration clause in the contract between the parties requires the arbitration of "[a]ny question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement." From this plain language, it is obvious that because no provision of the agreement governed the R & R Program, the arbitration clause did not require arbitration of disputes concerning it. The Union maintains, however, that all collective bargaining agreements contain an implied obligation of good faith and fair dealing and that since its claim is that DuPont violated this provision of the collective bargaining agreement, it is asserting a violation of the agreement that is within the scope of the arbitration clause.

We agree with the district court and reject this argument. Assuming that it were appropriate to interpret the collective bargaining agreement as containing an implied covenant of good faith and fair dealing --a question that we need not decide today--our decision would remain unchanged. Such an implied covenant would only control the conduct of a party in areas governed by the collective bargaining agreement; it would not impose a duty to act in good faith in matters not subject to the agreement. Cf. Cumberland Typographical Union No. 244 v. Times & Alleganian Co., 943 F.2d 401, 406-07 (4th Cir. 1991) (holding similar arbitration clause required submission to arbitration of claim that employer violated implied duty of good faith with respect to a term of the collective bargaining agreement); Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance . . . ."). Therefore, an alleged violation of an implied covenant of good faith and fair dealing would not render arbitrable

---

3 We review de novo the decision of the district court. See First Options, 115 S. Ct. at 1926.

matters that were not otherwise subject to arbitration under the agreement.

A contrary conclusion would render nugatory language in the arbitration clause purporting to limit the matters that must be submitted to arbitration. Rather than agreeing to submit all disputes between the parties to arbitration, DuPont and the Union agreed to submit only those controversies alleging a violation of the collective bargaining agreement or requiring an interpretation of that agreement. Construing the agreement in the manner propounded by the Union would effectively negate this limitation, and we will not countenance such an unintended result.

In sum, we conclude that the plain language of the collective bargaining agreement requires the parties to submit to arbitration only allegations of violations of the provisions of the agreement or questions requiring its interpretation. An allegation that DuPont violated an implied covenant of good faith and fair dealing with respect to a matter not governed by the collective bargaining agreement is not encompassed within the unambiguous arbitration clause. Therefore, DuPont was not required to submit the dispute concerning the R & R Program to arbitration.

<u>AFFIRMED</u>

6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND FORESTRY, )
RUBBER, MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS, INTERNATIONAL UNION, AFL- )
CIO-CLC, and UNITED STEEL, PAPER AND )
FORESTRY, RUBBER, MANUFACTURING, )
ENERGY, ALLIED INDUSTRIAL AND )
SERVICE WORKERS LOCAL 4-786, )
                                    )    C.A. No. 07-126 (JJF)
              Plaintiffs,           )
                                    )
      v.                            )
                                    )
E. I. DU PONT DE NEMOURS AND        )
COMPANY,                            )
                                    )
              Defendant.            )

## DEFENDANT E.I. DUPONT DE NEMOURS AND COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Thomas P. Gies
Kris D. Meade
Glenn D. Grant
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Dated: August 24, 2007
814934

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant E. I. du Pont de Nemours and Company*

## TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................... i

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT..................................................................................................................... 4

      I.      The Union Impermissibly Asks This Court to Ignore the Express
            Language of the Parties' Collective Bargaining Agreement ................................... 4

      II.     The Union Has Failed to Establish That Disputes Involving MEDCAP and
            the Dental Plan Are Arbitrable ............................................................................. 6

      III.    The Arbitration Clause and the Relevant Plan Documents Establish the
            Parties' Agreement to Exclude From Arbitration the Remaining Disputes
            Presented by Local 4-786's Grievance ............................................................... 10

            A.     Local 4-786's Grievance Challenges the Application of DuPont's
                  Plan Amendments, Thereby Raising Issues of Plan Interpretation
                  that Must Be Resolved by the Plan Administrator..................................... 10

            B.     The Union's Challenge to DuPont's Authority to Amend its
                  National Benefit Plans Raises Issues that Are Inextricably
                  Intertwined with Issues That are Within the Exclusive Province of
                  the Plan Administrator ............................................................................. 15

            C.     Denying the Union's Motion to Compel Arbitration Does Not
                  Leave Either Employees or the Union Without A Remedy...................... 18

            D.     Subjecting Local 4-786's Grievance to Arbitration Would Lead to
                  Untenable Results .................................................................................... 22

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Allied Chem. Workers v. Pittsburgh Plate Glass,*
    404 U.S. 157 (1971)..................................................................................................... 9

*Amalgamated Local 2327, United Auto., Aerospace, & Agricultural Implement Workers
    v. Tri-Community Agency, Inc.,*
    243 F. Supp. 2d 159 (S.D.N.Y. 2002) ........................................................................ 9

*AT&T Techs, Inc. v. Communication Workers of Am.,*
    475 U.S. 643 (1986)..................................................................................................... 4

*Berlin v. Mich. Bell Tel. Co.,*
    858 F.2d 1154 (6th Cir. 1988) .................................................................................. 15

*Board of Trustees, CWA/ITU Negotiated Pension Plan v. Weinstein,*
    107 F.2d 139 (2d Cir. 1997) ..................................................................................... 19

*Brothers v. Miller Oral Surgery, Inc. Retirement Plan,*
    230 F.3d 1348 (3d Cir. 2000) ................................................................................... 20

*Crown Cork & Seal Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO,*
    No. 8:03CV222, 2005 WL 2076542 (D. Neb. Aug. 26, 2005).................................... 9

*Curcio v. John Hancock Mut. Life Ins. Co.,*
    33 F.3d 226 (3d Cir. 1994) ....................................................................................... 15

*E.I. du Pont de Nemours & Co., Inc., v. Martinsville Nylon Employees' Council Corp.,*
    78 F.3d 578 (Table) (4th Cir. 1996)........................................................................ 8, 9

*Estate of Becker v. Eastman Kodak Co.,*
    120 F.3d 5 (2d Cir. 1997) ......................................................................................... 15

*Faircloth v. Lundy Packing Co.,*
    91 F.3d 648 (4th Cir. 1996) ...................................................................................... 19

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989)................................................................................................... 24

*Graphic Comm. Int'l Union, Local 735-S v. N. Am. Directory Corp,*
    98 F.3d 97 (3d Cir. 1996) ................................................................................. 4, 8, 10

*Hunt v. Hawthorne Assoc. Inc.,*
    119 F.3d 888 (11th Cir. 1997) .................................................................................. 24

*IBEW v. GKN Aero. N. Am., Inc.*,
    431 F.3d 624 (8th Cir. 2005) ................................................................................ 4, 10

*Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.*,
    17 F.3d 196 (7th Cir. 1994) ..................................................................... 11, 16, 17

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v.*
*Skinner Engine Co.*,
    188 F.3d 130 (3d Cir. 1999) ............................................................................... 19

*Johnson v. Allsteel Inc.*,
    259 F.3d 885 (7th Cir. 2001) ............................................................................. 20

*Joyce v. Curtiss-Wright Corp.*,
    171 F.3d 130 (2d Cir. 1999) ............................................................................... 20

*Kerber v. Qwest Pension Plan*,
    No. 05cv00478 BNB PAC, 2006 WL 2865047 (D. Colo. Oct. 5, 2006) ................................. 20

