IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND )
FORESTRY, RUBBER, )
MANUFACTURING, ENERGY, )
ALLIED INDUSTRIAL AND SERVICE )
WORKERS INTERNATIONAL UNION, )
AFL-CIO-CLC, and UNITED STEEL, )
PAPER AND FORESTRY, RUBBER, )
MANUFACTURING, ENERGY, ALLIED )
INDUSTRIAL AND SERVICE )
WORKERS LOCAL 4-786, )
                Plaintiffs, ) Civil Action No. 07-126 (JJF)
                 )
       v. )
                 )
E.I. DUPONT DE NEMOURS AND )
COMPANY, )
             Defendant. )
_____ )

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

SUSAN E. KAUFMAN (DSB # 3381)
Heiman, Gouge & Kaufman, L.L.P.
800 King Street, Suite 303
Wilmington, DE 19801
Telephone: (302) 658-1800/Facsimile: (302) 658-1473
skaufman@hgkde.com

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone: (202) 842-2600/ Facsimile: (202) 842-1888
jcollins@bredhoff.com / jhunter@bredhoff.com

*Counsel for Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union* and *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local 4-786*

Dated: September 4, 2007

# TABLE OF CONTENTS

Page

Introduction………….....................................................................................................1

I.      The Sole Claim Made In The Grievance Is That DuPont
        Violated The CBA By Making Unilateral Changes In Its
        Benefit Plans.  DuPont Has Conceded That Such A
        Claim Is Arbitrable. .....................................................................................2

II.     Even If The Grievance Included Additional Claims,
        As DuPont Mistakenly Contends, The Claim That
        DuPont's Unilateral Plan Amendments Violate The CBA
        Still Would Be Arbitrable. ..........................................................................6

Conclusion………….. ..................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643 (1986).................7, 8, 13

*E.I. DuPont de Nemours & Company v. Ampthill Rayon Workers, Inc.*,
    No. 3:07cv52 (E.D. Va.) ............................................................12

*Groves v. Ring Screw Works*, 498 U.S. 168 (1990)............................................12

*Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*,
    837 F.2d 782 (7th Cir. 1988) ........................................................9

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996)..................................................5

*PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Int'l Union*,
    164 F. Supp. 2d 856 (E.D. Tex. 2001) ........................................10

*Paperworkers v. Misco*, 484 U.S. 29 (1987)....................................................7

*Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers*,
    No. 88-2094, 1988 WL 149181 (D.N.J. Aug. 25, 1988) ..........................10

*RCA Corp. v. Local 241, Prof'l & Technical Eng'rs*,
    700 F.2d 921 (3d Cir. 1983)......................................................9, 11

*Schneider Moving & Storage Co. v. Robbins,*466, U.S. 364, 371-72 (1984) ....................7

*Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace &*
    *Agric. Implement Workers of Am.*, 29 F.3d 83 (2d Cir. 1994)............................ *passim*

*United Food & Commercial Workers, Local 17A v. Fresh Mark*,
    81 Fed. Appx. 23 (6th Cir. 2003)..................................................9

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
    13 F.3d 1365 (9th Cir. 1994) ......................................................9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)............................................................7, 8, 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STEEL, PAPER AND            )
FORESTRY, RUBBER,                  )
MANUFACTURING, ENERGY,             )
ALLIED INDUSTRIAL AND SERVICE      )
WORKERS INTERNATIONAL UNION,       )
AFL-CIO-CLC, and UNITED STEEL,     )
PAPER AND FORESTRY, RUBBER,        )
MANUFACTURING, ENERGY, ALLIED      )
INDUSTRIAL AND SERVICE             )
WORKERS LOCAL 4-786,               )
                                   )
            Plaintiffs,            )    Civil Action No. 07-126 (JJF)
                                   )
        vi.                        )
                                   )
E.I. DUPONT DE NEMOURS AND         )
COMPANY,                           )
                                   )
            Defendant.             )
_____)

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
JUDGMENT ON THE PLEADINGS**

**<u>Introduction</u>**

Constrained by caselaw too well-settled to ignore, DuPont's Opposition to Plaintiffs'

Motion for Judgment on the Pleadings ("DuPont's Opposition") appears to acknowledge that a

grievance "merely challeng[ing] DuPont's right to make unilateral changes to its benefit plans"

presents an arbitrable dispute. DuPont's Opposition at 3. DuPont similarly concedes that a

grievance concerning a benefit plan is arbitrable if it is "directed solely at the employer's

'alleged refusal to comply with the CBA and . . . focused on the meaning of the CBA language.'"

*Id.* at 17-18 (quoting *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto.,*

*Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 86 (2d Cir. 1994)).  DuPont's attempt to resist arbitration in this case now rests entirely on its contention that Local 4-786's grievance is *not* of such a nature.  *See* DuPont's Opposition at 3, 13-14.  But, as we explain in Part I, it is:  the grievance filed by the Local Union presents precisely the kind of claim that DuPont concedes is arbitrable.  Furthermore, as we show in Part II, even if that arbitrable claim were, as DuPont maintains, "intertwined" with other issues that are not arbitrable – which is not the case – DuPont's argument still would go nowhere:  the arbitrable issue (which is in this case the *only* issue presented by the grievance) would remain arbitrable.  DuPont therefore has no grounds on which to avoid arbitration.[1]

I.   **THE SOLE CLAIM MADE IN THE GRIEVANCE IS THAT DUPONT VIOLATED THE CBA BY MAKING UNILATERAL CHANGES IN ITS BENEFIT PLANS.  DUPONT HAS CONCEDED THAT SUCH A CLAIM IS ARBITRABLE.**

Although there is not (and could not be) any *factual* dispute as to the nature of the claim that is asserted in the Local's grievance, DuPont's attempts to mischaracterize the Union's claim make it necessary to place this matter in its proper context.

DuPont and the Union are parties to a comprehensive 109-page CBA.  Exhibit A.[2]  That CBA contains an Article IX, entitled "Industrial Relations Plans and Practices," which addresses, *inter alia*, the "continua[tion]" of the benefits provided through specified DuPont benefit plans.  Exhibit A, pp.11-12.

