IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS LOCAL 4-786, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 07-126 (JJF) |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT E. I. DUPONT DE NEMOURS AND COMPANY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Thomas P. Gies
Kris D. Meade
Glenn D. Grant
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Dated: September 4, 2007

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant E. I. du Pont de Nemours and Company*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.    Local 4-786's Concession that a Substantial Portion of its Grievance Is Not Arbitrable Does Not Mean that the Remainder Is Arbitrable ...........................2

    B.    Defendants Are Not Asking the Court to Interpret the Collective Bargaining Agreements To Determine Local 4-786's Grievance on the Merits. ...................................................................................................................4

    C.    Local 4-786's Grievance Set Forth Disputes That Involve Benefit Eligibility Questions That Must be Determined Under the Benefit Plans' Dispute Resolution Procedures .............................................................................6

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Aetna Healthcare v. Davila*, 542 U.S. 200 (2004)..........................................................8

*AT&T Techs, Inc. v. Communication Workers of Am.*,
    475 U.S. 643 (1986).................................................................................................4

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists*,
    802 F.2d 247 (7th Cir. 1986) ..................................................................................5

*Faircloth v. Lundy Packing Co.*,
    91 F.3d 648 (4th Cir. 1996) ..................................................................................11

*Firestone Tire & Rubber Co. v. Brusch*,
    489 U.S. 101 (1989)...............................................................................................10

*Fuller v. CBT Corp.*,
    905 F.2d 1055 (7th Cir. 1990) ..........................................................................9, 10

*Indep. Lift Truck Builders Union v. Hyster Co.*,
    2 F.3d 233 (7th Cir. 1993) ......................................................................................5

*Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.*,
    17 F.3d 196 (7th Cir. 1994) ................................................................................5, 6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v.
Skinner Engine Co.*,
    188 F.3d 130 (3d Cir. 1999)..................................................................................12

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982).................................................................................................8

*Kinstler v. First Reliance Standard Life Ins. Co.*,
    181 F.3d 243 (2d Cir. 1999)..................................................................................10

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995).......................................................................................4

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991)................................................................................................4

*Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*,
    837 F.2d 782 (7th Cir. 1998) ..................................................................................7

*Local 4-449, Oil, Chemical & Atomic Workers v. Amoco Chem. Corp.*,
    589 F.2d 162 (5th Cir. 1979) ..................................................................................6

*Maryland Casualty Co. v. Realty Advisory Bd.*,
   107 F.3d 979 (2d Cir. 1997)........................................................................................ 4

*Moench v. Robertson*,
   62 F.3d 553 (3d Cir. 1995)........................................................................................ 10

*PDG Chemical, Inc. v. Oil, Chem. & Atomic Workers Int'l Union*,
   164 F. Supp. 2d 856 (E.D. Tex. 2001)........................................................................ 6

*Rogers v. New York Univ.*,
   220 F.3d 73 (2d Cir. 2000)........................................................................................ 12

*Rush Prudential HMO Inc. v. Moran*,
   536 U.S. 355 (2002).................................................................................................... 8

*Sprague v. Cent. States Pension Fund*,
   269 F.3d 811 (7th Cir. 2001) ................................................................................... 11

*United Food & Commercial Workers Union v. Albertson's Inc.*,
   207 F.3d 1193 (10th Cir. 2000) ............................................................................... 14

*United Food & Commercial Workers Union v. Geldin Meat Co.*,
   13 F.2d 1365 (9th Cir. 1994) ..................................................................................... 6

*United Food & Commercial Workers Union, 17A v. Fresh Mark*,
   81 Fed. Appx. 23 (6th Cir. 2003)............................................................................... 7

*United Steelworkers v. Commonwealth Aluminum Corp.*,
   162 F.3d 447 (6th Cir. 1998) ..................................................................................... 5

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960).................................................................................................... 5

*Wagener v. SBC Pension Benefit Plan-Non Bargained Program*,
   407 F.3d 395 (D.C. Cir. 2005) ............................................................................. 9, 10

**Statutes**

29 U.S.C. § 1001............................................................................................................. 1

29 U.S.C. § 1102(a)(1)................................................................................................... 10

29 U.S.C. § 1102(b)(2) ................................................................................................... 10

**Regulations**

29 C.F.R. § 2509.75-8............................................................................................ 10, 11

## INTRODUCTION

After almost six months of litigation, Plaintiff Local 4-786 has finally conceded that it has no basis to seek arbitration of the disputes set forth in its grievance relating to DuPont's Medical Care Assistance Plan ("MEDCAP") and Dental Assistance Plan ("Dental Plan"), because neither plan is identified in its collective bargaining agreement ("CBA") with DuPont. *See* Local 4-786 Answering Brief at 2, n.1. The remaining disputes set forth in Local 4-786's grievance are likewise not arbitrable. Local 4-786 claims that its grievance has nothing to do with benefit eligibility under the terms of DuPont's amended benefit plans. Local 4-786 is wrong. On its face, Local 4-786's grievance raises disputes pertaining to the "application" of the amended terms of DuPont's benefit plans. Local 4-786 does not, because it cannot, dispute that "application" of DuPont's benefit plans involves benefit eligibility determinations within the exclusive province of the plan administrators of each benefit plan. This is critical because Local 4-786's ultimate objective in seeking arbitration of its grievance is obviously to secure a ruling from an arbitrator that its members are eligible for benefits under the benefit plans at issue.

As demonstrated in DuPont's prior submissions, questions concerning benefit eligibility determinations, such as those implicated by Local 4-786's grievance, are with the exclusive province of the Plan Administrator for each plan. As such, they must be resolved in accordance with the dispute resolution procedures set forth in each plan and/or under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

In addition, submission of Local 4-786's grievance to arbitration here would be inconsistent with ERISA's statutory scheme, and would result in untenable results by increasing the likelihood of additional litigation and by subjecting DuPont to substantial potential liability under ERISA. Finally, this is not a dispute without a remedy if arbitration is not compelled, as

1

Local 4-786 suggests.  Employees have the ability to challenge benefit eligibility determinations

and the validity of plan amendments under the dispute resolution procedures set forth in the

plans, and Local 4-786 may pursue appropriate remedies under Section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185.  Arbitration is simply the wrong forum to

adjudicate the benefit eligibility issues raised in Local 4-786's grievance.

