```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
```

UNITED STEEL, PAPER AND            :
FORESTRY, RUBBER, MANU-            :
FACTURING, ENERGY, ALLIED          :
INDUSTRIAL AND SERVICE             :
WORKERS, INTERNATIONAL UNION,      :
AFL-CIO-CLC, et al.,               :
                                   :   Civil Action No. 07-126 JJF
        Plaintiffs,                :
                                   :
    v.                             :
                                   :
E. I. DU PONT DE NEMOURS AND       :
COMPANY,                           :
                                   :
        Defendant.                 :

Jeremiah A. Collins, Esquire & Jennifer L. Hunter, Esquire of BREDHOFF & KAISER, P.L.L.C. of Washington, DC.
Susan E. Kaufman, Esquire of HEIMAN, GOUGE & KAUFMAN, L.L.P. of Wilmington, DE.

Counsel for Plaintiffs.

Thomas P. Gies, Esquire; Kris D. Meade, Esquire; Jennifer G. Knight, Esquire of CROWELL & MORING LLP of Washington, DC.
Kathleen Furey McDonough, Esquire & Sarah E. DiLuzio, Esquire of POTTER ANDERSON & CORROON LLP of Wilmington, DE.

Counsel for Defendant.

**MEMORANDUM OPINION**

April 18, 2008

**Farnan, District Judge**

  Presently before the Court are cross-motions for summary judgment in a labor dispute involving whether changes made to ERISA benefit plans are arbitrable under the terms of a collective bargaining agreement. (D.I. 16, D.I. 18.) Also before the Court are Plaintiffs' Motion to Strike Portion of Declaration of Mary Jo Anderson (D.I. 23) and Plaintiffs' Motions for Leave to File Supplemental Authority (D.I. 31, D.I. 33). For the reasons discussed, the Court will grant Plaintiffs' Motion for Judgment on the Pleadings, deny Defendant's Motion for Summary Judgment, deny Plaintiff's Motion to Strike, and grant Plaintiffs' Motions for Leave.

## BACKGROUND

  On March 1, 2007, Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union ("International Union") and its Local 4-786 ("Local 4-786")(together, "Unions" or "Plaintiffs") filed the present lawsuit pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, against Defendant E.I. DuPont de Nemours and Company ("DuPont"). By their Complaint, Plaintiffs seek to compel arbitration of the grievance Local 4-786 filed alleging that the changes DuPont made to certain employee benefit plans violated the collective bargaining agreement ("CBA") in effect between Dupont and Unions.

1

### A. Factual History

The International Union and Local 4-786 represent approximately 125 employees at DuPont's facility in Edge Moor, Delaware. (D.I. 1, D.I. 7.) DuPont maintains more than a dozen nation-wide ERISA benefit plans for its U.S. employees, which it applies uniformly to its union and non-union employees. (D.I. 21.)

On August 28, 2006, DuPont Senior Vice President Jim Borel issued an email announcing several changes to certain benefit plans ("August 28 email"), applicable to all U.S. DuPont employees and former employees and their eligible dependents. (Id.) The August 28 email stated, <u>inter</u> <u>alia</u>, that employees hired on or after January 1, 2007 would "not be eligible to participate in the Pension and Retirement Plan," would "not receive a company subsidy for retiree healthcare (medical and dental) and retiree life insurance," and would receive reduced vacation benefits. (D.I. 1, Exh. B.) The email also stated that, for then-existing DuPont employees, future pension benefit accruals would be at a "reduced level," and company-paid survivor benefits would "not continue to grow with service or pay after December 31, 2007." (Id.)

On September 14, 2006, Local 4-786 filed a grievance alleging the benefit plan changes announced in the August 28 email violated the collective bargaining agreement. (D.I. 1,

Exh. C.) Specifically, the grievance, as amended, alleged (in pertinent part):

> On August 28, 2006, the Company announced changes in the terms and conditions of employment for actives and new hires in the attached e-mail incorporated herein, sent on that date to U.S. employees from Jim Borel, Senior Vice President - Human Resources. With respect to actives, the application to such persons of the changes in the Pension and Retirement Plan and Savings and Investment Plan, effective January 1, 2008, violates Article IX, Section 1 of the Collective Bargaining Agreement because such changes are not permitted "modifications" within the meaning of that article and section. With respect to new hires hired on or after January 1, 2007, the withdrawal, effective January 1, 2007, of both the Pension and Retirement Plan and the current terms of the Vacation Plan violate Article IX, Section I on two independent and sufficient grounds. First, these announced changes violate Article IX, Section 1, because such changes are not permitted "modifications" within the meaning of that Article and Section. Second, these announced changes involved "Company Plans and Practices" within the meaning of Article IX, Section 1 and their withdrawal from employees covered by this agreement, on and after January 1, 2007, violates Article IX, Section 1 because such Plans and Practices remain "in effect within the Company." In addition, with respect to new hires hired on or after January 1, 2007 the withdrawal of subsidies for retiree health care (medical and dental) and life insurance violates Article IX, Section 3 of the Collective Bargaining Agreement.
>
> Remedy: Cease and desist from making the announced changes.