*Kunkel v. Empire Blue Cross & Blue Shield*,
    274 F.3d 76 (2d Cir. 2001) ............................................................................... 20

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d 1995) ..................................................................................... 5, 10

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991) ...................................................................................... 5, 21

*Local 4-449, Oil, Chemical and Atomic Workers v. Amoco Chem. Corp.*,
    589 F.2d 162 (5th Cir. 1979) ................................................................. 11, 12, 14, 16

*Local 56, United Food & Comm'l Workers Union v. Campbell Soup Co.*,
    898 F. Supp. 1118 (D.N.J. 1995) ......................................................................... 19

*Martinez v. Schlumberger, Ltd*,
    338 F.3d 407 (5th Cir. 2003) ............................................................................. 16

*Maryland Casualty Co. v. Realty Advisory Bd.*,
    107 F.3d 979 (2d Cir. 1997) ............................................................................... 5

*Maywalt v. Auburn Tech., Inc.*,
    No. 94-CV-352 RSP/GJD, 1996 WL 596547 (N.D.N.Y. 1996) ............................................. 20

*McGrath v. Auto-Body North Shore Inc.*,
    7 F.3d 665 (7th Cir. 1993) ............................................................................... 24

*National Cleaning Contractors, Inc. v. Service Employees Int'l Union,*
833 F. Supp. 420 (S.D.N.Y. 1993) ................................................................. 4

*Paper, Allied-Indus., Chem. & Energy Workers Int's Union v. UCAR Carbon Co., Inc.,*
368 F. Supp. 2d 548 (N.D. W. Va. 2005) ...................................................... 9

*PDG Chemical, Inc. v. Oil, Chem. & Atomic Workers Int'l Union,*
164 F. Supp. 2d 856 (E.D. Tex. 2001) .................................................. passim

*Pennwalt Corp. v. Local 370, Int'l Union,*
No. 88-294, 1988 WL 149181 (D.N.J. Aug. 25, 1988) ............................... 18

*Peralta v. Hispanic Bus. Inc.,*
419 F.3d 1064 (9th Cir. 2005) .................................................................. 16

*Pyett et al., v. Pennsylvania Bldg. Co.,*
No. 06-3047-CV(L), 2007 WL 218126 (2d Cir. Aug. 1, 2007) .................... 23

*RCA Corp. v. Local 241, Prof'l & Technical Eng'rs,*
700 F.2d 921 (3d Cir. 1983) ..................................................................... 18

*Rogers v. New York Univ.,*
220 F.3d 73 (2d Cir. 2000) ....................................................................... 23

*Rossetto v. Pabst Brewing Co., Inc.,*
128 F.3d 538 (7th Cir. 1997) ...................................................................... 9

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric,
Implement Workers of Am.,*
29 F.3d 83 (2d Cir. 1994) ......................................................................... 17

*Sprague v. Cent. States Pension Fund,*
269 F.3d 811 (7th Cir. 2001) .................................................................... 19

*United Steel Workers v. Commonwealth Aluminum Corp.,*
162 F.3d 447 (6th Cir. 1998) ............................................................ 11, 14, 16, 17

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
363 U.S. 574 (1960) ..................................................................................... 4

*Varity Corp. v. Howe,*
516 U.S. 489 (1996) ................................................................................... 16

*Wachtel v. Guardian Life Ins. Co.,*
38 Emp. Ben. Cases [BNA] 1867 (D.N.J. 2006) ......................................... 16

*Weiss v. CIGNA Healthcare Inc.*,
    972 F. Supp. 748 (S.D.N.Y. 1997) ............................................................... 16

*Woodcrest Nursing Home v. Local 144, Hotel Allied Servs. Union*,
    788 F.2d 894 (2d Cir. 1986) ........................................................................ 7

*Yolton v. El Paso Tenn. Pipeline Co.*,
    435 F.3d 571 (6th Cir. 2006) ...................................................................... 20

**Statutes**

29 U.S.C. § 1102 ............................................................................................ 22

29 U.S.C. § 1132 .............................................................................................. 3

29 U.S.C. § 185 ............................................................................................... 3

**Regulations**

29 C.F.R. § 2509 ............................................................................................. 23

29 C.F.R. § 2560 ............................................................................................. 14

**Other Sources**

Department of Labor Advisory Opinion 81-50A (June 4, 1981) ..................................... 23

Department of Labor Advisory Opinion 82-42A (August 16, 1982) ............................... 23

Department of Labor Information Letter to Richard Colasurd (March 7, 1984) .................. 23

Department of Labor Information Letter to Richard Weitzman (April 22, 1983) ................. 23

## NATURE AND STAGE OF THE PROCEEDINGS

As noted in the initial brief filed by Defendant E.I. du Pont de Nemours & Company ("DuPont" or the "Company"), DuPont announced prospective changes to certain of its employee benefit plans. The changes, which address both eligibility and benefit levels, were effected through amendments made to each of these plans in December. Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local 4-786 ("Local 4-786") filed a grievance alleging that DuPont's actions violate the collective bargaining agreement between DuPont and the Union. DuPont has refused to arbitrate this grievance because benefits disputes of this nature are excluded from arbitration.

Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW") and Local 4-786 (collectively, "Plaintiffs" or the "Union") filed the complaint in this matter on March 1, 2007, seeking to compel DuPont to arbitrate the grievance. The parties have agreed that this matter is amenable to resolution on cross-motions for summary judgment. On July 23, 2007, Local 4-786 filed a Motion for Judgment on the Pleadings, and DuPont cross-filed a Motion for Summary Judgment. DuPont now files this memorandum in opposition to Local 4-786's Motion for Judgment on the Pleadings.

## SUMMARY OF ARGUMENT

1. As explained in DuPont's opening brief, Local 4-786's grievance with respect to

two of the benefit plans at issue -- MEDCAP and the Dental Plan -- is clearly excluded from

arbitration because neither plan is referenced in the parties' collective bargaining agreement

("the Edgemoor CBA"), and the Edgemoor CBA only requires arbitration of disputes involving

the interpretation or violation of the CBA.  In addition, none of the employees covered by the

Edgemoor CBA participate in MEDCAP or the Dental Plan.  Accordingly, Local 4-786's

grievance with respect to those two benefit plans does not implicate the interpretation or

violation of the Edgemoor CBA, and therefore falls beyond the scope of the parties' contractual

obligation to arbitrate.

2. Local 4-786's grievance is not arbitrable because it involves questions of benefit

plan eligibility that, by virtue of the terms of the Edgemoor CBA and the governing plan

documents for these benefit plans, must be resolved exclusively under the dispute resolution

provisions set forth in the various benefit plans at issue.  More specifically, the Edgemoor CBA

states that employees may receive benefits under certain of DuPont's employee benefit plans, but

only subject to all the terms of such plans, including the dispute resolution procedures contained

in the plans. Each of the benefit plans implicated by Local 4-786's grievance contains dispute

resolution provisions that provide for a final and binding determination of issues relating to the

application and interpretation of the plans.  Those dispute resolution provisions, in turn,

encompass questions, like those presented in Local 4-786's grievance, as to the eligibility for

benefits under the amended terms of the benefit plans.  Thus, the benefit eligibility dispute

underlying Local 4-786's grievance must be resolved exclusively through the benefit plans'

dispute resolution procedures, not arbitration.