_____

[1] However, Local 4-786 has decided not to pursue its grievance with respect to the MEDCAP Plan and the Dental Plan, *see* Plaintiffs' Answering Brief in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Opposition") at 11 n.5, so DuPont's arguments about those two plans, *see* DuPont's Opposition at 2, 5, 6-10, are moot.

[2] Unless otherwise specified, all references to exhibits are to the exhibits to the Complaint.

The parties have a fundamental disagreement as to the meaning of that Article. DuPont suggests that the Article gives it an unlimited right to change the benefit plans, and thus to reduce benefits, as it sees fit, even during the term of the CBA. *See* DuPont's Opposition at 11 (referring to DuPont's purported "right to amend the plans"). On that interpretation, the elaborate language in Article IX gives employees no rights whatsoever – a proposition DuPont embraces when it declares that, with respect to benefit plans, its union-represented employees covered by the CBA have no rights beyond those of employees who are not covered by the CBA. *See* DuPont's Opposition at 24.

Plaintiffs, on the other hand, believe that Article IX is not an empty vessel. Among other things, the Union maintains that the language in the first sentence of the Article referring to DuPont's right to make certain "modifications" gives DuPont a right only to modify a plan's "rules, regulations and interpretations," not to make wholesale reductions in basic benefits such as DuPont announced in August 2006.[3]

This fundamental substantive disagreement over the meaning of Article IX of the CBA – which is *not* for the Court to resolve, *see* Plaintiff's Opposition at 8-11 – became a live dispute

---

[3] The first sentence of Article IX states:

> *All existing privileges* heretofore enjoyed by the employees at the said Plant in accordance with the following Industrial Relations Plans and Practices of the Company *shall continue subject to the provisions of such Plans and to such rules, regulations, and interpretations as existed prior to the signing of this Agreement and to such modifications thereof as may be hereafter adopted generally by the Company* to govern such privileges; provided, however, that as long as any of these Company Plans and Practices is in effect within the Company, it shall not be withdrawn from the employees covered by this Agreement.

Exhibit A, p. 11 (emphasis added).

when, on August 28, 2006, DuPont's Senior Vice President for Human Resources sent an email to employees stating that DuPont had decided to make "important changes to our U.S. employee benefits offering," and specifying the unilateral benefit reductions that DuPont had decided to make. *See* Exhibit B.

Local 4-786 filed a grievance with respect to DuPont's action. The grievance was explicit in stating that what the Local Union was challenging were the "announced changes" described in "the . . . email . . . sent . . . by [the] Senior Vice President–Human Resources," which was "attached [to and] incorporated [into]" the grievance. Exhibit D. The grievance alleged, *inter alia*, that the benefit changes announced in the email, both in "the[ir] application to [active employees]" and "[w]ith respect to new hires," were "not permitted 'modifications'" within the meaning of Article IX, *id.,* and that "these announced changes" violated other provisions of Article IX as well, *id. See* Plaintiffs' Opposition at 7. The remedy sought by the grievance was to "[c]ease and desist from making the announced changes." Exhibit D.

It thus could not be clearer that the grievance is precisely of the kind that DuPont has conceded is arbitrable: it "challenges DuPont's right to make unilateral changes to its benefits plans," DuPont's Opposition at 3, and is directed "at the employer's 'alleged refusal to comply with the CBA and [is] focused on the meaning of the CBA language,'" *id*. at 13, 17-18.

DuPont asserts, however, that the grievance also presents *additional* claims, which DuPont characterizes as involving "interpret[ation of] the plan," *id.* at 11, and which it asserts are "within the exclusive province of the plan administrator for each plan," *id.; see also id.* at 13-14 (asserting that, "[b]y its terms, the grievance necessarily implicates questions of plan interpretation . . . [which] the Union agreed would be within the sole authority of the plan administrators of the various plans"). Even if DuPont's characterization of the grievance as

presenting such additional claims were correct, the grievance still would be arbitrable, as we show *infra* at 6-12. But as a matter of undisputed fact, DuPont's characterization of the grievance is *not* correct.

DuPont fastens on the word "application" that appears in the grievance, and pretends that the grievance alleges that the plan administrators have somehow erred in making decisions about how to "apply" the benefit changes. *See* DuPont's Opposition at 3, 11, 13. But that argument is no more than a play on words. The grievance is absolutely explicit in stating that what the union challenges are *the benefit changes as announced by DuPont's Senior Vice President on August 28, 2007* – nothing more and nothing less. *See* Exhibit D, quoted *supra* at 4. In claiming that the changes as thus announced violate the CBA both as they "appl[y]" to current employees and as they apply to new hires, the grievance does not allege that the plan administrators have taken some action affecting benefits that is different from what the Senior Vice President decreed in the August 28 email. Rather, the grievance simply challenges the "announced changes" that are specifically described in the email, and seeks as a remedy that DuPont "[c]ease and desist from making the announced changes." Exhibit D. Thus, the grievance complains of actions taken by an employer as the sponsor of benefit plans (not actions taken by plan administrators as fiduciaries[4]), which the August 28 email acknowledges constitute "changes to [DuPont's] benefits offering," *see* Exhibit B (not "interpretations" of the plans), and which the grievance alleges violates *the CBA* (not the terms of the plans themselves).

In the final analysis, there can be no real debate about what Local 4-786 is requesting to arbitrate. Local 4-786 is the master of its own grievance and of its request for an order

---

[4] "Plan sponsors who alter the terms of a[n ERISA] plan do not fall into the category of fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

compelling arbitration. Local 4-786 represents to this Court without qualification that it seeks to arbitrate only whether DuPont's unilateral plan changes, as announced in the August 28, 2006 email, violate the CBA. We believe that the grievance makes it perfectly clear that the Local Union does not seek to present any other issue to the arbitrator. But if there were any uncertainty on that score, the Court's order could provide specifically that DuPont's obligation to arbitrate this matter extends only to the contention that the August 28, 2006 changes violate the CBA. DuPont's professed concern (made of whole cloth) that the union is seeking to arbitrate some *other* issue would thereby be mooted.