## ARGUMENT

A.  **Local 4-786's Concession that a Substantial Portion of its Grievance
Is Not Arbitrable Does Not Mean that the Remainder Is Arbitrable**

Local 4-786 now concedes that it has no basis upon which to seek arbitration of a

substantial portion of its grievance.  That should have been plain long ago.  On February 27,

2007, DuPont wrote to the Associate General Counsel of the United Steelworkers of America

who was handling Local 4-786's grievance and specifically informed him that Local 4-786's

grievance was not arbitrable with respect to certain plans because those plans were not

referenced in the parties' collective bargaining agreements.  More specifically, Local 4-786's

counsel was advised that:

> [T]he grievances appear to involve matters that are beyond the
> scope of the arbitration provisions set forth in the collective
> bargaining agreements.  By its terms, the Edge Moor collective
> bargaining agreement only requires arbitration of disputes "as to
> the interpretation of, or any alleged violation, of any provision of
> this Agreement.  See Edge Moor Agreement, Article VII.  Neither
> DuPont's Medical Care Assistance Plan (Medcap) nor its Dental
> Assistance Plan is referenced in the collective bargaining
> agreement.  Therefore, the Edge Moor grievance is not arbitrable
> to the extent it that involves retiree benefits provided under either
> Medcap or the Dental Assistance Plan.

*See* Exhibit V to Declaration of Mary Jo Anderson.[1] Local 4-786 nonetheless sought to compel arbitration of its grievance, including the disputes involving benefit plans outside the DuPont CBA. Local 4-786 now, after months of litigation, concedes that it had no basis for seeking to compel arbitration of disputes involving benefit plans that are not referenced in the CBA, and has thus decided to withdraw its demands for arbitration with respect to MEDCAP and the Dental Plan. *See* Local 4-786 Answering Brief at 2, n.1; 11, n.5.

In an attempt to divert the Court's attention from its belated concession, Local 4-786 argues that the exclusion from arbitration of disputes regarding benefit plans that are not listed in the parties' CBA must mean that the parties "intended that actions affecting the plans that *are* 'delineat[ed] and 'specifically listed' in the CBA *would* be subject to arbitration." *See* Local 4-786's Answering Brief at 11 n.7. That argument is specious. Matters involving benefit plans that are not referenced in the CBA are excluded from arbitration simply because the parties agreed only to arbitrate disputes involving the interpretation or violation of the CBA itself. *See* DuPont CBA, Art. VII. The remaining disputes set forth in Local 4-786's grievance are excluded from arbitration for an entirely different reason: the parties agreed that benefit eligibility disputes, such as those inevitably raised by Local 4-786's grievance, must be decided under the dispute resolution procedures contained in the relevant benefit plans.

---

[1]     Ms. Anderson's Declaration, and the accompanying exhibits, were filed with the Court in conjunction with DuPont's Motion for Summary Judgment. DuPont will address Local 4-786's Motion to Strike Portion of Declaration of Mary Jo Anderson in a separate submission.

**B.     DuPont Is Not Asking the Court to Interpret the Collective Bargaining Agreement To Determine Local 4-786's Grievance on the Merits**

In its Answering Brief, Local 4-786 repeatedly claims that DuPont has improperly asked the Court to decide the merits of the grievance. *See* Local 4-786's Answering Brief at 2, 5, 6, 8-11. That is incorrect. DuPont has not asked the Court to interpret the CBA to determine the merits of the grievance.[2] Rather, consistent with long-standing Supreme Court precedent, DuPont merely asserts that the Court must interpret the relevant contract, as a whole, to determine whether the parties agreed to submit to arbitration the benefit eligibility issues implicated by Local 4-786's grievance. *See* DuPont's Opposition Brief at 4.

It is axiomatic that the Court must determine whether, as a contractual matter, the parties agreed to submit this dispute to arbitration. *AT&T Techs, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 648-49 (1986). The Court "cannot avoid that duty because it requires [the Court] to interpret a provision of a bargaining agreement." *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 209 (1991). Local 4-786 would have the Court focus solely on the CBA's arbitration provisions. The Court must, however, review and interpret *all* relevant portions of the parties' CBA to faithfully perform its obligation to determine whether the parties agreed to submit this dispute to arbitration. *Maryland Cas. Co. v. Realty Advisory Bd.,* 107 F.3d 979, 983 (2d Cir. 1997) (all relevant contract language must be considered in determining whether parties agreed to submit dispute to arbitration); *Leadertex v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 27 (2d Cir. 1995) (in deciding questions of arbitrability, courts must interpret collective

---

[2]     Ironically, Local 4-786 argues that it is improper for the Court to assess the merits of its grievance, and then proceeds to argue for several pages why the grievance should be sustained on the merits based on its proffered interpretation of the CBA. *See* Local 4-786 Answering Brief at 6-8. While Local 4-786's substantive interpretation of the CBA is demonstrably wrong, that is entirely beside the point for purposes of the issues before the Court.

bargaining agreements to 'faithfully reflect[ ] the reasonable expectations of those who commit to be bound by [them]").[3] As DuPont demonstrated in its prior submissions, application of that analysis confirms that the parties did not intend to submit to arbitration matters concerning benefit eligibility under the terms of DuPont's benefit plans. *See* DuPont's Opposition Brief at 10-14.

Local 4-786's reliance on "management rights" clause cases such as *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists,* 802 F.2d 247 (7th Cir. 1986) and *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960) is misplaced. *See* Local 4-786 Answering Brief at 9-10. DuPont does not argue, as the Union suggests, that issues of benefit eligibility are excluded from arbitration because DuPont *has the right* to take unilateral action under the terms of the Industrial Relations Practices and Procedures ("IRP&P") provision in the CBA. Rather, DuPont contends that benefit eligibility issues are excluded from arbitration because the IRP&P provision provides employees with benefits under the identified DuPont benefit plans "*subject to*" the terms of those plans, including the exclusive dispute resolution provision in each plan. *See, e.g., United Steelworkers v. Commonwealth Aluminum Corp.,* 162 F.3d 447, 451 (6th Cir. 1998) ("incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefits disputes which are within the Administrator's authority"); *Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.,* 17 F.3d

---

[3]    Local 4-786 argues that the Court must ignore the language of the CBA in determining arbitrability if there is any possibility that the Court might touch upon issues relating to the merits of the dispute. To the contrary, the Court's first obligation is to determine arbitrability, even if that means reviewing contract provisions that may also be relevant to the merits of the dispute. *Indep. Lift Truck Builders Union v. Hyster Co.,* 2 F.3d 233, 236 (7th Cir. 1993) ("If the court must, to decide the arbitrability issue, rule on the merits, so be it").

196, 198 (7th Cir. 1994) (same); *Local 4-449, Oil, Chemical & Atomic Workers v. Amoco Chem.*

*Corp.*, 589 F.2d 162, 164 (5th Cir. 1979) (same); *PDG Chemical, Inc. v. Oil, Chem. & Atomic*

*Workers Int'l Union,* 164 F. Supp. 2d 856, 864 (E.D. Tex. 2001) (same).[4]

**C.    Local 4-786's Grievance Sets Forth Disputes That Involve Benefit Eligibility Questions That Must be Determined Under the Benefit Plans' Dispute Resolution Procedures**

Local 4-786 argues that its grievance has nothing to do with a claim for benefits under the

terms of DuPont's benefit plans. Local 4-786 Answering Brief at 11. Local 4-786 further argues

that its grievance must be submitted to arbitration because the Plan Administrators of the

relevant plans have no authority to interpret the CBA, and Local 4-786 cannot bring an action on

its own behalf under the benefit plans' dispute resolution procedures. *Id.* at 14. Local 4-786's

arguments miss the mark in several respects.