(D.I. 1, Exh. D.) Local 4-786's Grievance concerns six benefit plans:

> Pension and Retirement Plan;
> Savings and Investment Plan ("SIP");
> Beneflex Employee Life Insurance Plan;
> Beneflex Vacation Buying Plan ("Vacation Plan");
> Medical Care Assistance Program ("MEDCAP");
> Dental Assistance Plan ("Dental Plan").

(D.I. 19 at 4.)

3

On January 25, 2007, DuPont Human Resources Consultant Frank Ingraham informed the President of Local 4-786 by letter memorandum ("Ingraham memo") that after a preliminary review of the grievance, DuPont "refuses to submit the disputes to arbitration." (D.I. 1, Exh. F.)  The Ingraham memo stated that DuPont "consider[s] the grievance to invoke a dispute, on behalf of members of your bargaining unit ... as to whether those individuals are eligible for certain benefits under the terms of various employee benefit plans sponsored by DuPont," and that "any disputes over eligibility for benefits under DuPont's benefit plans must be handled according to the procedures set forth in the relevant plan documents and summary plan descriptions," or through a civil enforcement action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Id.)  Further, the Ingraham memo stated that the Plan Administrators of DuPont's benefit plans have "the ultimate discretionary decision-making authority to determine" whether or not Unions' members are eligible for benefits, and that, as ERISA requires, such decisions would be made solely on the basis of the terms of those plans.  (Id.)

Plaintiffs have withdrawn their grievance with respect to the MEDCAP Plan and Dental Plan (D.I. 22 at 11, n.4), which are not expressly listed in the CBA, and DuPont has voluntarily agreed to arbitrate disputes regarding the Vacation Plan (D.I. 19

at 5, n.4), which does not contain a dispute resolution mechanism. Plaintiffs' Grievance now pertains only to the Pension and Retirement Plan, the SIP, and the Beneflex Employee Life Insurance Plan.

### B. The Collective Bargaining Agreement

Article IX of the CBA, entitled "Industrial Relations Plans and Practices," discusses DuPont's obligations regarding the provision of certain welfare, retirement, and other benefit plans. In pertinent part, Article IX states:

> All existing privileges heretofore enjoyed by the employees in accordance with the following Industrial Relations Plans and Practices of the Company shall continue, subject to the provisions of such Plans and to such rules, regulations and interpretations as existed prior to the signing of this Agreement, and to such modifications thereof as may be hereafter adopted generally by the Company to govern such privileges; provided, however, that as long as any one of these Company Plans and Practices is in effect within the Company, it shall not be withdrawn from the employees covered by this Agreement; and provided, further, that any change in the Industrial Relations Plans and Practices which has the effect of reducing or terminating benefits will not be made effective until one (1) year after notice to the Union by the Plant of such change:
>
> > Career Transition Financial Assistance Plan
> > Short Term Disability Plan
> > Pension and Retirement Plan
> > Special Benefits Plan
> > Vacation Plan
> > Service Emblem Plan
> > Continuity of Service Rules
> > Treatment of Employees Called or Enlisting for Military Service
> > Payment to Employees on Jury Duty
> > Savings & Investment Plan
> > Total & Permanent Disability Income Plan

(D.I. 1, Exh. 1, Art. IX, § 1.)  Section three of the Industrial

5

Relations Plans and Practices Article requires DuPont to provide "benefits as provided by the Company's Beneflex Benefits Plan, subject to all terms and conditions of such Plan." (Id., Art. IX, § 3.)

Article VII of the CBA, entitled "Arbitration," provides that unresolved disputes over the interpretation of or alleged violations of the CBA shall be submitted to arbitration. Article VII states, in pertinent part:

> Any question as to the interpretation, or any alleged violation, of any provision of this Agreement, as defined in Section 3 of Article III, which is not otherwise settled to the mutual satisfaction of the parties hereto, at the request of either party, shall be submitted to arbitration in the manner provided in Section 2 of this Article.

(Id., Art. VII, § 1.)