3.    Local 4-786 has mischaracterized the nature of the parties' dispute and attempts to rewrite its grievance. To that end, Local 4-786 claims that its grievance merely challenges DuPont's right to make unilateral changes to its benefit plans. That is not a fair reading of the grievance. On its face, Local 4-786's grievance challenges the <u>application</u> of the terms of DuPont's amended benefit plans. Irrespective of how Local 4-786 now characterizes its grievance, application of the terms of DuPont's amended benefit plans presents benefit eligibility issues that must be determined pursuant to the dispute resolution procedures set forth in each plan and/or through the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

4.    Local 4-786 wrongly claims that there would be no remedy for the dispute raised in its grievance if this Court were to deny its motion to compel arbitration. As explained in DuPont's opening brief, the administrators of the benefit plans at issue have the authority to construe not only the terms of the benefit plans, but also the relevant terms of the Edgemoor CBA in making benefit eligibility decisions. And, in civil enforcement actions brought under Section 502 of ERISA protesting an employer's amendments to employee benefit plans, courts routinely review the relevant collective bargaining agreement as well as the operative plan documents of the benefit plans in question. In addition, Local 4-786 has the right to bring an action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, if it believes that DuPont breached the terms of its contract. Finally, to the extent that Local 4-786 now claims that its grievance is solely related to whether DuPont had the unilateral right to amend its benefit plans in the first instance, the Union has already pursued an appropriate remedy with regard to that claim by filing charges with the National Labor Relations Board ("NLRB"). The NLRB will decide whether there is merit to the Union's argument that DuPont

3

did not have the right to make these changes without bargaining, and thus resolve precisely the same issue presented by the Union's principal defense in this case.

5.    For these reasons, Local 4-768's Motion for Judgment on the Pleadings should be denied and summary judgment should be entered in DuPont's favor on the Union's Complaint.

## STATEMENT OF FACTS

DuPont hereby adopts the statement of facts set forth in its opening brief, as well as the Declaration and Exhibits that it filed relating to the asserted facts.

## ARGUMENT

I.    **The Union Impermissibly Asks This Court to Ignore the Express Language of the Parties' Collective Bargaining Agreement**

Local 4-786's brief overstates the presumption of arbitrability to this case. Local 4-786 effectively asks this Court to ignore the plain language of its contract with DuPont by suggesting that the Court should avoid interpretation of the parties' collective bargaining agreement. *See* Union Brief at 5-7. In so doing, the Union ignores the fundamental principle that arbitration is first and foremost "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 648-49 (1986); *United Steelworkers v. Warrior & Gulf Navigation, Co.,* 363 U.S. 574, 582-83 (1960); *IBEW v. GKN Aero. N. Am., Inc.,* 431 F.3d 624, 627-630 (8th Cir. 2005); *Graphic Comm. Int'l Union, Local 735-S v. N. Am. Directory Corp,* 98 F.3d 97, 101 (1996) ("since arbitration is a contractual matter, there must be agreement to submit the dispute to arbitration before the obligation arises"); *National Cleaning Contractors, Inc. v. Service Employees Int'l Union,* 833 F. Supp. 420, 424 (S.D.N.Y. 1993) ("Party consent is the cornerstone of arbitration").

4

Determination of whether a dispute is arbitrable requires the Court to closely examine and interpret the parties' collective bargaining agreement as a whole. *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 209 (1991, ("[A]though doubts should be resolved in favor of coverage, we must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement.") (internal citation and quotation omitted); *Maryland Casualty Co. v. Realty Advisory Bd.*, 107 F.3d 979, 983 (2d Cir. 1997) (court properly interpreted contract as a whole to determine that dispute not arbitrable). In reviewing the relevant contract provisions, the Court must give effect to the parties' intent. *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d 1995) ("[a]s with any contractual matter [the] main concern in deciding the scope of arbitration agreements is to 'faithfully reflect[ ] the reasonable expectations of those who commit to be bound by [them]"). Application of these principles demonstrates that Local 4-786's grievance is not arbitrable.

First, as explained more fully below and in DuPont's initial brief, the Union's grievance with respect to two of DuPont's benefit plans -- MEDCAP and the Dental Plan -- are not subject to arbitration because:  (i) by the express terms of the parties' contract, DuPont is only obligated to arbitrate questions involving the interpretation or violation of the Edgemoor CBA itself; (ii) neither MEDCAP nor the Dental Plan are part of, or even referenced in, the Edgemoor CBA; (iii) none of the employees covered by the Edgemoor CBA currently participates in either MEDCAP or the Dental Plan; and (iv) the Union can point to no evidence -- as there is none -- that the parties ever intended to arbitrate disputes involving matters outside the contract.

Second, the disputes regarding the remaining benefit plans that DuPont amended last year are likewise not subject to arbitration because the relevant contract language provides forceful

evidence that the parties agreed to exclude from arbitration disputes involving eligibility for benefits under those plans. The Edgemoor CBA grants employees the right to participate in the benefit plans identified in the CBA, but only subject to the terms of those benefit plans, including the exclusive dispute resolution provisions contained therein. Despite its attempt at recharacterization, Local 4-786's grievance raises issues that are inextricably intertwined with benefit eligibility issues and/or other plan interpretation and administration matters that are to be carried out by DuPont in its capacity as the administrator of the plans. Such matters are subject to ERISA's fiduciary duty rules and must be resolved under the benefit plans' dispute resolution mechanisms -- not through piecemeal labor arbitration.[1]

## II.    The Union Has Failed to Establish That Disputes Involving MEDCAP and the Dental Plan Are Arbitrable

Local 4-786 acknowledges, as it must, that its grievance concerns the rights of employees covered by the Edgemoor CBA to receive benefits under Article IX of that contract, which is entitled, "Industrial Relations Plans and Practices" ("the IRP&P provision"). Local 4-786 Brief at 2-3. By its terms, the IRP&P provision specifically identifies twelve (12) separate benefit plans, and provides that employees are eligible to receive benefits under those identified plans, subject to the terms of the plans. What the Union's brief fails to acknowledge, however, is that its grievance involves eligibility for benefits under two benefit plans -- MEDCAP and the Dental

---

[1]    Local 4-786 also ignores the fact that DuPont has agreed to arbitrate that portion of the grievance relating to the changes made to the Company's Vacation Plan. *See* Anderson Decl. Exh. U. That plan, unlike the others at issue here, does not contain its own dispute resolution mechanism and is thus not excludable from arbitration. DuPont has readily acknowledged its obligation to arbitrate that portion of the grievance, consistent with its understanding of the scope of the parties' agreement to exclude other benefit plan matters from arbitration. *Id.* Local 4-786, for whatever reason, has chosen not to proceed to arbitrate that matter.

Plan -- that are not identified in the IRP&P provision.[2] Nor are those two benefit plans referenced anywhere else in the Edgemoor CBA.