In sum, DuPont's concessions as to the kinds of benefit issues that are arbitrable leave DuPont with no argument against arbitrating what Local 4-786 seeks to arbitrate.

## II.    EVEN IF THE GRIEVANCE INCLUDED ADDITIONAL CLAIMS, AS DUPONT MISTAKENLY CONTENDS, THE CLAIM THAT DUPONT'S UNILATERAL PLAN AMENDMENTS VIOLATE THE CBA STILL WOULD BE ARBITRABLE.

As we have shown, *see* Plaintiffs' Brief in Support of Motion for Judgment on the Pleadings ("Plaintiffs' Opening Brief"), and as DuPont now appears to recognize, a grievance complaining that an employer has violated a CBA in making changes to its benefit plans "represents a quintessential arbitrable dispute." *Schweizer Aircraft, supra*, 29 F.3d at 86. Even if DuPont were correct that Local 4-786's grievance, which unquestionably presents such a dispute, also presents *other* disputes – or, as DuPont sometimes puts it, that the grievance is "inextricably intertwined with" or "implicates" other issues, *see* DuPont's Opposition at 2, 6, 13, 15, 16 – DuPont offers no reasoning, much less any authority, to support the notion that such "intertwin[ing]" would render this otherwise "quintessential[ly] arbitrable" dispute nonarbitrable.

It would not.  Where, as here, a dispute arises concerning alleged violations of a CBA, the national labor policy favors arbitration as the means of resolving that dispute, not for some slight or technical reason, but as "[a] major factor in achieving industrial peace."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 577-78 (1960).  Grievance arbitration is "at the very heart of the system of industrial self-government [through which] meaning and content are given to the [CBA]," *id.* at 581;[5] and, in resolving a grievance under a CBA, "[t]he labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts."  *Id.*  "The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. . . .  The ablest judge [to say nothing of the ablest employer-appointed plan administrator] cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed."  *Id.* at 582.

Thus, "[the] presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'"  *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)(quoting *Schneider Moving & Storage Co. v. Robbins,*466, U.S. 364, 371-72 (1984)).  Where, as here, a dispute between labor and

---

[5] *See also Paperworkers v. Misco,* 484 U.S. 29, 38 (1987) ("[I]t must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining.  It is through these processes that the supplementary rules of the plant are established").

management concerns the substantive provisions of a CBA that contains a broad arbitration clause, those weighty interests dictate that the dispute must be remitted to arbitration; and those interests cannot be set aside merely because a grievance is said to "implicate" additional matters that are said to be "intertwined with" the central arbitrable dispute over whether the employer has breached the CBA.

Rather, as discussed in Plaintiff's Opening Memo at 5-6, the governing law dictates that "only the most forceful evidence of a purpose to exclude [a] claim from arbitration can prevail." *AT&T Techs.,* 475 U.S. at 650 (quoting *Warrior & Gulf,* 363, U.S. at 584-85).  DuPont presents *no* evidence that the parties' intent is to exclude from arbitration a dispute concerning breach of a CBA that is itself "quintessentially arbitrable," *Schweizer, supra*, merely because that arbitrable dispute supposedly "implicates" additional issues such as the ones DuPont claims are present here.

Indeed, DuPont is hard-pressed even to identify the issues it believes are "implicated by" or "inextricably intertwined with" the claim asserted in the grievance, and nothing in DuPont's discussion of those issues provides any basis for overcoming the powerful presumption that Local 4-786's grievance alleging breach of the CBA is arbitrable.  DuPont states that it has "taken various steps . . . to implement the plan amendments," such as "communicat[ing] . . . information," DuPont's Opposition at 15-16; but DuPont does not identify any *dispute* that the grievance presents in connection with those actions apart from the *arbitrable* dispute as to the permissibility under the CBA of the plan amendments themselves.  Similarly, DuPont states again and again that the plan administrators will have to make determinations as to "eligibility for benefits" based on the challenged amendments, *see id.* at 2, 3, 6, 11, 13, 14; and DuPont states that this will require the administrators to "interpret the plan," *id*. at 11; s*ee also id* at 13-

14 (asserting that the grievance "necessarily implicates questions of plan interpretation" which would require the arbitrator to "interpret the plan documents").  But the terms of the plan changes at issue are perfectly clear and are spelled out in the August 28 email; the only dispute is as to whether the plan amendments comply with the CBA, *not* whether the plan administrators are interpreting the amendments correctly.

Thus, this is not*,* as DuPont would have it, a situation in which a union is seeking to compel arbitration with respect to "matters that are within the scope of the plan administrators' 'final and binding' authority."  DuPont's Opposition at 13.  As we have explained, the appellate decisions cited by DuPont in which certain benefit claims were held not to be arbitrable, *see id.* at 11-12, 14, involved benefit decisions of the kind routinely made by plan administrators, and the plaintiffs in those cases were not contending that the CBA imposed any substantive requirements with respect to those benefit decisions beyond the requirements contained in the plans themselves.  *See* Plaintiffs' Opening Brief at 13 n.6; Plaintiff's Opposition at 15-18.  The cases cited by DuPont thus are distinguishable from – indeed, they explicitly distinguish – situations such as the one presented here, in which a grievance claims that the terms of a plan as amended by the employer fail to comply with provisions of a CBA.  *Id.*  All of the appellate decisions involving grievances alleging that a plan change violated provisions of a CBA rather than of the plan itself have found such grievances to be arbitrable.  *See Schweizer Aircraft, supra*; *RCA Corp. v. Local 241, Prof'l & Technical Eng'rs*, 700 F.2d 921, 925 (3d Cir. 1983); *United Food & Commercial Workers, Local 17A v. Fresh Mark,* 81 Fed. Appx. 23 (6th Cir. 2003); *United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.,* 13 F.3d 1365 (9th Cir. 1994); *Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.,* 837 F.2d 782 (7th Cir. 1988).