As an initial matter, despite its attempt to distance itself from the language of its own

grievance, Local 4-786's grievance, on its face, raises a dispute with regard to "the *application* to

[active employees] of the changes in the Pension and Retirement Plan and Savings and

Investment Plan." Anderson Decl. Exh. S. Application of the amended terms of the Pension

Plan and Savings and Investment Plan ("SIP") requires interpretation of those plans which falls

---

[4]      Local 4-786's reliance upon *United Food & Commercial Workers Union v. Geldin Meat Co.*, 13 F.3d 1365 (9th Cir. 1994) is misplaced. In *Geldin,* there was no contract language granting employees benefits subject to the specific terms of the benefit plan at issue, and more importantly, there was no discussion of any alternate dispute resolution process contained in the relevant benefit plan covering the grievance at issue. Local 4-786's reliance on *United Food & Commercial Workers Union, 17A v. Fresh Mark*, 81 Fed. Appx. 23, (6th Cir. 2003) and *Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir. 1998) is likewise unavailing. Neither of those cases involved a grievance contesting the application of the terms of the amended benefit plans, and neither sought a ruling that union members were entitled to benefits under the amended plans.

within the exclusive responsibility of the Plan Administrators for each plan. *See, e.g.,* Pension Plan SPD at 29; SIP SPD at 26.

Moreover, the suggestion that Local 4-786's grievance does not involve benefit eligibility issues under the terms of the benefit plans ignores reality. For instance, Local 4-786's grievance objects to the withdrawal of benefits under the Pension Plan from newly hired employees, and application of the plan amendments granting newly hired employees enhanced SIP benefits not available to current employees. Local 4-786's ultimate objective in seeking to compel arbitration of its grievance is obviously to secure a ruling from an arbitrator that newly hired employees *are eligible* to receive benefits under the terms of the Pension Plan, and that existing employees *are eligible* for enhanced benefits under the SIP, as amended. Such a ruling, if issued, would implicate benefit eligibility decisions that have already been made and would effectively supplant the plan administrator as the ERISA fiduciary exclusively responsible for the interpretation and application of the terms of the plans.[5] Local 4-786 cannot point to language in the DuPont CBA, or any other evidence, that would suggest that the parties ever intended to substitute a labor arbitrator for the plan administrators.

---

[5] As explained in DuPont's prior submissions, the absence of any reference in the plan documents to the arbitration provision of the parties' CBA confirms the parties' intent to exclude this dispute from arbitration. Local 4-786 concedes that ERISA plans must contain an internal claims review and plan interpretation procedure meeting the requirements of 29 C.F.R. § 2560.503-1. The only way that a labor arbitrator here would be permitted to supplant these claims procedure rules is if the conditions described in 29 C.F.R. § 2560.503-1(b)(6) were satisfied. Those requirements have not been satisfied here, and as a result arbitration should not be required. DuPont does not argue (as Local 4-786 seems to believe) that the exception in Section 2560.502(1)(b)(6) applies because it is undisputed that that neither the CBA, nor the benefit plans at issue, contain the provisions required by (b)(6). Subsection (b)(6) of the regulations is an exception to the general rules contained elsewhere in the regulations, which permits arbitration in lieu of Section 503 procedures. Because the exception does not apply here, arbitration cannot be substituted for the required Section 503 procedures.

Additionally, as DuPont explained in its Opposition, submission of benefit eligibility disputes to arbitration would result in untenable results and could subject DuPont to significant liability under ERISA. DuPont's Opposition Brief at 22-24. The terms of the benefit plans make clear that DuPont has created unitary plans pursuant to which the same level of benefits (or single plan of benefits) is provided to its employees regardless of their union affiliation. While DuPont was not obligated to create its plans in this fashion, by doing so, it provided a single methodology for reviewing and interpreting the plans for every covered participant. Permitting an arbitrator to supplant the Plan Administrators in each plan would disrupt the plans' unitary structure in two ways: First, as explained below, it would impermissibly supplant the Plan Administrators' authority under the plans as sole source of interpretive decisions. Second, it would effectively eliminate the possibility of the "full and fair review" of benefit disputes that is mandated by ERISA Section 503 for ERISA-covered plans because (1) courts will grant deference to arbitrator's decisions under legal standards that are different than those applied under ERISA and (2) because the plans do not provide for arbitration. *See generally Rush Prudential HMO Inc. v. Moran*, 536 U.S. 355, 383-83, 395-96 (2002) (recognizing that granting an arbitrator free-ranging power to interpret benefit plan documents and issue binding decisions would not provide the "full and fair review" by the plan fiduciary required under ERISA").[6]

---

[6]    Local 4-786 wrongly suggests that DuPont is arguing that ERISA preemption. Local 4-786 Answering Brief at 13, n.6. This case does not involve ERISA preemption, which applies to the treatment of claims brought under state law. *See, e.g., Aetna Healthcare v. Davila*, 542 U.S. 200 (2004). It is more accurate to say that this case requires the Court to harmonize two federal law schemes by accommodating the objectives of both. *See, e.g., Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (harmonizing the Labor Management Relations Act, 29 U.S.C. § 185 with ERISA).

Permitting an arbitrator to usurp the plan administrators' role has the significant additional potential to create litigation initiated by plan participants who are not covered by, and who may feel disadvantaged by, an arbitrator's ruling. For example, if an arbitrator were to rule that all existing employees represented by Local 4-786 are eligible for the enhanced benefits offered under the amended SIP, DuPont employees who are not covered by the arbitrator's award -- and who are not eligible for the enhanced SIP benefits -- could file suit against DuPont, as Plan Administrator, under ERISA regarding DuPont's provision of different benefits to different participant pursuant to the same plan language. DuPont could face the type of claim asserted in *Wagener v. SBC Pension Benefit Plan-Non Bargained Program*, 407 F.3d 395 (D.C. Cir. 2005).

In *Wagener*, the plaintiffs were participants in a pension plan who brought suit under ERISA Section 502 alleged that the plan's benefit plan committee, a fiduciary charged with administration of the plan, had misinterpreted certain terms of the plan regarding base pay calculations which resulted in their receipt of reduced pension benefits. *Id.* at 399-400. In support of their claims, plaintiffs alleged that they were being discriminated against vis-à-vis similarly situated plan participants with regard to the interpretation and application of identical pension plan provisions. *Id.* at 397. The D.C. Circuit overturned the district court's dismissal of the plaintiffs' claims, finding that the plaintiffs had stated a cognizable claim under ERISA Section 502 because the deference "owed to decisions of Plan officials does not extend to decisions that discriminate among Plan participants in violation of the terms of the Plan." *Id.* The D.C. Circuit also vacated the district court's denial of class certification, leaving the plaintiffs free to pursue class-wide relief against the plan fiduciaries. *Id. See also Fuller v. CBT*

*Corp.*, 905 F.2d 1055, 1058-60 (7th Cir. 1990) (evidence of disparate treatment in benefit

decisions precluded summary judgment for an ERISA plan's trustees).