## DISCUSSION

### I. Cross-Motions for Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### B. Legal Standard for Determining Arbitrability

As set forth in the seminal set of labor cases known as the Steelworkers Trilogy[1], "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); Steelworkers v. American Mfg. Co., 363 U.S. 564, 570-71 (1960)(Brennan J., concurring). The question of whether a collective bargaining agreement creates a duty to arbitrate a particular grievance is thus one for judicial determination. Warrior & Gulf, 363 U.S. at 582-583; see also AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 649 (1986)(citations omitted). In determining arbitrability, though, a Court is not to rule on the potential merits of the underlying claim. AT&T Techs., 475 U.S. at 649-50 (citations omitted).

Where a collective bargaining agreement contains a arbitration provision, a presumption in favor of arbitration exists, such that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts

---

[1] Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

7

should be resolved in favor of coverage." AT&T Techs., 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-83). Where the arbitration provision at issue is "broad," the presumption in favor of arbitrability is "particularly applicable." Id. In the face of a broad arbitration provision, the party opposing arbitration must provide an "express provision excluding a particular grievance from arbitration" or the "most forceful evidence of a purpose to exclude the claim from arbitration" to prevail. Id. (quoting Warrior & Gulf, 363 U.S. at 584-85).

### C. Applicability of the Presumption

The Court will first address whether the arbitration provision in the CBA in effect between Local 4-786 and DuPont is "broad," as that term is used in controlling precedent. The AT&T Techs. court characterized as "broad" a provision requiring arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation here under." AT&T Techs., 475 U.S. at 650. Similarly, the Third Circuit has held that a clause requiring arbitration of "any dispute arising out of a claimed violation of this Agreement" is a "broad" arbitration clause. E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 812 F.2d 92, 95 (3d Cir. 1987) The Court concludes that the arbitration clause of the CBA at issue, which provides for the arbitration of "[a]ny question as

8

to the interpretation, or any alleged violation, of any provision of this Agreement," is clearly "broad" for the purpose of determining arbitrability. (D.I. 1, Exh. 1, Art. VII, § 1.) Should the present dispute fall within the scope of the arbitration clause, the presumption in favor of arbitration is thus "particularly applicable." AT&T Techs., 475 U.S. at 650.

The Court next addresses whether Local 4-786's grievance falls within the scope of the arbitration clause in the CBA. See, e.g., E.M. Diagnostic Sys., 812 F.2d at 95. On a plain reading, Plaintiffs' grievance, which alleges that the changes to the terms of the Pension and Retirement Plan, the SIP, and the Beneflex Employee Life Insurance Plan violate the CBA, concerns matters encompassed by the Industrial Relations Plans and Practices Article of the CBA, which specifically enumerates the benefit plans at issue. Accordingly, it cannot be said "with positive assurance" that the CBA's broad arbitration clause "is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf, 363 U.S. at 582-83. See also, E.M. Diagnostic Sys., 812 F.2d at 95 ("It will suffice for present purposes to hold that a claimed contract violation comes within the scope of an arbitration clause of this character when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement."). The Court thus concludes that the

presumption of arbitrability applies, and will turn to whether that presumption has been overcome.

### D. Overcoming the Presumption

To reiterate, when a collective bargaining agreement contains a broad arbitration provision, the party opposing arbitration must provide an "express provision excluding a particular grievance from arbitration" or the "most forceful evidence of a purpose to exclude the claim from arbitration" to prevail. AT&T Techs., 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 584-85).

#### i. Whether the Grievance Presents Benefit Eligibility Questions

DuPont contends that the present dispute is not arbitrable because the grievance raises specific questions regarding benefit eligibility, which the parties agreed must be decided under the dispute resolution procedures contained in the relevant benefit plans. To support this contention, DuPont highlights the language in the Industrial Relations Plans and Practices Article stating that the Pension and Retirement and SIP plan privileges shall continue "subject to the provisions of" of such plans, and that employees shall receive the Life Insurance Plan "subject to all terms and conditions of" that plan. (D.I. 1, Exh. A, Art. IX.) Each of the plans at issue, DuPont contends, provides that the plan administrator has sole authority to construe the plan and determine eligibility for benefits, and that each plan

10

provides for internal appeals processes that are final and binding.  By its face, DuPont contends, Local 4-786's grievance challenges the application of the benefit plan changes to certain employees, and thus improperly seeks to have an arbitrator decide eligibility disputes.