MEDCAP and the Dental Plan are stand-alone benefit plans that are entirely separate and distinct from the benefit plans that are referenced in the Local 4-786 CBA. Declaration of Mary Jo Anderson, ¶ 14 ("Anderson Decl.").[3] DuPont did not negotiate, and has never negotiated, over the terms of either plan with Local 4-786 (or any other union), and neither plan contains an obligation to arbitrate disputes concerning benefit eligibility issues. Simply put, MEDCAP and the Dental Plan are benefit plans that are wholly independent from both the Edgemoor CBA and from the benefit plans that are specifically enumerated in the CBA's IRP&P provision.

As demonstrated in DuPont's opening brief, the arbitration provision in the Edgemoor CBA extends only to questions "as to the interpretation, or any alleged violation, of any provision of [the Edgemoor CBA]." DuPont Brief at 5, 16 (quoting Edgemoor CBA, Art. VII). It is well settled that the Court must analyze the contract's language to discern whether the parties intended to subject particular disputes to arbitration. *See, e.g., Woodcrest Nursing Home v. Local 144, Hotel Allied Servs. Union*, 788 F.2d 894 (2d Cir. 1986) (a court must look to "all

---

[2]  The Union may claim that MEDCAP and the Dental Plan are covered by the Edgemoor CBA because those plans fall within the BeneFlex Flexible Benefit Plan ("BeneFlex") which is referenced in the CBA. Any such claim must be rejected. The undisputed facts show that BeneFlex is a cafeteria-style benefit program that includes both a medical and dental component -- the BeneFlex Medical Care Plan and BeneFlex Dental Care Plan. Anderson Decl. p12-14. Virtually all active U.S. DuPont employees, including those represented by Local 4-786, receive medical and dental benefits under the BeneFlex medical and dental plans. *Id.* MEDCAP and the Dental Plan are not part of BeneFlex, and are entirely separate from the BeneFlex Medical Care Plan and BeneFlex Dental Care Plan. *Id.* There are no active employees at DuPont's Edgemoor Plant who currently participate in either MEDCAP or the Dental Plan. *Id.* ¶ 15.

[3]  The Declaration of Mary Jo Anderson referred to herein was filed with the Court in conjunction with DuPont's Opening Brief on July 23, 2007.

7

terms of the parties' agreement bearing on arbitration" because "even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement"). The fact that the parties specifically listed twelve benefit plans in the Edgemoor CBA, but elected not to list or otherwise make reference to MEDCAP and the Dental Plan in the IRP&P provision, or elsewhere in the CBA, is clear and forceful evidence that the parties intended to exclude those plans from the scope of the CBA including the CBA's arbitration provision. This Circuit has made clear that for a dispute to be considered arbitrable, "it is essential that the dispute fall within the purview of the arbitration clause." *Graphic Comm. Int'l Union, Local 735-S v. N. Am. Directory Corp*, 98 F.3d 97, 102 (3d Cir. 1996). Local 4-786's dispute with respect to MEDCAP and the Dental Plan demonstrably does not.

The Fourth Circuit's decision in *E.I. du Pont de Nemours & Co., Inc., v. Martinsville Nylon Employees' Council Corp.*, 78 F.3d 578 (Table) (4th Cir. 1996)[4] is instructive, as it involves the application of arbitration language contained in a DuPont collective bargaining agreement that is virtually identical to the language at issue here. There, the parties' collective bargaining agreement contained an arbitration clause that provided for arbitration of any "question as to the interpretation of this Agreement or as to any violation of any provision of this Agreement." A dispute arose with regard to DuPont's implementation of the terms of a benefit program, called the Reward and Recognition Program ("R & R Program"), that, like MEDCAP and the Dental Plan here, was not a part of, or otherwise referenced in, the parties' collective bargaining agreement. The union nonetheless argued that DuPont had an obligation to arbitrate a

---

[4]    A copy of the Fourth Circuit's decision in *E.I. du Pont de Nemours & Co., Inc., v. Martinsville Nylon Employees' Council Corp.*, 78 F.3d 578 (Table) (4th Cir. 1996) is attached as Exh. 1 hereto.

dispute concerning the implementation of the R & R Program. The Fourth Circuit rejected that argument, concluding that the dispute over the R & R Program was not arbitrable because that benefit plan was not referenced in, or otherwise a part of, the parties' contract:

> [T]he arbitration clause in the contract between the parties requires arbitration of "[a]ny question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement." From this plain language, it is obvious that no provision of the agreement governed the R & R Program, the arbitration clause did not require arbitration of disputes concerning it. . . . A contrary conclusion would render nugatory language in the arbitration clause purporting to limit the matters that must be submitted to arbitration.

*Id.* at 5-6; *see also, Amalgamated Local 2327, United Auto., Aerospace, & Agricultural Implement Workers v. Tri-Community Agency, Inc.*, 243 F. Supp.2d 159 (S.D.N.Y. 2002) ("When a labor dispute involves issues not resolvable under the language of the relevant collective bargaining agreement, it is not appropriate for an arbitrator to be appointed").

It is no surprise that the Union fails to point to any provision of the Edgemoor CBA that mentions MEDCAP or the Dental Plan, given that no employees covered by the CBA currently participate in either plan. *Id.* ¶ 15.[5]  Both of the plans apply primarily to former DuPont

---

[5]     Any assertion by Local 4-786 that it can nonetheless pursue a claim with respect to DuPont's changes to MEDCAP and the Dental Plan should be rejected. Such a claim is not ripe, as any impact upon future retirees is years in the distance. Further, labor unions do not represent retirees. *Allied Chem. Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 172 (1971) (retirees are neither employees within the meaning of the collective bargaining obligations of the LMRA nor employees included in the bargaining unit). Courts have routinely held that a labor union cannot represent retirees complaining about changes in benefits that affect them as retirees, at least not without obtaining their prior consent. *See, e.g., Rossetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538, 539-40 (7th Cir. 1997) (union had no right to represent retirees absent consent from retirees); *Paper, Allied-Indus., Chem. & Energy Workers Int's Union v. UCAR Carbon Co., Inc.*, 368 F. Supp. 2d 548, 551 (N.D. W. Va. 2005) (same); *Crown Cork & Seal Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, No. 8:03CV222, 2005 WL 2076542, at *7 (D. Neb. Aug. 26, 2005) (same).

employees in the U.S. who meet the plans' eligibility requirements, union and non-union alike, including certain former employees represented by Local-4-786.

In short, Local 4-786's grievance involves the application of the terms of two benefit plans that are not referenced in the parties' contract, and that provide benefits for individuals who are not covered by the Edgemoor CBA. The Court must review the express language of the arbitration provision in the collective bargaining agreement to determine "whether a claim at least plausibly arises under the Agreement," and to ensure that parties are not "forced to arbitrate grievances that have no relationship whatsoever to the collective bargaining agreement." *IBEW v. GKN Aero. N. Am., Inc.,* 431 F.3d 624, 627 (8th Cir. 2005); *see also Graphic Comm.,* 98 F.3d at 101. That analysis shows that Local 4-786's grievance with respect to the MEDCAP and Dental Plan simply does not implicate the interpretation or violation of the terms of the Edgemoor CBA. Rather, disputes involving those two plans are collateral matters that fall "beyond the parties contractual relationship" and are not subject to arbitration. *Leadertex, Inc., v. Morganton Dyeing & Fashion Corp.,* 67 F.3d 20, 28 (2d Cir. 1995) (claims were beyond the reach of the parties' broad arbitration clause because they "implicated matters beyond the contractual performance of the parties").