*Accord, Pennwalt Corp. v. Local 370, Int'l Union of Elec., Radio & Mach. Workers,* No. 88-
2094, 1988 WL 149181, at *3 (D.N.J. Aug. 25, 1988).[6]

In effect, DuPont is arguing that a decision by an employer to change its benefit plans in a
way that is alleged to violate a CBA, which presents a plainly arbitrable dispute, should be
deemed nonarbitrable merely because the *implementation* of that decision will be carried out by
plan administrators whose functions include making decisions on individual claims for benefits.
But an employer's decision to change the terms of a benefit plan *always* leads to actions by plan
administrators to implement what the employer has dictated, and it will *always* be the case that
the plan administrators, in implementing those dictates, will provide a claims procedure.[7]  If
DuPont's theory were correct, all of the numerous cases that hold grievances challenging plan
changes to be arbitrable— including *Schweizer Aircraft*, which DuPont acknowledges was

_____

[6] DuPont relies heavily on a district court decision from the Eastern District of Texas,
*PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Int'l Union*, 164 F. Supp. 2d 856, 864 (E.D.
Tex. 2001).  *See* DuPont's Opposition at 11-12.  That decision is poorly reasoned and has not
been cited by any other court.  It is in any event distinguishable and *sui generis*.  In *PDG*, the
union had agreed to the terms of a retirement plan specifying how employees' rates of pay would
determine their pension benefits, and the union also had agreed to the method by which the pay
rates would be calculated.  *See* 164 F. Supp. 2d at 859-60.  Without contending that any of those
agreed terms had not been followed, *see id.* at 863 n.14, the union argued that the plan was more
favorable to salaried workers than to the union's members, and the union claimed that this was
contrary to an agreement which provided that the same terms would apply to both groups, *see id.*
at 863.  Thus, in effect, the union was seeking through the grievance to force a change in the very
plan terms to which it had agreed.  In addition, the CBA in the *PDG* case stated that "the terms
of the Plan [were to be] at the sole discretion of the company," *id.* at 862, which is not the case
here, *see supra* at 3 & n.3; and one of those terms was that the decisions of the plan
administrators would be "final, binding and conclusive" not only with respect to matters of plan
interpretation, but with respect to "any controversy or questions relating to . . . benefits payable
to any Member," 164 F. Supp. 2d at 862.  The language in the DuPont plans referring to the
authority of plan administrators to make final and binding decisions is much narrower; for
example, the Savings and Investment Plan states that decisions of the plan administrators "shall
be final [only] with respect to any questions arising as to the *interpretation of* this Plan."  Exhibit
B to Declaration of Mary Jo Anderson, at 40 (emphasis added).

[7] ERISA requires that every covered plan provide such a procedure.  *See* Plaintiffs'
Opposition at 11-13.

rightly decided – would have been wrong, because the matters held to be arbitrable in those cases "implicated" the actions of plan fiduciaries to at least as great an extent as DuPont claims is present here.  Indeed, in *Schweizer Aircraft*, the action grieved by the union was an individual benefit determination that had been made by the plan administrators, *see Schweizer Aircraft*, 29 F.3d at 84; the Second Circuit nevertheless held the matter to be arbitrable because the plan provisions on which the administrators had relied were alleged to be inconsistent with a CBA. *Id*. at 86.  And *RCA Corp., supra*, also involved actions by plan administrators, *see* 700 F.2d at 923, which were found to be arbitrable because they were alleged to be inconsistent with the requirements of a CBA, *id*. at 925.

Thus, DuPont's contention that its internal plan claims procedures – administered by DuPont's own designees – constitute the exclusive process for determining whether DuPont has breached its CBA with the Local Union is completely lacking in support.  Indeed, it is difficult to take that contention seriously when it is recognized that the union cannot even invoke the plan claims procedures, *see* Plaintiffs' Opposition at 14-15, and that there is no guarantee – and indeed, no likelihood – that a contention by a plan participant that a plan amendment violates the CBA would even be entertained (much less entertained fairly) by DuPont's plan administrators.

In that connection, far from suggesting that its plan administrators are free to disregard plan changes announced by their corporate superiors if they believe that the changes conflict with a CBA, DuPont has taken the position that all "benefit eligibility determinations" made by the plan administrators must be "consistent with the terms of the plans, *and any amendments thereto.*" DuPont's Memorandum in Support of its Motion for Summary Judgment ("DuPont's Opening Memo") at 6 (emphasis added).  In another case challenging the August 2006 benefit changes, DuPont has explicitly stipulated that "[t]he Plan Administrator's eligibility determinations must

be made consistent with the terms of [each Plan], including any amendments; *the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement*."  Stipulations filed in *E.I. DuPont de Nemours & Company v. Ampthill Rayon Workers, Inc.*, No. 3:07cv52 (E.D. Va.), at ¶¶11, 17, 22, 27, 32 (emphasis added) (copy attached).

Contrary to those representations, DuPont now suggests that the plan administrators *could* consider whether a plan amendment complies with the CBA.  S*ee* DuPont's Opposition at 19.  But that suggestion is empty.  The Summary Plan Descriptions ("SPDs") which contain the claims-review provisions on which DuPont's argument against arbitrability is based do not state that the plan administrators have the authority to set aside a plan amendment on the ground that the amendment conflicts with a CBA – much less that the plan administrators (who, we repeat, are appointed by DuPont) will in fact exercise any such authority.  On the contrary, DuPont's Plans and SPDs state that the administrators *must apply* the terms of the Plans and the SPDs as DuPont has written them.  *See, e.g.*, the SPD for the Savings and Investment Plan, which states that "the governing documents in the event questions arise" are solely "the E.I. DuPont de Nemours and Company Savings and Investment Plan and the Trustee Agreement between the Company and the Plan Trustee."  Exhibit C to Declaration of Mary Jo Anderson, p. 24. [8]