Sending Local 4-786's grievance to arbitration could create the same potential ERISA

liability for DuPont that was at issue in *Wagener*. More specifically, if an arbitrator were to

issue a ruling granting enhanced SIP benefits to existing employees represented by Local 4-786,

DuPont would be at risk of being sued for acting in a manner that could be challenged as

arbitrary and capricious, by interpreting the same eligibility terms under the SIP differently for

different groups despite the fact that the plan is written and intended to be applied uniformly, and

thereby engaging in a fiduciary breach of the type at issue in *Wagener*. *See Firestone Tire &

Rubber Co. v. Brusch*, 489 U.S. 101 (1989); *see also Moench v. Robertson*, 62 F.3d 553, 556 (3d

Cir. 1995) (inconsistent interpretation of plan terms forms the basis for a finding that a fiduciary

has breached its ERISA duties by acting in an arbitrary and capricious manner); *Kinstler v. First

Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249-50 (2d Cir. 1999) (a fiduciary acts in an

arbitrary and capricious manner and thereby breaches his fiduciary duties when interpreting a

plan in a manner inconsistent with plan language).

A decision that supplants the plan administrator by effectively substituting an arbitrator in

its place undermines the statutory scheme for resolving plan eligibility and plan interpretation

disputes that is required under ERISA. Pursuant to ERISA, every plan must name a fiduciary --

here the plan administrator -- who has the final authority to control and administer the plan.

ERISA 402(a)(1), 29 U.S.C. § 1102(a)(1). ERISA's governing regulations make clear that a

plan administrator's authority over plan administration -- which includes benefit eligibility

determinations -- may only be transferred or delegated to another person or entity if the plan

specifically so provides. 29 U.S.C. § 1102(b)(2); 29 C.F.R. § 2509.75-8, Q&A FR-13. Because

the plans at issue here contain no language permitting the transfer of authority to an arbitrator, any arbitrator who would decide Local 4-786's grievance, and possibly grant benefits under the plans, would be usurping the plan fiduciary's authority, contrary to the express terms of the plans and requirements of ERISA. *See* ERISA § 402(b)(2), 29 U.S.C. § 1102(b)(2); 29 C.F.R. § 2509.75-8, Q&A FR-13.[7]

Finally, Local 4-786 is wrong in arguing that the plan administrators of each plan do not have the authority under ERISA to review the terms of the CBA in making eligibility decisions. As DuPont explained in its prior submissions, plan administrators have authority, under ERISA, to consider external instruments, including the terms of collective bargaining agreements, in the course of interpreting the relevant terms of the plans to carry out their fiduciary duties. *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996) (class of documents to which plan fiduciaries must abide is not limited solely to the plan instrument, but would include any "formal or legal documents under which a plan is set up or managed"); *Sprague v. Cent. States Pension Fund*, 269 F.3d 811, 815-16 (7th Cir. 2001). Thus, use of the dispute resolution procedures within the plans does not preclude the ability of plan participants to challenge what they believe to be illegal or improper plan provisions. Nor would it preclude the plan

---

[7]    In an attempt to dispute the fact that an arbitrator would be interpreting plan provisions and would therefore be acting as an ERISA fiduciary, Local 4-786 offers a selective reading of the DOL Opinion Letter (81-50A) that DuPont cited in its papers. As the opinion letter notes, DOL assumed that "the outcome of the arbitration would have no immediate effect on administration of the plan or rights of Plan participants." *Id.* at 3. Here, by contrast, the outcome of the arbitration would have a significant effect upon plan administration because it could cause the plan administrators of the unitary plans to treat employees differently. Moreover, Local 4-786 utterly ignores the section of the letter that discusses the fiduciary obligations of persons who are charged with deciding benefit claims. That section of the letter notes that "section 404(a)(1)(D) of ERISA requires plan fiduciaries to act in accordance with the documents and instruments governing the plans," insofar as they are consistent with ERISA.

administrators from considering the CBA in deciding upon such a challenge. *See, e.g., Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130 (3d Cir. 1999) (class action alleging employer's termination of post-retirement benefits violates ERISA and LMRA § 301).[8] Thus, Local 4-786's members have an avenue to pursue their benefit claims, and have been specifically invited to do so. *See* Anderson Decl. Exh. T (noting that employees may apply for benefits under the terms of the plans and have the right to appeal any denial of benefits under the procedures set forth in the plans).

---

[8]    Local 4-786 argues that its grievance must be submitted to arbitration because Local 4-786 lacks standing to bring a claim under the dispute resolution procedures contained in the benefit plans. Although Local 4-786 cannot bring a claim under the dispute resolution procedures in the plans on its own behalf, that is not unique and, of itself, does not render its grievance arbitrable. *See, generally, Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000) (finding that arbitration clause in collective bargaining agreement unenforceable, thus allowing union member to pursue individual statutory claims); *United Food & Commercial Workers Union v. Albertson's Inc.,* 207 F.3d 1193, 1200 (10th Cir. 2000) (unions lack standing to sue under the Fair Labor Standards Act, which limits suits to employees). Moreover, Local 4-786's argument that it has no recourse to address its dispute if its grievance is not submitted to arbitration is inaccurate. Local 4-786 has the right to file suit pursuit to Section 301 of the LMRA to pursue its argument that the plan amendments themselves violate the DuPont CBA. DuPont has made clear that it would not, and could not, assert a defense of failure to exhaust administrative remedies if such a suit were brought. *See* DuPont's Opposition at 21. The statute of limitations on that claim has not yet run out.

## CONCLUSION

For the reasons stated above DuPont respectfully requests that its Motion for Summary Judgment be granted, and that this Court enter an order finding that Local 4-786's grievance is not arbitrable.