The Court concludes that DuPont inaccurately characterizes Local 4-786's grievance as a dispute concerning benefit *eligibility under the terms* of the plans, when it actually challenges DuPont's authority to *change the terms* of those plans. In other words, the controlling authority of the dispute at issue is not the terms of the benefit plans, but the terms of the CBA. The grievance expressly alleges that the announced changes violate Article IX, section 1 of the CBA, and its identification of classes of employees ("actives," "new hires," etc.) only mirrors DuPont's August 28 email.  (D.I. 1, Exh. D.)  The grievance on its face thus does not challenge individual benefit determinations under the terms of a plan.  DuPont relies heavily on Steelworkers v. Commonwealth Aluminum Corp., 162 F.3d 447, 451 (6th Cir. 1998), which held that the "incorporation of the claims review procedures . . . expresses an intention to exclude from arbitration all benefits disputes which are within the Administrator's authority."  Commonwealth Aluminum, however, is distinguishable from the present dispute in two key respects: it involved (1) plan terms that had been "incorporated" into the

CBA, which DuPont concedes is not the case here (D.I. 19 at 25), and (2) a dispute over the denial of group insurance benefits under the plan, a matter that was "within the [plan] Administrator's authority." 162 F.3d at 451. The current dispute is analogous instead to two cases the Commonwealth Aluminum court distinguished from the circumstances before it, United Food and Commercial Workers Union, Local 770 v. Geldin Meat Co., 13 F.3d 1365 (9th Cir. 1994), and Local 232, Allied Industrial Workers v. Briggs & Stratton Corp., 837 F.2d 782 (7th Cir. 1988), stating "[n]either case involved a dispute over a determination of eligibility for payment of a claim for benefits." Commonwealth Aluminum, 162 F.3d at 453. The disputes in Geldin Meat and Briggs & Stratton involved, respectively, the underfunding of a medical insurance plan and an employer's unilateral changes to a retirement plan, disputes which were arbitrable. Id. Because the grievance challenges DuPont's authority to unilaterally change the terms of the plan *under the CBA*, and not an eligibility determination *under the terms of the plan*, the Court concludes that the limiting language DuPont highlights does not constitute "forceful evidence of an intent to exclude" this type of dispute from the arbitration provision.[2]

---

[2] DuPont also contends, in a conclusory manner, that the highlighted limitations in Article IX encompass "DuPont's right to amend the plans." (D.I. 24 at 11.) This contention goes to the merit of the grievance, not to the question of arbitrability, and as such is outside the purview of the Court. See AT&T

12

### ii. Whether "Inextricably Intertwined" Benefit Determinations Overcome the Presumption

DuPont next contends that any challenge to its authority to amend its national benefit plans raises issued that are inextricably intertwined with issues within the exclusive province of the plan administrators. The ultimate objective of Local 4-786's grievance, DuPont contends, is a to secure a ruling that specified classes of employees *are eligible* for the plan benefits at issue. Such a ruling, DuPont contends, would necessarily implicate benefit eligibility decisions already made and would supplant the plan administrator as the ERISA fiduciary exclusively responsible for the interpretation and application of the terms of the plans.

The Court is unpersuaded. DuPont essentially asks the Court to find that an otherwise arbitrable dispute is non-arbitrable because subsequent implementation of the grieved action may not be independently arbitrable. DuPont presents no precedent for the proposition that an otherwise arbitrable action becomes non-arbitrable because it "implicates" or is "intertwined" with potentially non-arbitrable actions. Local 4-786's grievance challenges DuPont's authority under the CBA to unilaterally alter the terms of benefit plans, (D.I. 1, Exh. D.), and as such presents a "disagreement over the meaning of the language," a

---

Techs., 475 U.S. at 649-50 (citations omitted).

13

"quintessential arbitrable dispute," <u>Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.</u>, 29 F.3d 83, 86 (2d Cir. 1994)(citations omitted). The logic DuPont asks the Court to adopt would render practically all "quintessential arbitrable dispute[s]" over the meaning of CBA language concerning benefit plans non-arbitrable, since the construction of such language inevitably affects later Plan determinations. Dupont's contention thus fails. Accordingly, the Court concludes that DuPont has presented no evidence, let alone the "most forceful evidence," of a purpose to exclude the claim from arbitration.

For the reasons discussed above, the Court will grant Plaintiffs' Motion for Judgment on the Pleadings and compel DuPont to submit Local 4-786's grievance to arbitration.

**II. Remaining Motions**

By a separate motion, Plaintiffs' request that the Court strike a portion of the declaration of Mary Jo Anderson. In light of the Court's disposition of the cross-motions for summary judgment, the Court will deny this motion as moot.

Lastly, Plaintiffs have submitted two unopposed motions requesting leave to file supplemental authority, which the Court will grant.

**CONCLUSION**

14

For the reasons discussed above, the Court finds no material issues of fact in dispute and will grant Plaintiffs' Motion for Judgment on the Pleadings, deny Defendant's Motion for Summary Judgment, deny Plaintiffs' Motion to Strike, and grant Plaintiffs' Motions for Leave.  Accordingly, the parties shall submit the remaining claims of Local 4-786's grievance to arbitration, as provided for by the parties' collective bargaining agreement.

An appropriate order will be entered.