**III.    The Arbitration Clause and the Relevant Plan Documents Establish the Parties' Agreement to Exclude From Arbitration the Remaining Disputes Presented by Local 4-786's Grievance**

       **A.    Local 4-786's Grievance Challenges the Application of DuPont's Plan Amendments, Thereby Raising Issues of Plan Interpretation that Must Be Resolved by the Plan Administrator**

Local 4-786 contends that its grievance does not implicate benefit eligibility or other issues of plan administration that are subject to the dispute resolution procedures of the plans. Local 4-786 Brief at 8-11. That argument does not withstand scrutiny. Local 4-786's grievance,

on its face, challenges the <u>application</u> of the terms of DuPont's benefit plans as amended last year. *Id.* at 3. As explained below, the application of the terms of the plans, including the eligibility criteria, involves matters within the exclusive province of the plan administrator for each plan, who is required to interpret the plan consistent with ERISA's fiduciary duty rules.

The Edgemoor CBA makes the DuPont benefit plans available to Local 4-786 represented employees, but only "subject to" the provisions of the plans. Those limitations include each plan's specific dispute resolution procedures, DuPont's right to amend the plans, and the Plan Administrator's "final and binding" decisions on eligibility and benefit claims. *See* Edgemoor CBA, Art. IX.; Pension Plan SPD at 28-29; SIP SPD at 26; MEDCAP SPD at 41-42; Life Insurance Plan SPD at 6-7; Dental Plan SPD at 18-20; Vacation Buying Plan SPD at 4-5. DuPont's opening brief demonstrated how this language reflects the parties' intent to exclude from arbitration a wide range of benefit plan disputes, including questions of benefit plan eligibility. DuPont Brief at 18-24. Three circuit courts have made clear that benefit disputes governed by dispute resolution procedures contained in plan documents, such as those raised by Local 4-786 here, are not arbitrable: "[T]he incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefits disputes which are within the Administrator's authority." *United Steel Workers v. Commonwealth Aluminum, Corp.*, 162 F.3d 447, 451 (6th Cir. 1998). *See also Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.*, 17 F.3d 196, 198 (7th Cir. 1994); *Local 4-449, Oil, Chemical and Atomic Workers v. Amoco Chem. Corp.*, 589 F.2d 162, 164 (5th Cir. 1979).

This authority informed the decision of the district court in *PDG Chemical, Inc. v. Oil, Chem. & Atomic Workers Int'l Union*, 164 F. Supp. 2d 856, 864 (E.D. Tex. 2001), which held:

"inclusion of the language in the plan that the company will have exclusive control over the plan and that interpretation of the terms and conditions of the plan will be in the sole discretion of the [plan administrator], obviously excludes from arbitration disputes concerning the [ERISA benefit plans]." *See also Amoco Chem.*, 589 F.2d at 164; *Waukesha Engine Div.*, 17 F.3d at 198-99. The collective bargaining agreement in *PDG Chemical* is similar to the Edgemoor CBA here in that it only required arbitration of disputes that involved an "interpretation or application of the provisions" of the agreement itself. 164 F. Supp.2d at 861. The collective bargaining agreement in *PDG Chemical* did not expressly exclude matters that required benefit plan interpretation. Yet, the court correctly recognized that the parties, by ceding matters of plan interpretation to the sole discretion of the plan administrator, evidenced a clear intent to exclude from arbitration disputes concerning the benefit plan at issue. *Id.* at 863-64.

    This authority establishes that Local 4-786's grievance is excluded from arbitration because of the following undisputed facts:

- The IRP&P provision of the Edgemoor CBA makes the DuPont benefit plans available to Local 4-786-represented employees "subject to the provisions of" the Pension Plan and SIP and "subject to all terms and conditions of" the Life Insurance Plan and Vacation Buying Plan. Local 4-786 CBA, Art. IX.

- Each of the plans identifies the responsible plan fiduciaries. Anderson Decl. ¶ 3.

- Each of the plans vests the specified plan administrator with authority to determine eligibility for plan benefits and to construe the terms of the plan. *See* Pension Plan, Art. II; SIP Art. XIX, Sec. 1(d); Life Insurance Plan at 10; Vacation Buying Plan, Art. XI.

- Each of the plans' SPDs provides that the plan administrator has sole authority to construe the plan and determine eligibility for benefits, and provides that the plan administrator's decisions regarding plan interpretation are final. *See* Pension Plan SPD at 29; SIP SPD at 26; Life Insurance Plan SPD at 7; Vacation Buying Plan SPD at 5.

- Each of the plan SPDs also describes the process by which an individual can appeal any denial of a claim for benefits under the plan and provides that decisions rendered under these procedures are final and binding. *See* Pension

12

Plan SPD at 28-29; SIP SPD at 26; Life Insurance Plan SPD at 6-7; Vacation Buying Plan SPD at 4-5.

- Each of the plan SPDs further advises individuals of their right to file suit in federal or state court if they disagree with these final decisions. *See* Pension Plan SPD at 28-29; SIP SPD at 25; Life Insurance Plan SPD at 11-12; Vacation Buying Plan SPD at 6-7.

- None of the plans or the SPDs contain any mention of the arbitration provision in the Local 4-786 CBA. *See generally* Pension Plan; SIP; Life Insurance Plan; Vacation Buying Plan; Pension Plan SPD; SIP SPD; Life Insurance Plan SPD; Vacation Buying Plan SPD.[6]

These plan provisions constitute forceful evidence that the parties intended to exclude from arbitration matters that are within the scope of the plan administrators' "final and binding" authority. And, notwithstanding the Union's effort to gloss over the facts, the grievance raises precisely such disputes. Local 4-786's grievance raises specific questions regarding benefit eligibility by requesting that an arbitrator conclude that particular classes of employees are eligible for certain benefits irrespective of the language set forth in the amended plans.

On its face, Local-4-786's grievance challenges the <u>application</u> of the benefit plan changes to certain employees, thus raising matters within the exclusive province of the plan administrators. *See* Anderson Decl. Exh. S (grieving "the application to [active employees] of the changes in the Pension and Retirement Plan and Savings and Investment Plan") (emphasis added). The grievance further implicates eligibility decisions to be made by the various plan administrator. *Id.* (grieving ineligibility of newly-hired employees to receive retiree life insurance and subsidies for retiree medical and dental insurance, and grieving the ineligibility of certain classes of employees to receive enhanced benefits under certain plans). By its terms, the

---

[6]     While outside the scope of the Edgemoor CBA, documents pertaining to MEDCAP and the Dental Plan contain similar provisions. *See* Anderson Decl. Exh. L-O; MEDCAP, Art. XIX; Dental Plan, Art. XIII; MEDCAP SPD at 41-42, 48-49; Dental Plan SPD at 18-20, 24.

grievance necessarily implicates questions of plan interpretation. The grievance thus improperly seeks to have an arbitrator decide eligibility disputes and interpret the plan documents, matters that the Union agreed would be within the sole authority of the plan administrators of the various plans. See Pension Plan SPD at 28-29; SIP SPD at 26; Life Insurance Plan SPD at 6-7; Vacation Buying Plan SPD at 4-5; see also PDG Chem., 164 F. Supp. 2d at 864. This language is sufficient to overcome any presumption of arbitrability that may attach to Local 4-786's grievance. See Commonwealth Aluminum, 162 F.3d at 451; Amoco Chem., 589 F.2d at 164.