---

[8] This is not to say that a CBA cannot be considered a governing document with which, through litigation under ERISA or under § 301 of the Labor Management Relations Act, plan administrators can be forced to comply.  *See* DuPont's Opposition at 19 (citing cases requiring compliance with governing documents).  But that is a very different question from whether the plan administrators themselves possess *exclusive and final authority* to construe CBA provisions governing a benefit plan.  Nothing in ERISA so provides.  Nor is there any relevance to the fact that plan participants may be able to sue under ERISA, as well as under § 301, to enforce collectively bargained benefit commitments and to challenge improper plan amendments.  *See* DuPont's Opposition at 19-20.  The presumption of arbitrability does not rest on an assumption that, absent arbitration, unions would have no remedy for CBA breaches; the caselaw recognizes that a judicial remedy would be available, *see Groves v. Ring Screw Works*, 498 U.S. 168 (1990),

In these circumstances, even if there were room to assert that DuPont's plan administrators theoretically might entertain a contention that a plan amendment conflicts with a CBA, there is nothing – and certainly not "the most forceful evidence," *AT&T Techs.*, 475 U.S. at 650 – to suggest that *Local 4-786 has agreed* to give the plan administrators appointed by the Company the *exclusive* (and, as DuPont would have it, the "final and binding") authority to decide whether, in making plan changes such as the ones announced by DuPont's Senior Vice President in August 2006, DuPont has complied with its obligations under a CBA.  On the contrary, under the parties' CBA, that authority rests not with DuPont's own officials, but with an impartial arbitrator.

## <u>CONCLUSION</u>

For the reasons stated above and in Plaintiffs' prior submissions, Plaintiffs' Motion for Judgment on the Pleadings should be granted, and the Court should enter an Order compelling DuPont to arbitrate the Local Union's grievance, excepting those portions of the grievance which relate to the MEDCAP and Dental Plans.

---

but that the national labor policy favors arbitration over litigation, *see supra* at 7-8.  In any event, none of the cases cited at pp. 19-20 of DuPont's Opposition holds that the availability of a judicial forum, or of an internal claims procedure, means that a grievance alleging breach of a CBA is not arbitrable.

DuPont's suggestion that the exclusive remedy for the Local Union's grievance lies with the NLRB also is a nonstarter, *see* Plaintiffs' Opposition at 20-21, as are DuPont's arguments about the DOL ERISA regulations, *see id*. at 19-20, and DuPont's contention that arbitrating Local 4-786's grievance would convert the arbitrator into an ersatz plan fiduciary, *see id*. at 19 n. 15.

Respectfully submitted,


/s/ Susan E. Kaufman
SUSAN E. KAUFMAN (DSB # 3381)
Heiman, Gouge & Kaufman, L.L.P.
800 King Street, Suite 303
P.O. Box 1674
Wilmington, DE 19801
Telephone: (302) 658-1800/Facsimile: (302) 658-1473
skaufman@hgkde.com

JEREMIAH A. COLLINS
JENNIFER L. HUNTER
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., NW
Washington, D.C. 20005
Telephone: (202) 842-2600/ Facsimile: (202) 842-1888
jcollins@bredhoff.com
jhunter@bredhoff.com


*Counsel for Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union* and *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Local 4-786*


DATED: September 4, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND SERVICE | ) | |
| WORKERS, INTERNATIONAL UNION, | ) | |
| AFL-CIO-CLC, and UNITED STEEL, PAPER | ) | |
| AND FORESTRY, RUBBER, MANUFACTURING, | ) | C.A. No. 07-126 (JJF) |
| ENERGY, ALLIED INDUSTRIAL AND SERVICE | ) | |
| WORKERS LOCAL 4-786, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| E.I. DuPONT de NEMOURS and | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2007, I electronically filed the **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Kathleen F. McDonough, Esquire
Potter, Anderson & Corroon, LLP
1313 North Market Street
Wilmington, DE 19899

I hereby certify that on September 4, 2007, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Thomas P. Gies, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

                                   */s/ Susan E. Kaufman*
                                   Heiman, Gouge & Kaufman, LLP
                                   800 King Street, Suite 303
                                   Wilmington, DE  19801
                                   302-658-1800
                                   skaufman@hgkde.com

*F*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

E.I. DUPONT DE NEMOURS AND
COMPANY,

Plaintiff,

CIVIL ACTION NO. 3:07cv52

v.

AMPTHILL RAYON WORKERS, INC.,

Defendant.

## STIPULATIONS

Defendant Ampthill Rayon Workers, Inc. ("Union" or "ARWI") and Plaintiff E.I. du Pont de

Nemours and Company ("DuPont" or "Company"), by their undersigned counsel, hereby stipulate as

follows:

### The Parties' Relationship

1.     DuPont is a Delaware corporation with its principal place of business in Wilmington,

Delaware. DuPont is licensed to do business in the Commonwealth of Virginia. DuPont employs

more than 30,000 employees nationwide, of which more than 4,500 are unionized. DuPont is the

plan sponsor and plan administrator of each of the ERISA benefit plans identified below. DuPont,

either directly or through DuPont employees or committees of such employees, is also a fiduciary of

each of the ERISA benefit plans identified below. DuPont is an "employer" as defined by 29 U.S.C.

§152(2).

2.    ARWI is a "labor organization" as defined by 29 U.S.C. §152(5), with its principal place of business in Richmond, Virginia. ARWI is the exclusive collective bargaining representative for hourly production, maintenance, service and plant technical employees employed at DuPont's Spruance Fibers Plant located in Ampthill, Virginia.

### The Parties' Collective Bargaining Agreement

3.    DuPont employs more than 1,000 workers represented by ARWI at its Spruance Fibers Plant. The Union represents employees in the Production and Maintenance unit and in the Clerical, Technical and Office unit. Each unit has a separate collective bargaining agreement. The Production and Maintenance contract became effective on September 1, 1999. The Clerical, Technical and Office contract became effective October 1, 2000. Each contract renews, by its terms, each year on its effective date, unless either party gives notice of an intent to terminate it. The contracts renewed most recently on September 1, and October 1, 2006, respectively. Although the contracts differ in several ways, the provisions material to this litigation are identical. They will be called "ARWI CBA" in these Stipulations. True and accurate copies of the contracts are attached as Exhibits C(1) and C(2) to these Stipulations.