POTTER ANDERSON & CORROON LLP

By _Sarah E. DiLuzio_

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

Thomas P. Gies
Kris D. Meade
Jennifer G. Knight
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

*Attorneys for Defendant E. I. du Pont de Nemours and Company*

Dated: September 4, 2007
816660

13

## CERTIFICATE OF SERVICE

I hereby certify this 4th day of September, 2007, that the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record that the document is available for viewing and downloading from CM/ECF:

> Susan E. Kaufman
> HEIMAN, GOUGE & KAUFMAN, LLP
> 800 King Street
> Suite 303
> Wilmington, DE 19801

> Sarah E. DiLuzio

> Kathleen Furey McDonough (#4085)
> Potter Anderson & Corroon LLP
> 1313 North Market Street
> Hercules Plaza, 6th Floor
> Wilmington, DE 19801
> (302) 984-6000
> sdiluzio@potteranderson.com

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS, INTERNATIONAL UNION, AFL-CIO-CLC, and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS LOCAL 4-786, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 07-126 (JJF) |
| v. | ) ) ) | |
| E. I. DU PONT DE NEMOURS AND COMPANY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT E. I. DUPONT DE NEMOURS AND COMPANY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Thomas P. Gies
Kris D. Meade
Glenn D. Grant
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

Dated: September 4, 2007

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant E. I. du Pont de Nemours and Company*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

     A.    Local 4-786's Concession that a Substantial Portion of its Grievance Is Not Arbitrable Does Not Mean that the Remainder Is Arbitrable ...........................2

     B.    Defendants Are Not Asking the Court to Interpret the Collective Bargaining Agreements To Determine Local 4-786's Grievance on the Merits. ..............................................................................................4

     C.    Local 4-786's Grievance Set Forth Disputes That Involve Benefit Eligibility Questions That Must be Determined Under the Benefit Plans' Dispute Resolution Procedures ..............................................................6

CONCLUSION ...................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Aetna Healthcare v. Davila*, 542 U.S. 200 (2004)..........................................................................8

*AT&T Techs, Inc. v. Communication Workers of Am.*,
    475 U.S. 643 (1986)....................................................................................................................4

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists*,
    802 F.2d 247 (7th Cir. 1986) ....................................................................................................5

*Faircloth v. Lundy Packing Co.*,
    91 F.3d 648 (4th Cir. 1996) ....................................................................................................11

*Firestone Tire & Rubber Co. v. Brusch*,
    489 U.S. 101 (1989)................................................................................................................10

*Fuller v. CBT Corp.*,
    905 F.2d 1055 (7th Cir. 1990) ............................................................................................9, 10

*Indep. Lift Truck Builders Union v. Hyster Co.*,
    2 F.3d 233 (7th Cir. 1993) ........................................................................................................5

*Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.*,
    17 F.3d 196 (7th Cir. 1994) ..................................................................................................5, 6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v.
Skinner Engine Co.*,
    188 F.3d 130 (3d Cir. 1999)...................................................................................................12

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982)....................................................................................................................8

*Kinstler v. First Reliance Standard Life Ins. Co.*,
    181 F.3d 243 (2d Cir. 1999)...................................................................................................10

*Leadertex v. Morganton Dyeing & Finishing Corp.*,
    67 F.3d 20 (2d Cir. 1995)..........................................................................................................4

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991)..................................................................................................................4

*Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*,
    837 F.2d 782 (7th Cir. 1998) ....................................................................................................7

*Local 4-449, Oil, Chemical & Atomic Workers v. Amoco Chem. Corp.*,
    589 F.2d 162 (5th Cir. 1979) ....................................................................................................6

*Maryland Casualty Co. v. Realty Advisory Bd.*,
  107 F.3d 979 (2d Cir. 1997)..................................................................................... 4

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995)....................................................................................... 10

*PDG Chemical, Inc. v. Oil, Chem. & Atomic Workers Int'l Union*,
  164 F. Supp. 2d 856 (E.D. Tex. 2001).................................................................... 6

*Rogers v. New York Univ.*,
  220 F.3d 73 (2d Cir. 2000)....................................................................................... 12

*Rush Prudential HMO Inc. v. Moran*,
  536 U.S. 355 (2002)................................................................................................. 8

*Sprague v. Cent. States Pension Fund*,
  269 F.3d 811 (7th Cir. 2001) ................................................................................... 11

*United Food & Commercial Workers Union v. Albertson's Inc.*,
  207 F.3d 1193 (10th Cir. 2000) ............................................................................... 14

*United Food & Commercial Workers Union v. Geldin Meat Co.*,
  13 F.2d 1365 (9th Cir. 1994) ................................................................................... 6

*United Food & Commercial Workers Union, 17A v. Fresh Mark*,
  81 Fed. Appx. 23 (6th Cir. 2003).............................................................................. 7

*United Steelworkers v. Commonwealth Aluminum Corp.*,
  162 F.3d 447 (6th Cir. 1998) ................................................................................... 5

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960).................................................................................................. 5

*Wagener v. SBC Pension Benefit Plan-Non Bargained Program*,
  407 F.3d 395 (D.C. Cir. 2005)............................................................................. 9, 10

**Statutes**

29 U.S.C. § 1001.......................................................................................................... 1

29 U.S.C. § 1102(a)(1)................................................................................................. 10

29 U.S.C. § 1102(b)(2) ................................................................................................ 10

**Regulations**

29 C.F.R. § 2509.75-8.............................................................................................. 10, 11

## INTRODUCTION

After almost six months of litigation, Plaintiff Local 4-786 has finally conceded that it has no basis to seek arbitration of the disputes set forth in its grievance relating to DuPont's Medical Care Assistance Plan ("MEDCAP") and Dental Assistance Plan ("Dental Plan"), because neither plan is identified in its collective bargaining agreement ("CBA") with DuPont. *See* Local 4-786 Answering Brief at 2, n.1. The remaining disputes set forth in Local 4-786's grievance are likewise not arbitrable. Local 4-786 claims that its grievance has nothing to do with benefit eligibility under the terms of DuPont's amended benefit plans. Local 4-786 is wrong. On its face, Local 4-786's grievance raises disputes pertaining to the "application" of the amended terms of DuPont's benefit plans. Local 4-786 does not, because it cannot, dispute that "application" of DuPont's benefit plans involves benefit eligibility determinations within the exclusive province of the plan administrators of each benefit plan. This is critical because Local 4-786's ultimate objective in seeking arbitration of its grievance is obviously to secure a ruling from an arbitrator that its members are eligible for benefits under the benefit plans at issue.

As demonstrated in DuPont's prior submissions, questions concerning benefit eligibility determinations, such as those implicated by Local 4-786's grievance, are with the exclusive province of the Plan Administrator for each plan. As such, they must be resolved in accordance with the dispute resolution procedures set forth in each plan and/or under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

In addition, submission of Local 4-786's grievance to arbitration here would be inconsistent with ERISA's statutory scheme, and would result in untenable results by increasing the likelihood of additional litigation and by subjecting DuPont to substantial potential liability under ERISA. Finally, this is not a dispute without a remedy if arbitration is not compelled, as

1

Local 4-786 suggests. Employees have the ability to challenge benefit eligibility determinations and the validity of plan amendments under the dispute resolution procedures set forth in the plans, and Local 4-786 may pursue appropriate remedies under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Arbitration is simply the wrong forum to adjudicate the benefit eligibility issues raised in Local 4-786's grievance.