Moreover, as explained in DuPont's opening brief, the absence of any reference in the plan documents to the arbitration provision of the Edgemoor CBA provides additional evidence of the parties' intent to exclude this dispute from arbitration. DuPont Brief, 24-26. The United States Department of Labor ("DOL") has issued comprehensive regulations governing the processing of claims under ERISA plans, including specific regulations issued in 2003 that establish how the parties could have provided for an arbitration process to resolve the types of plan eligibility disputes presented by Local 4-786's grievance. See 29 C.F.R. § 2560.503-1(b)(6) (2003). These regulations provide that grievance and arbitration procedures may be used in benefit claims matters only where the collective bargaining agreement pursuant to which the plan is established or maintained either (1) specifically sets forth such procedures to be used with respect to the plan, or (2) specifically incorporates the plan by reference, thereby subjecting the plan to the collective bargaining agreement's general grievance and arbitration procedures. Id. None of the benefit plans at issue in Local 4-786's grievance incorporates the arbitration provision of the collective bargaining agreement. See generally, Anderson Decl. Exhs. B-O. Nor does the Edgemoor CBA specifically incorporate the terms of any of the benefit plans by reference. Rather, the Edgemoor CBA simply requires DuPont to continue to provide benefits

14

under, and subject to, the terms of the plans. *See* Edgemoor, Art. IX. There is nothing to suggest that the parties ever considered changing their agreement to embrace the alternative suggested by the DOL regulations. The parties' failure to implement the alternative procedures as provided in DOL's regulations further confirms that the parties did not intend to have the disputes presented by the Local 4-786's grievance resolved through the arbitration provision in the Edgemoor CBA.

>   **B.    The Union's Challenge to DuPont's Authority to Amend its National Benefit Plans Raises Issues that Are Inextricably Intertwined with Issues That are Within the Exclusive Province of the Plan Administrator**

While Local 4-786's grievance may raise some issues regarding DuPont's authority to implement benefit plan changes, as the Union now claims, such issues are inextricably intertwined with benefit eligibility decisions, plan interpretation questions, and other plan administration issues that lie exclusively within the Plan Administrators' authority. The issue of contractual authority simply cannot be isolated from the remainder of the grievance.

As noted in DuPont's opening brief, DuPont has already taken various steps in its capacity as an ERISA fiduciary of various of the benefit plans to implement the plan amendments that are implicated by Local 4-786's grievance. DuPont Brief, at 21-23. DuPont has made decisions regarding benefit plan eligibility under the terms of the plans and has communicated these decisions, as well as additional information regarding plan coverage and participation, to both active and new employees. Anderson Decl. ¶ 31. If DuPont's communications regarding plan eligibility were misleading, they could be challenged as a breach of ERISA's fiduciary duty rules. *See, e.g., Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226 (3d Cir. 1994); *Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5 (2d Cir. 1997); *Berlin v. Mich. Bell Tel. Co.,* 858 F.2d 1154 (6th Cir. 1988). DuPont also is currently administering the plans and paying claims, as appropriate, under the plans' amended terms. Anderson Decl. ¶ 29.

15

For example, DuPont has paid out 401k distributions, as appropriate, under the amended SIP. *Id.* These plan administration activities, as well as similar decisions that will inevitably be made in the future (*e.g.*, processing claims for benefits under the terms of the amended plans), involve the exercise of discretion in making eligibility decisions and administering the plan and thereby implicate ERISA's fiduciary duty rules.[7]

Accordingly, Local 4-786's grievance is not arbitrable because it implicates matters that are inextricably intertwined with disputes that involve the exercise of plan administrators' fiduciary responsibilities, which the parties have agreed to resolve exclusively through the dispute resolution provisions of the underlying benefit plans and/or through the civil enforcement provisions of ERISA. *See Commonwealth Aluminum*, 162 F.3d at 451; *Waukeshau Engine Div.*, 17 F.3d at 198; *Amoco Chem.*, 589 F.2d at 164; *PDG Chem.*, 164 F. Supp. 2d at 864.[8]

---

[7]     *See, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489 (1996) (company acting in a fiduciary capacity when it made representations regarding benefits under ERISA plan); *Peralta v. Hispanic Bus. Inc.*, 419 F.3d 1064, 1071-72 (9th Cir. 2005) (ERISA's fiduciary duty rules apply to the communication of operative plan terms to plan participants); *Martinez v. Schlumberger, Ltd*, 338 F.3d 407, 424-25 (5th Cir. 2003) (when an employer chooses to communicate with plan participants regarding future plan benefits, it does so as a fiduciary); *Wachtel v. Guardian Life Ins. Co.*, 38 Emp. Ben. Cases [BNA] 1867, 1873 (D.N.J. 2006), *vacated and remanded on other grounds sub. nom. by Wachtel v. Health Net, Inc.*, -- F.3d --, 2007 WL 958572 (3rd Cir. 2007) (determination of cost basis for plan claims administration, and communication of that basis to plan participants, is subject to ERISA's fiduciary duty rules); *Weiss v. CIGNA Healthcare Inc.*, 972 F. Supp. 748, 751-52 (S.D.N.Y. 1997) (control over communication of medical information in connection with participant claims is sufficient to result in fiduciary status).

[8]     The Union's effort to distinguish this authority is unavailing. The Union misreads *PDG Chemical,* contending it involved nothing more than a dispute over the calculation of base pay, and that the Union there did not allege a contract violation as to that issue. Local 4-786 Brief at 13 n.6. That is incorrect. The union in *PDG Chemical*, as Local 4-786 here, alleged a contract violation because its members were not being provided benefits in accordance with those allegedly required by the parties' collective bargaining agreement. 164 F. Supp. at 863. The Court in *PDG Chemical* closely examined the union's contract violation claims and whether the parties intended disputes, such as the one presently

(continued...)

16

Local 4-876's' reliance on *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric, Implement Workers of Am.*, 29 F.3d 83, 86 (2d Cir. 1994) is misplaced. In *Schweizer*, the union filed a grievance over the employer's alleged refusal to provide benefits that were specifically set forth in the parties' collective bargaining agreement, as opposed to being provided solely in the benefit plan. Unlike here, the employer in *Schweizer* negotiated with the union over amendments to its pension plan, and specifically incorporated those amendments into the parties' collective bargaining agreement. 29 F.3d 85-86. Pursuant to that process, the parties negotiated a modification to the pension plan's monthly benefit, and included the amended benefit amount -- $18.00 per month for each year of service -- in the parties' collective bargaining agreement. *Id.* The union filed a grievance claiming that the employer failed to pay the $18.00 per month set forth in the collective bargaining agreement. Not surprisingly, the court found that matter subject to arbitration because the grievance was

---

(continued)