4.    The employees covered by the ARWI CBA comprise just a small fraction of the total number of individuals who receive benefits from DuPont's benefit plans described herein.

5.    Article II of the ARWI CBA addresses both the Company's recognition of the Union as the exclusive bargaining agent of covered employees and the scope of the agreement.

6.    Article XI of the ARWI CBA contains the parties' grievance and arbitration procedures.

2

7.     Article VII of the ARWI CBA, entitled "Industrial Relations Plans and Practices," addresses the employee benefit plans made available to eligible ARWI-represented employees. Article VII contains the only provisions in the ARWI CBA that mention these benefit plans.

### DuPont's Savings and Investment Plan

8.     DuPont maintains a nationwide benefit plan known as the DuPont Savings and Investment Plan ("SIP"), which is governed by ERISA. A true and accurate copy of the SIP Plan Document, as of January 1, 2005, is attached as Exhibit D to these Stipulations. A true and accurate copy of the most recent summary plan description ("SPD") pertaining to the SIP, effective July 2003, is attached as Exhibit E to these Stipulations. The SIP was originally adopted by DuPont on September 1, 1955. Employees eligible to participate in the SIP are permitted to voluntarily contribute a percentage of their pay to the SIP and DuPont makes a matching contribution up to a specified percentage of the employee's monthly pay.

9.     The SIP applies to all U.S. employees of DuPont who meet the eligibility requirements of the SIP, including employees represented by the ARWI.

10.     Article XIX of the SIP Plan Document identifies DuPont as the Plan Administrator and describes DuPont's rights and authority as Plan Administrator.

11.     Benefit determinations, including eligibility determinations, are made by the Plan Administrator, acting as an ERISA fiduciary with respect to such eligibility determinations and in the exercise of its discretion as the only person designated under the SIP to make final determinations and interpretations. The Plan Administrator's eligibility determinations must be made consistent with the terms of the SIP, including any amendments; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement.

12.      Consistent with ERISA requirements, the SIP SPD contains a procedure for participants and beneficiaries to appeal the Plan Administrator's decisions concerning interpretations and applications of the plan relating to the denial of a claim for benefits under the SIP.  Participants whose claims are denied in whole or in part may file suit in a state or federal court to vindicate their rights pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

13.      Article XIX of the SIP Plan Document addresses the rights of DuPont to modify or discontinue the SIP.  The SIP SPD also addresses the Company's right to modify or discontinue the SIP.

### DuPont's Pension and Retirement Plan

14.      DuPont maintains a nationwide defined benefit plan known as the DuPont Pension and Retirement Plan ("Pension Plan"), which is governed by ERISA, under which pension benefits are provided to employees.  The Pension Plan was originally adopted over a hundred years ago, on September 1, 1904, and currently has more than 150,000 participants, including employees and former employees, union and non-union alike.

15.      The Pension Plan applies to all U.S. employees of DuPont who meet the eligibility requirements of the Pension Plan, including employees represented by ARWI.

16.      DuPont is both the plan sponsor and plan administrator of the Pension Plan.  A true and accurate copy of the Pension Plan Document, last amended as of October 31, 2002, is attached as Exhibit F to these Stipulations.  A true and accurate copy of the most recent SPD pertaining to the Pension Plan, effective July 2003, is attached as Exhibit G to these Stipulations.

17.      Article II of the Pension Plan Document provides that the plan is administered by a "Board of Benefits and Pensions," the members of which are appointed by DuPont.  Article II

4

addresses the rights and authority of the Board of Benefits and Pensions as Plan Administrator. The Pension Plan SPD describes an employee's right to appeal any denial of a claim for benefits under the Pension Plan and specifies that employees whose claims are denied in whole or in part may file suit in a state or federal court to vindicate their rights. The Board of Benefits and Pensions' eligibility determinations must be made consistent with the terms of the Pension Plan, including any amendments; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement. Included among claims that are subject to the claims procedure set forth in the SPD are individual eligibility determinations made by the Board of Benefits and Pensions. In some cases, claims related to eligibility determinations may be asserted in a civil action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

18.    Article IX of the Pension Plan Document addresses the rights of DuPont to change or discontinue the Plan. The Pension SPD also addresses the Company's right to modify or discontinue the Pension Plan.

### DuPont's BeneFlex Employee Life Insurance Plan

19.    DuPont maintains a nationwide life insurance plan known as the BeneFlex Employee Life Insurance Plan ("Life Insurance Plan"), which is governed by ERISA. A true and accurate copy of the Life Insurance Plan document, as of January 1, 2005, is attached as Exhibit H to these Stipulations. A true and accurate copy of the most recent SPD pertaining to the Life Insurance Plan, effective July 2003, is attached as Exhibit I to these stipulations. The Life Insurance Plan provides DuPont-funded life insurance for employees at one time their pay at no cost and allows employees to purchase additional group insurance coverage at their own expense.

20.     The Life Insurance Plan applies to all U.S. employees of DuPont who meet the eligibility requirements of the Life Insurance Plan, including employees represented by ARWI.

21.     Page 10 of the Life Insurance Plan Document identifies DuPont as Plan Administrator and describes DuPont's rights and authority as Plan Administrator.

22.     Consistent with ERISA requirements, the Life Insurance Plan SPD describes an employee's right to appeal any denial of a claim for benefits under the Life Insurance Plan and specifies that employees whose claims are denied in whole or in part may file suit in a state or federal court to vindicate their rights.  Included among claims that are subject to the claims procedure set forth in the summary plan description are individual eligibility determinations made by the Plan Administrator.  The Plan Administrator's eligibility determinations must be made consistent with the terms of the Life Insurance Plan, including any amendments; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement. In some cases, claims related to eligibility determinations may be asserted in a civil action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

23.     Page 10 of the Life Insurance Plan Document addresses the rights of DuPont to suspend, modify or terminate the Life Insurance Plan.  The Life Insurance Plan SPD addresses the right of DuPont to suspend, modify, or terminate the plan.