## ARGUMENT

### A.    Local 4-786's Concession that a Substantial Portion of its Grievance Is Not Arbitrable Does Not Mean that the Remainder Is Arbitrable

Local 4-786 now concedes that it has no basis upon which to seek arbitration of a substantial portion of its grievance. That should have been plain long ago. On February 27, 2007, DuPont wrote to the Associate General Counsel of the United Steelworkers of America who was handling Local 4-786's grievance and specifically informed him that Local 4-786's grievance was not arbitrable with respect to certain plans because those plans were not referenced in the parties' collective bargaining agreements. More specifically, Local 4-786's counsel was advised that:

> [T]he grievances appear to involve matters that are beyond the scope of the arbitration provisions set forth in the collective bargaining agreements. By its terms, the Edge Moor collective bargaining agreement only requires arbitration of disputes "as to the interpretation of, or any alleged violation, of any provision of this Agreement. See Edge Moor Agreement, Article VII. Neither DuPont's Medical Care Assistance Plan (Medcap) nor its Dental Assistance Plan is referenced in the collective bargaining agreement. Therefore, the Edge Moor grievance is not arbitrable to the extent it that involves retiree benefits provided under either Medcap or the Dental Assistance Plan.

2

*See* Exhibit V to Declaration of Mary Jo Anderson.[1] Local 4-786 nonetheless sought to compel arbitration of its grievance, including the disputes involving benefit plans outside the DuPont CBA. Local 4-786 now, after months of litigation, concedes that it had no basis for seeking to compel arbitration of disputes involving benefit plans that are not referenced in the CBA, and has thus decided to withdraw its demands for arbitration with respect to MEDCAP and the Dental Plan. *See* Local 4-786 Answering Brief at 2, n.1; 11, n.5.

In an attempt to divert the Court's attention from its belated concession, Local 4-786 argues that the exclusion from arbitration of disputes regarding benefit plans that are not listed in the parties' CBA must mean that the parties "intended that actions affecting the plans that *are* 'delineat[ed] and 'specifically listed' in the CBA *would* be subject to arbitration." *See* Local 4-786's Answering Brief at 11 n.7. That argument is specious. Matters involving benefit plans that are not referenced in the CBA are excluded from arbitration simply because the parties agreed only to arbitrate disputes involving the interpretation or violation of the CBA itself. *See* DuPont CBA, Art. VII. The remaining disputes set forth in Local 4-786's grievance are excluded from arbitration for an entirely different reason: the parties agreed that benefit eligibility disputes, such as those inevitably raised by Local 4-786's grievance, must be decided under the dispute resolution procedures contained in the relevant benefit plans.

---

[1]   Ms. Anderson's Declaration, and the accompanying exhibits, were filed with the Court in conjunction with DuPont's Motion for Summary Judgment. DuPont will address Local 4-786's Motion to Strike Portion of Declaration of Mary Jo Anderson in a separate submission.

**B.    DuPont Is Not Asking the Court to Interpret the Collective Bargaining Agreement To Determine Local 4-786's Grievance on the Merits**

In its Answering Brief, Local 4-786 repeatedly claims that DuPont has improperly asked the Court to decide the merits of the grievance. *See* Local 4-786's Answering Brief at 2, 5, 6, 8-11. That is incorrect. DuPont has not asked the Court to interpret the CBA to determine the merits of the grievance.[2] Rather, consistent with long-standing Supreme Court precedent, DuPont merely asserts that the Court must interpret the relevant contract, as a whole, to determine whether the parties agreed to submit to arbitration the benefit eligibility issues implicated by Local 4-786's grievance. *See* DuPont's Opposition Brief at 4.

It is axiomatic that the Court must determine whether, as a contractual matter, the parties agreed to submit this dispute to arbitration. *AT&T Techs, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 648-49 (1986). The Court "cannot avoid that duty because it requires [the Court] to interpret a provision of a bargaining agreement." *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 209 (1991). Local 4-786 would have the Court focus solely on the CBA's arbitration provisions. The Court must, however, review and interpret *all* relevant portions of the parties' CBA to faithfully perform its obligation to determine whether the parties agreed to submit this dispute to arbitration. *Maryland Cas. Co. v. Realty Advisory Bd.,* 107 F.3d 979, 983 (2d Cir. 1997) (all relevant contract language must be considered in determining whether parties agreed to submit dispute to arbitration); *Leadertex v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 27 (2d Cir. 1995) (in deciding questions of arbitrability, courts must interpret collective

---

[2]    Ironically, Local 4-786 argues that it is improper for the Court to assess the merits of its grievance, and then proceeds to argue for several pages why the grievance should be sustained on the merits based on its proffered interpretation of the CBA. *See* Local 4-786 Answering Brief at 6-8. While Local 4-786's substantive interpretation of the CBA is demonstrably wrong, that is entirely beside the point for purposes of the issues before the Court.

bargaining agreements to 'faithfully reflect[ ] the reasonable expectations of those who commit to be bound by [them]").[3] As DuPont demonstrated in its prior submissions, application of that analysis confirms that the parties did not intend to submit to arbitration matters concerning benefit eligibility under the terms of DuPont's benefit plans. *See* DuPont's Opposition Brief at 10-14.

Local 4-786's reliance on "management rights" clause cases such as *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists,* 802 F.2d 247 (7th Cir. 1986) and *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960) is misplaced. *See* Local 4-786 Answering Brief at 9-10. DuPont does not argue, as the Union suggests, that issues of benefit eligibility are excluded from arbitration because DuPont *has the right* to take unilateral action under the terms of the Industrial Relations Practices and Procedures ("IRP&P") provision in the CBA. Rather, DuPont contends that benefit eligibility issues are excluded from arbitration because the IRP&P provision provides employees with benefits under the identified DuPont benefit plans *"subject to"* the terms of those plans, including the exclusive dispute resolution provision in each plan. *See, e.g., United Steelworkers v. Commonwealth Aluminum Corp.,* 162 F.3d 447, 451 (6th Cir. 1998) ("incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefits disputes which are within the Administrator's authority"); *Int'l Ass'n of Machinists v. Waukeshau Engine Div., Dresser Indus., Inc.,* 17 F.3d

---

[3]    Local 4-786 argues that the Court must ignore the language of the CBA in determining arbitrability if there is any possibility that the Court might touch upon issues relating to the merits of the dispute. To the contrary, the Court's first obligation is to determine arbitrability, even if that means reviewing contract provisions that may also be relevant to the merits of the dispute. *Indep. Lift Truck Builders Union v. Hyster Co.,* 2 F.3d 233, 236 (7th Cir. 1993) ("If the court must, to decide the arbitrability issue, rule on the merits, so be it").

196, 198 (7th Cir. 1994) (same); *Local 4-449, Oil, Chemical & Atomic Workers v. Amoco Chem. Corp.*, 589 F.2d 162, 164 (5th Cir. 1979) (same); *PDG Chemical, Inc. v. Oil, Chem. & Atomic Workers Int'l Union,* 164 F. Supp. 2d 856, 864 (E.D. Tex. 2001) (same).[4]

**C.    Local 4-786's Grievance Sets Forth Disputes That Involve Benefit Eligibility Questions That Must be Determined Under the Benefit Plans' Dispute Resolution Procedures**

Local 4-786 argues that its grievance has nothing to do with a claim for benefits under the terms of DuPont's benefit plans. Local 4-786 Answering Brief at 11. Local 4-786 further argues that its grievance must be submitted to arbitration because the Plan Administrators of the relevant plans have no authority to interpret the CBA, and Local 4-786 cannot bring an action on its own behalf under the benefit plans' dispute resolution procedures. *Id.* at 14. Local 4-786's arguments miss the mark in several respects.