> before this Court, to be resolved by arbitrators. The court ultimately determined that the parties "agreed that disputes concerning benefits to be received under the Savings and Investment Plan are to be determined by the Benefits Administrative Committee and not by an independent arbitrator." *Id.* at 864. The parties have reached a similar agreement here, such that Local 4-786's grievance implicates questions that are either reserved to the fiduciary discretion of plan administrators or inextricably intertwined with such questions. Local 4-786 attempts to distinguish *Waukeshaw Engine* and *Commonwealth Aluminum* are equally unavailing. Local 4-876 claims that those cases are distinguishable on the grounds that they involved disputes over the "interpretation and application of terms of the plan." Local 4-786 Br. at 13 n.6. The Union conveniently ignores the fact that its grievance involves the same issues, for it specifically challenges the application of the plan amendments enacted by DuPont to its members, and in so doing raises issues to be resolved through the affected plans' internal dispute resolution mechanisms.

directed solely at the employer's "alleged refusal to comply with the CBA and was focused on

the meaning of the CBA language." *Id.* at 86.[9]

### C. Denying the Union's Motion to Compel Arbitration Does Not Leave Either Employees or the Union Without A Remedy

Local 4-786 is demonstrably wrong in suggesting that invocation of the plans' dispute

resolution procedures would create a "Catch-22" because the Plan Administrators have no means

by which to resolve a claim that the benefit plan amendments are not permitted by the parties'

collective bargaining agreement, thereby leaving the dispute unresolved. *See* Local 4-786 Brief

at 14. An Order compelling arbitration of this grievance is unnecessary to resolve the current

dispute. As explained below, Local 4-786-represented employees who disagree with decisions

regarding the application of the benefit plan amendments may seek internal review of such

decisions through the plan's internal procedures pursuant to ERISA Section 503. If that process

is unsatisfactory, they can seek to clarify their rights under the plan in a suit brought pursuant to

ERISA Section 502(a)(1)(B), and/or can seek injunctive relief to prevent violation of plan terms

or to obtain other "appropriate equitable relief" pursuant to Section 502(a)(3) of ERISA.

Employees have already been invited to pursue these remedies. *See* Anderson Decl. Exh. U. In

addition, to the extent that the Union contends that the plan amendments themselves violate the

Edgemoor CBA, it retains the right to file a suit pursuant to Section 301 of the LMRA.

---

[9]     The Union's reliance on *RCA Corp.* v. *Local 241, Prof'l & Technical Eng'rs,* 700 F.2d
921 (3d Cir. 1983) and *Pennwalt Corp. v. Local 370, Int'l Union,* No. 88-294, 1988 WL
149181 (D.N.J. Aug. 25, 1988) is misplaced. In neither of those cases is there collective
bargaining language like that contained in the IRP&P provision in the DuPont and DPE
CBAs, reflecting the parties' intention and agreement that disputes over benefit
administration issues, including benefit eligibility questions, would be resolved
exclusively through the dispute resolution procedures contained in the benefit plans.

The administrators of the benefit plans at issue have the ability to resolve the parties' dispute, including issues that may involve interpretation of the Edgemoor CBA. Although the internal review and interpretive procedures required of all ERISA plans are without question the proper means by which plan fiduciaries exercise their discretionary interpretive authority, use of these procedures does not preclude the ability of plan participants to challenge what they believe to be illegal or improper plan provisions. As the Union acknowledges, plan fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan." As courts have long recognized, the relevant plan documents include any "formal legal documents that govern or confine a plan's operation." *Board of Trustees, CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.2d 139 (2d Cir. 1997); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996) (class of documents to which plan fiduciaries must abide is not limited solely to the plan instrument, but would include any "formal or legal documents under which a plan is set up or managed"). In the case of a collectively bargained arrangement such as the Edgemoor CBA here, such documents include the collective bargaining agreement itself. *Sprague v. Cent. States Pension Fund*, 269 F.3d 811, 815-16 (7th Cir. 2001).

Courts thus routinely hold that plan participants are able to invoke the civil enforcement provisions of ERISA, as well as Section 301 of the LMRA to seek review of plan amendments that are allegedly inconsistent with the terms of the relevant collective bargaining agreement. *See, e.g., Int'l Union, United Auto., Aerospace & Agr. Implement Workers of America, U.A.W. v. Skinner Engine Co.*, 188 F.3d 130 (3d Cir. 1999) (class action alleging employer's termination of post-retirement benefits violates ERISA and LMRA § 301); *Local 56, United Food & Comm'l Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118 (D.N.J. 1995) (class action challenge to unilateral reduction of retiree medical benefits brought under ERISA and LMRA § 301);

19

*Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130 (2d Cir. 1999) (action alleging employer violated ERISA and LMRA § 301 by terminating health insurance benefit upon the expiration of the governing collective bargaining agreement); *Maywalt v. Auburn Tech., Inc.*, No. 94-CV-352 RSP/GJD, 1996 WL 596547 (N.D.N.Y. 1996) (employee challenge to modification of benefit levels and contribution requirements brought under ERISA § 503 and LMRA § 301); *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571 (6th Cir. 2006) (retiree class action to rescind plan amendments cutting off lifetime health benefits brought under ERISA § 502(a) and LMRA § 301).

These cases are consistent with the settled principle that a plan participant may attempt to vindicate his or her right to present or future benefits under a plan through a civil action brought under § 502(a)(1)(B) of ERISA. *See, e.g., Brothers v. Miller Oral Surgery, Inc. Retirement Plan*, 230 F.3d 1348 (3d Cir. 2000) (employee has standing under ERISA § 502(a)(1)(B) to bring suit to invalidate plan amendments adopted in contravention of plan's amendment procedure); *Johnson v. Allsteel Inc.*, 259 F.3d 885, 889 (7th Cir. 2001) (ERISA § 502(a) permits plan participant to challenge unilateral plan amendment increasing employer's discretionary authority to interpret plan provisions); *Kunkel v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) (suit under ERISA § 502(a)(1)(B) by former employees to enforce terms of life insurance policy prior to amendment by employer reducing benefits); *Kerber v. Qwest Pension Plan*, No. 05cv00478 BNB PAC, 2006 WL 2865047 (D. Colo. Oct. 5, 2006) (retirees may use ERISA § 502(a)(1)(B) to clarify rights to future life insurance benefits in light of alleged improper plan amendment).

Plan participants have precisely those rights in this case. They are perfectly free to question the validity of the plan amendments at issue here. Although ERISA recognizes that

interpretive authority is accorded to DuPont (as plan fiduciary) through the plan's internal review procedures, plan participants can avail themselves of that avenue for reviewing the amendments to the plan as issue, on any legally supportable theory, including the claim that the plan amendments are not permitted by the Edgemoor CBA.

Further, to the extent that Local 4-786 contends that the plan amendments violate the Edgemoor CBA, the Union retains the right to file suit pursuit to Section 301 of the LMRA. The statute of limitations on that claim has not yet run, and DuPont obviously would not argue that such a claim would be subject to arbitration. Moreover, the issue Local 4-786 stresses in its brief (Local 4-786 Brief at 11-13 – the question of DuPont's "right" to modify its benefit plans – is already presented for decision by the NLRB pursuant to unfair labor practice charges filed by Local 943 alleging that DuPont violated Sections 8(a)(1) and (5) of the LMRA by announcing the benefit plan amendments described above. The gist of Local 4-786's claim at the NLRB is that DuPont has violated Section 8(a)(5) of the LMRA by making unilateral changes in terms and conditions of employment affecting USW-represented employees. *See, e.g., Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991) ("[A]n employer commits an unfair labor practice if, without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment."); *United Rigging & Hauling*, 310 NLRB 828, 828 (1993) ("Sections 8(a)(5) and (1) and Section 8(d) of the Act prohibit an employer that is a party to an existing collective bargaining agreement from modifying the terms and conditions of employment established by the agreement without obtaining the consent of the union'') (footnote omitted).