### DuPont's Medical Care Assistance Program

24.     DuPont maintains a nationwide benefit plan known as the Medical Care Assistance Program ("MEDCAP"), which is governed by ERISA, under which health care benefits are provided to certain employees, former employees and their eligible dependants.  A true and accurate copy of the MEDCAP Document, as of April 21, 2005, is attached as Exhibit J to these Stipulations.  A true

and accurate copy of the most recent SPD pertaining to MEDCAP, effective January 2005, is attached as Exhibit K to these stipulations. MEDCAP was initially adopted on January 1, 1983.

     25.    MEDCAP applies to all U.S. employees and former employees of DuPont and their eligible dependants who meet the eligibility requirements of MEDCAP, including certain former employees represented by ARWI who otherwise meet the MEDCAP eligibility requirements.

     26.    Article XIX of the MEDCAP Document identifies DuPont as the Plan Administrator of MEDCAP and describes DuPont's rights and authority as Plan Administrator.

     27.    Consistent with ERISA requirements, the MEDCAP SPD describes an employee's right to appeal any denial of a claim for benefits under MEDCAP and specifies that employees whose claims are denied or ignored in whole or in part may file suit in a state or federal court to vindicate their rights. Included among claims that are subject to the claims procedure set forth in the SPD are individual eligibility determinations made by the Plan Administrator. The Plan Administrator's eligibility determinations must be made consistent with the terms of MEDCAP, including any amendments; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement. In some cases, claims related to eligibility determinations may be asserted in a civil action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

     28.    Article XX of the MEDCAP Document addresses the rights of DuPont to amend or terminate MEDCAP. The MEDCAP SPD also addresses the right of DuPont to suspend, modify, or terminate the plan.

## DuPont's Dental Assistance Plan

29.     DuPont maintains a nationwide benefit plan known as the Dental Assistance Plan ("Dental Plan"), which is governed by ERISA, under which certain dental benefits are provided to certain employees, former employees retired with a pension, eligible survivors, and their eligible dependents. A true and accurate copy of the Dental Plan Document, as of April 21, 2005, is attached as Exhibit L to these Stipulations.  A true and accurate copy of the most recent SPD pertaining to the Dental Plan, effective July 2003, is attached as Exhibit M to these stipulations.  The Dental Plan was initially adopted by DuPont on September 1, 1976.

30.     The Dental Plan applies to all U.S. employees and former employees of DuPont and their eligible dependants who meet the eligibility requirements of the Dental Plan, including certain former employees represented by ARWI who otherwise meet the eligibility requirements.

31.     Article XIII of the Dental Plan Document authorizes DuPont to serve as the Plan Administrator of the Dental Plan or to designate one or more persons to serve as the Plan Administrator of the Dental Plan and describes the rights and authority of the Plan Administrator.

32.     Consistent with ERISA requirements, the Dental Plan Document and SPD describe an employee's right to appeal any denial of a claim for benefits under the Dental Plan.  Included among claims that are subject to the claims procedure set forth in the Plan are individual eligibility determinations made by the Contract Administrator.  The Plan Administrator's eligibility determinations must be made consistent with the terms of the Dental Plan, including any amendments; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement. The Dental Plan SPD specifies that employees whose claims are denied in whole or in part may file suit in a state or federal court to vindicate their

8

rights. In some cases, claims related to eligibility determinations may be asserted in a civil action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

33.    Article XIV of the Dental Plan Document addresses the right of DuPont to amend or discontinue the Plan. The Dental Plan SPD addresses the right of DuPont to suspend, modify, or terminate the plan.

## DuPont's Vacation Plans and Programs

34.    DuPont maintains a nationwide benefit plan known as BeneFlex Vacation Buying Plan, which is governed by ERISA, under which employees may purchase up to one week of vacation time. A true and accurate copy of the BeneFlex Vacation Buying Plan Document, as of January 1, 1992, is attached as Exhibit N to these Stipulations. A true and accurate copy of the most recent SPD pertaining to the BeneFlex Vacation Buying Plan, effective July 2003, is attached as Exhibit O to these stipulations. DuPont originally adopted the BeneFlex Vacation Buying Plan on January 1, 1992.

35.    Article XI of the Beneflex Vacation Buying Plan Document identifies DuPont as the Plan Administrator and describes DuPont's rights and authority as Plan Administrator.

36.    Consistent with ERISA requirements, the SPD pertaining to the Beneflex Vacation Buying Plan describes an employee's right to appeal any denial of a claim for benefits under the Beneflex Vacation Buying Plan and specifies that employees whose claims are denied in whole or in part may file suit in a state or federal court to vindicate their rights. The Plan Administrator's eligibility determinations must be made consistent with the terms of the BeneFlex Vacation Buying Plan, including any amendment; the Plan Administrator cannot ignore Plan amendments because they are inconsistent with the terms of a collective bargaining agreement. Included among claims

that are subject to the claims procedure set forth in the BeneFlex Vacation Buying Plan are individual eligibility determinations made by the Plan Administrator. In some cases, claims related to eligibility determinations may be asserted in a civil action pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

37.    Article XII of the BeneFlex Vacation Buying Plan Document addresses the right of DuPont to modify or terminate the Beneflex Vacation Buying Plan. The BeneFlex Vacation Buying Plan SPD also addresses the right of DuPont to suspend, modify, or terminate the plan.

38.    DuPont also maintains a nationwide Vacation Plan that provides employees with annual vacation benefits. A true and accurate copy of the Vacation Plan Document, as of January 1, 2003, is attached as Exhibit P to these Stipulations. A true and accurate copy of the most recent SPD pertaining to the Vacation Plan, effective July 1998, is attached as Exhibit Q to these stipulations. The Vacation Plan was initially adopted on January 1, 1934.

39.    Article VIII of the Vacation Plan Document addresses DuPont's right to change or discontinue the Plan. The Vacation Plan SPD also addresses the right of DuPont to suspend, modify, or terminate the plan.