As an initial matter, despite its attempt to distance itself from the language of its own grievance, Local 4-786's grievance, on its face, raises a dispute with regard to "the *application* to [active employees] of the changes in the Pension and Retirement Plan and Savings and Investment Plan." Anderson Decl. Exh. S. Application of the amended terms of the Pension Plan and Savings and Investment Plan ("SIP") requires interpretation of those plans which falls

---

[4]    Local 4-786's reliance upon *United Food & Commercial Workers Union v. Geldin Meat Co.*, 13 F.3d 1365 (9th Cir. 1994) is misplaced. In *Geldin,* there was no contract language granting employees benefits subject to the specific terms of the benefit plan at issue, and more importantly, there was no discussion of any alternate dispute resolution process contained in the relevant benefit plan covering the grievance at issue. Local 4-786's reliance on *United Food & Commercial Workers Union, 17A v. Fresh Mark*, 81 Fed. Appx. 23, (6th Cir. 2003) and *Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir. 1998) is likewise unavailing. Neither of those cases involved a grievance contesting the application of the terms of the amended benefit plans, and neither sought a ruling that union members were entitled to benefits under the amended plans.

within the exclusive responsibility of the Plan Administrators for each plan. *See, e.g.,* Pension Plan SPD at 29; SIP SPD at 26.

Moreover, the suggestion that Local 4-786's grievance does not involve benefit eligibility issues under the terms of the benefit plans ignores reality. For instance, Local 4-786's grievance objects to the withdrawal of benefits under the Pension Plan from newly hired employees, and application of the plan amendments granting newly hired employees enhanced SIP benefits not available to current employees. Local 4-786's ultimate objective in seeking to compel arbitration of its grievance is obviously to secure a ruling from an arbitrator that newly hired employees *are eligible* to receive benefits under the terms of the Pension Plan, and that existing employees *are eligible* for enhanced benefits under the SIP, as amended. Such a ruling, if issued, would implicate benefit eligibility decisions that have already been made and would effectively supplant the plan administrator as the ERISA fiduciary exclusively responsible for the interpretation and application of the terms of the plans.[5] Local 4-786 cannot point to language in the DuPont CBA, or any other evidence, that would suggest that the parties ever intended to substitute a labor arbitrator for the plan administrators.

---

[5]     As explained in DuPont's prior submissions, the absence of any reference in the plan documents to the arbitration provision of the parties' CBA confirms the parties' intent to exclude this dispute from arbitration. Local 4-786 concedes that ERISA plans must contain an internal claims review and plan interpretation procedure meeting the requirements of 29 C.F.R. § 2560.503-1. The only way that a labor arbitrator here would be permitted to supplant these claims procedure rules is if the conditions described in 29 C.F.R. § 2560.503-1(b)(6) were satisfied. Those requirements have not been satisfied here, and as a result arbitration should not be required. DuPont does not argue (as Local 4-786 seems to believe) that the exception in Section 2560.502(1)(b)(6) applies because it is undisputed that that neither the CBA, nor the benefit plans at issue, contain the provisions required by (b)(6). Subsection (b)(6) of the regulations is an exception to the general rules contained elsewhere in the regulations, which permits arbitration in lieu of Section 503 procedures. Because the exception does not apply here, arbitration cannot be substituted for the required Section 503 procedures.

Additionally, as DuPont explained in its Opposition, submission of benefit eligibility disputes to arbitration would result in untenable results and could subject DuPont to significant liability under ERISA. DuPont's Opposition Brief at 22-24. The terms of the benefit plans make clear that DuPont has created unitary plans pursuant to which the same level of benefits (or single plan of benefits) is provided to its employees regardless of their union affiliation. While DuPont was not obligated to create its plans in this fashion, by doing so, it provided a single methodology for reviewing and interpreting the plans for every covered participant. Permitting an arbitrator to supplant the Plan Administrators in each plan would disrupt the plans' unitary structure in two ways: First, as explained below, it would impermissibly supplant the Plan Administrators' authority under the plans as sole source of interpretive decisions. Second, it would effectively eliminate the possibility of the "full and fair review" of benefit disputes that is mandated by ERISA Section 503 for ERISA-covered plans because (1) courts will grant deference to arbitrator's decisions under legal standards that are different than those applied under ERISA and (2) because the plans do not provide for arbitration. *See generally Rush Prudential HMO Inc. v. Moran*, 536 U.S. 355, 383-83, 395-96 (2002) (recognizing that granting an arbitrator free-ranging power to interpret benefit plan documents and issue binding decisions would not provide the "full and fair review" by the plan fiduciary required under ERISA").[6]

---

[6]    Local 4-786 wrongly suggests that DuPont is arguing that ERISA preemption. Local 4-786 Answering Brief at 13, n.6. This case does not involve ERISA preemption, which applies to the treatment of claims brought under state law. *See, e.g., Aetna Healthcare v. Davila*, 542 U.S. 200 (2004). It is more accurate to say that this case requires the Court to harmonize two federal law schemes by accommodating the objectives of both. *See, e.g., Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (harmonizing the Labor Management Relations Act, 29 U.S.C. § 185 with ERISA).

Permitting an arbitrator to usurp the plan administrators' role has the significant additional potential to create litigation initiated by plan participants who are not covered by, and who may feel disadvantaged by, an arbitrator's ruling. For example, if an arbitrator were to rule that all existing employees represented by Local 4-786 are eligible for the enhanced benefits offered under the amended SIP, DuPont employees who are not covered by the arbitrator's award -- and who are not eligible for the enhanced SIP benefits -- could file suit against DuPont, as Plan Administrator, under ERISA regarding DuPont's provision of different benefits to different participant pursuant to the same plan language. DuPont could face the type of claim asserted in *Wagener v. SBC Pension Benefit Plan-Non Bargained Program*, 407 F.3d 395 (D.C. Cir. 2005).

In *Wagener*, the plaintiffs were participants in a pension plan who brought suit under ERISA Section 502 alleged that the plan's benefit plan committee, a fiduciary charged with administration of the plan, had misinterpreted certain terms of the plan regarding base pay calculations which resulted in their receipt of reduced pension benefits. *Id.* at 399-400. In support of their claims, plaintiffs alleged that they were being discriminated against vis-à-vis similarly situated plan participants with regard to the interpretation and application of identical pension plan provisions. *Id.* at 397. The D.C. Circuit overturned the district court's dismissal of the plaintiffs' claims, finding that the plaintiffs had stated a cognizable claim under ERISA Section 502 because the deference "owed to decisions of Plan officials does not extend to decisions that discriminate among Plan participants in violation of the terms of the Plan." *Id.* The D.C. Circuit also vacated the district court's denial of class certification, leaving the plaintiffs free to pursue class-wide relief against the plan fiduciaries. *Id. See also Fuller v. CBT*

*Corp.*, 905 F.2d 1055, 1058-60 (7th Cir. 1990) (evidence of disparate treatment in benefit decisions precluded summary judgment for an ERISA plan's trustees).