If Local 4-786 is correct, the NLRB can and will issue an order that would provide a full remedy to the union and its members. Of course, DuPont maintains that these charges are without merit, in that DuPont's actions are fully in accord with the LMRA and do not violate the

NLRB's unilateral change doctrine. Moreover, in the proceedings before the NLRB, neither DuPont nor DPE asserts that relief under the NLRB would be unavailable because of ERISA; the NLRB cases are being defended on the merits of the LMRA statutory allegations. In any event, the NLRB is the appropriate forum in which to litigate Local 4-786's claim that DuPont lacked the right to modify these benefit plans.

### D.    Subjecting Local 4-786's Grievance to Arbitration Would Lead to Untenable Results

Finally, as explained in DuPont's opening brief, permitting an arbitrator to render decisions regarding the interpretation and application of benefit plans' eligibility provisions would be inappropriate for several reasons. First, giving an arbitrator the authority to interpret the plans and apply their eligibility criteria would be inconsistent with the express language in the plans that requires the Plan Administrators to issue "final and binding" decisions on such matters.

Second, such a result would undermine the legislatively-mandated scheme for resolving plan eligibility and plan interpretation disputes such as those presented here. ERISA requires that every plan name a fiduciary who has the final authority to control and administer the plan. ERISA 402(a)(1), 29 U.S.C. § 1102(a)(1). Here, that person is the plan administrator. Under ERISA, a fiduciary's authority over plan administration may only be transferred or delegated to another person or entity if the plan specifically so provides. 29 USC § 1102(b)(2); 29 C.F.R. 2509.75-8, Q&A FR-13. The plans at issue contain no language ceding authority to an arbitrator. Accordingly, any arbitrator who would decide Local 4-786's grievance would be

usurping the plan fiduciary's authority,[10] contrary to the express terms of the plans and

requirements of ERISA. *See* ERISA § 402(b)(2), 29 U.S.C. § 1102(b)(2); 29 CFR § 2509.75-8,

Q&A FR-13.

Third, there is the substantial risk that certain (or all) of the arbitrators who might hear

disputes such as those raised in Local 4-786's grievance could issue decisions that are both

inconsistent with each other and inconsistent with the benefit plans' terms. This concern is

heightened here, because courts have clearly recognized that a "union negotiated mandatory

arbitration agreement purporting to waive a covered worker's right to a federal forum with

respect to statutory rights is unenforceable." *Pyett et al., v. Pennsylvania Bldg. Co.*, No. 06-3047

CV(L), 2007 WL 2189126 (2d Cir. Aug. 1, 2007), Slip Op. at 6. As a result, employees who are

not satisfied with the application of DuPont's benefit plan eligibility provisions would be free to

both bring a claim under ERISA irrespective of the Union grievance and to demand arbitration

on the same issues. *See Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000) (employee was

not required to arbitrate his statutory claim under the Family and Medical Leave Act despite

being covered by a collective bargaining agreement containing a broad arbitration clause).

Permitting the same issues to be litigated in two different forums could easily lead to inconsistent

results. The likelihood of inconsistent results is even greater here, given that a number of

---

[10]    *See* DOL Information Letter to Richard Colasurd (March 7, 1984); DOL Information
Letter to Richard Weitzman (April 22, 1983); *see also* DOL Advisory Opinion ("A.O.")
82-42A (August 16, 1982) (arbitrator who had discretionary authority over plan
administration acted as fiduciary); DOL A.O. 81-50A (June 4, 1981) (arbitrator will
become an ERISA fiduciary where the arbitrator's decision would have an "immediate
impact on administration of the plan."); (collectively attached as Exh. 4 to DuPont's
opening brief) 29 C.F.R. § 2509.75-9 (individual who performs function described with
Section 3(21)(A) of ERISA is a plan fiduciary). None of the ERISA plans at issue here
permit fiduciary responsibility to be transferred to an arbitrator. *See, e.g.*, Anderson Aff.
Exhs. B-O.

grievances virtually identical to Local 4-786's have already been filed by other USW local unions regarding benefit eligibility and plan interpretation issues in response to the recent plan amendments.

DuPont's ERISA benefit plans are unitary and require that the Company treat all employees, represented or not, in a uniform fashion. ERISA clearly mandates that the plan fiduciaries follow these and all other terms of the plans, without exception. *See, e.g., McGrath v. Auto-Body North Shore Inc.*, 7 F.3d 665, 670 (7th Cir. 1993); *Hunt v. Hawthorne Assoc. Inc.*, 119 F.3d 888, 892 (11th Cir. 1997). A decision by any individual arbitrator that required DuPont to treat union-represented employees in a special manner would be inconsistent with the unitary terms of the various plans, and would subject DuPont to the precisely the type of "Catch-22" that Local 4-786 decries. If DuPont followed an arbitrator's decision requiring it to afford special treatment to union-represented employees, DuPont could be subject to a lawsuit for failure to follow the plan language as required by ERISA. Alternatively, DuPont could refuse to abide by the arbitrators' award, and continue to adhere to the terms of the plan documents. DuPont would then face liability for refusing to comply with the arbitrators' award. Finally, delegating the authority to interpret benefit plan language and make benefit eligibility decisions to multiple potential arbitrators, rather than the solitary Plan Administrator called for by the plans themselves, would greatly increase the chances that the same benefit plan language would be interpreted differently by different decision-makers leading to arbitrary results in contravention of ERISA. *See, e.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989).

## CONCLUSION

For the reasons stated above DuPont respectfully requests that Plaintiff's Motion for Judgment on the Pleadings be denied and that the Court grant summary judgment in favor of DuPont on Plaintiff's Complaint.

POTTER ANDERSON & CORROON LLP


By /s/ Kathleen Furey McDonough
    Kathleen Furey McDonough (#2395)
    Sarah E. DiLuzio (#4085)
    Potter Anderson & Corroon LLP
    1313 North Market Street
    Hercules Plaza, 6th Floor
    Wilmington, DE  19801
    (302) 984-6000
    kmcdonough@potteranderson.com
    sdiluzio@potteranderson.com

    Thomas P. Gies
    Kris D. Meade
    Jennifer G. Knight
    Crowell & Moring LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, D.C.  20004-2595
    (202) 624-2500

    *Attorneys for Defendant E. I. du Pont de Nemours and Company*

Dated:  August 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify this 24th day of August, that the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record that the document is available for viewing and downloading from CM/ECF:

Susan E. Kaufman
HEIMAN, GOUGE & KAUFMAN, LLP
800 King Street
Suite 303
Wilmington, DE 19801

/s/ Kathleen Furey McDonough
Kathleen Furey McDonough (#2395)
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
kmcdonough@potteranderson.com