### The Amendments to the Company's Benefit Plans

40.    In a memorandum dated August 28, 2006, DuPont announced several changes to certain employee benefit plans maintained on behalf of DuPont employees working across the country. A true and accurate copy of the memorandum dated August 28, 2006 is attached as Exhibit A to these Stipulations. Except as otherwise indicated herein, each of these benefit plans are covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

10

41.    On December 20, 2006, DuPont amended each of the ERISA benefit plans described herein ("the 2006 amendments"). True and accurate copies of the 2006 amendments are attached as Exhibit B(1) and B(2) to these Stipulations. The 2006 amendments apply to all U.S. DuPont employees, including employees represented by ARWI.

42.    Pursuant to the 2006 <u>SIP amendment</u>, DuPont amended the SIP to provide that DuPont employees hired on or after January 1, 2007, including but not limited to ARWI-represented employees hired to work at the Spruance Plant, are ineligible to participate in the SIP and are instead eligible to participate in a new plan, the DuPont Retirement Savings Plan ("RSP") and receive certain benefits that are not available to employees who participate in the SIP. For calendar year 2007, employees hired on or after January 1, 2007 are eligible to (a) receive a Company contribution to the RSP equal to three percent (3%) of earnings; and (b) contribute up to one hundred percent (100%) of their earnings to the RSP, with a Company matching contribution of one hundred percent (100%) of that amount up to six percent (6%) of pay.

For calendar year 2007, employees hired prior to January 1, 2007 are eligible to contribute up to one hundred percent (100%) of their earnings to the SIP and the Company will match fifty percent (50%) of that contribution up to three percent (3%) of pay. For calendar year 2007, employees hired prior to January 1, 2007 are not eligible for the three percent (3%) Company contribution and are not eligible for the one hundred percent (100%) matching contribution.

43.    Pursuant to the 2006 <u>Pension Plan amendment</u>, DuPont amended the Pension Plan to provide, as set forth in the plan documents, that DuPont employees hired or rehired on or after January 1, 2007, including, but not limited to, ARWI-represented employees hired to work at the Spruance Plant, are ineligible to accrue benefits under the Pension Plan for service after such hire or

11

rehire date. DuPont also announced two additional changes to the Pension Plan in the August 28 memorandum: (a) that under the Pension Plan, service accrued after December 31, 2007 by DuPont employees who were employed as of December 31, 2006, including ARWI-represented employees working at the Spruance Plant, will be accrued at one-third the level of the current accrual rate, and (b) that the DuPont-paid survivor benefit under the Pension Plan will be frozen as of December 31, 2007.

44.    Pursuant to the 2006 Life Insurance amendment, DuPont amended the Life Insurance Plan to provide that DuPont employees hired on or after January 1, 2007, including but not limited to ARWI-represented employees hired to work at the Spruance Plant, are ineligible to participate in the Life Insurance Plan following retirement.

45.    Pursuant to the 2006 MEDCAP amendment, DuPont amended MEDCAP to provide that DuPont employees hired on or after January 1, 2007, including but not limited to ARWI-represented employees hired to work at the Spruance Plant, are ineligible to participate in MEDCAP.

46.    Pursuant to the 2006 Dental Plan amendment, DuPont amended the Dental Plan to provide that DuPont employees hired on or after January 1, 2007, including but not limited to ARWI-represented employees hired to work at the Spruance Plant, are ineligible to participate in the Dental Plan.

47.    Pursuant to the 2006 Vacation Plan amendment, DuPont amended the Vacation Plan to provide that DuPont employees hired on or after January 1, 2007, including but not limited to ARWI-represented employees, will, in the future, only be eligible for a maximum vacation benefit of five weeks and are ineligible to bank more than three weeks of vacation under DuPont's Vacation Plan.

12

48.    Pursuant to the 2006 <u>BeneFlex Vacation Buying Plan amendment</u>, DuPont amended the Beneflex Vacation Buying Plan to provide that DuPont employees hired on or after January 1, 2007 will be ineligible to purchase vacation under DuPont's BeneFlex Vacation Buying Plan after their first ten years of employment.

49.    DuPont has informed its employees, including employees represented by ARWI, of the changes effectuated by each of the 2006 amendments.

### The ARWI Grievance

50.    Responding to DuPont's announcement of changes to the ERISA employee benefit plans, on November 7, 2006, the Union filed a grievance alleging that the 2006 amendments violated the ARWI CBA in several respects. A true and accurate copy of the grievance ARWI filed is attached as Exhibit R to these Stipulations.

51.    After the parties processed the grievance through the contractual grievance procedure without reaching agreement, the Union demanded arbitration. The Union obtained a panel of arbitrators from the American Arbitration Association.

52.    On or about January 23, 2007, the parties selected Ira F. Jaffe to arbitrate the grievance.

53.    DuPont has refused to arbitrate benefits eligibility issues relating to the DuPont ERISA benefit plans, including any such matters alleged in the ARWI grievance.

54.    Subsequently, DuPont filed this action.

55.    On March 28, 2007, DuPont advised ARWI, through counsel, of its willingness to proceed to arbitration on the ARWI grievance to the extent it presented a claim concerning the

Company's Vacation Plan. Any such arbitration would occur after the resolution of this litigation. A

true and accurate copy of that letter is attached as Exhibit S to these Stipulations.

### Miscellaneous

56.    The Union contends that MEDCAP and the Dental Assistance Plan are contractual

benefits as part of the BeneFlex Flexible Benefits Plan. A true and accurate copy of the BeneFlex

Flexible Benefits Plan Document is attached as Exhibit T to these Stipulations.

57.    None of the ARWI CBA, including the ARWI CBA's grievance procedure, is

incorporated in the DuPont plans' documents.

Respectfully submitted,

James P. McElligott
Regina J. Elbert
MCGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
(804) 775-4329

Thomas P. Gies
Kris D. Meade
Jennifer G. Knight
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

*Attorneys for Plaintiff E. I. du Pont de
Nemours and Company*

James J. Vergara
Vergara & Associates
100 Main Street Plaza
Hopewell, VA 23806

Jonathan G. Axelrod
Beins, Axelrod, P.C.
1625 Massachusetts Avenue, N.W.
Washington, DC 20036

*Attorneys for Defendant Ampthill Rayon
Workers, Inc.*

14