Sending Local 4-786's grievance to arbitration could create the same potential ERISA liability for DuPont that was at issue in *Wagener*. More specifically, if an arbitrator were to issue a ruling granting enhanced SIP benefits to existing employees represented by Local 4-786, DuPont would be at risk of being sued for acting in a manner that could be challenged as arbitrary and capricious, by interpreting the same eligibility terms under the SIP differently for different groups despite the fact that the plan is written and intended to be applied uniformly, and thereby engaging in a fiduciary breach of the type at issue in *Wagener*. *See Firestone Tire & Rubber Co. v. Brusch*, 489 U.S. 101 (1989); *see also Moench v. Robertson*, 62 F.3d 553, 556 (3d Cir. 1995) (inconsistent interpretation of plan terms forms the basis for a finding that a fiduciary has breached its ERISA duties by acting in an arbitrary and capricious manner); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249-50 (2d Cir. 1999) (a fiduciary acts in an arbitrary and capricious manner and thereby breaches his fiduciary duties when interpreting a plan in a manner inconsistent with plan language).

A decision that supplants the plan administrator by effectively substituting an arbitrator in its place undermines the statutory scheme for resolving plan eligibility and plan interpretation disputes that is required under ERISA. Pursuant to ERISA, every plan must name a fiduciary -- here the plan administrator -- who has the final authority to control and administer the plan. ERISA 402(a)(1), 29 U.S.C. § 1102(a)(1). ERISA's governing regulations make clear that a plan administrator's authority over plan administration -- which includes benefit eligibility determinations -- may only be transferred or delegated to another person or entity if the plan specifically so provides. 29 U.S.C. § 1102(b)(2); 29 C.F.R. § 2509.75-8, Q&A FR-13. Because

the plans at issue here contain no language permitting the transfer of authority to an arbitrator, any arbitrator who would decide Local 4-786's grievance, and possibly grant benefits under the plans, would be usurping the plan fiduciary's authority, contrary to the express terms of the plans and requirements of ERISA. *See* ERISA § 402(b)(2), 29 U.S.C. § 1102(b)(2); 29 C.F.R. § 2509.75-8, Q&A FR-13.[7]

Finally, Local 4-786 is wrong in arguing that the plan administrators of each plan do not have the authority under ERISA to review the terms of the CBA in making eligibility decisions. As DuPont explained in its prior submissions, plan administrators have authority, under ERISA, to consider external instruments, including the terms of collective bargaining agreements, in the course of interpreting the relevant terms of the plans to carry out their fiduciary duties. *See Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996) (class of documents to which plan fiduciaries must abide is not limited solely to the plan instrument, but would include any "formal or legal documents under which a plan is set up or managed"); *Sprague v. Cent. States Pension Fund*, 269 F.3d 811, 815-16 (7th Cir. 2001). Thus, use of the dispute resolution procedures within the plans does not preclude the ability of plan participants to challenge what they believe to be illegal or improper plan provisions. Nor would it preclude the plan

---

[7]     In an attempt to dispute the fact that an arbitrator would be interpreting plan provisions and would therefore be acting as an ERISA fiduciary, Local 4-786 offers a selective reading of the DOL Opinion Letter (81-50A) that DuPont cited in its papers. As the opinion letter notes, DOL assumed that "the outcome of the arbitration would have no immediate effect on administration of the plan or rights of Plan participants." *Id.* at 3. Here, by contrast, the outcome of the arbitration would have a significant effect upon plan administration because it could cause the plan administrators of the unitary plans to treat employees differently. Moreover, Local 4-786 utterly ignores the section of the letter that discusses the fiduciary obligations of persons who are charged with deciding benefit claims. That section of the letter notes that "section 404(a)(1)(D) of ERISA requires plan fiduciaries to act in accordance with the documents and instruments governing the plans," insofar as they are consistent with ERISA.

administrators from considering the CBA in deciding upon such a challenge. *See, e.g., Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130 (3d Cir. 1999) (class action alleging employer's termination of post-retirement benefits violates ERISA and LMRA § 301).[8] Thus, Local 4-786's members have an avenue to pursue their benefit claims, and have been specifically invited to do so. *See* Anderson Decl. Exh. T (noting that employees may apply for benefits under the terms of the plans and have the right to appeal any denial of benefits under the procedures set forth in the plans).

---

[8]     Local 4-786 argues that its grievance must be submitted to arbitration because Local 4-786 lacks standing to bring a claim under the dispute resolution procedures contained in the benefit plans. Although Local 4-786 cannot bring a claim under the dispute resolution procedures in the plans on its own behalf, that is not unique and, of itself, does not render its grievance arbitrable. *See, generally, Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000) (finding that arbitration clause in collective bargaining agreement unenforceable, thus allowing union member to pursue individual statutory claims); *United Food & Commercial Workers Union v. Albertson's Inc.*, 207 F.3d 1193, 1200 (10th Cir. 2000) (unions lack standing to sue under the Fair Labor Standards Act, which limits suits to employees). Moreover, Local 4-786's argument that it has no recourse to address its dispute if its grievance is not submitted to arbitration is inaccurate. Local 4-786 has the right to file suit pursuit to Section 301 of the LMRA to pursue its argument that the plan amendments themselves violate the DuPont CBA. DuPont has made clear that it would not, and could not, assert a defense of failure to exhaust administrative remedies if such a suit were brought. *See* DuPont's Opposition at 21. The statute of limitations on that claim has not yet run out.

## **CONCLUSION**

For the reasons stated above DuPont respectfully requests that its Motion for Summary Judgment be granted, and that this Court enter an order finding that Local 4-786's grievance is not arbitrable.

POTTER ANDERSON & CORROON LLP

By _Sarah E. DiLuzio_

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

Thomas P. Gies
Kris D. Meade
Jennifer G. Knight
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500

*Attorneys for Defendant E. I. du Pont de Nemours and Company*

Dated: September 4, 2007
816660

13

## CERTIFICATE OF SERVICE

I hereby certify this 4th day of September, 2007, that the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record that the document is available for viewing and downloading from CM/ECF:

> Susan E. Kaufman
> HEIMAN, GOUGE & KAUFMAN, LLP
> 800 King Street
> Suite 303
> Wilmington, DE 19801

> Kathleen Furey McDonough (#4085)
> Potter Anderson & Corroon LLP
> 1313 North Market Street
> Hercules Plaza, 6th Floor
> Wilmington, DE 19801
> (302) 984-6000
> sdiluzio@potteranderson.com

1